Jason S. Brookner (Texas Bar No. 24033684)
Andrew K. York (Texas Bar No. 24051554)
Joshua D. Smeltzer (Texas Bar No. 24113859)
Drake M. Rayshell (Texas Bar No. 24118507)
GRAY REED
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile:  (214) 953-1332
Email:    jbrookner@grayreed.com
          dyork@grayreed.com
          jsmeltzer@grayreed.com
          drayshell@grayreed.com

*Counsel to Patrick Daugherty*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: <br><br> HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] <br><br> Reorganized Debtor. | Chapter 11 <br><br> Case No. 19-34054 (SGJ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P., <br><br> Plaintiff, <br><br> v. <br><br> PATRICK HAGAMAN DAUGHERTY, <br><br> Defendant. | Adversary No. 25-03055 |

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

4906-7970-6714

**PATRICK DAUGHERTY'S (A) REPLY IN SUPPORT OF HIS MOTION TO DISMISS AND (B) RESPONSE TO PLAINTIFF'S CROSS MOTION FOR RELIEF FROM A FINAL ORDER PURSUANT TO BANKRUPTCY RULE 9024**

Defendant Patrick Daugherty ("Daugherty") files this Reply in support of his Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (incorporated herein by Fed. R. Bankr. P. 7012(b)) for failure to state a claim upon which relief may be granted, and this Response to Plaintiff's Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024.

## I.    SUMMARY

1. Plaintiff's Objection is a tortured, and ultimately unsuccessful, attempt to avoid the terms of the Settlement Agreement it voluntarily negotiated. It also fails to credibly contest the unambiguous admissions in Plaintiff's Complaint: that the IRS Audit Dispute[2] remains unresolved. In fact, the Objection does not even argue the Complaint's factual allegations plead a cognizable claim for relief.

2. Tellingly, the Objection fails to keep Plaintiff's story straight. At one point Plaintiff admits Daugherty's Reserved Claim is still "unresolved at this time[.]" *See Highland Capital Management, L.P.'s (A) Objection to Partick Daugherty's Motion to Dismiss and (B) Cross Motion for Relief From a Final Order Pursuant to Bankruptcy Rule 9024* [Docket No. 10] (the "Objection") at ¶ 5. In other parts of the Objection, Plaintiff claims the IRS *may* have made a final determination. *Id.* at ¶ 2 (stating Plaintiff "believes" the IRS made a final determination); *id.* at ¶ 15 (asserting Plaintiff recently found "information suggesting" the IRS made a final

---

[2]    All capitalized terms used but not herein defined shall have the meanings ascribed to them in the Settlement Agreement at Main Case Docket No. 3089, Daugherty's Motion to Dismiss or Plaintiff's Objection.

4906-7970-6714

determination). In support, Plaintiff relies on its own records to contend the final determination occurred *three years before* Plaintiff and Daugherty entered into the Settlement Agreement.

3. Plaintiff's fumbling attempt to characterize the IRS's final determination (or not) of the IRS Audit Dispute is a tacit concession that the Stay Provision of the Settlement Agreement controls. A fact bolstered by Plaintiff's complete failure to answer a simple, logical question: if the IRS had issued a final determination in 2018, then what was the need to reserve the claim in the Settlement Agreement?

4. Realizing its argument lacks a supportable premise, Plaintiff pivots to a Hail Mary: a cross-motion asking the Court to relieve Plaintiff from the Stay Provision in its bargained-for Settlement Agreement.³ The Court should reject this request for several reasons. The parties clearly contemplated at the time they entered into the Settlement Agreement that final resolution of the IRS Audit Dispute was indeterminate. Plaintiff's failure to negotiate an end-date in the Settlement Agreement is its own fault. Plaintiff also claims the current circumstances were "unforeseen."⁴ Mutual mistake, however, is not an "extraordinary circumstance" that justifies Court intervention under Rule 60(b)(6). Most importantly, Plaintiff obtained the benefits of the Stay Provision via multiple tolling agreements that extended Plaintiff's deadline to object to Daugherty's Reserved Claim. Plaintiff is therefore estopped from now trying to eliminate the same

---

³ Indeed, supporting the bargained-for nature of the settlement, in seeking court-approval of the Settlement Agreement, Plaintiff stated: "[T]he Settlement agreement was unquestionably negotiated at arm's length. The Terms of the settlement are the result of numerous, ongoing discussions and negotiations between the parties and represent neither party's 'best case scenario.'" [Main Case Docket No. 3088 at ¶ 48].

⁴ Plaintiff's claim is problematic given the Court's comments during the parties' November 17, 2020 hearing on Daugherty's Motion for Temporary Allowance of Claim for Voting Purposes [Main Case Docket No. 1281 in Case 19-34054-sgj], where the Court commented with respect to Daugherty's Reserved Claim: "down the road we may get to a point where it's not contingent, the IRS has finished doing what it's going to do, and we may get to a point where we think the result is appropriate." [Main Case Docket No. 1426 in Case 19-34054-sgj at 85:16-19]. While that point in time has yet to come, it is hardly something "unforeseen." [*See also generally id.* at 46:16-48:22].

3

provision in the Settlement Agreement. Accordingly, Plaintiff's cross-motion should be denied, and the Complaint dismissed.

## II.  LEGAL STANDARD

5. To survive a motion to dismiss under Rule 12(b)(6), Plaintiff must assert a theory that could entitle it to relief. Fed. R. Civ. P. 12(b)(6). In support of that theory, a complaint must allege "sufficient factual matter" that, taken as true, "state[s] a claim for relief [that] is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must establish more than a "sheer possibility that a defendant has acted unlawfully." *Id.* This Court need not accept as true legal conclusions or conclusory factual allegations. *Id.* "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *U.S. ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 761 (S.D. Tex. 2010) (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)) (cleaned up).

## III.  ARGUMENT

**A.  The Complaint still fails to allege a plausible claim.**

6. Plaintiff first contends that it "recently also found information suggesting that the 'IRS [made] a final determination with respect to the IRS audit dispute.'" Objection at ¶ 15. It points to three documents from Plaintiff's own records that were purportedly sent to Daugherty on or about February 3, 2018. *Id.* at ¶ 16 and Morris Exhibits 2-4. This argument fails for multiple reasons.[5]

---

[5] The Court also should decline to consider Morris Exhibits 2-4 because they are used in a manner inconsistent with the Complaint's factual allegations. While a plaintiff "has much more flexibility in opposing a Rule 12(b)(6) motion," any elaborations or extrinsic evidence must be consistent with the pleadings. *Kinnie Ma Indiv. Retirement Acct. v. Ascendant Capital, LLC*, Cause No. 1:19-CV-1050-LY, 2021 WL 11962856, at *1 (W.D. Tex. Aug. 25, 2021) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012)). The Complaint alleges the IRS Audit is not final. Plaintiff attempts to use the Morris Exhibits 2-4 to argue that the exact opposite. Notwithstanding the

4

4906-7970-6714

7.  First, Plaintiff's letter to Daugherty makes clear that the "IRS field examiners" did not reach a "final determination". Rather, they simply "proposed an adjustment" to Plaintiff's 2008 tax return. Morris Exhibit 2. The letter also makes clear that Plaintiff and Daugherty could accept or reject the proposed adjustment — and Plaintiff recommended Daugherty not agree to the proposed adjustments. *Id.* Moreover, the letter states that Plaintiff would "handle the closing conference . . . and appeal the proposed adjustment to the IRS Appeals Office after the conference." *Id.* Nothing in the letter or IRS forms establishes that the IRS had made a "final determination" with respect to the IRS audit dispute.

8.  Second, Plaintiff argues the **February 2018** letter and attached IRS forms **suggest** the IRS reached a final determination. But that argument is belied by the **November 2021** Settlement Agreement. The parties expressly provided that Daugherty's Reserved Claim "shall be stayed *until the IRS makes a final determination with respect to the IRS Audit Dispute*." Settlement Agreement at ¶ 9. If the IRS had already made a final determination in February 2018, then there would be no need for Plaintiff and Daugherty to include the Stay Provision in the Settlement Agreement.

9.  The parties' effectuation of the Settlement Agreement also acknowledged the IRS audit was not final. On July 27, 2022, the parties entered a Tolling Agreement Extending Claim Objection Deadline. [Main Case Docket No. 4255-60 in Case 19-34054-sgj]. [6] The parties

---

contradiction, the Court also has discretion not to consider matters outside the pleadings that are submitted in opposition to a 12(b)(6) motion. *Tremont LLC v. Halliburton Energy Servs., Inc.,* 696 F.Supp.2d 741, 751 (S.D. Tex. 2010).

[6]  As Daugherty pointed out in his Motion to Dismiss, the Court may take judicial notice of its own records. *E.g., Biliouris as next friend of Biliouris v. Patman*, 751 Fed. App'x 603, 604 (5th Cir. 2019)("court may take judicial notice of the record in prior related proceedings"); *ITT Rayonier Inc. v. U.S.*, 651 F.2d 343, 345 n.2 (5th Cir. 1981)("court may… take judicial notice of its own records…"). Daugherty respectfully requests the Court take judicial notice of the Tolling Agreement filed by Plaintiff in the Main Case at Docket No. 4255-60 as it considers this Motion to Dismiss.

included recitals in the Tolling Agreement that there was an "absence of a resolution of the IRS Dispute" and "it is unknown when the IRS Dispute may be resolved". *Id.* at 4. Over the next three years the parties entered into three amendments to the Tolling Agreement. None of those amendments changed the characterization of the IRS Audit Dispute as unresolved. [Main Case Docket Nos. 4255-61 through 4255-63 in Case 19-34054-sgj].

10. Finally, the Objection fails to "wade into the thicket of arcane tax regulations" that eviscerate Plaintiff's argument. Objection at ¶ 3. Daugherty's Motion to Dismiss clearly explained how the IRS' proposed adjustment was not a final determination. Motion to Dismiss at ¶¶ 8-13. Plaintiff's intentional decision not to address those arguments is a tacit admission that the detailed explanation of the audit process in Daugherty's response established there was no final determination. The motion to dismiss did not, as Plaintiff claims, present meaningless arcane rules, or a thicket for the Court to wade through, but a clear legal standard that a dispute cannot be final until the allowed judicial review is concluded. These are established standards that both parties were aware of at the time of settlement. Any alleged inconvenience was known and accounted for by the parties during settlement negotiations and the resulting agreement.

11. In sum, the extrinsic evidence attached to Plaintiff's Objection fails to illustrate that the Complaint alleges any facts which give rise to plausible claims for relief against Daugherty. The Complaint and the Objection show Plaintiff filed this adversary proceeding before a final determination in the IRS Audit Dispute. As a result, all claims against Daugherty should be dismissed without prejudice pursuant to the Settlement Agreement.

B. **Plaintiff's meritless Rule 60(b)(6) cross-motion should be denied.**

i. **Plaintiff improperly asks the Court to rewrite the parties' negotiated Settlement Agreement.**

12. Rule 60(b)(6) is a "grand reservoir of equitable power" only when its use is necessary "to accomplish justice." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981). Moreover, a motion for relief from a judgment is generally not favored and should only be granted upon a showing of exceptional circumstances. *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2nd Cir. 2001). Consistent with these principles, motions to reform or nullify settlements are disfavored precisely because settlements represent the parties' negotiated allocation of risk. *See Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 580 (10th Cir. 1996) (denying 60(b)(6) motion when "[d]efendants made a free, counseled, deliberate choice whose consequences in hindsight are unfortunate.") (citing *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1147 (10th Cir.1990)). Whatever inconvenience Plaintiff now faces is a direct consequence of a contractual risk it willingly accepted. Rule 60(b)(6) does not permit the Court to rescue a sophisticated party from the predictable results of its own bargain. *Yesh Music v. Lakewood Church*, 727 F.3d 356, 363 (5th Cir. 2013) ("Rule 60(b)(6) relief will not be used to relieve a party from the free, calculated, and deliberate choices he has made."); *S.E.C. v. Conradt*, 309 F.R.D. 186, 187-88 (S.D.N.Y. 2015) (refusing to utilized Rule 60(b)(6) to vacate defendants' settlement agreements that resulted in consent judgments after defendants' guilty pleas in a parallel proceeding were vacated).

13. Here, the Stay Provision was an integral term of a comprehensive, court-approved Settlement Agreement that resolved years-old disputes and provided Daughterty with certainty that he would not be forced to litigate until *after* the IRS Audit Dispute reached a final determination. Settlement Agreement, ¶ 9. Indeed, Plaintiff previously lauded the Settlement

7

Agreement as fair and reasonable when it sought approval of the same. [*See e.g.*, Main Case Docket No. 3088 at ¶¶ 41-48]. This Court also "found the Settlement Agreement fair and equitable". [Main Case Docket No. 3298 at 2]. Now Plaintiff asks the Court to ignore that finding and write out an essential term of the parties' agreement to avoid the consequence of its bargain.

14. However, the Settlement Agreement's terms and the parties' subsequent tolling agreements establish the parties clearly anticipated the possibility—if not, the likelihood—that the IRS Audit Dispute could drag on for years. Plaintiff could have negotiated a temporal backstop, but it did not. Instead, Plaintiff reserved all defenses while agreeing that "any litigation…shall be stayed" until the IRS reaches a final determination. Settlement Agreement, ¶ 9.

   ii. **Rule 60(b)(6) should only be utilized in the face of manifest injustice and extraordinary circumstances—not to relieve Plaintiff of its obligations under a court-approved Settlement Agreement.**

15. Relief under Rule 60(b)(6) "requires a showing of manifest injustice and extraordinary circumstances." *Yesh Music*, F.3d at 363; *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988) (Rule 60(b)(6) should only be applied in "extraordinary circumstances"). "[E]xtraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3rd Cir. 2008). It is clear that a party who is simply trying to escape the effects of a bargain it regretted in hindsight has not demonstrated exceptional circumstances sufficient to warrant relief under Rule 60(b)(6). *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 273 (3rd Cir. 2002).

16. Plaintiff claims "no one foresaw" the IRS may require more than five years to make a final determination when the Settlement Agreement was negotiated.[7]  Objection at ¶ 5.  And now, Plaintiff complains that dissolving the estate may take longer than it anticipated at the time Plaintiff entered into the Settlement Agreement.  However, Plaintiff's failure does not amount to an extraordinary circumstance.  To the contrary, Plaintiff's arguments show that it is trying to escape the effects of a bargain it now regrets in hindsight.[8]  Daugherty should not bear the consequences of Plaintiff's regret,[9] nor should the Court cosign Plaintiff's attempt to circumvent the parties' Settlement Agreement.

### iii. Equitable considerations defeat Plaintiff's bid to rewrite a deal from which it has already benefited.

17. Equity runs in Daugherty's favor.  After the Court entered the Settlement Order, Plaintiff repeatedly invoked the Settlement Agreement to secure four separate tolling agreements, thereby extending its claim-objection deadline from August 11, 2023, to June 30, 2025. (Main Case Docket Nos. 4255-60 through 4255–63).  Plaintiff cannot accept those substantial benefits and now disavow the agreement that enabled them.  The doctrine of judicial estoppel prevents a party from "playing fast and loose with the courts" by taking inconsistent positions in successive

---

[7] To the extent Plaintiff now characterizes the Stay Provision as a "mutual mistake" (or even a "unilateral mistake") that contention is legally irrelevant.  Fifth Circuit precedent makes clear that "mistake or inadvertence" is covered by subsections (1)–(3) of Rule 60(b), and must be raised within one year.  Fed. R. Civ. P. 60(c)(1); *Seven Elves*, 635 F.2d at 401–02; *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993) (Rule 60(b)(1) covers mistake, inadvertence, surprise, or excusable neglect, and is subject to a one-year limitation).  Plaintiff's motion—filed more than three years after the Settlement Order—comes far too late under those provisions and cannot be bootstrapped into subsection (6).

[8] This is particularly concerning, because Plaintiff previously stated, "the Settlement Agreement should be approved as a rational exercise of the Reorganized Debtor's business judgment made *after due deliberation of the facts and circumstances concerning Daugherty's Claim.*" [*See e.g.*, Main Case Docket No. 3088 at ¶ 48 (emphasis added)].

[9] Notably, at any time, Plaintiff could have negotiated an agreeable amendment to the Settlement Agreement with Daugherty to address its concerns.  Instead, it chose to leave Daugherty in the dark and file this improper and meritless Adversary Proceeding in violation of the same.

9

4906-7970-6714

proceedings. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (judicial estoppel prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase). Having treated the Stay Provision as valid and enforceable for years, Plaintiff is estopped from contending otherwise now—especially since Plaintiff has reaped other substantive benefits under the Settlement Agreement.

18. Moreover, Daugherty relied on the Stay Provision when entering those tolling agreements, to set it aside now would be manifestly prejudicial. In equity, the Court should consider that the current position of the parties is a direct result of their bargaining and refuse to tilt the scale in Plaintiff's favor.

### iv. Plaintiff's cross-motion lacks authority and should be denied.

19. Every authority that Plaintiff relies on in its Objection involves either (i) default judgments or (ii) impossibility caused by events wholly outside the parties' contractual framework—not an attempt to rewrite a settlement term chosen by the parties.

20. For example, in *Seven Elves*, relief was granted where defendants never received notice of trial and a $250,000 default judgment was entered. 635 F.2d at 399. Unlike here, there was no negotiated settlement, and the movants had no opportunity to present their case. In *Celtic Marine Corp. v. James C. Justice Companies, Inc.*, 593 F. App'x 300 (5th Cir. 2014), the court merely reduced the post-judgment interest rate because the contract lacked "clear, unambiguous" language. 593 F. App'x 300, 306. To the extent a settlement agreement was involved in the court's 60(b)(6) analysis, the ruling enforced, rather than voided, the settlement agreement. *Id.* at 302. In *Lindy Investments III v. Shakertown 1992, Inc.*, 360 F. App'x 510 (5th Cir. 2010), the district court vacated a decade-old money judgment where the plaintiffs' own post-judgment conduct—continuing to use allegedly defective shingles—made enforcement inequitable. 360 F. App'x 510.

10

Again, no settlement existed, and relief merely restored the pre-judgment status quo. In *In re Strudel Holdings LLC*, 656 B.R. 404 (Bankr. S.D. Tex. 2024), the court extended a real-estate closing deadline because an unforeseen cyberattack on the escrow agent made compliance impossible. 656 B.R. 404. Here, by contrast, the Stay Provision already contemplates a drawn-out IRS process; Plaintiff's "difficulty" is neither unforeseen nor unavoidable.

21.     Plaintiff cites these cases to support the general proposition that Rule 60(b)(6) "should be liberally construed" and that courts have broad discretion to grant relief under that provision to accomplish justice. *Celtic Marine Corp*, 593 F. App'x at 303. But none of these cases authorize a court to excise a bargained-for stay clause simply because one party regrets the timing implication years later. On the contrary, they reinforce that Rule 60(b)(6) is available only when an unanticipated event renders continued enforcement of a judgement manifestly unjust—an entirely different scenario from the one presented here. *See Seven Elves*, 635 F.2d at 402 (Rule 60(b) should be liberally construed to do substantial justice, but not to disturb the finality of judgments absent compelling circumstances).

22.     In sum, the Stay Provision was a material term of a negotiated settlement, its continued enforcement is neither manifestly unjust nor extraordinary. For the foregoing reasons, the Court should hold Plaintiff to its bargain and dismiss the adversary proceeding, or, at a minimum, stay it until the IRS Audit Dispute is fully and finally resolved, exactly as the Settlement Agreement requires.

### IV.    DISMISSAL SHOULD BE WITHOUT PREJUDICE

23.     Plaintiff's tertiary requested relief is for dismissal without prejudice, subject to (a) a further extension of the claim objection deadline through February 1, 2026, and (b) Plaintiff's right to re-file the Complaint between January 1 and 31, 2026 together with a renewed Rule

11

60(b)(6) motion. Objection at ¶ 25. Daugherty agrees the dismissal should be without prejudice. Daugherty also does not oppose an extension of the claim objection deadline to February 1, 2026. However, Daugherty opposes Plaintiff's request for the right to re-file in January 2026 to the extent that Plaintiff is seeking a ruling that it may file before the IRS makes a final determination. The more appropriate procedure would be for Plaintiff to seek a further extension of the claim objection deadline by February 1, 2026, if necessary.

## V.    CONCLUSION

24.    For the foregoing reasons, the Court should dismiss all claims against Daugherty because the Complaint does not satisfy the Rule 12(b)(6) pleading requirements as it fails to state a claim upon which relief may be granted. Alternatively, the Court should stay this adversary proceeding until the Debtor's IRS Audit Dispute is fully and finally resolved.

Respectfully submitted this 8th day of August 2025.

    GRAY REED

By:  */s/ Andrew K. York*
    Jason S. Brookner
    Texas Bar No. 24033684
    Andrew K. York
    Texas Bar No. 24051554
    Joshua D. Smeltzer
    Texas Bar No. 24113859
    Drake M. Rayshell
    Texas Bar No. 24118507
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (469) 320-6050
Facsimile:  (469) 320-6886
Email:    jbrookner@grayreed.com
         dyork@grayreed.com
         jsmeltzer@grayreed.com
         draysehll@grayreed.com

*Counsel to Patrick Daugherty*

4906-7970-6714

# CERTIFICATE OF SERVICE

       I hereby certify that a true and accurate copy of the foregoing instrument was served on all Parties or counsel of record herein on this 8th day of August 2025, via the CM/ECF system and/or email.

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz
jpomerantz@pszjlaw.com
John A. Morris
jmorris@pszjlaw.com
Gregory V. Demo
gdemo@pszjlaw.com
Hayley R. Winograd
hwinograd@pszjlaw.com
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067

**HAYWORD PLLC**
Melissa S. Hayward
MHayward@HaywardFirm.com
Zachery Z. Annable
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Suite 106
Dallas, Texas 75231

*Counsel for Highland Capital Management, L.P.*

                                                */s/ Andrew K. York*
                                                ANDREW K. YORK

4906-7970-6714