## **EXHIBIT 1**

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) *(admitted pro hac vice)*
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: § | Chapter 11 |
| § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] § | Case No. 19-34054-sgj11 |
| § | |
| Reorganized Debtor. § | |
| § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., § | |
| § | |
| Plaintiff, § | Adv. Proc. No. 25-03055-sgj |
| § | |
| v. § | |
| § | |
| PATRICK HAGAMAN DAUGHERTY, § | |
| § | |
| Defendant. § | |

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.



¦1934054250718000000000007

**DECLARATION OF JOHN A. MORRIS IN SUPPORT OF HIGHLAND CAPITAL
MANAGEMENT, L.P.'S (A) OBJECTION TO PATRICK DAUGHERTY'S MOTION TO
DISMISS AND (B) CROSS MOTION FOR RELIEF FROM A FINAL ORDER
PURSUANT TO BANKRUPTCY RULE 9024**

I, John A. Morris, pursuant to 28 U.S.C. § 1746, under penalty of perjury, declare as follows:

1.      I am an attorney in the law firm of Pachulski, Stang, Ziehl & Jones LLP, counsel to Highland Capital Management, L.P. ("Highland"), the reorganized debtor in the above-captioned chapter 11 case.  I submit this Declaration in support of *Highland Capital Management, L.P.'s (A) Objection to Patrick Daugherty's Motion to Dismiss and (B) Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024* (the "Objection" or the "Cross Motion," as the case may be) being filed contemporaneously with this Declaration.  This Declaration is based on my personal knowledge and review of the documents listed below.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of that certain *Settlement Agreement* (the "Settlement Agreement") by and between Highland and Patrick Daugherty ("Daugherty"), dated November 22, 2021.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of the transmittal letter dated February 3, 2018, regarding the IRS' proposed tax adjustments for the 2008 tax year (the "Audit Letter").

4.      Attached hereto as **Exhibit 3** is a true and correct copy of IRS Form 886-Z (only as it pertains to Daugherty) that was attached to the Audit Letter.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of IRS Form 870-PT pertaining to Daugherty that was also attached to the Audit Letter.

Dated: July 18, 2025                              */s/ John A. Morris*
                                                           John A. Morris

# EXHIBIT 1

**Final Execution Copy**

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement") is made and entered into by and between (i) Highland Capital Management, L.P., as reorganized debtor ("HCMLP" or the "Debtor"), and (ii) Patrick Hagaman Daugherty ("Daugherty" and together with HCMLP, the "Parties," and individually as a "Party"). This Settlement provides for the treatment of certain claims asserted by Daugherty against the Debtor, and for the Parties to take certain other specified actions in settlement thereof.

## RECITALS

WHEREAS, on October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, the Debtor's chapter 11 case (the "Bankruptcy") is pending in the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court");

WHEREAS, on February 2 and 3, 2021, the Court conducted a confirmation hearing with respect to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) [Docket No. 1808] (the "Plan");

WHEREAS, on February 8, 2021, the Court rendered an opinion from the bench in which it confirmed the Plan [Docket No. 1924];

WHEREAS, on February 22, 2021, the Court issued an order confirming the Plan [Docket No. 1943];

WHEREAS, on August 11, 2021, the Effective Date (as defined in the Plan) occurred [Docket No. 2700];

WHEREAS, Daugherty is a former employee and limited partner of the Debtor and has

served in other positions with affiliates and former affiliates of the Debtor;

WHEREAS, at the time of his resignation, Daugherty owned 19.1% of the preferred units of Highland Employee Retention Assets LLC ("HERA"), an employee deferred compensation vehicle managed by the Debtor and Highland ERA Management, LLC ("ERA") and contends that he owned or had the right to own all of the preferred units of HERA;

WHEREAS, prior to his resignation from HCMLP, Daugherty was awarded units of HERA, which vehicle owned interests in Restoration Capital Partners, LP ("RCP"), an HCMLP managed private equity fund, and other investments;

WHEREAS, in April 2012, the Debtor commenced an action against Daugherty in Texas state court (the "Texas Action"), and Daugherty subsequently asserted counterclaims for breach of contract and defamation, and third-party claims against HERA and others;

WHEREAS, after a three-week trial, the jury returned a verdict partially in favor of the Debtor, but Daugherty prevailed on his claims against the Debtor and James Dondero ("Dondero") for defamation with malice and a third-party claim against HERA and was awarded damages of $2.6 million against HERA, plus prejudgment and post-judgment interest at 5% (the "HERA Judgment");[1]

WHEREAS, in July 2017, after being unable to collect on the HERA Judgment, Daugherty commenced an action against the Debtor, Dondero, HERA, and ERA Management in the Delaware Chancery Court (the "Delaware Court"), in a case captioned *Daugherty v. Highland Capital Management, L.P., et al.*, C.A. No. 2017-0488-MTZ, for fraudulent transfer, promissory estoppel, unjust enrichment, indemnification, and fees on fees (the "Highland Delaware Case");

---

[1] The Debtor prevailed on its claims against Mr. Daugherty for breach of contract and breach of fiduciary duty for non-monetary damages and obtained an award of $2.8 million in attorney's fees. The HERA Judgment was affirmed on appeal on December 1, 2016.

WHEREAS, the Delaware Court in the Highland Delaware Case (i) found that the Dondero-related defendants improperly withheld dozens of documents in discovery on privilege grounds, and (ii) ruled that there was "a reasonable basis to believe that a fraud has been perpetrated" such that the Delaware Court applied the "crime-fraud exception" to the attorney-client privilege assertion, and such rulings have not been overturned;

WHEREAS, Daugherty asserts that such withholding of documents and the failure to search defendants' and their employees personal electronic devices for stored documents and texts as well as other emails and domain names such as sasmgt.com and gmail.com which were in their possession and control and to provide required discovery injured him by undermining his attempts to build an evidentiary record to support his claims against the Debtor and the other defendants in the Highland Delaware Case;

WHEREAS, on October 14, 2019, the Highland Delaware Case proceeded to trial and two days later, on October 16, 2019, before the completion of the trial and before the Delaware Court ruled on Daugherty's and the Debtor's cross-motions for summary judgment regarding indemnification and fees on fees, the Debtor filed for bankruptcy;

WHEREAS, on December 1, 2019, Daugherty filed a separate lawsuit in the Delaware Court, captioned *Daugherty v. Dondero, et al.*, C.A. No. 2019-0956-MTZ, against Dondero, HERA, ERA, Hunton Andrews Kurth LLP ("Andrews Kurth"), Marc Katz ("Katz"), Michael Hurst ("Hurst"), the Debtor's Chief Compliance Officer, the Debtor's then in-house counsel (Isaac Leventon ("Leventon")), and the Debtor's then general counsel (Scott Ellington ("Ellington")), for conspiracy to commit fraud, among other claims (the "HERA Delaware Case" and together with the Highland Delaware Case, the "Delaware Cases");

WHEREAS, on April 1, 2020, Daugherty filed a general, unsecured, non-priority claim

3

against the Debtor in the amount of at "least $37,483,876.59," and such claim was denoted by the Debtor's claims agent as Proof of Claim No. 67 ("Proof of Claim No. 67");

WHEREAS, on April 6, 2020, Daugherty filed a general, unsecured, non-priority claim against the Debtor in the amount of at "least $37,482,876.62" that superseded Proof of Claim No. 67 and that was denoted by the Debtor's claims agent as Proof of Claim No. 77 ("Proof of Claim No. 77");

WHEREAS, on August 31, 2020, the Debtor commenced an adversary proceeding against Daugherty by filing a complaint (the "Complaint") in which the Debtor: (1) objected to Proof of Claim No. 77 on various grounds (the "Claim Objection"), and (2) asserted a cause of action for the subordination of part of Daugherty's claim pursuant to section 510(b) of the Bankruptcy Code. Adv. Proc. No. 20-03107 (the "Adv. Proc.") [Adv. Docket No. 1] (the "Adversary Proceeding");

WHEREAS, on September 29, 2020, Daugherty filed his answer to the Complaint [Adv. Docket No. 8] (the "Answer");

WHEREAS, on September 24, 2020, Daugherty filed his *Motion to Confirm Status of Automatic Stay, or Alternatively to Modify Automatic Stay* [Docket No. 1099] (the "Stay Motion") pursuant to which he sought to sever the Debtor from the Highland Delaware Case and then consolidate the remaining claims in the Highland Delaware Case into the HERA Delaware Case and proceed with one case against the non-Debtor parties;[2]

WHEREAS, on October 23, 2020, Daugherty filed a motion seeking leave to amend his Proof of Claim No. 77 [Docket No. 1280] (the "POC Amendment Motion"). The amended proof

---

[2] On October 8, 2020, the Debtor commenced a second adversary proceeding against Daugherty (the "Second Adversary Proceeding"), seeking to enjoin him from prosecuting the Delaware Cases. Adv. Proc. 20-03128 ("2d Adv. Proc.") [2d Adv. Proc. Docket No. 1]. On January 29, 2021, the parties filed a Settlement that resolved the Second Adversary Proceeding, and the Second Adversary Proceeding was subsequently dismissed with prejudice. [2d Adv. Proc. Docket No. 12].

of claim attached to the POC Amendment Motion increased Daugherty's general, unsecured, non-priority claim against the Debtor to the amount of at "least $40,410,819.42" and sought to supersede Proof of Claim No. 67 and Proof of Claim No. 77;

WHEREAS, on October 23, 2020, Daugherty filed his *Motion for Temporary Allowance of Claim for Voting Purposes Pursuant to Bankruptcy Rule 3018 Motion*, seeking for his Claim to be temporarily allowed for voting purposes in this amount of $40,410,819.42 [Docket No. 1281] (the "3018 Motion");

WHEREAS, on November 3, 2020, the Court granted the Stay Motion [Docket No. 1327];

WHEREAS, the Debtor opposed the 3018 Motion, and after conducting an evidentiary hearing for the limited purpose of determining the 3018 Motion, the Court entered an order temporarily allowing Daugherty's Claim only for voting purposes in the amount of $9,134,019 [Docket No. 1474];

WHEREAS, on December 10, 2020, the Court entered an order [Docket No. 1533] granting the POC Amendment Motion, and Daugherty was permitted to file an amendment to his proof of claim. On December 23, 2020, Daugherty filed an amended proof of claim, designated by the Debtor's claim agent as Proof of Claim No. 205 ("Proof of Claim No. 205" or the "Daugherty Claim"). Proof of Claim No. 205 superseded Proof of Claim No. 77 and increased the amount of the Daugherty's Claim to $40,710,819.42;

WHEREAS, on November 30, 2020, Daugherty filed his Motion to Lift the Automatic Stay (the "Lift Stay Motion") [Docket No. 1491] seeking to lift the automatic stay to allow him to finish his trial in the Delaware Court and liquidate his claims. The Debtor opposed the Lift Stay Motion, and after a hearing was held on December 17, 2020, the Court denied the relief requested in the Lift Stay Motion [Docket No. 1612];

5

WHEREAS, except with respect to the Reserved Claim (as defined below), the Parties have agreed to settle and resolve all claims and disputes between them and their respective current affiliates, managed entities, and employees, including the Daugherty Claim, on the terms set forth in this Settlement:

## AGREEMENT

**NOW, THEREFORE**, after good-faith, arms-length negotiations, and in consideration of the foregoing, it is hereby stipulated and agreed that:

1.　<u>Allowed Claims</u>:  In full satisfaction of the entirety of the Daugherty Claim against the Debtor and HCMLP Released Parties (defined below), excluding the Reserved Claim, Daugherty shall receive (a) an allowed general unsecured Class 8 claim in the amount of $8,250,000; (b) an allowed subordinated general unsecured Class 9 claim in the amount of $3,750,000; and (c) a one-time lump sum cash payment in the amount of $750,000 to be paid within 5 business days of Bankruptcy Court approval of this Settlement Agreement.

2.　<u>Recovery</u>:  The Debtor makes no representation or warranty as to the recovery on Class 8 or Class 9 claims under the Plan.

3.　<u>Observation Access</u>:  As soon as practicable following entry of an order of the Bankruptcy Court approving this Settlement, HCMLP shall use reasonable efforts to petition the Claimant Trust Oversight Board[3] to permit Daugherty to have access as an observer to meetings of the Claimant Trust Oversight Board, subject to policies, procedures, and agreements applicable to other observers of the Claimant Trust Oversight Board, including policies, procedures, and agreements related to confidentiality and common interest.  Whether Daugherty will be granted observer access and any continuing observer access is and will remain at the sole discretion of the

---

[3] The Claimant Trust Oversight Board refers to the Oversight Board as defined in the August 11, 2021 Highland Claimant Trust Agreement establishing the Claimant Trust, as defined therein.

Claimant Trust Oversight Board.

4.  RCP Track Record: HCMLP shall use reasonable efforts to provide Daugherty with data constituting the investment performance track record of RCP during Daugherty's tenure at HCMLP. Daugherty shall not be entitled to any compensation with respect to the performance of RCP. HCMLP makes no representations or warranties regarding such data and takes no responsibility with respect to the use of such data for any purposes.

5.  Daugherty Releases: Except as specifically provided in this paragraph 5, and to the maximum extent permitted by applicable law, the Debtor, on behalf of itself and each of the HCMLP Entities and HCMLP Parties (as those terms are defined in paragraph 6 below), hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, remises, and exonerates, and covenants never to sue Daugherty, his successors, affiliates, and assigns, (and in each such category to include their respective advisors, trustees, directors, officers, managers, members, partners, employees, beneficiaries, shareholders, agents, participants, subsidiaries, parents, affiliates, and designees) (collectively, the "Daugherty Additional Release Parties" and together with Daugherty, the "Daugherty Released Parties"), in each case acting in such capacity, for and from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, liens, losses, costs and expenses (including, without limitation, attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise, including, without limitation those which were or could have been asserted in the Bankruptcy, including the Adversary Proceeding, the Texas Action, or the Delaware Cases, all existing as of the date hereof (collectively, the "HCMLP Released Claims"); provided, however, that such release shall not

apply with respect to any and all defenses that HCMLP or the HCMLP Entities may have to the Reserved Claim or the Reserve Motion (as those terms are defined herein) or Daugherty's obligations under this Settlement. For the avoidance of doubt, the HCMLP Released Claims include all claims or causes of action and facts, known or unknown, that exist as of the date hereof but do not include or apply to claims or causes of action based on facts occurring after the date hereof.

6. <u>HCMLP Releases</u>: Except as specifically provided in this paragraph 6, and to the maximum extent permitted by law, Daugherty, on behalf of himself and each of the Daugherty Released Parties, hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, remises, and exonerates, and covenants never to sue, (a)(i) HCMLP; (ii) Strand Advisors Inc.; (iii) the Claimant Trust; (iv) the Claimant Trust Oversight Board; (v) the Highland Litigation Sub-Trust; (vi) the Highland Indemnity Trust; (vii) any entity of which greater than fifty percent of the voting ownership is held directly or indirectly by HCMLP as of the date hereof and any entity otherwise directly or indirectly controlled by HCMLP as of the date hereof,; and (viii) any entity managed by either HCMLP or a direct or indirect subsidiary of HCMLP, including Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Restoration Capital Master, L.P. (and all of their respective general partners, feeder funds, managers, and affiliates) (the foregoing (a)(i) through (a)(viii) the "<u>HCMLP Entities</u>"), and (b) with respect to each such HCMLP Entity, such HCMLP Entity's respective current (meaning employed in their respective roles as of the date hereof) advisors, trustees, directors, officers, managers, members, partners, employees, beneficiaries, shareholders (but not the shareholders of Strand Advisors Inc.), agents, participants, subsidiaries, parents, affiliates, successors, designees, and assigns, except as expressly set forth below (the "<u>HCMLP Parties</u>," and together with the

8

HCMLP Entities, the "HCMLP Released Parties"),[4] in each case acting in such capacity, for and

from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, liens,

losses, costs and expenses (including, without limitation, attorney's fees and related costs),

damages, injuries, suits, actions, and causes of action of whatever kind or nature, whether known

or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated,

contingent or fixed, at law or in equity, statutory or otherwise, including without limitation those

which were or could have been asserted in the Bankruptcy, including the Adversary Proceeding,

the Texas Action, the Daugherty Claim, or the Highland Delaware Case (collectively, the

"Daugherty Released Claims"); provided, however, that such release shall not apply with respect

to the Reserved Claim or the Reserve Motion (as those terms are defined in paragraph 9 below) or

HCMLP's obligations under this Settlement. This release expressly applies to all current

employees of HCMLP as the Reorganized Debtor (as defined in the Plan), in their capacities as

such. For the avoidance of doubt, the Daugherty Released Claims includes all claims or causes of

action and facts, known or unknown, that exist as of the date hereof but do not include or apply to

claims or causes of action based on facts occurring after the date hereof.

      7.     Reservation of Daugherty Rights: Notwithstanding anything contained herein to

the contrary, the term HCMLP Released Parties shall not include (a) NexPoint Advisors, L.P. (or

any of its subsidiaries and employees, advisors, or agents), (b) the Charitable Donor Advised Fund,

L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and any of their respective

employees, advisors, or agents), (c) NexBank, SSB (or any of its subsidiaries, employees, advisors,

or agents), (d) James Dondero or any trust in which Dondero or any of his family members are a

trustee or beneficiary (or any trustee acting for such trust), including but not limited to Hunter

---

[4] The Daugherty Additional Released Parties and the HCMLP Released Parties are collectively referred to as the
"Additional Released Parties."

Mountain Investment Trust, The Get Good Trust, Dugaboy Investment Trust, SLHC Investment

Trust, (e) HERA (subject to paragraph 8 below), (f) ERA (subject to paragraph 8 below), (g) Grant

Scott, (h) Mark Okada and any trust in which Mark Okada or any of his family members are a

beneficiary (or any trustee acting for such trust in their respective capacities), (i) Ellington, (j)

Leventon, (k) Katz, (l) Hurst, (m) Andrews Kurth, or (m) any other former employee (as of the

date hereof) of the HCMLP Released Parties.

     8.     <u>HERA and ERA</u>: The Parties acknowledge and agree that as of the date hereof,

HERA and ERA have no material assets other than potential claims that may exist against persons

or entities not released at or prior to the date hereof, and no claims against the HCMLP Released

Parties. The allowed claims provided in paragraph 1 hereof are expressly agreed to in order to

satisfy any liability the Debtor may have in connection with the HERA Judgment.  To facilitate

recovery of such potential claims – which expressly excludes any and all claims by or in the name

of HERA and ERA against any of the HCMLP Released Parties -- HCMLP will transfer its

interests in HERA and ERA to Daugherty. Such transfer will include the HERA and ERA books

and records (spreadsheet) maintained on HCMLP's system.  Such transfer will be without

representation or warranty of any type; including, for the avoidance of doubt, without any

representation or warranty as to the merits of the potential claims or the efficacy of the transfer of

the potential claims. Such transfer will be without any liability or material cost to HCMLP or its

affiliates or the other HCMLP Released Parties, including any liability in respect of any assets that

HERA or ERA ever actually or allegedly owned, possessed, or controlled and that were actually

or allegedly transferred, conveyed, sold, written off or otherwise disposed of (in any such case, a

"<u>Disposition</u>"). In connection with the transfer, HERA and ERA have expressly released the

HCMLP Released Parties from any and all claims, including any claims actions or remedies related

10

to any Disposition, either of them may have against any HCMLP Released Party now or in the

future (the "HERA and ERA Release"). Daugherty on behalf of himself and each of the Daugherty

Released Parties acknowledges, accepts, and agrees not to challenge the HERA and ERA Release

or support any challenge thereto. A copy of the HERA and ERA Release is annexed hereto as

**Exhibit A**. Daugherty acknowledges and agrees that even though HERA and ERA are not

HCMLP Released Parties under this Agreement, Daugherty and all Daugherty Released Parties

shall (a) not seek to hold any HCMLP Released Party liable for any action or inaction taken by or

on behalf of HERA or ERA, including through any derivative, veil-piercing or similar cause of

action or remedy; and (b) not seek to recover damages or obtain any form of relief against any

HCMLP Released Party on account of any action or inaction taken by or on behalf of HERA or

ERA, including through any veil piercing or similar cause of action or remedy. If, for any reason,

HERA or ERA, or any person or entity acting on their behalf, recovers anything from any HCMLP

Released Party, Daugherty shall promptly turnover to HCMLP or its successors and assigns any

amounts actually recovered by Daugherty or any Daugherty Released Party, from HERA or ERA

arising from, related to, or derived from any claim that HERA or ERA or any person or entity

acting on their behalf has or may have against any HCMLP Released Party. HCMLP will provide

reasonable assistance to Daugherty to assist with the preparation of any required HERA K-1s for

2021, but any requirement to provide such K-1s will be the obligation, if any, of HERA.

9.    IRS Compensation Claim: In section 4(ii) of the Addendum to Proof of Claim No.

205, Daugherty contends that he has a contingent, unliquidated claim against the Debtor arising

out of a 2008/2009 compensation letter (the "Reserved Claim"), which claim is also related to an

audit/dispute between the Debtor and the Internal Revenue Service (the "IRS") (the dispute

between the Debtor and IRS being referred to herein as the "IRS Audit Dispute"). The Debtor

disputes the validity and amount of the Reserved Claim. Daugherty shall retain the Reserved

Claim solely against the Debtor and not against any other HCMLP Released Party, and the Debtor

reserves the right to assert any and all defenses thereto. Any litigation by and between the Debtor

and Daugherty concerning the validity and amount of the Reserved Claim shall be stayed until the

IRS makes a final determination with respect to the IRS Audit Dispute; provided, however, that

Daugherty may file a motion with the Bankruptcy Court to have the Reserved Claim estimated for

purposes of establishing a reserve as a "Disputed Claim" under the Debtor's Plan (the "Reserve

Motion"), and the Debtor (and any successor) reserves the right to assert any and all defenses

thereto. Notwithstanding the foregoing, Daugherty may address any personal claim or personal

liability to the IRS as a result of the IRS Audit Dispute, including settlement of any such claims;

provided, however, Daugherty agrees to forego settling or addressing any claims with the IRS

without the written consent of the Debtor until March 31, 2022.

      10.    Current HCMLP Employees: The HCMLP Parties set forth on **Appendix A** hereto

are currently employed by the Debtor are HCMLP Released Parties. By executing a copy of this

Settlement and delivering it to Daugherty, each of the persons on Appendix A agrees not to sue,

attempt to sue, or threaten or work with or assist  any entity or person to sue, attempt to sue, or

threaten any Daugherty Released Party on or in connection with any claim or cause of action

arising prior to the date of this Settlement.

      11.    Dismissal and Motions in Other Actions. Within ten business days after approval

of this Settlement by the Bankruptcy Court, the Parties shall take all steps necessary (a) to dismiss

with prejudice (i) the Highland Delaware Case, as against the Debtor and any HCMLP Released

Party, and (ii) the HERA Delaware Case, as against every HCMLP Released Party, (b) to file an

agreed motion and proposed order to partially vacate the final judgment entered against Daugherty

in the Texas Action, (c) withdraw HCMLP's objection to the Daugherty motion to recuse in the

Texas Action, and (d) to dismiss the Adversary Proceeding with prejudice. The parties shall file

the foregoing motions and withdrawals substantially in the form of the documents annexed hereto

as **Exhibit B**.

12.    Additional Third Party Claims Discovery:  The Debtor (a) shall accept service of

any subpoenas via email served by Daugherty in connection with the Delaware Cases on behalf of

itself, the HCMLP Entities, the HCMLP Parties (but only in their capacity as employees of

HCMLP); and (b) acknowledge and consent to the jurisdiction of the Delaware Chancery Court

for purposes of enforcing any such subpoenas, subject in all respects to the rights that the HCMLP

Entities and HCMLP Parties to defend the requested production, if any.

13.    Settlement of Third Party Claims:  Daugherty shall not settle any claims or causes

of action against any current or former director, officer, employee, agent or representative of

HCMLP or Strand Advisors Inc. (collectively, the "Potentially Indemnified Parties") to the extent

such claims have been brought or could have been brought against any Potentially Indemnified

Parties, if any such settlement designates, defines or describes the settled claims as arising out of

or relating to simple negligence or as having otherwise been within the scope of employment of

the Potentially Indemnified Party.

14.    Claims Register:  As soon as practicable after the Settlement Effective Date,

HCMLP shall instruct the claims agent in the Debtor's chapter 11 case to adjust the claims register

in accordance with this Settlement.

15.    Daugherty Representations:  Daugherty represents and warrants to each of the

HCMLP Released Parties that (a) he has full authority to release the Daugherty Released Claims

and has not sold, transferred, or assigned any Daugherty Released Claim to any other person or

entity and that (b) no person or entity other than Daugherty has been, is, or will be authorized to bring, pursue, or enforce any Daugherty Released Claim on behalf of, for the benefit of, or in the name of (whether directly or derivatively) Daugherty.

16.    HCMLP Representations: Each of HCMLP and each HCMLP Released Party who has signed this Settlement represents and warrants to Daugherty that (a) he, she or it has not sold, transferred, pledged, assigned or hypothecated any HCMLP Released Claim to any other person or entity and (b) he, she, or it has full authority to release any HCMLP Released Claims that such HCMLP Released Party personally has against Daugherty.

17.    Additional HCMLP Representations: HCMLP represents and warrants that it is releasing the HCMLP Released Claims on behalf of the HCMLP Entities to the maximum extent permitted by any contractual or other legal rights HCMLP possesses. To the extent any of the HCMLP Entities dispute HCMLP's right to release the HCMLP Released Claims on behalf of any of the HCMLP Entities, HCMLP shall use commercially reasonable efforts to support Daugherty's position, if any, that such claims were released herein. For the avoidance of doubt, HCMLP will have no obligations to assist Daugherty under this paragraph if HCMLP has been advised by external counsel that such assistance could subject HCMLP to liability to any third party or if such assistance would require HCMLP to expend material amounts of time or money. HCMLP shall not argue in any forum that the non-signatory status of any of the HCMLP Entities to this Settlement shall in any way affect the enforceability of this Settlement vis-à-vis any of the HCMLP Entities. The Parties agree that all of the HCMLP Entities are intended third-party beneficiaries of this Release.

18.    HCMLP Covenant: HCMLP and the HCMLP Entities covenant and agree that they will not pursue or seek to enforce any injunctions entered in the Texas Action against

14

Daugherty.

19.    <u>Entire Agreement; Modification</u>: This Settlement contains the entire agreement
between the Parties as to its subject matter and supersedes and replaces any and all prior
agreements and undertakings between the Parties. This Settlement may not be modified other than
by a signed writing executed by the Parties.

20.    <u>Bankruptcy Court Approval</u>: Notwithstanding anything to the contrary contained
herein, the effectiveness of HCMLP and the Claimant Trust's execution of this Settlement shall be
subject to entry of an order of the Bankruptcy Court approving this Settlement. HCMLP shall take
all steps necessary to file with the Bankruptcy Court a motion for an order approving this
Settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 and section 363 of the
Bankruptcy Code (the "<u>Motion</u>"). The parties agree to cooperate in the preparation and
prosecution of the Motion which shall be filed no later than 5 business day after execution of this
Settlement, unless such time is extended by mutual agreement.

21.    <u>Counterparts</u>: This Settlement may be executed in counterparts (including
facsimile and electronic transmission counterparts), each of which will be deemed an original but
all of which together constitute one and the same instrument and shall be effective against a Party
or Additional Released Party upon approval of the Settlement by the Bankruptcy Court.

22.    <u>Governing Law; Jurisdiction</u>: This Settlement will be exclusively governed by and
construed and enforced in accordance with the laws of the State of Delaware, without regard to its
conflicts of law principles, and all claims relating to or arising out of this Settlement, or the breach
thereof, whether sounding in contract, tort, or otherwise, will likewise be governed by the laws of
the State of Delaware, excluding Delaware's conflicts of law principles. The Bankruptcy Court
will retain exclusive jurisdiction over all disputes relating to this Settlement.

23.    <u>Headings</u>:  Paragraph headings included herein are for convenience and shall have

no impact whatsoever on the meaning or interpretation of any part of this Settlement.

[Remainder of page intentionally left blank]

In witness whereof, the parties hereto, intending to be legally bound, have executed this

Settlement as of the day and year set forth below:

Dated:  *11-21-21*

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name:  James P. Seery, Jr.
Title:   Chief Executive Officer

HIGHLAND CLAIMANT TRUST

By:_____
Name:  James P. Seery, Jr.
Title:  Claimant Trustee

PATRICK HAGAMAN DAUGHERTY

Dated: *11/22/21*

By: _____
Name:  Patrick Hagaman Daugherty

## EXHIBIT A

HERA RELEASE AGREEMENT

This HERA Release Agreement ("HERA Release Agreement") is entered into as of
November 21, 2021 by and among Highland Capital Management, L.P., as reorganized debtor
("HCMLP" or the "Debtor"), Patrick Hagaman Daugherty ("Daugherty"), Highland Employee
Retention Assets, LLC ("HERA") and Highland ERA Management, LLC ("ERA" and together with
HCMLP, and HERA, the "Parties," and individually as a "Party").

WHEREAS, reference is hereby made to the Settlement Agreement (the "Settlement") of
even date herewith and attached hereto made and entered into by and between the Debtor, the
Highland Claimant Trust, and Daugherty.

WHEREAS, the Settlement settles all of Daugherty's claims against the HCMLP Released
Parties, including all claims against the HCMLP Released Parties relating to transfers of assets from
HERA.

WHEREAS, the Settlement includes, among other things, the transfer by HCMLP to
Daugherty of HCMLP's interests in HERA and ERA.

WHEREAS, under the Settlement such transfer is being made without any liability to any
of the HCMLP Released Parties of any type and is conditional on the full release of, and covenant
not to sue, each of the HCMLP Released Parties, by and from HERA, ERA, Daugherty and the
Daugherty Released Parties.

WHEREAS, neither HERA nor ERA filed proofs of claim in the Bankrupty and have no
claims against HCMLP.

WHEREAS, out of an abundance of caution to confirm that HERA, ERA, Daugherty, and
the Daugherty Released Parties have no claims against the HCMLP Released Parties, this HERA
Release Agreement is being entered into contemporaneously with the Settlement and constitutes an

essential part thereof.

WHEREAS, capitalized terms used herein but not otherwise defined herein have the respective meanings set forth in the Settlement.

NOW, THEREFORE, in consideration of the entry into of the Settlement, the transfer of the equity interests in HERA and ERA to Daugherty in accordance with the Settlement, and for other good and valuable consideration, including the provisions set forth herein, the parties hereto further agree as follows:

1.    Upon entry of an order of the Bankruptcy Court approving this Settlement and to the maximum extent permitted by law, Daugherty, on behalf of himself and each of the Daugherty Additional Release Parties, together with each of HERA and ERA (Daugherty, the Daugherty Additional Release Parties, HERA and ERA shall be collectively referred to herein as the "HERA Releasing Parties"), each hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, remises, and exonerates, and covenants never to sue, any of the HCMLP Released Parties for and from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, liens, losses, costs and expenses (including, without limitation, attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise, including without limitation those which were or could have been asserted in the Bankruptcy, including the Adversary Proceeding, the Texas Action, the Daugherty Claim, Highland Delaware Case, or the HERA Delaware Case (collectively, "Claims"), in each case that in any way arise from or otherwise in any way relate to HERA or ERA, including, without limitation, any actual or potential claims, whether known or unknown, in any way related to or

arising out of the formation, management, operation or assets of HERA, ERA or any of their

respective predecessors or successors, including the transfer of any assets to or from HERA or

ERA, it being understood that all remaining assets of HERA have been transferred to HCMLP

prior to the date hereof, and in addition to the releases set forth above, each of the HERA

Releasing Parties irrevocably waives and releases and covenants not to sue with respect to any

Claims against any of the HCMLP Released Parties in any way related to any such transfers or

assets, whether *in personam* with respect to the HCMLP Released Parties or *in rem* with respect

to any of their assets (collectively, the "HERA Released Claims") or any other Disposition.

    2.    This Release constitutes a part of, and is supplemental to, the provisions of the

Settlement.

    [THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

In witness whereof, the parties hereto, intending to be legally bound, have executed this

HERA Release Agreement as of the date set forth above.

HIGHLAND CAPITAL MANAGEMENT, L.P.

By:
Name:  James P. Seery, Jr.
Title:   Chief Executive Officer

PATRICK HAGAMAN DAUGHERTY

By:
Name:  Patrick Hagaman Daugherty

HIGHLAND EMPLOYEE RETENTION ASSETS, LLC

By: Highland ERA Management, LLC, its manager

By: Highland Capital Management. LP

By:
Name:  James P. Seery, Jr.
Title:   Chief Executive Officer

HIGHLAND ERA MANAGEMENT, LLC

By:
Name:  James P. Seery, Jr.
Title:  Authorized Signatory

## EXHIBIT B

**CAUSE NO. 12-04005**



| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| v. | § § | |
| PATRICK DAUGHERTY, | § § | |
| Defendant and Counter-Plaintiff, | § § | DALLAS COUNTY, TEXAS |
| v. | § § | |
| SIERRA VERDE, LLC, HIGHLAND EMPLOYEE RETENTION ASSETS LLC, JAMES DONDERO, PATRICK BOYCE, AND WILLIAM L. BRITAIN, | § § § § § | |
| Third-Party Defendants. | § § § | 68th JUDICIAL DISTRICT |

## AGREED MOTION TO PARTIALLY VACATE THE FINAL JUDGMENT DATED JULY 14, 2014

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Highland Capital Management, LP ("Highland") and Defendant Patrick Daugherty ("Daugherty" and together with Highland, the "Parties") file this *Agreed Motion to Partially Vacate the Final Judgment dated July 14, 2014* (the "Motion"), and respectfully show the following:

1.    On July 14, 2014, this Court entered a *Final Judgment* (the "Judgment") that, among other things, granted Highland's motion for injunctive relief against Daugherty.

2.    The Judgment was amended on March 23, and June 23, 2017.

3.    On October 16, 2019, filed a petition under chapter 11 in the United States Bankruptcy Court for the District of Delaware ("Highland's Bankruptcy Case"). On October 24,

2019, as a result of the commencement of Highland's Bankruptcy Case, the Supreme Court of

Texas issued an order abating a related case that Daugherty had brought in that court, Case No.

19-0758. Highland's Bankruptcy Case was subsequently transferred to the United States

Bankruptcy Court for the Northern District of Texas.

4.    Daugherty asserted certain claims against Highland in Highland's Bankruptcy

Case. The Parties have fully and finally resolved their disputes pursuant to a settlement agreement

(the "Settlement Agreement") reached in the Highland Bankruptcy Case pursuant to which, among

other things, (a) all of Daugherty's known and unknown claims against each of the Highland

Released Parties (as those terms are defined in the Settlement Agreement) are resolved, and (b)

this Motion seeking the *vacatur* of certain provisions of the Judgment specifically set forth below

is being filed.

5.    Highland and Daugherty hereby agree and stipulate that the Court has plenary

power to issue an order granting this Motion because the Court retained authority to enforce the

permanent injunction rendered in the Judgment, and that changed circumstances have now arisen

such that the Court should dissolve the permanent injunction. Highland and Daugherty further

agree and stipulate that this Motion shall be treated as an agreement of the Parties pursuant to

Texas Rule of Civil Procedure 11, and is fully enforceable. *See Coale v. Scott*, 331 S.W.3d 829,

831-32 (Tex. App.—Amarillo 2011, no pet.) ("Irrespective of whether a trial court lost its plenary

jurisdiction over its judgment, the trial court's authority to approve a Rule 11 agreement does not

depend on whether it has such jurisdiction.").

6.    Highland and Daugherty agree that the following portions of the Judgment shall be

vacated pursuant to their settlement in the Highland Bankruptcy:

    a.   The second full paragraph on Page 2 of the Judgment, which begins "The Court, after considering the jury's findings regarding Daugherty's breaches of contract and breaches of fiduciary duty . . .";

    b.   The permanent injunction rendered against Daugherty in the third full paragraph on Page 2 of the Judgment, which begins "It is therefore further ORDERED that Daugherty be and hereby is commanded to cease and desist from . . .";

    c.   The fourth and fifth full paragraphs on Page 2 of the Judgment awarding Highland a monetary judgment against Daugherty for reasonable and necessary attorney's fees, as well as post-judgment interest on that award[1]; and

    d.   The jury's answers to Questions 1, 2, 5, 6, 9 and 12 in the Verdict, which was attached as Exhibit 1 to the Judgment.

7.    Highland and Daugherty further agree that, as a result of the vacation of the permanent injunction in the Judgment, Highland hereby withdraws any pending motions to show cause or motions for contempt against Daugherty that allege Daugherty violated or is violating the permanent injunction. Highland also agrees not to seek to enforce the permanent injunction in any manner in the future.

---

[1] Daugherty previously satisfied the monetary judgment awarded to Highland, and Highland filed a release of the monetary judgment. Although Highland and Daugherty have agreed to vacate the monetary judgment awarded to Highland, Daugherty waives and relinquishes any right or claim to recover any amount previously paid in satisfaction of the Judgment and Highland shall not be required to reimburse Daugherty for his prior satisfaction of the monetary judgment. To the extent Daugherty is entitled to indemnification for any liabilities, losses, and damages allegedly incurred by him for actions taken in connection with Highland's business, including the liabilities Daugherty allegedly incurred in connection with this action and the Judgment, such indemnification claims have been fully and finally satisfied and resolved under the Settlement Agreement.

**AGREED MOTION TO PARTIALLY VACATE FINAL JUDGMENT - PAGE 3 OF 5**
4851-6473-6986.4

8.    Concurrent with the filing of this Motion, Daugherty will file a motion to dismiss his as-yet unfiled petition for review pending before the Supreme Court of Texas under Case No. 19-0758.

9.    Highland and Daugherty further agree that any portions of the Judgment that are not specifically vacated pursuant to this Motion shall remain in full force and effect.

WHEREFORE, Highland and Daugherty pray that the Court grant this Motion in its entirety, and for all further relief, at law or in equity, the Court deems necessary.

Respectfully submitted,

GRAY REED & McGRAW LLP

By:    /s/ Sonya D. Reddy
      ANDREW K. YORK
      State Bar No. 24051554
      E-mail: dyork@grayreed.com
      SONYA D. REDDY
      State Bar No. 24079188
      E-mail: sreddy@grayreed.com

1601 Elm Street, Suite 4600
Dallas, Texas 75201
(214) 954-4135
(214) 953-1332 (Fax)

**ATTORNEYS FOR PATRICK DAUGHERTY**

**<u>CERTIFICATE OF SERVICE</u>**

    I hereby certify that a true and correct copy of the foregoing document has been transmitted by electronic transmission to all counsel of record on February ___, 2021, as follows:

| | |
|---|---|
| Marc D. Katz | Michael K. Hurst |
| Crystal J. Woods | A. Shonn Brown |
| DLA PIPER LLP (US) | Jonathan Childers |
| 1717 Main St., Suite 3700 | LYNN PINKER COX HURST, LLP |
| Dallas, Texas 75201 | 2100 Ross Ave., Suite 2700 |
| 214-743-4545 (Fax) | Dallas, Texas 75201 |
| marc.katz@dlapiper.com | (214) 981-3839 (Fax) |
| crystal.woods@dlapiper.com | mhurst@lynnllp.com |
| | sbrown@ lynnllp.com |
| Attorneys for Highland Capital | jchilders@ lynnllp.com |
| Management, L.P. | |
| | Attorneys for Third-Party Defendants HERA, |
| | Patrick Boyce, and William Britain |

        /s/ Sonya D. Reddy
        SONYA D. REDDY

**APPENDIX A** (signatures to follow)

1. James P. Seery, Jr.
2. Cameron Baynard
3. Nathan Burns
4. Timothy Cournoyer
5. Naomi Chisum
6. Stetson Clark
7. Sean Fox
8. Matthew Gray
9. Kristin Hendrix
10. David Klos
11. Vishal Patel
12. Thomas Surgent
13. Michael Throckmorton

18

**EXHIBIT 2**

HIGHLAND CAPITAL
M A N A G E M E N T

February 3, 2018

**By Mail and Electronic Mail**

Patrick Daugherty
3621 Cornell Ave
Dallas, TX 75205
phdaugherty@gmail.com

Re:    **Field Examiners' Proposed Tax Adjustments – 2008 Tax Year**
       **Highland Capital Management, L.P.**

Dear Patrick,

As previously advised, a team of IRS field examiners ("Exam") conducted an audit of the 2008 partnership tax return filed on behalf of Highland Capital Management, L.P. ("Highland"). Exam concluded their audit and have proposed an adjustment to the 2008 return.

We have enclosed with this letter the following items: (a) IRS Form 886-Z except -A, and (b) IRS Form 870-PT. *At this time, no action on your part is required with respect to these documents unless you wish to agree to Exam's proposed adjustments – which we do not recommend.*

Exam has scheduled a closing conference on March 2, 2018. You do not need to attend the closing conference. Please let us know by the close of business on February 15, 2018 if you wish to attend. Highland will handle the closing conference (unless waived) and appeal the proposed adjustment to the IRS Appeals Office after the conference.

Please contact me at 972-419-4438 if you have any questions.

Regards,

Brian Collins
Director of Human Resources
Highland Capital Management, L.P.

Enclosures

**EXHIBIT 3**

| Form **886-Z** (June 2016) | Department of the Treasury - Internal Revenue Service **TEFRA Partners' Shares of Income** | Schedule Number 1065 |
|---|---|---|

| Name of Partnership | TIN of Partnership | Taxable Year Ended |
|---|---|---|
| Highland Capital Management | 75-2716725 | 12/31/2008 |

| Name and Address of Each Partner (1) | TIN of Partner (2) | Percentage of Profit (3) | Portfolio income (loss) net short-term gain (loss) (4) | (5) |
|---|---|---|---|---|
| | | | | |

Continuation

| TIN of Partner (6) | (7) | (8) | (9) | (10) | (11) |
|---|---|---|---|---|---|
| | | | | | |
| Totals | | | | | |

This form only reflects Schedule K-1 items adjusted by the report dated: _____

| Form **886-Z**<br>(June 2016) | Department of the Treasury - Internal Revenue Service<br>**TEFRA Partners' Shares of Income** | Schedule Number<br>1065 |
|---|---|---|

| Name of Partnership<br>Highland Capital Management | TIN of Partnership<br>75-2716725 | Taxable Year Ended<br>12/31/2008 |
|---|---|---|

| Name and Address of<br>Each Partner<br>(1) | TIN of Partner<br>(2) | Percentage<br>of Profit<br>(3) | Portfolio income<br>(loss) net short-term<br>gain (loss)<br>(4) | (5) |
|---|---|---|---|---|
| | | | | |
| Daugherty, Patrick<br>3621 Cornell Ave.<br>Dallas, TX 75205 | 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 | 0.74030000% | 1,257,792.00 | |
| | | | | |

Continuation

| Totals | | | | |
|---|---|---|---|---|

This form only reflects Schedule K-1 items adjusted by the report dated: _____

Catalog Number 61113Q<br>RGS Version 18.20.00          www.irs.gov          Form **886-Z** (Rev. 6-2016)

| Form **886-Z** (June 2016) | Department of the Treasury - Internal Revenue Service **TEFRA Partners' Shares of Income** | Schedule Number 1065 |
|---|---|---|

| Name of Partnership | TIN of Partnership | Taxable Year Ended |
|---|---|---|
| Highland Capital Management | 75-2716725 | 12/31/2008 |

| Name and Address of Each Partner (1) | TIN of Partner (2) | Percentage of Profit (3) | Portfolio income (loss) net short-term gain (loss) (4) | (5) |
|---|---|---|---|---|
| | | | | |

Continuation

| Totals | | | | |
|---|---|---|---|---|

This form only reflects Schedule K-1 items adjusted by the report dated: _____

Catalog Number 61113Q
RGS Version 18.20.00

www.irs.gov

Form **886-Z** (Rev. 6-2016)

| Form **886-Z** | Department of the Treasury - Internal Revenue Service | Schedule Number |
|---|---|---|
| (June 2016) | **TEFRA Partners' Shares of Income** | 1065 |

| Name of Partnership | TIN of Partnership | Taxable Year Ended |
|---|---|---|
| Highland Capital Management | 75-2716725 | 12/31/2008 |

| Name and Address of Each Partner (1) | TIN of Partner (2) | Percentage of Profit (3) | Portfolio income (loss) net short-term gain (loss) (4) | (5) |
|---|---|---|---|---|



| | Totals | 100.0000000000% | 169,902,949.00 | |
|---|---|---|---|---|

**Continuation**

This form only reflects Schedule K-1 items adjusted by the report dated: _____

Catalog Number 61113Q
RGS Version 18.20.00

www.irs.gov

Form **886-Z** (Rev. 6-2016)

# EXHIBIT 4

| Form **870-PT** (Rev. 4-2012) For partnership taxable years ending after August 5, 1997 | Department of the Treasury — Internal Revenue Service **Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts** | IN REPLY REFER TO: |
|---|---|---|
| Taxpayer(s) name(s), address and zip code: | Name of Partnership: | Tax Year(s) Ended: |
| Daugherty, Patrick 3621 Cornell Ave. Dallas, TX 75205 | Highland Capital Management | 12/31/2008 |
| | EIN: 75-2716725 | |
| | Name of Tax Matters Partner: Strand Advisors, Inc. | |
| TIN: 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 | | |

### Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under the provisions of sections 6224(c) and 7121 of the Internal Revenue Code (IRC), the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached Schedule of Adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive(s) the restrictions provided by IRC sections 6225(a) and 6213(a) and consent(s) to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as set forth in the attached Schedule of Adjustments (plus any interest provided by law). IRC Section 6651 late filing penalty applies to any late filed (or non-filed) returns that are required to report the partnership item adjustments.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

Once the taxpayer signs such a waiver and it is countersigned by the Commissioner, the taxpayer cannot file an Administrative Adjustment Request (AAR) on any partnership items for the related TEFRA entity. This includes partnership items not specifically addressed on the attached Schedule of Adjustments.

| Signature of Taxpayer | | Date Signed | Phone Number |
|---|---|---|---|
| Signature of Taxpayer | | Date Signed | Phone Number |
| By (Signature and Title) | | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature | |
|---|---|---|---|
| | Office | Title | |

## INSTRUCTIONS FOR SIGNING FORM 870-PT

1. Sign the agreement if you wish to agree to the partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts, as shown on the attached Schedule of Adjustments. The execution and filing of this offer will expedite the adjustment of tax liability.

2. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

3. If the taxpayer is a corporation, the agreement should be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

4. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

5. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust. If the trustee is signing this agreement on behalf of the trust and all beneficiaries, on Form 56 must be signed by the trustee. If an individual beneficiary is signing the agreement to bind themselves to the agreement, no Form 56 is needed.

6. If the partner is an LLC, the agreement should be signed by the manager of the LLC or other authority as authorized by State law. The signature line should show: [Name of LLC], by [Name of Manager], Followed by the title [Manager].

7. For a partner who is a subsidiary corporation in a consolidated group:

   • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, the agreement should be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a).

   • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement and should do so in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(6)(iii). The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block. The agreement should also be signed

by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

8. For a partner who is the common parent corporation of a consolidated group, a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year(s) should sign the agreement in the name of the common parent corporation. See Treas. Reg. § 1.1502-77(a).

9. If the Tax Matters Partner signs this offer, please include the title with the signature.

10. If the Tax Matters Partner is a subsidiary corporation in a consolidated group:

    • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, then a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year should sign the agreement on behalf of the Tax Matters Partner. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a). An authorized officer for the subsidiary corporation should also sign if it, as the Tax Matters Partner, is binding non-notice partners under the agreement. The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block

    • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(3)(v). The agreement should also be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

NOTE: The submission of this offer by you and the acceptance of the offer for the Commissioner may result in an additional tax liability to you plus interest as provided by law. If the result is a decrease in tax, the amount of the decrease will be sent to you with interest as provided by law.

Department of the Treasury — Internal Revenue Service

## Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts

SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Highland Capital Management | | | |
| | 12/31/2008 | | |
| EIN:   75-2716725 | | | |
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME: | | | |
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | | | |
| OTHER ADJUSTMENTS | | | |
| A.  Portfolio income (loss) net short-term gain (loss) | | | |
| (1) ADJUSTMENT | -166,332,713.00 | | |
| (2) AS REPORTED | 3,570,236.00 | | |
| (3) CORRECTED | 169,902,949.00 | | |
| | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |

REMARKS: