Jason S. Brookner (Texas Bar No. 24033684)
Andrew K. York (Texas Bar No. 24051554)
Joshua D. Smeltzer (Texas Bar No. 24113859)
Drake M. Rayshell (Texas Bar No. 24118507)
GRAY REED
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile:  (214) 953-1332
Email:     jbrookner@grayreed.com
           dyork@grayreed.com
           jsmeltzer@grayreed.com
           drayshell@grayreed.com

*Counsel to Patrick Daugherty*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: <br><br> HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] <br><br> Reorganized Debtor. | § § § § § § § | Chapter 11 <br><br> Case No. 19-34054 (SGJ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P., <br><br> Plaintiff, <br><br> v. <br><br> PATRICK HAGAMAN DAUGHERTY, <br><br> Defendant. | § § § § § § § § § § § § § § | Adversary No. 25-03055 |

**PATRICK DAUGHERTY'S MOTION FOR STAY PENDING APPEAL**

---

[1]   Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

4898-0118-2828

Defendant Patrick Daugherty files this Motion for Stay Pending Appeal pursuant to Bankruptcy Rule 8007(a)(1)(A) and moves the Court for entry of an order staying its September 4, 2025 Order [Doc. No. 23] and the above-captioned adversary proceeding and would show the Court as follows:

## PRELIMINARY STATEMENT

1. On November 22, 2021, Daugherty and Plaintiff Highland Capital Management, L.P. signed a Settlement Agreement wherein Highland agreed it would not pursue litigation against Daugherty until *after* the IRS concludes its audit of Highland's tax returns. Also in that Settlement Agreement, Daugherty agreed to reduce some of his claims against Highland, its employees, and its representatives. This Court then approved the Settlement Agreement on March 8, 2022. Daugherty relied on the Court-approved Settlement Agreement for clarity and peace of mind and to manage his involvement in Highland's bankruptcy proceedings. The Settlement Agreement also gave both Daugherty and Highland a definitive triggering event (the "final determination" made by the IRS) for future litigation. The Settlement Agreement remained in effect for three years, until this Court granted Highland's request to rewrite the Settlement Agreement and remove its stay provision without providing any substitute consideration to Daugherty. Respectfully, there was no justification for the Court to second-guess the parties' bargained-for Settlement Agreement and modify it without Daugherty's approval.

2. While Daugherty understands (and shares) the Court's desire to conclude the "Highland litigation," that desire cannot outweigh the fact that Daugherty negotiated a binding give-and-take Settlement Agreement that he has relied upon in all his dealings since this Court approved it in 2022. Daugherty is entitled to the protections of the Settlement Agreement that he

negotiated and obtained, specifically, the requirement that Highland not litigate against him until "the IRS makes a final determination with respect to the IRS Audit Dispute."

3. Relevant to this Motion, the Court should stay (1) the above-captioned adversary proceeding and (2) the enforcement of its September 4, 2025 Order, because Daugherty has satisfied all necessary elements of his requested relief. As detailed below, Daugherty has a substantial likelihood of success on the merits by seeking to enforce the binding Settlement Agreement as written. Moreover, a stay of the adversary and the September 4, 2025 Order would not harm other constituents and would only serve to prevent irreparable harm that might befall Daugherty if litigation continues. Lastly, staying the adversary and the September 4, 2025 Order would serve the public interest because it would give litigants confidence that their negotiated and bargained-for settlement agreements will be enforced by the judiciary.

4. Daugherty respectfully requests that the Court grant a stay of this adversary proceeding and the enforcement of the Court's September 4, 2025 Order so that the status quo can remain while the parties litigate the issues on appeal.

## FACTUAL BACKGROUND

5. Daugherty and Highland executed a Settlement Agreement on November 22, 2021, that served to provide clarity for both parties as the main bankruptcy case proceeded towards confirmation. Main Case Docket No. 3088, 3089.[2] The Court approved the Settlement Agreement on March 8, 2022. *Id*.

6. The Settlement Agreement provided Daugherty with, among other things, a Reserved Claim related to the IRS's audit of Highland and its 2008 tax return. Ex. A at ¶ 9. Relevant here, the Settlement Agreement mandates that, "[a]ny litigation by and between

---

[2] All capitalized terms used but not defined in this motion shall have the same definitions as they have in the Settlement Agreement at Main Case Doc. No. 3089. The Settlement Agreement is also attached as Exhibit A.

-3-

4898-0118-2828

[Highland] and Daugherty concerning the validity and amount of the Reserved Claim **shall be stayed** until the IRS makes a final determination with respect to the IRS Audit Dispute." *Id*. (emphasis added). The language is mandatory, and both parties relied on that language over the past three and a half years.

7. Despite this language, Highland filed this adversary proceeding against Daugherty seeking to disallow, estimate, and/or subordinate his claim. Doc. No. 1 at ¶¶ 28-45. Highland seeks a determination from the Court on the "validity and amount" of Daugherty's reserved claim—the exact type of relief that Highland agreed not to seek until the IRS makes its "final determination." Tellingly, Highland admits that the IRS audit is not concluded:

> is clawed back by the IRS—Highland's 2008 tax return is currently subject to an IRS audit. But the 2009 Statement contains no future, ongoing obligations. Under the 2009 Statement, if Mr. Daugherty received the material equivalent of the "2008 Refund" (which he apparently did), Highland's obligations have been satisfied in full. The 2009 Statement contains no ongoing obligation for Highland to defend Mr. Daugherty or indemnify him. And it would violate basic

> 4. However, even if Mr. Daugherty's Claim is not disallowed in its entirely, it remains contingent on the outcome of the 2008 Audit. It is unclear when, how, or if the 2008 Audit will be finally resolved. Moreover, if the Claim is not disallowed, it will need to be estimated—after taking into account the likely outcome of the 2008 Audit, including adjustments that result therefrom—pursuant to 11 U.S.C. § 502(c). The Claim (in whatever amount) based on

> 35. As set forth above, Mr. Daugherty has no Claim; however, to the extent the Court believes he has one, it is unliquidated and contingent on the final outcome of the 2008 Audit, including the magnitude of any adjustments. If the 2008 Audit is successfully defended, Mr. Daugherty will have no claim.

*See* Doc. No. 1 at ¶¶ 3, 4, 35.

8. Under the Settlement Agreement's plain language, Highland's claims against Daugherty are unquestionably premature. It must wait to litigate claims against Daugherty that may or may not exist (depending on the result of the IRS audit). In fact, that result is exactly what the parties bargained for and agreed upon – Daugherty, in part, reduced his claims against Highland in exchange for Highland's promise to wait to litigate the Reserved Claim until the conclusion of the IRS Audit Dispute.

9. On June 4, 2025, Daugherty moved to dismiss this adversary proceeding under Federal Rule of Civil Procedure 12(b)(6). Doc. No. 5. In addition to responding to Daugherty's motion, Highland filed its Cross-Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024, in which it requested that this Court strike the stay provision in the Settlement Agreement. Doc. No. 9. After an oral hearing on September 4, 2025, the Court denied Daugherty's Motion to Dismiss in its entirety and granted Highland's Cross-Motion. *See* Doc. No. 23. Daugherty filed his notice of appeal of the portion of the Court's order granting the Cross-Motion on September 19, 2025. Doc. No. 25.

## LEGAL STANDARD

10. Bankruptcy Rule 8007 authorizes a party to seek a "stay of the bankruptcy court's judgment, order, or decree of the bankruptcy court pending appeal." Fed. R. Bankr. P. 8007(a)(1)(A). It also authorizes a party to seek "an order suspending or continuing proceedings

. . . ." Fed. R. Bankr. P. 8007(a)(1)(D).[3] "The motion may be filed either before or after the notice of appeal is filed." Fed. R. Bank. P. 8007(a)(2). When ruling on motions to stay, courts consider the following factors: (1) whether the movant is likely to prevail on the merits; (2) whether the movant will suffer an irreparable injury absent a stay; (3) whether granting the stay would substantially harm other parties; and (4) whether granting the stay would serve the public interest. *In re Heritage Org., L.L.C.*, 375 B.R. 230, 315 (N.D. Tex. 2007) (quoting *Arnold v. Garlock, Inc.*, 278 F.3d 426, 438-39 (5th Cir. 2001)).

11.  The Fifth Circuit, however, "has refused to apply these factors in a rigid mechanical fashion." *Reading & Bates Petroleum Co. v. Musslewhite*, 14 F.3d 271, 272 (5th Cir. 1994). Accordingly, several courts within the Fifth Circuit have determined that the "absence of any one factor is not fatal to a successful motion for stay." *In re Permian Producers Drilling, Inc.*, 263 B.R. 510, 515 (W.D. Tex. 2000) (citing *In re First S. Savs. Ass'n*, 820 F.2d 700, 709 n. 10 (5th Cir. 1987)). Here, Daugherty can satisfy the Fifth Circuit's promulgated standard and asks that the Court grant this Motion.

## ARGUMENT AND AUTHORITIES

**I.  Daugherty will likely prevail on appeal because the Settlement Agreement is a binding contract that this Court should not have modified under Rule 60(b)(6).**

12.  Because the Settlement Agreement created a binding, contractual relationship between Daugherty and Highland, Daugherty will likely prevail on appeal since he seeks merely

---

[3] *See In re Nu Ride, Inc.*, 666 B.R. 510, 513 (Bankr. D. Del. Dec. 13, 2024) (staying the adversary proceeding pending the appeal of the ruling on a 12(b)(6) motion). Although the bankruptcy court in *In re Nu Ride* issued a narrow holding in light of the United States Supreme Court's decision in *Coinbase*, the rationale is applicable to the present case. *Coinbase* dealt with the stay of a proceeding when the issue on appeal was whether an arbitration provision should be enforced. The Supreme Court stated that because the "entire case is essentially 'involved in the appeal,'" the stay should be granted so as not to entirely forego the benefits of arbitration. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 143 S.Ct. 1915, 216 L.Ed.2d 671 (2023). The Bankruptcy Court in Delaware adopted the *Coinbase* rationale in its decision to stay an adversary proceeding in its entirety. Here, a very similar argument applies. If the Court does not stay the litigation in the adversary proceeding, and the IRS eventually makes a "final determination" that nullifies the need for the adversary litigation, Daugherty's appellate remedies will be gone. The litigation will have been pointless. The Court should not let that happen and should issue a stay.

to enforce the bargain to which Highland knowingly agreed. The movant on a motion for stay pending appeal must make a showing of the likelihood of success. *See generally In re Heritage Org.*, 375 B.R. at 315. But that element is not nearly as onerous as the text makes it out to be. Even if the movant cannot show a "likelihood of success," the Fifth Circuit still leaves open the door for relief if the movant can "present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *Arnold*, 278 F.3d at 438-39.

13. Other courts' analyses on this topic are instructive. For example, in *In re Wright*, the bankruptcy court granted the stay and found that a likelihood of success could exist even when the order on appeal reflected the majority view on the topic. *See In re Wright*, No. 20-12415-ABA, 2023 WL 3560551, at *13 (Bankr. D.N.J. May 18, 2023). The bankruptcy court found that, because "there [was a] minority position that the district court might favor," the first element was still satisfied. *Id*. Here, Daugherty needs only show that he can present a substantial case on the merits even if his argument is a request that the district court adopt a minority viewpoint.

14. As Daugherty put forward in his response to Highland's 60(b)(6) cross-motion, there is a body of law which stands for the principle that motions to reform or nullify settlements are disfavored. *See In re Lease Oil Antitrust Litig.*, MDL No. 1206, 2002 WL 35645775, at *13 (S.D. Tex. Dec. 4, 2002) (holding that the movant on a 60(b)(6) presented "no reasons justifying a modification of the Global Settlement…The Court finds that the [current motion is simply] another attempt by CE Corp to collect under the Global Settlement – ***an action that is expressly prohibited***" (emphasis added)); s*ee also Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 580 (10th Cir. 1996) (reversing the grant of a 60(b)(6) motion in situation where "[d]efendants made a free, counseled, deliberate choice whose consequences in hindsight are unfortunate" (citing *Pelican*

*Prod. Corp. v. Marino*, 893 F.2d 1143, 1147 (10th Cir.1990))). The Fifth Circuit itself has reinforced this sentiment. In *Yesh Music*, the Fifth Circuit held that "Rule 60(b)(6) relief will not be used to relieve a party from the free, calculated, and deliberate choices he has made." *Yesh Music v. Lakewood Church*, 727 F.3d 356, 363 (5th Cir. 2013); *see S.E.C. v. Conradt*, 309 F.R.D. 186, 187-88 (S.D.N.Y. 2015) (refusing to utilize Rule 60(b)(6) to vacate defendants' settlement agreements that resulted in consent judgments after defendants' guilty pleas in a parallel proceeding were vacated).

15. Here, the "litigation stay provision" was integral to the parties' decision to enter the Settlement Agreement. Additionally, the Settlement Agreement itself represented the successful resolution of years-long disputes and provided Daugherty—and frankly, Highland—with clarity that further litigation would not occur until the IRS made its final determination. It also provided Highland (and its employees and representatives) with a reduction in liability based on Daugherty's claims. Highland itself previously lauded the Settlement Agreement as "fair and reasonable" and the Court found "the Settlement Agreement [to be] fair and equitable." Main Case Doc. No. 3088 at ¶¶ 41-48; Main Case Doc. No. 3298 at 2.

16. It is fundamentally unfair for Highland to rewrite the deal and file an adversary proceeding that it contractually promised not to bring against Daugherty until conclusion of the IRS audit. In fact, the Settlement Agreement's terms establish that the parties clearly anticipated the possibility that the IRS audit could drag on for years. Highland could have negotiated certain provisions or caveats that would have addressed the current situation (e.g., Highland could have insisted that the Settlement Agreement have a temporal "cap" on the amount of time it would wait for the IRS to conclude the audit). It did not. Instead, Highland simply reserved all defenses and

-8-

agreed that "any litigation…shall be stayed" until the IRS reaches a final determination. Ex. A. at ¶ 9.

17. The Court should not have rewritten the parties' negotiated Settlement Agreement and should have denied Highland's 60(b)(6) cross-motion. The Settlement Agreement was in effect for over three years. The Court should not have used its inherent power to disturb a painstakingly negotiated Settlement Agreement between two sophisticated parties who each received and gave certain concessions to reach a final agreement. Because of this, Daugherty has a strong likelihood of success on the merits on his appeal. The Court should stay the adversary proceeding and the enforcement of the September 4, 2025 Order pending appeal.

**II. There is a significant risk of irreparable injury if the Court does not grant the stay.**

18. If the Court does not grant the stay, Daugherty is at risk of irreparable injury. Courts consistently find that the irreparable harm requirement is satisfied when an appellant's rights would be vitiated absent a stay. For example, the Southern District of New York—in issuing a stay pending appeal of a bankruptcy court's confirmation order—emphasized that the loss of appellate review is a "quintessential form of prejudice." *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 448 (S.D.N.Y. 2007) (citing *In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (2nd Cir. BAP 1996)). There, the district court concluded that "where the denial of a stay pending appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied." *Id*. The Northern District of Texas reached a similar conclusion in *In re Texas Equipment Co., Inc.* There, the court explained that unless the party obtained the stay of a sale order, there would be no effective remedies on appeal. 283 B.R. 222, 228 (Bankr. N.D. Tex 2002); *see also Manges v. Seattle-First Nat'l Bank (In re Manges)*, 29 F.3d 1034 (5th Cir. 1994).

4898-0118-2828

19. Absent a stay pending appeal, Daugherty will have to litigate Highland's claims against him without any indication from the IRS whether it plans to increase, decrease, or leave untouched Highland's 2008 tax liability, thus affecting Daugherty's Reserved Claim. As the Court knows, litigating this dispute without finality from the IRS is pointless. The IRS has not made a "final determination" for Highland's 2008 tax year; that much is clear. Moreover, both Daugherty and Highland recognized that fact by signing the Settlement Agreement *after* the IRS issued a letter in February 2018, which is one of the ways that Highland now disingenuously argues that a final audit has already occurred. Doc. No. 9 at ¶ 16.

20. This adversary proceeding turns on the IRS's final determination. No matter the outcome, one thing is certain: it all depends on what the IRS does as it finalizes its audit of Highland's 2008 tax year. If the Court allows litigation to commence and grants Highland's requested relief of striking Daugherty's claim—only for the IRS to later determine that Highland had additional tax liability, thus validating Daugherty's claim—the harm would be irreparable. By that time, Highland will have fully consummated its plan of confirmation and Daugherty will have no recourse.

**III.   There would be no harm to other parties if the Court granted the stay.**

21. If the Court entered a stay, other parties would suffer no prejudice. To the contrary, a stay would benefit Highland and other parties because it would avoid costly and time-consuming litigation that could prove to be an empty gesture depending on the results of the IRS' audit.

22. Moreover, there would be no harm to Highland because the stay is exactly what Daugherty and Highland agreed to in the Settlement Agreement. The stay is also what this Court approved. And because the IRS has not concluded its audit, there is no live controversy for Highland to litigate. Even if the stay causes a delay in the closure of Highland's bankruptcy case,

the tradeoff is worthwhile. The Court should prioritize the enforcement of Settlement Agreements and its judicial approval of same, especially when the side opposing the stay will not suffer discernable prejudice.

IV. **Granting the stay would further judicial economy and serve the public interest because it would give litigants confidence that courts will enforce settlement agreements.**

    A. **If the Court grants the stay, it will support judicial economy.**

23. A stay of the September 4, 2025 Order would further judicial economy. Federal courts should seek to avoid piecemeal appeals. *See PYCA Indus., Inc. v. Harrison Cnty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996). In *In re Perry*, the Eastern District of Louisiana reiterated that principle and denied a motion that would have likely caused two separate appeals – one on damages and one on liability. Nos. 23-5265, 23-5266, 2024 WL 68257, at *3 (E.D. La. Jan. 5, 2024). The Fifth Circuit itself has echoed this principle in other contexts. *See Morrison v. W. Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 479 (5th Cir. 2009) (citing judicial economy as a reason not to force litigants to pursue separate litigation for a judgment after a bankruptcy court makes a nondischargeability determination). The Bankruptcy Court for the District of Delaware's language—in deciding to stay an entire adversary proceeding pending appeal of an order denying a 12(b)(6) motion—is instructive on the issue of judicial economy:

> First, there are not thousands of parties to this action, there are essentially only two parties (and their respective related entities) involved in this adversary proceeding. Second, the different practices and procedures in bankruptcy cases are founded on the concept that automatically staying a bankruptcy case upon the appeal of a specific issue would prevent the bankruptcy court from addressing the numerous other issues in the case and could adversely affect thousands of other creditors. In this case, there are no significant other issues that depend on the outcome of this adversary proceeding. The Debtors' Plan has been confirmed and there are few administrative matters pending. Further, the Defendants assert that their appeal only automatically stays the adversary proceeding, not the entire bankruptcy case. In

-11-

> these respects, the Court agrees with the Defendants' arguments that this adversary proceeding is more akin to a civil action in district court than to a typical bankruptcy matter.

*In re Nu Ride, Inc.*, 666 B.R. 510, 519 (Bankr. D. Del. Dec. 13, 2024).

Simply put, because the adversary proceeding was a narrow dispute that had little effect on the main bankruptcy case, staying the entire proceeding pending appeal would not hinder judicial economy in any meaningful way.

24.     Although it is not an express factor in a stay determination, the Court should not ignore judicial economy. Here, the enforceability of the "litigation stay provision" in the Settlement Agreement is the critical issue on appeal. As Daugherty contends, litigation between him and Highland should not ensue until the IRS makes a "final determination" on Highland's 2008 audit. If that provision is determined to control, then any litigation that this Court allows to commence will be pointless and, importantly, voidable, wasting the parties' and the Court's time and resources. The parties would then have to re-litigate those exact issues with the benefit of the IRS' final determination. Thus, judicial economy weighs in favor of granting Daugherty's motion for stay pending appeal.

### B.     If the Court grants the stay, it will greatly serve the public interest.

25.     The public interest will also be served by granting a stay because the Court—and all litigants in this circuit—should value the importance of binding settlement agreements. At their core, settlement agreements are contracts. And once they are executed, they "cannot be repudiated by either party and will be summarily enforced." *United States v. City of New Orleans*, 731 F.3d 434, 439 (5th Cir. 2013) (citing *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 530 (5th Cir. 1986)). As the Texas Supreme Court said, "[a] deal is, of course, a deal." *Chalker Energy Partners III, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668, 669 (Tex. 2020) (emphasizing the many ways in which an agreement will be binding under Texas law). Moreover, the Firth Circuit has

held that when analyzing a signed settlement agreement, the presence of sophisticated parties and skilled counsel is a factor when determining whether there are ambiguities that would allow the inclusion of extrinsic evidence in the analysis. *Lubrisol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1284 (5th Cir. 1989).

26. Here, all signs point to the Settlement Agreement being entirely enforceable as drafted. It was negotiated by sophisticated parties with assistance of counsel who actively participated in give-and-take concessions. Its language—"[a]ny litigation by and between the Debtor and Daugherty…shall be stayed until the IRS makes a final determination with respect to the IRS Audit Dispute"—is clear and unambiguous. *See* Ex. A at ¶ 9. And this Court approved it.

27. Daugherty acknowledges that this Court retains power under Rule 60(b)(6) to modify the terms of an order or judgment. But as the cases interpretating that rule put forward, the Court should only exercise that power in the most unique circumstances and only to truly "do substantial justice." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981). Without confidence that courts will enforce binding settlement agreements, litigants will lose confidence in their ability to rely on the exchange of bargained-for concessions to resolve cases through resolution. The Court should not let that sentiment become commonplace.

WHEREFORE, Patrick Daugherty respectfully requests that the Court (a) enter an order granting the immediate motion, (b) stay the adversary proceeding captioned as *Highland Capital Management, L.P. v. Patrick Hagaman Daugherty (In re Highland Capital Management, L.P.)*, Case No. 19-34054 (SGJ), Adversary No. 25-03055, (c) stay the enforcement of the Court's September 4, 2024 Order, and (d) grant such other and further relief as may be just and proper.

Dated: September 26, 2025.

Respectfully submitted,

GRAY REED

By:  /s/ Andrew K. York
    Jason S. Brookner
    Texas Bar No. 24033684
    Andrew K. York
    Texas Bar No. 24051554
    Joshua D. Smeltzer
    Texas Bar No. 24113859
    Drake M. Rayshell
    Texas Bar No. 24118507
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:  jbrookner@grayreed.com
        dyork@grayreed.com
        jsmeltzer@grayreed.com
        drayshell@grayreed.com

*Counsel to Patrick Daugherty*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing instrument was served on all Parties or counsel of record herein on this 26th day of September 2025, via the CM/ECF system and/or email.

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
jpomerantz@pszjlaw.com
John A. Morris
jmorris@pszjlaw.com
Gregory V. Demo
gdemo@pszjlaw.com
Hayley R. Winograd
hwinograd@pszjlaw.com
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067

HAYWARD PLLC
Melissa S. Hayward
MHayward@HaywardFirm.com
Zachery Z. Annable
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Suite 106
Dallas, Texas 75231

*Counsel for Highland Capital Management, L.P.*

        /s/ Andrew K. York
        ANDREW K. YORK

4898-0118-2828