PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) *(admitted pro hac vice)*
John A. Morris (NY Bar No. 2405397) *(admitted pro hac vice)*
Gregory V. Demo (NY Bar No. 5371992) *(admitted pro hac vice)*
Hayley R. Winograd (NY Bar No. 5612569) *(admitted pro hac vice)*
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § § § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § § § § § § § § | Adv. Proc. No. 25-03055-sgj |
| Plaintiff, | | |
| v. | | |
| PATRICK HAGAMAN DAUGHERTY, | | |
| Defendant. | | |

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ....................................................................1

II.  FACTUAL BACKGROUND...................................................................4

    A.  The Parties Agreed to Stay Litigation Over Daugherty's
        Reserved Claim Until the IRS Makes a Final Determination
        with Respect to the IRS Audit Dispute .................................................4

    B.  Highland Must Resolve All Disputed Claims and the Highland
        Claimant Trust Must Commence the Dissolution Process
        Before August 11, 2026 ......................................................................5

    C.  Faced with Potentially Conflicting Orders, the Court Properly
        Exercises Its Discretion and Strikes the Stay Provision;
        Daugherty Appeals Without Seeking Leave of Court .........................7

III.  ARGUMENT.........................................................................................9

    A.  Legal Standard....................................................................................9

    B.  Daugherty Fails to Show a Substantial Likelihood of Success
        on the Merits.....................................................................................10

        1.  Daugherty Failed to Seek or Obtain Leave of the Court
            Before Appealing the Interlocutory Order...............................11

        2.  The Appeal Would Fail on the Merits .....................................12

    C.  Daugherty Will Not Suffer Irreparable Harm Absent a Stay
        Pending Appeal .................................................................................16

    D.  Highland and Its Stakeholders Will Be Harmed by a Stay
        Pending Appeal .................................................................................19

    E.  A Stay Pending Appeal Is Contrary to the Public Interest.................21

IV.  CONCLUSION.......................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>CASES</u>

*Arnold v. Garlock, Inc.*,
    278 F.3d 426 (5th Cir. 2001) ................................................................... 9, 10

*Balestri v. Hunton & Williams, LLP (In re Hallwood Energy, L.P.)*,
    2013 WL 524418 (N.D. Tex. Feb. 11, 2013) .................................................12

*BioTE Med., LLC v. Jacobsen*,
    406 F. Supp. 3d 575 (E.D. Tex. 2019) ..........................................................18

*Bohm v. Howard (In re Howard)*,
    422 B.R. 593 (Bankr. W.D. Pa. 2010).............................................................21

*Brittingham v. Wells Fargo Bank, N.A.*,
    543 F. App'x 372 (5th Cir. 2013)...................................................................12

*Cashner v. Freedom Stores*,
    98 F.3d 572 (10th Cir. 1996) ................................................................... 15, 16

*Clyde Bergemann, Inc. v. Babcock & Wilcox Co. (In re Babcock & Wilcox)*,
    No. 00-10992, 2000 WL 533492 (E.D. La. May 3, 2000) ..................... 20, 21

*ePlus, Inc. v. Katz (In re Metiom, Inc.)*,
    318 B.R. 263 (S.D.N.Y. 2004) ......................................................................21

*Gross v. Keen Grp. Sols., LLC*,
    18 F.4th 836 (5th Cir. 2021).........................................................................11

*Holland Am. Ins. Co. v. Succession of Roy*,
    777 F.2d 992 (5th Cir. 1985) ........................................................................18

*In re ACC Bondholder Grp. v. Adelphia Communications Corp. (In re
    Adelphia Communications Corp.)*,
    361 B.R. 337 (S.D.N.Y. 2007) ......................................................................18

*In re First S. Sav. Assoc.*,
    820 F.2d 700 (5th Cir. 1987) ................................................................... 9, 10

*In re M&C P'ship, LLC*,
   2021 WL 3145197 (E.D. La. July 26, 2021) ...................................................9

*In re Permian Producers Drilling, Inc.*,
   263 B.R. 510 (W.D. Tex. 2000) ...................................................... 10, 15, 20

*In re Royce Homes LP*,
   466 B.R. 81 (S.D. Tex. 2012) .........................................................................12

*In re Wright*,
   2023 WL 3560551 (Bankr. D.N.J. May 18, 2023).........................................10

*Lindy Invs. III v. Shakertown 1992, Inc.*,
   360 F. App'x 510 (5th Cir. 2010)............................................................ 12, 15

*Manges v. Seattle-First Nat'l Bank (In re Manges)*,
   29 F.3d 1034 (5th Cir. 1994) ..........................................................................19

*Nken v. Holder*,
   556 U.S. 418 (2009)..........................................................................................9

*Plains Farm Supply v. Texas. Equipment Co. (In re Texas Equipment Co.)*,
   283 B.R. 222 (Bankr. N.D. Tex 2002) ...........................................................19

*Plaquemines Par. v. Chevron United States, Inc.*,
   84 F.4th 362 (5th Cir. 2023)..............................................................................9

*Ruff v. Ruff*,
   2023 WL 2574021 (E.D. Tex. Mar. 20, 2023) ......................................... 9, 10

*Ruiz v. Estelle*,
   666 F.2d 854 (5th Cir. 1982) .............................................................................9

*Samaras v. America's Favorite Chicken Co. (In re Al Copeland Enters.)*,
   153 F.3d 268 (5th Cir. 1998) ................................................................... 12, 15

*Shepherd v. Int'l Paper Co.*,
   372 F.3d 326 (5th Cir. 2004) ..........................................................................11

*State v. Biden*,
   10 F.4th 538 (5th Cir. 2021) ...........................................................................17

*Trend Intermodal Chassis Leasing LLC v. Zariz Transp. Inc.*,
    711 F. Supp. 3d 627 (N.D. Tex. 2024) ...........................................................10

*Trend Intermodal Chassis Leasing, L.L.C. v. Zariz Transp. Inc.*,
    2024 WL 3423217 (5th Cir. July 16, 2024) ..................................................10

*X Corp. v. Media Matters for Am.*,
    120 F.4th 190 (5th Cir. 2024)........................................................................11

*Yesh Music v. Lakewood Church*,
    727 F.3d 356 (2013) ......................................................................................16

## **STATUTES**

11 U.S.C. § 502 ........................................................................... 13, 18, 21

28 U.S.C. § 1292 ................................................................................12

28 U.S.C. § 158 ..................................................................................12

## HIGHLAND CAPITAL MANAGEMENT, L.P.'S OBJECTION TO PATRICK DAUGHERTY'S MOTION FOR STAY PENDING APPEAL

Highland Capital Management, L.P., the reorganized debtor ("Highland" or the "Debtor," as applicable) in the above-captioned chapter 11 case (the "Bankruptcy Case") and the plaintiff in the above-captioned adversary proceeding, files this objection to *Patrick Daugherty's Motion for Stay Pending Appeal* [Adv. Docket No. 33] (the "Motion").

## I.    PRELIMINARY STATEMENT[2]

1.      Daugherty fails to prove the extraordinary remedy of a stay pending his appeal is warranted.  The Motion should be denied because Daugherty cannot meet his burden of proving that: (a) he has a substantial likelihood of succeeding on the merits of his appeal; (b) he will be irreparably harmed in the absence of a stay; (c) a stay would not harm other parties; or (d) a stay would serve the public interest. Daugherty cannot meet the first prong—a likelihood of success—for two reasons.

2.      First, the Order is interlocutory and Daugherty failed to seek leave of court before he could appeal.  The Appeal will likely be dismissed as procedurally improper.

3.      Second, the Appeal would fail on the merits.  Daugherty cannot show that the Court abused its broad discretion in granting the Cross Motion.  The Court

---

[2] Capitalized terms not defined in this Preliminary Statement have the meanings ascribed to them below or in the Plan.

was faced with an unforeseen conflict between two different court-approved agreements: (a) the Sunset Provisions of the Claimant Trust Agreement (the "CTA") (which require Highland to resolve all disputed claims, including Daugherty's Reserved Claim, before August 11, 2026, so the Claimant Trust can be dissolved by that deadline), and (b) the Stay Provision of the Settlement Agreement (which stayed adjudication of Daugherty's Reserved Claim until the IRS made its final determination with respect to the "IRS Audit Dispute," an event the Debtor maintains has occurred but Daugherty disputes). As the Court found, this type of extraordinary circumstance warranted Rule 60(b) relief. The Court's decision to modify the Settlement Agreement (which affects only Daugherty), rather than the earlier-approved CTA (which affects all stakeholders and would have caused the Highland case to remain open indefinitely), was a proper exercise of its discretion.[3] Daugherty fails to show any—let alone a substantial—likelihood of success on the merits of his Appeal.

4.      Nor can Daugherty establish that he will be irreparably harmed in the absence of a stay. Daugherty could have resolved his dispute in 2018 when the IRS, after concluding its audit of Highland, made a settlement offer, but he did not engage

---

[3] Highland continues to reserve the right to establish that the IRS "made a final determination with respect to the IRS Audit Dispute" in 2018 if that ever becomes necessary. *See, e.g.*, Morris Exhibits 2-4 (2017 and 2018 HCMLP and IRS notices to Daugherty with audit determination adjustment amount and proposed IRS settlement with Daugherty).

at that time.[4]  Even today, despite the supposed "risks" he faces, Daugherty refuses

to try to resolve his dispute with the IRS.  Any "harm" Daugherty faces is self-

inflicted, speculative, and not the type of irreparable harm warranting a stay.

Highland's stakeholders will be irreparably harmed if a stay is granted.  A stay

pending appeal would effectively vitiate the Sunset Provisions (without notice) by

indefinitely delaying the resolution of Daugherty's Reserved Claim and,

consequently, the commencement of the Claimant Trust's dissolution thereby

imposing incalculable costs on the estate and Claimant Trust's stakeholders.

5.      Daugherty's argument that a stay would serve the public interest is

spurious.  If upholding contracts was synonymous with the public interest, Rule 60

could never be utilized to effectuate justice in contract cases even though that is one

of its express purposes.  Daugherty offers no explanation why the "public interest"

favors upholding *his* contract when doing so would violate the CTA and related

orders.

6.      The Motion should be denied.

---

[4] Daugherty offers no explanation for his failure to respond to the IRS Form 886-Z and 870-PT
2008 audit adjustment (the "Adjustment").  In any event, the results of the appeal of the Adjustment
are largely irrelevant to the Debtor's objection to the Reserved Claim.  As detailed in the complaint,
Daugherty is not entitled to any recovery from the estate irrespective of the outcome of the Appeal.

## II.    FACTUAL BACKGROUND

### A.    The Parties Agreed to Stay Litigation Over Daugherty's Reserved Claim Until the IRS Makes a Final Determination with Respect to the IRS Audit Dispute

7.    On November 22, 2021, Highland and Patrick Daugherty ("Daugherty," and together with Highland, the "Parties") entered into that certain *Settlement Agreement* (the "Settlement Agreement") resolving all of Daugherty's claims against the Debtor's estate except for his Reserved Claim (as that term is defined in the Settlement Agreement).  Morris Exhibit 1.[5] On March 8, 2022, the Court entered an order approving the Settlement Agreement (the "Settlement Order") [Docket No. 3299].

8.    The Settlement Agreement provides that: (a) Highland expressly "reserve[d] the right to assert any and all defenses" to the Reserved Claim, and (b) the parties agreed that "[a]ny litigation by and between the Debtor and Daugherty concerning the validity and amount of the Reserved Claim shall be stayed *until the IRS makes a final determination* with respect to the IRS Audit Dispute." Morris Exhibit 1 ¶ 9 (the "Stay Provision") (emphasis added).

---

[5] "Morris Exhibits" refer to the exhibits annexed to the *Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s (A) Objection to Patrick Daugherty's Motion to Dismiss, and (B) Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024* filed at Docket No. 11.

9.    The Stay Provision did not include a specific date for the termination of the stay.

**B.    Highland Must Resolve All Disputed Claims and the Highland Claimant Trust Must Commence the Dissolution Process Before August 11, 2026**

10.    Nine months before the Parties executed the Settlement Agreement, this Court confirmed Highland's plan of reorganization.   On February 22, 2021, the Court entered the *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Main Docket No. 1943] (the "Confirmation Order") with respect to the Plan.[6]

11.    The Plan included a form of *Claimant Trust Agreement* (the "CTA"), the contract between Highland and James P. Seery, Jr., in his capacity as the Claimant Trustee, "entered for the benefit of Claimant Trust Beneficiaries entitled to the Claimant Trust Assets" (as those terms are defined in the CTA).  [Main Docket No. 1811, Exhibit R (preamble)].[7]   The Plan created the CTA when the Plan went effective on August 11, 2021.  [Main Docket No. 2700].

12.    Section 9.1 of the CTA provides that the Claimant Trust will be dissolved when: "***all objections to Disputed Claims and Equity Interests are fully***

---

[6] The "Plan" refers to the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* filed on the main docket at Docket No. 1808. The Confirmation Order was subsequently modified for reasons irrelevant to the Motion. *See* Main Docket No. 4378.

[7] Prior to its execution, the CTA was modified in non-substantive ways irrelevant to the Motion. *See* Main Docket No. 1875, Exhibit EE.

*resolved . . . but in no event shall the Claimant Trust be dissolved later than three*

*years from the Effective Date unless the Bankruptcy Court, upon motion made*

*within the six-month period before such third anniversary (and, in the event of*

*further extension, by order of the Bankruptcy Court, upon motion made at least*

*six months before the end of the preceding extension), determines that a fixed*

*period extension (not to exceed two years, together with any prior extensions) is*

*necessary to facilitate or complete the recovery on, and liquidation of, the*

*Claimant Trust Assets*."[8]

13.     In accordance with subsequent Court orders incorporating the CTA,[9]

Highland is required under Section 9.1 of the CTA to resolve "all objections to

Disputed Claims and Equity Interests" (including Daugherty's Reserved Claim) so

that the Claimant Trust can dissolve on or before August 11, 2026 (collectively, the

"Sunset Provisions").[10]

---

[8] The CTA follows the Plan which contains the same requirement that the Claimant Trust dissolve no later than August 11, 2026.  Plan Art. IV.B.14.

[9] *See, e.g.*, Confirmation Order ¶¶ A, D, 27.

[10] The initial three-year term of the CTA was extended to August 11, 2025, [Main Docket No. 4144], and again to August 11, 2026. [Main Docket No. 4298]. Daugherty was served with Highland's motions seeking the extensions of the CTA but lodged no objection.

**C.**     **Faced with Potentially Conflicting Orders, the Court Properly Exercises
Its Discretion and Strikes the Stay Provision; Daugherty Appeals
Without Seeking Leave of Court**

14.     On May 2, 2025, days before Highland moved to extend the life of the

CTA one last time (to August 11, 2026), Highland commenced this adversary

proceeding by filing its *Complaint for (1) Disallowance of Claim No. 205 in its*

*Entirety, (2) Estimation of Claim No. 205 for Allowance Purposes, or (3)*

*Subordination of Any Allowed Portion of Claim No. 205 of Patrick Hagaman*

*Daugherty* (the "Complaint").   [Adv. Docket No. 1].   In its Complaint, Highland

seeks to disallow, estimate for allowance purposes, or subordinate Daugherty's

Reserved Claim.[11]

15.     On June 4, 2025, Daugherty moved to dismiss the Complaint on the

ground that litigation of his Reserved Claim was purportedly barred by the Stay

Provision [Adv. Docket No. 5] (the "Dismissal Motion").

16.     On July 18, 2025, Highland filed its objection to the Dismissal Motion

and its cross-motion [Adv. Docket Nos. 9 and 10] (the "Cross Motion").   Therein,

Highland (a) objected to the Dismissal Motion on the ground that the IRS had made

a "final determination" of the IRS audit dispute such that the Stay Provision no

---

[11] Highland maintains that it has no obligation for the Reserved Claim irrespective of the outcome
of the taxpayers' appeal of the Adjustment.

longer applied, and (b) requested entry of an order modifying the Settlement Order by striking the Stay Provision from the Settlement Agreement.

17.     The Court held oral argument on September 4, 2025.  [*See* Adv. Docket No. 21].[12]  The Court denied Daugherty's Dismissal Motion and granted Highland's Cross Motion from the bench, finding that "extraordinary circumstances" existed justifying Rule 60(b) relief.  The Court found that the Sunset Provisions of the CTA conflicted with the Stay Provision of the Settlement Agreement in ways that could not have been reasonably foreseen when those agreements were executed and approved by the Court years earlier and that justice required favoring the broad interest in timely dissolving the Claimant Trust over Daugherty's personal interest in waiting indefinitely to allow the appeal of the IRS audit determination to be resolved by the courts.  *See* September 4, 2025 Transcript ("Tr.") at 30:18-34:9.

18.     On September 5, the Court entered an order granting Highland's Cross Motion [Adv. Docket No. 23] (the "Order"), and on September 19, 2025, Daugherty appealed [Adv. Docket No. 25].

---

[12] By then, the Court had entered an Order extending the life of the Claimant Trust one last time, to August 11, 2026, without objection.  [Main Docket No. 4298].

### III.    ARGUMENT

**A.    Legal Standard**

19.    A stay pending appeal is "extraordinary relief" for which the movant

bears a "heavy burden." *Plaquemines Par. v. Chevron United States, Inc.*, 84 F.4th

362, 373 (5th Cir. 2023).    To meet this burden, a movant must establish: (1)

substantial likelihood of success on the merits of its appeal; (2) irreparable injury if

the stay is not granted; (3) the stay will not substantially harm other parties; and (4)

the stay would serve the public interest. *See In re First S. Sav. Assoc.*, 820 F.2d 700,

704 (5th Cir. 1987).

20.    "The Fifth Circuit has made clear that all four elements must be met,

and that the party who seeks a stay bears the burden of establishing these

prerequisites." *In re M&C P'ship, LLC*, 2021 WL 3145197, at *4 (E.D. La. July 26,

2021) (citing *Arnold v. Garlock, Inc.*, 278 F.3d 426, 438 (5th Cir. 2001) and *Ruiz v.*

*Estelle*, 666 F.2d 854, 856 (5th Cir. 1982)). "'A stay is not a matter of right, even if

irreparable injury might otherwise result. It is instead an exercise of judicial

discretion, and [t]he propriety of its issue is dependent upon the circumstances of the

particular case.'" *Plaquemines*, 84 F.4th at 373 (quoting *Nken v. Holder*, 556 U.S.

418, 433 (2009)). "In the context of a stay pending appeal, the decision to enter the

stay is committed to the discretion of the bankruptcy court." *Ruff v. Ruff*, 2023 WL

2574021, at *4 (E.D. Tex. Mar. 20, 2023) (citing *First S. Sav. Assoc.*, 820 F.2d at 709).

21.     Daugherty fails to establish any of the four elements required to warrant the extraordinary remedy of a stay pending his appeal of the Order.

## B.     <u>Daugherty Fails to Show a Substantial Likelihood of Success on the Merits</u>

22.     Daugherty fails to show a substantial likelihood of success on the merits of his Appeal.  "To make the requisite showing under this element, the movant must demonstrate a strong case that it is 'likely to succeed on the merits' ..., not [just] a 'mere possibility of relief.'"  *Trend Intermodal Chassis Leasing LLC v. Zariz Transp. Inc.*, 711 F. Supp. 3d 627, 640 (N.D. Tex. 2024), *aff'd sub nom. Trend Intermodal Chassis Leasing, L.L.C. v. Zariz Transp. Inc.*, 2024 WL 3423217 (5th Cir. July 16, 2024) (internal quotations omitted).[13]  "While the absence of any one factor is not fatal to a successful motion for stay, greater weight is given to the first factor—the movant's likelihood of success." *See In re Permian Producers Drilling, Inc.*, 263 B.R. 510, 515 (W.D. Tex. 2000).

---

[13] Daugherty argues that he need "only show that he can present a substantial case on the merits even if his argument is a request that the district court adopt a minority viewpoint." Motion ¶ 13 (citing *In re Wright*, 2023 WL 3560551 (Bankr. D.N.J. May 18, 2023)). That is not the law. Daugherty's assertion that he need not prove a "substantial likelihood of success on the merits" also fails because his Appeal does not involve "a serious legal question."  *See* Motion ¶ 12 (citing *Arnold*, 278 F.3d at 438-39).  Daugherty's Appeal does not involve *any* "legal question."  *See Appellant's Designation of Items to Be Included in the Record on Appeal and Statement of the Issues Presented* [Adv. Docket No. 41].

23.     Daugherty has not met this burden.  As set forth below, (a) the Appeal will likely be dismissed because the Order is interlocutory such that leave of court was required for appellate review; and (b) the Appeal would fail on the merits in any event.

## 1.    <u>Daugherty Failed to Seek or Obtain Leave of the Court Before Appealing the Interlocutory Order</u>

24.     Daugherty cannot succeed on his Appeal because the Order is interlocutory—it is not "final" because it does not end the litigation of Daugherty's Reserved Claim on the merits—and is not appealable as of right under 28 U.S.C. § 158(a)(1).[14]  *See X Corp. v. Media Matters for Am.*, 120 F.4th 190 (5th Cir. 2024) (noting that "typically, a decision is 'final' only if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment"); *Gross v. Keen Grp. Sols., LLC*, 18 F.4th 836, 839 (5th Cir. 2021) (grants of Rule 60(b) motions are "considered interlocutory and non-appealable"); *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004) (same).  Daugherty did not seek leave to appeal the interlocutory Order as required under 28 U.S.C. § 158(a)(3) and Bankruptcy Rule 8004.  The Appeal is procedurally infirm and will likely be

---

[14] Highland intends to move to dismiss the Appeal on this basis.

dismissed on this basis.[15]   There is little likelihood, let alone a "substantial" likelihood, of success on the Appeal.

**2.**   **The Appeal Would Fail on the Merits**

25.   Even if the Appeal is heard on the merits, it would still fail.  Daugherty cannot prove that the Bankruptcy Court abused its broad discretion by granting the Cross Motion.

26.   Federal Rule of Civil Procedure 60(b) authorizes courts to relieve a party from a final judgment or order for any reason justifying relief from operation of the judgment.  "[T]he decision to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court and will be reversed only for abuse of that discretion." *Brittingham v. Wells Fargo Bank, N.A.*, 543 F. App'x 372, 373–74 (5th Cir. 2013) (internal quotations omitted); *see also Samaras v. America's Favorite Chicken Co. (In re Al Copeland Enters.)*, 153 F.3d 268, 271 (5th Cir. 1998)  (same). "The discretion under 60(b)(6) is said to be *especially broad* because relief may be granted under it when appropriate to accomplish justice." *Lindy Invs. III v. Shakertown 1992, Inc.*, 360 F. App'x 510, 513 (5th Cir. 2010) (internal quotations

---

[15] Even if the district court treats Daugherty's notice of appeal as a motion for leave to appeal under Bankruptcy Rule 8004(d), leave would be denied.  No "exceptional" circumstances justify appellate review of an interlocutory order under § 1292(b).  *See Balestri v. Hunton & Williams, LLP (In re Hallwood Energy, L.P.)*, 2013 WL 524418, at *6 (N.D. Tex. Feb. 11, 2013); *In re Royce Homes LP*, 466 B.R. 81, 93 (S.D. Tex. 2012) (noting that district courts within the Fifth Circuit have looked to the factors listed under 28 U.S.C. § 1292(b) in determining whether to grant a motion for leave to appeal an interlocutory order under 28 U.S.C. § 158(a)(3)).

omitted).  A court abuses its discretion only when its ruling is based on an erroneous

view of the law or a clearly erroneous assessment of the evidence.  *Nunez v. Allstate*

*Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010).

27.     Daugherty will be unable to demonstrate that the Bankruptcy Court

abused its discretion in granting relief under Rule 60.  On the Cross Motion, the

Court confronted potentially conflicting provisions in two agreements that were

approved years earlier in separate court orders: the Sunset Provision in the

Confirmation Order and the Stay Provision in the Settlement Agreement.  Resolution

of this conflict is precisely the type of "extraordinary circumstance" that justified

relief under Rule 60.  Tr. at 31:23-32:23.

28.     As the Court explained, while the parties disputed the meaning of the

Stay Provision and whether the IRS had made a "final determination" with respect

to the IRS tax audit, "we can't wait forever.  That's not what the Bankruptcy Code,

the bankruptcy process, is designed to do."  Tr. at 33:19-20.  This is the type of

situation that is contemplated by section 502(c), "where at some point you've got to

estimate the claim if you can't get to a final determination otherwise."  The Court

properly exercised its discretion when it stated, "I refuse to keep this estate open for

who knows how many more years," noting that during her five years presiding over

Highland's Bankruptcy Case, "I've made it clear" we need to "wind this up."  *Id.* at

33:23-34:1.  Four years earlier no one "reasonably anticipated that we would be

sitting here in the latter part of 2025 with this bankruptcy estate still open." *Id.* at 31:10-20.  Based on its assessment of the evidence and the unique circumstances of this case, the Court's grant of the Cross Motion was a proper exercise of its broad discretion.

29.     In his Motion, Daugherty focuses *exclusively* on the Stay Provision in the Settlement Agreement while *ignoring* the conflicting Sunset Provisions in the CTA, Confirmation Order, and related extension orders.  The Bankruptcy Court had to resolve the potential conflict, and it did so by enforcing the Sunset Provision rather than the Stay Provision.  Daugherty will not succeed in proving that the Court erroneously left the Sunset Provision in place—approved nine months earlier for the benefit of the Claimant Trust Beneficiaries—rather than the later-approved Stay Provision, supposedly adopted solely for Daugherty's benefit.  Daugherty fails to explain why the dissolution of the Claimant Trust must be delayed indefinitely for his personal benefit.

30.     Daugherty's contention that "Highland could have negotiated provisions or caveats that would have addressed the current situation" is irrelevant. Motion ¶ 16.[16]   Highland brought the Cross Motion because, at the time the

---

[16] Highland could turn the tables on this point: since the Sunset Provisions (approved nine months before Daugherty signed the Settlement Agreement) require that all disputed claims be resolved so that the Claimant Trust could commence dissolution no later than August 11, 2026, Daugherty should have protected himself against the possibility that the IRS would not complete its audit by that time. Yet he failed to do so; if Daugherty expected an indefinite stay, he should have addressed the conflict presented by the pre-existing Sunset Provisions.  His failure to so do proves one thing:

Settlement Agreement was entered into, no one reasonably foresaw that Daugherty's

Reserved Claim would remain unresolved four years later, with the deadline for

dissolution of the Claimant Trust looming.  The Court—intimately familiar with all

aspects of the long-running Highland bankruptcy—resolved the conflict and granted

the Cross Motion in a proper exercise of its discretion.  *See Permian*, 263 B.R. at

519-20 (finding movant failed to show likelihood of success on the merits of appeal

in proving that bankruptcy court abused discretion in ordering substantive

consolidation of bankruptcy estates where there was "sufficient evidence" to support

court's factual findings); *Al Copeland Enters.*, 153 F.3d at 272 (affirming

bankruptcy court's grant of Rule 60(b)(6) motion as proper exercise of its discretion

where denial of the motion would have "inequitable" results); *Lindy*, 360 F. App'x

at 513 (court's view of the evidence was not "clearly erroneous" where it was

familiar with all aspects of the case).

31.    The cases Daugherty relies on in support of his assertion that "motions

to reform or nullify settlements are disfavored," (Motion ¶ 14), miss the mark.  In

*Lease Oil Antitrust Litigation (No. II)*, MDL No. 1206, 2002 WL 35645775 (S.D.

Tex. Dec. 4, 2002), a Rule 60 motion was denied because the movant sought to re-

litigate issues.  *Cashner v. Freedom Stores*, 98 F.3d 572 (10th Cir. 1996), involved

---

the Parties did not foresee the conflict between the operative provisions of the CTA and the
Settlement Agreement.

a Rule 60(b) motion brought based on party's "mistake" as to the terms of the agreement. Here, unlike in *Cashner* and *Lease Oil*, Highland was not judicially estopped from seeking the relief sought in the Cross Motion, and such motion was not premised on a party's "mistake."

32.    In *Yesh Music v. Lakewood Church*, 727 F.3d 356 (2013), the Fifth Circuit affirmed the lower court's grant of a Rule 60(b) motion to reinstate a plaintiff-appellee's voluntary dismissal of a lawsuit in order to prevent manifest injustice that would arise otherwise. Here, as in *Yesh*, the Bankruptcy Court properly exercised its discretion in modifying the Settlement Agreement so the parties could litigate the Reserved Claim before the deadline for commencing the dissolution of the Claimant Trust. Just as in *Yesh*, the circumstances here justified the modification of Settlement Order under Rule 60 in order to prevent injustice. Daugherty fails to demonstrate a likelihood of substantial success on the merits of the Appeal and the Motion should be denied.

**C.    Daugherty Will Not Suffer Irreparable Harm Absent a Stay Pending Appeal**

33.    Daugherty also fails to demonstrate that he will suffer irreparable harm absent a stay pending appeal. Daugherty maintains any harm to him in the absence of a stay is "irreparable" because if the IRS determines Highland has additional tax liability, "Highland will have fully consummated" its Plan and

Daugherty will have no recourse.  Motion ¶ 20.  This is insufficient to demonstrate irreparable harm warranting a stay.

34.  Any harm to Daugherty resulting from the commencement of this litigation would be self-inflicted.[17]  In 2018, well before there was a Highland bankruptcy, the IRS made a written offer to resolve Daugherty's dispute of the Adjustment.  Morris Dec. Exhibits 2-4.  For reasons known only to him, Daugherty chose to follow Highland's recommendation and did not accept the offer.  Even today, Daugherty is unwilling to try and resolve the IRS determination of his 2008 tax return Adjustment.  Tr. at 15:19-17:7; 23:13-27:20.  Daugherty's refusal to try to eliminate the risk is precisely the type of self-inflicted damage that does not constitute "irreparable" injury.  *See State v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021) (finding movant's "irreparable injuries" are "self-inflicted and therefore do not count," noting "a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted") (internal quotations omitted).

35.  Daugherty's purported harm is also speculative.  As the Bankruptcy Court found, any resolution resulting from Daugherty's challenge to the Adjustment could take years.  Daugherty's concern about the IRS's "plans to increase, decrease, or leave untouched Highland's 2008 tax liability," (Motion ¶ 19), is the type of speculative, monetary injury that is insufficient to constitute "irreparable harm."

---

[17] Again, Daugherty will likely never be harmed because his Claim will ultimately be disallowed.

*See, e.g.*, *BioTE Med., LLC v. Jacobsen*, 406 F. Supp. 3d 575, 584 (E.D. Tex. 2019) (noting, in the context of a motion for injunctive relief, "the movant must come forward with evidence that such an injury is irreparable by showing that the loss cannot be measured in money damages"); *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (vacating injunction where movant failed to show irreparable harm, noting "[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant").

36.     Daugherty's argument, if accepted, would render Bankruptcy Code section 502(c) ("Section 502") a nullity. Section 502 provides the statutory authority for estimating contingent and unliquidated claims for allowance purposes. If litigating a claim under Section 502 constitutes "irreparable harm," then that provision could never be enforced and all bankruptcy estates would be forced to remain open until all contingent and unliquidated claims were finally resolved. That is not the law.

37.     Daugherty's case cites in support of his contention that he will suffer irreparable harm absent a stay are inapplicable. *In re ACC Bondholder Grp. v. Adelphia Communications Corp. (In re Adelphia Communications Corp.)*, 361 B.R. 337 (S.D.N.Y. 2007), involved a stay pending appeal of a chapter 11 plan before the plan was substantially consummated. Here, Daugherty is not appealing Highland's

Plan, and there is no dispute that Highland's Plan has been consummated.[18]  *Plains Farm Supply v. Texas. Equipment Co. (In re Texas Equipment Co.)*, 283 B.R. 222 (Bankr. N.D. Tex 2002), is equally distinguishable.  There, the issue was whether an appeal of a bankruptcy court's order authorizing sale was moot pursuant to section 363(m) of the Bankruptcy Code once the sale has occurred.  Here, Daugherty is not appealing a sale order issued under section 363.  Daugherty fails to show there is any risk of irreparable harm to him in the absence of a stay.

### D.    Highland and Its Stakeholders Will Be Harmed by a Stay Pending Appeal

38.    Highland and its stakeholders will be substantially harmed if a stay is granted.  Highland is required, pursuant to the terms of the CTA, the Plan, Confirmation Order, and the orders extending the duration of the Trust, to dissolve the Claimant Trust by August 11, 2026.  The Claimant Trust cannot be dissolved until all disputed claims—including Daugherty's Reserved Claim—are resolved.

39.    Daugherty maintains that Highland will not be harmed "because the stay is exactly what Daugherty and Highland agreed to in the Settlement Agreement." (Motion ¶ 22).  Daugherty again ignores the purpose of the Court's Order.  The issue is not whether the Parties agreed to the Stay Provision four years

---

[18] *Manges v. Seattle-First Nat'l Bank (In re Manges)*, 29 F.3d 1034 (5th Cir. 1994) is inapplicable, as it also deals with whether a plan will be substantially consummated pending appeal. In any event, Daugherty's Reserved Claim is fully reserved.

ago.  It is whether that provision should now be excised in the face of unforeseen and extraordinary circumstances—namely, a potentially conflicting order requiring Highland to commence dissolution of the Claimant Trust by August 2026.  Highland, its estate, and the Claimant Trust Beneficiaries have already waited for years to end the Bankruptcy Case.  It cannot go on indefinitely while Daugherty litigates his audit dispute with the IRS.  As the Bankruptcy Court explained, "that's not what the Bankruptcy Code, the bankruptcy process, is designed to do." (Tr. at 33:19-20).  A stay of this litigation pending Daugherty's Appeal will only further delay the Claimant Trust dissolution process, in violation of numerous orders, including the Confirmation Order, and to the detriment of the Claimant Trust Beneficiaries.  Any such result would run afoul of the fundamental purpose of the bankruptcy process. *See Permian*, 263 B.R. at 522-53 (finding creditors would suffer by a stay of bankruptcy proceedings, noting "a fundamental purpose of the bankruptcy system, is to convert the assets of the bankrupt into cash for distribution among creditors," and "delay in payment to creditors runs counter to this fundamental purpose and, therefore, harms creditors"); *Clyde Bergemann, Inc. v. Babcock & Wilcox Co. (In re Babcock & Wilcox)*, No. 00-10992, 2000 WL 533492, at *18 (E.D. La. May 3, 2000) (denying stay pending appeal, noting that "delay to creditors receiving payments is significant harm warranting denial of stay").  This factor weighs heavily against a stay.

E.      **A Stay Pending Appeal Is Contrary to the Public Interest**

40.     Finally, and for all these same reasons, the public interest would not be

served by the granting of a stay.  "The public interest, in the context of a bankruptcy

proceeding, is in promoting a successful reorganization."  *Babcock*, 2000 WL

533492, at *19 (internal quotations omitted).  The Appeal lacks merit.  It would be

a waste of party, estate, and judicial resources to stay resolution of Daugherty's

Reserved Claim pending resolution of an appeal that will fail.  A stay pending the

Appeal would unnecessarily delay the resolution of the Bankruptcy Case.  *See Bohm*

*v. Howard (In re Howard)*, 422 B.R. 593, 605 (Bankr. W.D. Pa. 2010), *aff'd,*

2:10CV962, 2011 WL 578777 (W.D. Pa. Feb. 9, 2011) ("imposing a stay pending

appeal and permitting the Defendant to continue to dissipate assets of the estate does

nothing but delay this bankruptcy case and foster further litigation"); *ePlus, Inc. v.*

*Katz (In re Metiom, Inc.)*, 318 B.R. 263, 272 (S.D.N.Y. 2004) ("This Court finds

that the public interest in the expeditious administration of bankruptcy cases as well

as in the preservation of the bankrupt's assets for purposes of paying creditors, rather

than litigation of claims lacking a substantial possibility of success, outweighs the

public interest in resolving the issues presented here on appeal.").

41.     Further delay of this Adversary Proceeding would be detrimental to

Highland and the Claimant Trust Beneficiaries, as well as a waste of judicial

resources.  A stay of this litigation would also run afoul of Section 502, which allows

an estimation of a claim where, as here, liquidating through the usual adjudicatory process would "unduly delay" the administration of the case.  Daugherty fails to demonstrate the extraordinary remedy of a stay is warranted.

## IV.    <u>CONCLUSION</u>

Accordingly, Highland respectfully requests that the Court deny the Motion.

Dated: October 6, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**
*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This document complies with the word limit of Fed. R. Bankr. P. 8013(f)(3)(A) because, excluding the portions excluded by Fed. R. Bankr. P. 8015(g), this document contains 5,173 words.

2.      This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, typeface Times New Roman, 14-point type (12-point type of footnotes).

*/s/ Zachery Z. Annable*
Zachery Z. Annable

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 6, 2025, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon all parties receiving electronic notice in this case.

*/s/ Zachery Z. Annable*
Zachery Z. Annable