EXHIBIT

**G**

```
1                    CAUSE NO. DC-22-00304
2    SCOTT BYRON ELLINGTON        )       IN THE DISTRICT COURT
                                  )
3          Plaintiff,            )
                                  )
4    VS.                          )       101ST JUDICIAL DISTRICT
                                  )
5    PATRICK DAUGHERTY,           )
                                  )
6          Defendant.            )       DALLAS COUNTY, TEXAS
7    *********************************************************
8
                ORAL AND VIDEOTAPED DEPOSITION OF
9
                        PATRICK DAUGHERTY
10
                        AUGUST 28, 2025
11
12
13   *********************************************************
14
15
16        ORAL AND VIDEOTAPED DEPOSITION OF PATRICK DAUGHERTY,
17   produced as a witness at the instance of the PLAINTIFF,
18   and duly sworn, was taken in the above-styled and
19   numbered cause on the 28th day of August, 2025, from
20   1:01 p.m. to 5:27 p.m., before Kristi Klund, CSR in and
21   for the State of Texas, reported by machine shorthand, at
22   the law offices of Gray Reed, 1601 Elm Street, Suite
23   4600, Dallas, Texas, 75201, pursuant to the Texas Rules
24   of Civil Procedure and the provisions stated on the
25   record or attached hereto.
```

Page 1

```
 1                    A P P E A R A N C E S
 2
 3     FOR THE PLAINTIFF:
            MS. JULIE PETTIT
 4          THE PETTIT LAW FIRM
            1900 N. Pearl Street, Suite 1740
 5          Dallas, Texas  75201
            jpettit@pettitfirm.com
 6
       FOR THE PLAINTIFF:
 7          MR. MICHAEL K. HURST
            LYNN PINKER HURST & SCHWEGMANN, LLP
 8          2100 Ross Avenue, Suite 2700
            Dallas, Texas  75201
 9          mhurst@lynnllp.com
10     FOR THE DEFENDANT:
            MR. DREW YORK
11          GRAY REED
            1601 Elm Street, Suite 4600
12          Dallas, Texas  75201
            dyork@grayreed.com
13
       ALSO PRESENT:  Mr. Joe Willis (Videographer)
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 2

```
 1                            INDEX
                                              PAGE
 2
        Appearances...................................  2
 3      Stipulations..................................
 4      PATRICK DAUGHERTY
             Examination by Ms. Pettit..............   7
 5
        Signature and Changes......................... 223
 6      Reporter's Certificate........................ 225
 7                   PREVIOUSLY MARKED EXHIBITS
        NO.         DESCRIPTION                       PAGE
 8      Exhibit 6    Text messages
                     (DEF000236-DEF0000247)            38
 9      Exhibit 23   Transcript of Proceedings (2/2/21)  173
        Exhibit 30   e-mail                            92
10      Exhibit 36   e-mail from Patrick Daugherty
                     (Part 4)(JPS/ELL-011979-011983)   196
11      Exhibit 40   e-mail from Patrick Daugherty
                     (DEF014516-14517)                 193
12      Exhibit 44   e-mail from Patrick Daugherty (Part 3)
                     (DEF010757-010759)                195
13      Exhibit 90   Phone image log                   212
        Exhibit 328  Text messages
14                   (DEF000236-000239)                181
        Exhibit 377  e-mail from Patrick Daugherty (Part 2)
15                   (DEF00729-00730)                  194
        Exhibit 394  e-mail from Patrick Daugherty
16                   (DEF016322-DEF016324)             191
        Exhibit 982  Text message chain produced by
17                   Mr. Seery                         197
        Exhibit 1069 Declaration of John A. Morris     150
18
19                      MARKED EXHIBITS
        NO.         DESCRIPTION                       PAGE
20      Exhibit 1200 Plaintiff's First Requests for
                     Production to Patrick Daugherty    75
21      Exhibit 1201 Defendant's Responses to Plaintiff's
                     First Requests for Production      78
22      Exhibit 1202 Dallas Business Journal article    95
        Exhibit 1203 Series of e-mails
23                   (DEF026146-DEF026147)              98
        Exhibit 1204 Final Judgment                    124
24      Exhibit 1205 Verified Complaint (NexBank 2017) 132
        Exhibit 1206 Stipulation of Dismissal          134
25
```

Veritext Legal Solutions
800-336-4000

```
1                    CONTINUED MARKED EXHIBITS
2    NO.             DESCRIPTION                          PAGE
3    Exhibit 1207    Verified Complaint (2019)            135
     Exhibit 1208    Order Granting Motion to Dismiss     137
4    Exhibit 1209    Proof of Claim                       145
     Exhibit 1210    Schedules                            167
5    Exhibit 1211    Reorganized Debtor's Motion for
                     Entry of an Order Approving
6                    Settlement with Patrick Hagaman
                     Daugherty and Authorizing Actions
7                    Consistent Therewith                 176
     Exhibit 1212    Notes made by Julie Pettit           186
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                                    Page  4
```

1              THE VIDEOGRAPHER:  Good afternoon.  We're

2      going on the record at 1:01 p.m. on August the 28th,

3      2025.  Please note the microphones are sensitive and they

4      may pick up whispering and private conversations.  Please

5      mute your phones at this time.  This is the video

6      recorded deposition of Patrick Daugherty, taken by

7      counsel in the matter of Scott Byron Ellington versus

8      Patrick Daugherty, filed in the District Court of Dallas

9      County, Texas.  The Case Docket Number is 22-00304.  The

10     location of the deposition is a 1601 Elm Street, Dallas,

11     Texas.

12         My name is Joe Willis representing Veritext.  I am

13     the videographer.  The court reporter is Kristi Klund

14     from the firm Veritext.  I'm not related to any party in

15     this action, nor am I financially interested in the

16     outcome.  If there are objections to proceeding, please

17     state them at the time of your appearance.  Will counsel

18     and all present, including -- well, nobody is remote.

19     Please state your appearance and affiliation for the

20     record.

21              MS. PETTIT:  Julie Pettit for the

22     Plaintiff.

23              MR. HURST:  Michael Hurst for the

24     Plaintiff, Scott Ellington.

25              MR. YORK:  Drew York for Patrick

```
1    Daugherty.  And Ms. Pettit, just a quick clarification
2    question.  So the Court's Order on this deposition that
3    we're here today was compartmentalized into two parts.
4    One being that there were questions that were asked at
5    Mr. Daugherty's deposition previously that he was
6    instructed to answer that he did not answer.  And the
7    Court has allotted three hours -- up to three hours for
8    those questions for which he's not to be instructed not
9    to answer again.  And then the remaining hour and 55
10   minutes from the original time available for the first
11   deposition may be used and is not limited in scope.  Are
12   you intending to segment your examination into --
13                   MS. PETTIT:  Yes.
14                   MR. YORK: -- these two parts?
15                   MS. PETTIT:  It will be in two parts.
16                   MR. YORK:  And which part are you
17   intending to do first?
18                   MS. PETTIT:  The unanswered questions.
19                   MR. YORK:  Okay.  And would you let me --
20   I mean, I've got the list here but then just so that we
21   can try to keep this on task today, when we get to the
22   points those are done we can --
23                   MS. PETTIT:  I will let you know.
24                   MR. YORK:  Thank you.
25                   MS. PETTIT:  Yep.
```

Page 6

```
 1              MR. YORK:  Okay.

 2                    PATRICK DAUGHERTY,

 3   after having been first duly sworn, testified as follows:

 4                        EXAMINATION

 5   BY MS. PETTIT:

 6       Q.   All right.  Good afternoon, Mr. Daugherty.  Can

 7   you please state your name for the record?

 8       A.   Patrick Hagaman Daugherty.

 9       Q.   And in your last deposition we discussed a

10   company by the name of Corinthian Capital and you were

11   instructed not to answer who the owner was of that

12   company.  Can you identify who the owner is?

13       A.   I'm not familiar with Corinthian Capital.

14       Q.   You've never heard of Corinthian Capital?

15       A.   No.  You want me to help you?  I think it's

16   Corinthian Healthcare.

17       Q.   Okay.  Corinthian Healthcare.  Who is the owner

18   of Corinthian Healthcare?

19       A.   As I understand it, Judy McNeel.

20       Q.   You said Judy --

21       A.   McNeel?

22       Q.   -- McNeel.  And how do you know Ms. McNeel?

23       A.   She is my mother-in-law.

24       Q.   Okay.  Does the owner of Corinthian have any

25   knowledge about your investigation of Mr. Ellington in
```

Page 7

1                    MR. YORK:  Object to form.

2          A.    I guess somebody came down to the lobby to

3    greet me, a baldheaded guy that was tall, and a woman and

4    they brought me up and then I met with Seery up there,

5    some other people one time.  I don't know.  I just --

6          Q.    (BY MS. PETTIT)  Other than Seery, who did you

7    meet with?

8          A.    I mean, do you count these people that -- this

9    one guy was an accountant and I think -- and the woman

10   was I want to say some level of administrative role.  I

11   just -- I don't recall.

12         Q.    Anyone else that you know by name?

13         A.    No.

14         Q.    What were the purposes of your meetings at the

15   Highland Capital offices?

16         A.    To discuss settlement issues.

17         Q.    Did you negotiate the agreements while you were

18   there in the office?

19                    MR. YORK:  Object to form.

20         A.    I just don't -- I don't recall.  I mean, the

21   negotiations took place starting in 2020 and went all the

22   way to November 2021.  So various things got determined

23   at various times.

24         Q.    (BY MS. PETTIT)  Did you ever sign any

25   agreements while you were there?

                                            Page 100

1          A.    No.   I don't think so.   If you have something
2     that can refresh my memory, but I don't recall signing
3     anything.
4          Q.    Did you provide any information, such as the
5     data compilations during any of the meetings at
6     Highland's offices?
7          A.    No.   I think that had all been done before for
8     the most part.   I mean, I don't know -- some of the data
9     compilations I resent when -- what's his name -- you
10    know, there's two phases.   There's the Highland
11    bankruptcy where there was a creditor's committee and
12    then there was the emergence from bankruptcy which I want
13    to say was August 2021.   And so, parts of my deal were
14    negotiated prior to that August -- oh, confirmation and
15    emergence.   And then after August, the creditor's
16    committee went away and in came the claimant trust and
17    the claimant litigation trustee, if I'm recalling this
18    correctly, and -- so, yeah, I mean some were done before
19    and some were done after.
20         Q.    Did you ever take any of your Ellington
21    Recordings, according to my definition, to your meetings
22    at the Highland offices?
23                 MR. YORK:   Object to form.
24         A.    Yeah, I don't know what an Ellington Recording
25    is.   I don't think I have any Ellington Recordings.

                                              Page 101

1        Q.    (BY MS. PETTIT)   Okay.   So I'll represent to

2    you that we consider your photos that you produced in

3    this case Ellington Recordings, according to our

4    definition in Request For Production?

5        A.    That's a weird definition.   I don't agree with

6    it.

7        Q.    Okay.   I understand you don't agree with it,

8    but I'm asking you using that definition did you provide

9    or bring any Ellington Recordings with you to the

10   deposition -- excuse me -- to the meeting at Highland's

11   offices?

12                  MR. YORK:   Hold on.   Object to form,

13   compound.

14       A.    Yeah, look, I'm going to try and just cut

15   through it.   Because I don't like the question.   It

16   doesn't make much sense, but I didn't bring any pictures

17   of Ellington.

18       Q.    (BY MS. PETTIT)   Well, what about the other

19   photos that you produced in this case?   Did you take any

20   of those pictures with you?

21       A.    What photos are you talking about?

22       Q.    Any photo that you've produced in this case.

23       A.    I don't -- no.   I didn't bring any photos to

24   their offices, no.

25       Q.    Okay.

Page 102

1          A.   On those occasions.

2          Q.   All right.

3          A.   And by the way, I never sent them any photos.

4    The only photo that was sent was of Ellington standing in

5    the front yard when he'd gone AWOL.

6          Q.   That's the only photo you sent to Jim Seery?

7          A.   Of -- of Ellington?  Of Ellington?

8          Q.   Of any photo that was produced in this case.

9          A.   Oh, no.  I mean, I sent the Highland employee

10   that was -- what was her name -- Sarah Beth Goldsmith or

11   she was Sara Bell back then.  Yeah, she was a Highland

12   employee.  Ellington had been fired for over a month and

13   I'm like, oh, by the way, your employee's over here at

14   Ellington's place.  And she's like, she's no longer an

15   employee, blah, blah, blah.  And that was like two days

16   before; and I think he even mentioned in his deposition

17   it was kind of suspicious why -- why she was over there.

18   I did send him those pictures.

19         Q.   Okay.

20         A.   And -- and, look, if you have others, just

21   remind me.  Stop trying to trick me.

22         Q.   Okay.  I have not had a chance yet to listen to

23   the exhibit or the document recording that you-all

24   produced labeled DEF53104, but can you just tell me

25   generally what that is?

                                                 Page 103

1          A.    Seery's lying.

2          Q.    And what is he lying about?

3          A.    Not knowing about my investigation, not knowing

4     about multiple things.

5          Q.    And when was this recording made?

6          A.    I want to say May 2022.

7          Q.    So was it before or after his deposition?

8          A.    Who's deposition?

9          Q.    Mr. Seery?

10         A.    Before.

11         Q.    So you have a recording of Mr. Seery prior to

12    his deposition which is now inconsistent, you're saying,

13    with his deposition?

14         A.    Correct.

15         Q.    Okay.  And why did you make that recording at

16    the time?

17         A.    Oh, because people lie, deny and die.

18         Q.    What does that mean?

19         A.    What do you think it means?  It means what it

20    says.  People lie, you know, like Mr. Hurst to a jury or

21    Mr. Seery in this case; and people deny, like Ellington,

22    et cetera and lie and some people die -- some witnesses

23    die over time.  And so I made that recording to do -- to

24    just trust but verify, you know.  I didn't want there to

25    be a situation where somebody turned on me and said, hey,

                                              Page 104

```
1    I had no idea and that's kind of what happened in that

2    deposition.  And we gave him every opportunity to set the

3    record straight and he chose not to.

4        Q.   What do you mean by you gave him every

5    opportunity?

6        A.   We asked him to clarify.

7        Q.   During the deposition?

8        A.   I think so --

9        Q.   Okay.

10       A.   -- yeah, and he dug in -- foolishly so, in my

11   opinion.

12       Q.   Are there any other recordings that you have

13   between you and Mr. Seery?

14       A.   Yes.

15            MR. YORK:  Object to form.

16       A.   I'm sorry, yes.

17       Q.   (BY MS. PETTIT)  Do any of them involve

18   Mr. Ellington?

19            MR. YORK:  Objection to form.

20       A.   No.

21       Q.   (BY MS. PETTIT)  Is there any other -- was this

22   recording made at an in-person meeting or over the phone?

23       A.   Phone.  He was in New York.  I was in Dallas.

24       Q.   Do you know if New York is a one or two-party

25   state?
```

Page 105

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.


Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Patricia Perkins Mayes on behalf of Julie Pettit
Bar No. 24065971
pperkins@pettitfirm.com
Envelope ID: 107366736
Filing Code Description: Motion - Compel
Filing Description: ENVELOPE #107366736 DOC001
Status as of 10/28/2025 12:51 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Ruth Ann Daniels | | rdaniels@grayreed.com | 10/28/2025 10:48:12 AM | SENT |
| Susan Langley | | slangley@grayreed.com | 10/28/2025 10:48:12 AM | SENT |
| Nancy Ward | | nward@grayreed.com | 10/28/2025 10:48:12 AM | SENT |
| Julie Pettit | | jpettit@pettitfirm.com | 10/28/2025 10:48:12 AM | SENT |
| Drake M.Rayshell | | drayshell@grayreed.com | 10/28/2025 10:48:12 AM | SENT |
| Julie Pettit | | jpettit@pettitfirm.com | 10/28/2025 10:48:12 AM | SENT |
| Beverly Congdon | | bcongdon@lynnllp.com | 10/28/2025 10:48:12 AM | SENT |
| Patricia Perkins Mayes | | pperkins@pettitfirm.com | 10/28/2025 10:48:12 AM | SENT |
| Michael K.Hurst | | mhurst@lynnllp.com | 10/28/2025 10:48:12 AM | SENT |
| Mary GoodrichNix | | mnix@lynnllp.com | 10/28/2025 10:48:12 AM | SENT |
| Nathaniel A.Plemons | | nplemons@lynnllp.com | 10/28/2025 10:48:12 AM | SENT |
| CH Litigation Services | | chefiling@lw.com | 10/28/2025 10:48:12 AM | SENT |
| Shannon McLaughlin | | shannon.mclaughlin@lw.com | 10/28/2025 10:48:12 AM | SENT |
| Gina Flores | | gflores@lynnllp.com | 10/28/2025 10:48:12 AM | SENT |
| Jamie R.Drillette | | jdrillette@lynnllp.com | 10/28/2025 10:48:12 AM | SENT |
| Melange Gavin | | Melange.Gavin@lw.com | 10/28/2025 10:48:12 AM | SENT |
| Julie Pettit | | jpettit@pettitfirm.com | 10/28/2025 10:48:12 AM | SENT |
| Richard  L.Wynne | | richard.wynne@hoganlovells.com | 10/28/2025 10:48:12 AM | SENT |
| Edward  J.McNeilly | | edward.mcneilly@hoganlovells.com | 10/28/2025 10:48:12 AM | SENT |
| Andrew York | | dyork@grayreed.com | 10/28/2025 10:48:12 AM | SENT |
| Andy Kim | | akim@lynnllp.com | 10/28/2025 10:48:12 AM | SENT |