Jason S. Brookner (Texas Bar No. 24033684)
Andrew K. York (Texas Bar No. 24051554)
Joshua D. Smeltzer (Texas Bar No. 24113859)
J. Reid Burley (Texas Bar No. 24109675)
Drake M. Rayshell (Texas Bar No. 24118507)
GRAY REED
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email:     jbrookner@grayreed.com
           dyork@grayreed.com
           jsmeltzer@grayreed.com
           rburley@grayreed.com
           drayshell@grayreed.com

*Counsel to Patrick Daugherty*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | § § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | |
| Plaintiff, | § § | |
| v. | § § § | Adversary No. 25-03055 |
| PATRICK HAGAMAN DAUGHERTY, | § § § | |
| Defendant. | § § § § | |

---

[1]   Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

4931-1540-7776

## PATRICK DAUGHERTY'S TRIAL BRIEF

Pursuant to the Order Approving Second Stipulated Scheduling Order [Docket No. 94], Defendant/Counter-Plaintiff Patrick Daugherty ("Daugherty") files his trial brief and would show the Court as follows[2]:

### PRELIMINARY STATEMENT

1. As set forth below, and as the evidence will show at the hearing, Daugherty's Reserved Claim[3] should be allowed. The Compensation and Benefits Statement ("Compensation Statement") that Highland issued to Daugherty constitutes a separate, enforceable unilateral contract between the parties that cannot be properly estimated at this time due to numerous uncertainties. Finally, Highland materially breached the Books and Records provision in their Settlement Agreement because Highland failed to provide Daugherty with all books and records in its possession, custody and control that related to HERA and ERA.

**I.     The Court should allow Daugherty's Reserved Claim.**

   **A.     Legal standard for allowance.**

1. The Court show allow Daugherty's Reserved Claim because it is an allowable contract claim that Highland cannot rebut. But even if Highland overcomes its burden and rebuts the prima facie case created by the filing of the claim, Daugherty can still prove the allowable nature of the Reserved Claim prove by a preponderance of the evidence. As the Fifth Circuit has

---

[2]     Daugherty reserves the right to amend or supplement the arguments in his trial brief. Daugherty filed a Motion to Dismiss Highland's adversary Complaint [Docket No. 5], and Highland filed a Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024 [Docket No. 10]. The Court denied the Motion to Dismiss and granted the Cross Motion. Daugherty filed an appeal therefrom, which remains pending. Nothing herein constitutes a waiver of that appeal.

[3]     All capitalized terms herein shall have the same meaning ascribed to them in Highland's Adversary Complaint against Daugherty [Docket No. 1].

4931-1540-7776

held when analyzing 11 U.S.C. § 502, "a party correctly filing a proof of claim is deemed to have established a prima facie case against the debtor's assets." *In re Fid. Holding Co., Ltd.,* 837 F.2d 696, 698 (5th Cir. 1988). Under Section 502(a) of the Code, a proof of claim filed pursuant to Section 501 "is deemed allowed, unless a party in interest…objections." 11 U.S.C. § 502(a).

2.     Upon the filing of an objection, the burden shifts to the debtor as the objecting party. Once the objection is on file, the objecting party must "produce evidence tending to defeat the claim that is of a probative force equal to that of the creditor's proof of claim." *In re Simmons*, 765 F.2d 547, 552 (5th Cir. 1985). And if the objecting party does not produce sufficient evidence, "the claimant will prevail." *In re Fid. Holding Co., Ltd.*, 837 F.2d at 698. It is, therefore, critical to appreciate that "mere allegations unsupported by evidence are insufficient to rebut the prima facie case." *Matter of TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992). Only if the objecting party presents sufficient evidence to rebut the claimant's prima facie case does the ultimate burden shift back to the claimant.

3.     When the ultimate burden rests with the claimant, the claimant must merely prove the merits of its claim by a preponderance of the evidence. *See In re Fid. Holding Co., Ltd.*, 837 F.2d at 698. Moreover, when the burden rests with the claimant, the "basic federal rule in bankruptcy is that state law governs the substance of claims." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13, 15 (2000). Here, as detailed below, Texas law applies to the Reserved Claim.

4.     On December 23, 2020, Daugherty filed his claim as Proof of Claim No. 205 – the "Reserved Claim" as previously defined. The Reserved Claim superseded and amended Daugherty's prior claims filed as Proof of Claim Nos. 67 and 77. Daugherty's Reserved Claim established a prima facie case of allowance and validity, and it is Highland's burden to come

forward and rebut. Specifically, Highland must produce "evidence tending to defeat the claim that is of a probative force equal to that of the creditor's proof of claim." *In re Simmons*, 765 F.2d 547, 552 (5th Cir. 1985). If Highland cannot do that, Daugherty's claim stands. And if the Court does find that Highland has met its burden in rebutting the prima facie case, Daugherty can (and will) put forward substantial evidence at trial to prove his claim by a mere preponderance of the evidence. As detailed below, Daugherty's claims against Highland pursuant to the Compensation Statement and the Settlement Agreement are meritorious and the Court should, therefore, allow them.

**B.      The Compensation Statement created a unilateral contract under Texas law.**

5.      The Compensation Statement (Highland's Exhibit 13), when read in conjunction with the Amended Employment Agreement (Highland's Exhibit 11), created an enforceable unilateral contract between Daugherty and Highland.  In Texas, a unilateral contract is "created by the promisor promising a benefit if the promisee performs.  The contract becomes enforceable when the promisee performs." *Vanegas v. American Energy Services*, 302 S.W.3d 299, 302 (Tex. 2009) (citing *Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.*, 265 S.W.3d 496, 503 (Tex. App.—Dallas 2008, no pet.)).

6.      In the employment context, a unilateral contract is created when "an employer promises an employee certain benefits in exchange for the employee's performance, and the employee performs." *City of Hous. v. Williams*, 353 S.W.3d 128, 136 (Tex. 2011).  For instance, in *Vanegas*, the supreme court held that a unilateral contract could be formed when an employer offered to share proceeds of a sale of the company with employees if the employees stayed employed until the sale occurred.  302 S.W.3d at 303.  In that case, the supreme court held that "[w]hether the promise was illusory at the time it was made is irrelevant; what matters is whether

the promise became enforceable by the time of the breach." *Id.* (quoting 2 Joseph M. Perillo &

Helen Hadjiyannakis Bender, *Corbin on Contracts* § 6.2 (1995)) ("[U]nilateral contract analysis

is applicable to the employer's promise to pay a bonus or pension to an employee in case the latter

continues to serve for a stated period.").

7.      Section 61.015 of the Texas Labor Code governs the payment of bonus

compensation in Texas.  *See* Tex. Labor Code Ann. § 61.015.  That statute provides that "[w]ages

paid on commission and bonuses are due according to the terms of: (1) an agreement between the

employee and employer; or (2) an applicable collective bargaining agreement." *Id.* Additionally,

"[a]n employer shall pay wages paid on commission and bonuses to an employee in a timely

manner as required for the payment of other wages under this chapter." *Id.*

8.      It is well-established law in Texas that "instruments pertaining to the same

transaction may be read together to ascertain the parties' intent, even if the parties executed the

instruments at different times and the instruments do not expressly refer to each other." *Fort Worth

Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (internal citations omitted;

*see also Jim Walter Homes, Inc. v. Scheunemann*, 668 S.W.2d 324, 327 (Tex. 1984) (same); *Jones

v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981) (same).  "[A] court may determine, as a matter of law,

that multiple documents comprise a written contract." *Id.* (citing *Jones*, 614 S.W.2d at 98; *Miles

v. Martin*, 321 S.W.2d 62, 65 (Tex. 1959); *Braniff Inv. Co. v. Robertson*, 81 S.W.2d 45, 47 (Texas

1935)).

9.      The supreme court has stated that together, the documents must define the

"essential terms" of the contract, including "'the time of performance, the price to be paid, … [and]

the service to be rendered.'" *City of Hous.*, 353 S.W.3d at 139-40 (citing *Kirby Lake Dev. Ltd. v.

Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010); *Liberto v. D.F. Stauffer Biscuit*

*Co.*, 441 F.3d 318, 324 (5th Cir. 2006)). In the context of employment agreements, "typical essential terms include, among others, 'compensation, duties or responsibilities.'" *Id.* (citing *Martin v. Credit Prot. Ass'n Inc.*, 793 S.W.2d 667, 669 (Tex. 1990)). Courts applying Texas law must determine whether the referenced documents, read together, "demonstrate a manifestation of [the employer's] intention to be bound to provide [the referenced benefits.]" *Parvis-Khyavi v. Alcon Laboratories, Inc.*, 395 S.W.3d 376, 382 (Tex. App.-Dallas 2013, pet. denied) (citing *City of Hous.*, 353 S.W.3d at 138)).

10. Here, the applicable documents between Highland and Daugherty are the Amended Employment Agreement and the Compensation Statement. The Amended Employment Agreement provides, at Article III, subsection (a):

> The annual salary (the "**Base Salary**") payable to [Daugherty] during the term of this Agreement shall be an amount determined by the Company (in its sole discretion) and communicated in writing to [Daugherty], and will be subject to annual review pursuant to the Company's normal review policy for other similarly situated executives of the Company. Any increase in salary shall be based upon [Daugherty's] performance and shall be determined by the Company in its sole discretion. In addition, the Company may from time to time award bonuses to [Daugherty] based on such criteria as the Company may establish in its discretion. Any such bonus, unless specifically stated otherwise, will be paid in three (3) equal installments and is not earned or accrued until each payment date. [Daugherty] must be employed on the payment date(s) in order to be eligible for the bonus. The payment of salary and bonuses shall be subject to federal, state, and withholding taxes, social security deductions and other general obligations. Furthermore, the designation of [Daugherty's] compensation does not constitute a guarantee of employment for any specified period of time.

Highland Ex. 11, p. 4, art. III.1(a) (emphasis in original). In the Amended Employment Agreement, Highland sets out specific conditions for Daugherty's eligibility for bonus compensation, and the services to be rendered by Daugherty. *See id.* at p. 3, art. II.1-2. Additionally, Article 3(a) of the Amended Employment Agreement states that, on an annual basis, Highland was to determine Daugherty's annual salary and bonus compensation for each year and

-6-

4931-1540-7776

communicate the same "in writing" in the annual Compensation Statement. Thus, the Amended Employment Agreement, read alone, does not establish Highland's "intention to be bound to provide" bonus compensation to Daugherty. *Alcon Laboratories*, 395 S.W.3d at 382. However, when read in connection with the Compensation Statement, Highland's intent to guarantee Daugherty's compensation is plain.[4]

11. The Compensation Statement specifically stated that Daugherty would receive $1,475,816, labeled as a "2008 Tax Refund" but included as part of his "Earnings and Awards" for his service as an employee of Highland during the 2008 year. *See* Compensation Statement, p. 1. Base salary was specifically denoted, as were his "paid benefits" in a separate category. *Id.* Additionally, the Compensation Statement contained the following statement: "Refund is an estimated amount. If actual refund deviates materially from estimate, other compensation will be fairly adjusted. Refund is expected to be received in approximately 4 months." *Id.*

12. There is no question that the 2008 Tax Refund amount was included in the total of Daugherty's promised "Earnings and Awards" as part of his service to Highland in 2008. *See, e.g., id.* ("2008 Base Salary, as of 12/31/08," "2008 Deferred Compensation," and "2008 Other Awards.") There is no question that Daugherty performed his required services for Highland in 2008, nor that he continued to be an employee of Highland until 2011. The only question was whether the actual amount he received as a "refund" would "deviate materially" from the estimate based on the IRS review, at which point Highland promised to fairly indemnify him by adjusting his compensation.

---

[4]    In Texas, when an employment agreement sets out an employee's eligibility for a discretionary bonus, courts look to additional documentation signaling an employer's promise or guarantee of a bonus in a "fixed, nondiscretionary amount." *See Shanklin v. Columbia Management Advisors, L.L.C.*, Civ. Act. No. H-07-2690, 2008 WL 4899631 at *12-*13 (S.D. Tex. Nov. 12, 2008) (contrasting the difference between an employer's guarantee of a bonus in a fixed amount and a bonus offered discretionarily without any evidence of a promise or consideration).

**C.      Highland cannot say it satisfied its obligations under the Compensation Statement.**

13.      Highland asserts it "satisfied any obligations long ago because Daugherty received a tax refund from the IRS." Joint Pretrial Order at ¶ 40. But this completely ignores the fact that Highland's own partnership filing is being audited and subject to adjustment, which means that Daugherty's personal tax return, and thus the amount of the refund, are subject to adjustment.   In fact, Highland recognized the possibility that its partnership filing would be audited and was subject to adjustment.  It told the profits interest partners that the refund could be "claw[ed] back . . . if the return if [sic] audited and the outcome is negative." Highland Ex. 39. Moreover, Highland agreed in the Compensation Statement to "fairly adjust" other compensation to Daugherty to cover any difference between the estimated and actual tax refund.  Given that Highland's dispute with the IRS over the audit of the partnership filing is still ongoing, and thus Daugherty's refund is subject to "claw back,' and thus the actual refund may change, Highland cannot be said to have "satisfied" its obligations to Daugherty under the Compensation Statement.

**D.      The Employment Agreement is a red herring.**

14.      Highland next argues that if the Compensation Statement is an enforceable contract, Daugherty's Reserved Claim is barred by the Amended Employment Agreement.  Joint Pretrial Order at ¶ 44.  Specifically, Highland argues that because Article III.1(a) of the Amended Employment Agreement provides that "[t]he Executive must be employed on the payment date(s) in order to be eligible for the bonus[,]" Daugherty was no longer eligible for any bonus under the Amended Employment Agreement after the date he terminated his employment on October 31, 2011. *Id.* at ¶¶ 44-45.  Not so.

15.      Article III.1(a) of the Amended Employment Agreement provides that bonus compensation, "**unless specifically stated otherwise,**" would be paid in three equal installments

-8-

and is not earned or accrued until each payment date. *See* Highland Ex. 11, p. 4, art. III.1(a) (emphasis added). However, in this instance, Highland chose to specifically state otherwise. Highland chose not to pay Daugherty three equal installments of his regular bonus compensation, but instead **guaranteed** that he would receive at least $1,475,816, labeled as a "2008 Tax Refund" and which was "expected to be received in approximately 4 months." *See* Compensation Statement, p. 1. Indeed, Daugherty was employed by Highland when he received payment of the 2008 Tax Refund, thus fulfilling the requirement in Article III.1(a) that he "must be employed on the payment date(s) in order to be eligible for the bonus." Highland Ex. 11, p. 4, art. III.1(a).

16.    However, Highland's obligations under the 2008 Compensation Statement did not end upon payment of the 2008 Tax Refund. As Highland acknowledged when it told the profits interest partners that the refund could be "claw[ed] back . . . if the return if [sic] audited and the outcome is negative", the 2008 Tax Refund was subject to considerable uncertainty. Highland, Ex. 39. Because of this uncertainty, Highland chose to guarantee the amount of compensation it promised to Daugherty by stating "[i]f actual refund deviates materially from estimate, other compensation will be fairly adjusted." Compensation Statement, p. 1.

17.    Highland also argues that Daugherty declined to sign a separation and release form referenced in his employment agreement, and thus "forfeited any right he may have had under the Compensation Statement." Joint Pretrial Order at ¶ 47; *see also id.* at ¶ 46. But the evidence will show that Highland never presented the separation and release form attached to Daugherty's employment agreement as Exhibit A upon Daugherty's resignation. *See* Highland Ex. 6 at RFA No. 8.

18.    Finally, Highland speciously claims that "the Parties never believed the Compensation Statement constituted an agreement that would survive Daugherty's termination

-9-

4931-1540-7776

from Highland" because a separate separation agreement was presented that Daugherty refused to sign. Joint Pretrial Order at ¶ 48. What Highland omits is that the separation agreement presented to Daugherty was part of a "all or nothing" package of proposed agreements that Highland demanded Daugherty sign following his resignation. Daugherty refused to do so. And just because Daugherty refused to sign a document that contained the same effective indemnification agreement contained in the Compensation Statement does not mean that Daugherty and Highland believed the Compensation Statement obligations would not survive Daugherty's resignation.

**II.     Once the Court allows Daugherty's claims, the Court should not feel burdened to estimate, as the Court has significant equitable authority to leave Daugherty's claims as-is until the IRS concludes its audit.**

19.     Although estimation is routinely used by courts to provide closure to a bankruptcy case, it is not a requirement. Courts have recognized that 11 U.S.C. § 502(c) only creates an obligation to estimate if certain factors are present. Specifically, it is only when "fixing or liquidating the claim would 'unduly delay' the reorganization proceeding," that a court should estimate a claim. *In re Continental Airlines, Inc.*, 57 B.R. 842, 844 (Bankr. S.D. Tex. 1985). Highland refuses to acknowledge that there are several scenarios in which a court can (a) refrain from estimating and (b) allow a claim to be revisited upon the occurrence of a future event.

20.     The court's conclusion in *In re Dow Corning* is instructive. *In re Dow Corning Corp.*, 211 B.R. 545 (Bankr. E.D. Mich. 1997). There, Dow Corning was involved in significant mass tort litigation. *Id.* at 549-50. After it filed for bankruptcy protection and the court became aware of the magnitude of the tort claims, the court explicitly declined to estimate the claims. *Id.* at 562. The court declined to estimate for several reasons: (a) the delay from liquidation would not be "undue", (b) estimation wasn't necessary for the plan of reorganization, (c) estimation would duplicate subsequent litigation proceedings. *Id.* at 562-66. Those same factors in the present case

4931-1540-7776

weigh in favor of not estimating Daugherty's claim. The Court can (and should) rely on its equitable authority to limit the relief that Highland seeks.

21. Importantly, the Court's analysis of what constitutes "undue delay" is a balance of the burden of estimation against the benefits of case administration. It is a matter of equity and here, it would be entirely inequitable for the Court to estimate Daugherty's claim. On one hand, if the Court were to estimate Daugherty's claims and that estimated claim value was less than Daugherty's liability as a result of the IRS audit, Daugherty will be without recourse against Highland for money he is owed. As an individual taxpayer with hundreds of thousands, if not millions, of dollars on the line, that is substantially prejudicial to Daugherty. On the other hand, if the Court did not estimate Daugherty's claim and left it open until the IRS audit is complete, the burden on Highland would be minimal. As Highland itself stated, the resolution of "Daugherty's Reserved Claim" is one of only a few remaining items prior to dissolution. Docket No. 10 at p. 3. But Highland points to no burden in delaying its own dissolution. The present situation is distinct from a situation where a debtor is looking to quickly and efficiently exit a reorganization. There, Daugherty would appreciate the urgency in which that debtor sought to exit bankruptcy. That is decidedly not the case here.

22. The present situation is a result of Highland's own decision making. Only Highland and its Tax Matters Partner have insight into the IRS' audit and Highland's ongoing discussions with the IRS. But regardless of that insight, Highland chose to create a framework where it sought to dissolve prior to the IRS' final determination resulted in the present quagmire. Highland could have—quite easily—waited on the results of the IRS audit and then cleanly moved forward with adjudicating Daugherty's claim. Instead, Highland chose to seek rescission of the Settlement Agreement between it and Daugherty so it could file an adversary complaint and increase its

-11-

litigation pressure on Daugherty. No one—not the IRS, not Daugherty, not the Court—forced Highland to sue Daugherty. That was Highland's choice. The Court should heavily consider the fact that it was Highland's own actions that are the sole cause of this dilemma in which the parties find themselves.

23.     In situations where neither the case law nor the code squarely addresses the facts at hand, the Court is well within its inherent, equitable powers to address unique situations in an equitable manner. As other bankruptcy courts in Texas have stated, "[Section 105 serves] to fill gaps Congress less unanswered so that the Rules and the Code operate consistent with their purposes." *In re IFS Financial Corp.*, 417 B.R. 419, 448 (Bankr. S.D. Tex. 2009) (citing *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 369 B.R. 436, 460 (Bankr. S.D. Tex. 2008). Here, the Court has the absolute right to manage Highland's dissolution and the remaining claims how it sees fit. Daugherty asks the Court to refrain from estimating his allowed claim and instead, allow the IRS audit to run its course. Then, the parties will have the information they need to cleanly and efficiently conclude Highland's protracted bankruptcy.

**III.     The Court should remedy Highland's breach of the Settlement Agreement by requiring, through specific performance, Highland to transfer the totality of its interests in HERA and ERA to Daugherty.**

    **A.     Highland breached the parties' Settlement Agreement by failing to fully transfer its "Interests" in HERA and ERA, including all of their books and records, to Daugherty.**

24.     The parties' Settlement Agreement (Daugherty Exhibit PD-3, Main Bankr. (19-34054) Doc. No. 3089-1) provides that Delaware law governs its interpretation. PD-3 at § 22. Delaware follows the objective theory of contracts: a contract's construction should be that which would be understood by an objective, reasonable third party, and courts enforce the plain, ordinary meaning of clear and unambiguous language. *Vill. Practice Mgmt. Co. LLC v. West*, 342 A.3d 295,

4931-1540-7776

314 (Del. 2025); *Gunderson v. Trade Desk, Inc.*, 326 A.3d 1264, 1273, 1280 (Del. Ch. 2024), *as corrected* (Nov. 8, 2024); *Tatum v. Fairstead Affordable LLC*, 347 A.3d 1221, 1252 (Del. Ch. 2025). Delaware courts read the agreement as a whole, give effect to all its provisions, and give priority to the parties' intentions as reflected in the four corners of the agreement. *Origis USA LLC v. Great Am. Ins. Co.*, 345 A.3d 936, 952 (Del. 2025); *Johnson & Johnson Fortis Advisors LLC*, No. 490, 2024, 2026 WL 89452, at *25 (Del. Jan. 12, 2026); *Parke Bancorp Inc. v. 659 Chestnut LLC*, 217 A.3d 701, 715 n. 52 (Del. 2019).

25.     Highland's cramped reading of Section 8—which, as described below, is the section mandating that Highland turnover certain interests of HERA and ERA to Daugherty—ignores the Agreement's plain language and evident purpose. The Agreement required Highland to "transfer its interests in HERA and ERA to Daugherty" "[t]o facilitate [the] recovery of [] potential claims" belonging to those entities against third parties. PD-3 at § 8. Highland's "interests" is a broad term encompassing all ownership rights, property, data, documents, and records relating to HERA and ERA. The Agreement confirms this by specifying that "[s]uch transfer will *include* the HERA and ERA books and records (spreadsheet) maintained on [Highland's] system"—expressly identifying books and records as one component of Highland's "interests," not the entirety. *Id.* (emphasis added).

26.     First, the operative term is Highland's "interests" — the full scope of what Highland possessed relating to HERA and ERA. The word "include" is critical: it signals that books and records are one component of the broader "interests" being transferred, not the only thing being transferred. While Highland may argue "(spreadsheet)" limits this to a single document or subset of documents, "books and records" is a comprehensive term of art, with "(spreadsheet)" identifying merely one format. The inclusive "include" contrasts with the following sentences

-13-

4931-1540-7776

where the drafters expressly limited the transfer using "without." *Id.* Had the parties intended to limit the transfer to a single spreadsheet, they would have used "consist of" or "limited to"—not "include," a term of expansion.

27.     Second, the stated purpose of "to facilitate the recovery of… potential claims" requires a broad interpretation of Highland's "interests." Daugherty needs complete access to all HERA and ERA materials in Highland's possession to meaningfully pursue those claims. A narrow reading would frustrate the express purpose the parties articulated. Because Daugherty was to receive Highland's full "interests" in HERA and ERA—including all "potential claims"—he must receive everything Highland possessed relating to those entities. To hold otherwise would render the transfer illusory and largely meaningless.

28.     The record confirms Highland's breach. Daugherty requested these materials so HERA and ERA could pursue potential claims against bad actors not released under the Agreement. Main Bankr. Case No. 19-34054, Doc. No. 4449 at Ex. B, Decl. of P. Daugherty at ¶ 2. Highland refused. *Id.* HERA has since sued James Dondero, Mark Okada, Scott Ellington, and others, relying on records that Abrams & Bayliss—not Highland—produced. *See id.* at ¶ 3; Ex. B-1; Ex. B-2. These documents plainly fall within Highland's "interests," yet Highland refuses to produce them.

29.     Highland has thus breached its obligation to transfer its "interests" in HERA and ERA, including the full scope of their books and records. Its refusal to produce all materials relating to those entities—while they pursue the very claims the Agreement was designed to facilitate—cannot be squared with the Agreement's plain language, its purpose, or Delaware law. The Court should give "interests" and "books and records" the broad reading the terms deserve. Having established Highland's breach, the question becomes remedy.

-14-

4931-1540-7776

**B.      Daugherty is entitled to specific performance requiring Highland to produce the entirety of HERA and ERA's books and records.**

30.      Specific performance is "the decisively preferable remedy" when a party breaches a contract involving unique subject matter and damages cannot be reasonably calculated. *In re IBP, Inc. S'holders Litig.*, 789 A.2d 14, 22 (Del. Ch. 2001). To obtain this remedy, a plaintiff must prove by clear and convincing evidence: (1) a valid contract exists, (2) the plaintiff is ready, willing and able to perform, (3) a legal remedy would be inadequate, and (4) the balance of equities tips in favor of the party seeking specific performance. *Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 495 (Del. Ch. 2022). Here, the validity of the Settlement Agreement is undisputed. Highland does not contest Daugherty's full performance. *See* Docket No. 100, Joint Pretrial Order. Highland's refusal to produce the books and records of HERA and ERA thus squarely presents the question of remedy—and equity demands specific performance.

31.      Delaware courts "read a contract as a whole and [] give each provision and term effect, so as not to render any part of the contract mere surplusage." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010). Section 8 of the Settlement Agreement exists for one express purpose: "to facilitate the recovery of potential claims." Highland's position—that it may retain HERA and ERA's books and records while claiming to have transferred the relevant interests—eviscerates that purpose entirely. One cannot "facilitate the recovery of potential claims" without permitting access to the records necessary to identify, investigate, and prosecute those claims. Highland's interpretation is precisely the kind of "absurd" reading that "no reasonable person would have accepted when entering the contract." *Id.* at 1160.

32.      In *Lee Builders, Inc. v. Wells*, the Court of Chancery granted specific performance (despite arguments about contractual uncertainty), reasoning that "it is obvious that what was intended by the parties was to furnish defendants with such improvements as were necessary and

-15-

suitable by reason of the contemplated…" purpose of the agreement. *Lee Builders, Inc. v. Wells*, 92 A.2d 710, 715 (Del. Ch. 1952). The same principle applies here. Denying specific performance would defeat the very purpose for which the parties agreed to when drafting Section 8.

33.     The books and records at issue are not fungible assets that can be replaced or monetized. They are the sole repository of information about HERA and ERA's operations, transactions, and potential claims against bad actors. Delaware courts recognize that specific performance is particularly appropriate where the subject matter is unique. *Osborn*, 991 A.2d at 1161-62; *see also IBP*, 789 A.2d at 82-83 (granting specific performance where merger represented "a truly unique opportunity that cannot be adequately monetized").

34.     Any damages calculation would necessarily be speculative. In *IBP*, the court granted specific performance in part because calculating damages would "lack any pretense to precision" and would require the parties to "haggle over huge valuation questions." 789 A.2d at 83. Here, the speculative nature of damages is even more pronounced. The HERA litigation is in its infancy (motion to dismiss stage) with no outcome in sight. Specific performance avoids this inequity by "entirely eliminat[ing] the need for a speculative determination of damages." *Id.*

35.     The balance of equities tips decidedly in Daugherty's favor. First, Daugherty comes to this Court with clean hands, having fully performed his obligations under the Settlement Agreement. *See Osborn*, 991 A.2d at 1162. Second, the relief sought is discrete and readily enforceable: Highland possesses the books and records, and the Court need only order their production. The Court need not supervise compliance; there is no complex compliance process nor is there a conflict with other proceedings. *26 Capital Acquisition Corp. v. Tiger Resort Asia Ltd.*, 309 A.3d 434, 466-72 (Del. Ch. 2023) (denying specific performance where enforcement would be complex and foreign court orders created conflict). Third, Highland can demonstrate no

-16-

hardship from being required to honor its contractual commitment—mere inconvenience has never constituted grounds for denying specific performance. *See Osborn*, 991 A.2d at 1162. Finally, the purpose of the Settlement Agreement—to allow Daugherty to pursue claims on behalf of HERA and ERA—can only be achieved through specific performance.

36.     Specific performance is the only adequate remedy. Daugherty is entitled to an order compelling Highland to produce the entirety of HERA and ERA's books and records.

**C.     The statute of limitations does not bar Daugherty's books and records claim.**

37.     As discussed below, Federal courts located in Texas apply Texas' four-year statute of limitations to breach of contract claims. The Court entered the order approving the parties' Settlement Agreement[5] in March 2022, and Daugherty filed his breach of contract claim on October 3, 2025 — less than four years later.  Even more, Highland and Daugherty executed the Settlement Agreement on November 22, 2021—less than four years before.[6]  Accordingly, by any measure, Daugherty's October 2025 breach of contract claim is timely.

38.     Conversely, Highland's allegation that a Delaware choice of law provision in the parties' Settlement Agreement mandates a three-year statute of limitations is wrong.  In adversary proceedings, bankruptcy courts engage in the same choice of law analysis as a federal district court. *See In re Soporex, Inc.*, 446 B.R. 750, 760–61 (Bankr. N.D. Tex. 2011); *In re Vantage Benefits Admins. Inc.*, No. 18-31351-SGJ-7, 2024 WL 3842796, at *17 (Bankr. N.D. Tex. Aug. 14, 2024). A federal district court "sitting in diversity must apply its forum state's conflict of laws rules to perform a conflict of laws analysis." *Cypress/Spanish Ft. I, L.P. v. Prof. Serv. Indus., Inc.*, 814 F.

---

[5]     Daugherty Ex. PD-3.

[6]     *Id.* The Settlement Agreement did not become effective, however, until March 8, 2022, when this Court approved it.  Daugherty Ex. PD-4.

4931-1540-7776

Supp. 2d 698, 708 (N.D. Tex. 2011); *see also Vantage Benefits*, 2024 WL 3842796, at *17 (applying same rule in adversary proceeding context to state-law claims).

39.     Texas courts apply (a) the substantive law of the contractually chosen state and (b)Texas procedural law to procedural matters. *See Cypress/Spanish*, 814 F. Supp. 2d at 708. Texas considers statutes of limitation procedural, not substantive. *See id.*; *see also Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4 (Tex. 1999); *Hunt Oil Co. v. Live Oak Energy, Inc.*, 313 S.W.3d 384, 387 (Tex. App.—Dallas 2009). Consequently, Texas federal courts evaluating the applicable statute of limitations when faced with a foreign choice of law provision in a contract consistently apply the four-year Texas statute of limitations. *See Cypress/Spanish*, 814 F. Supp. 2d at 709 (concluding Texas statute of limitations applies despite Alabama choice of law provision); *Hunter v. Berkshire Hathaway, Inc.*, No. 4:14-CV-663-Y, 2017 WL 11679602, at *4 (N.D. Tex. May 31, 2017) (concluding Texas statute of limitation applies despite Delaware choice of law provision); *Albritton v. Acclarent, Inc.*, No. 3:16-cv-03340-M, 2017 WL 6628122, at *6 (N.D. Tex. Dec. 27, 2017) (concluding Texas statute of limitations applies despite California choice of law provision); *see also Soporex*, 446 B.R. at 761–62 (concluding Texas statute of limitations applies to Trustee's tort claims).

40.     Regardless of the Settlement Agreement's choice of law provision, Texas' four-year statute of limitations applies to Daugherty's breach of contract claim because it is a procedural matter under Texas choice of law principles. Daugherty's October 2025 claim falls less than four years from the date of the Settlement Agreement's execution on November 2021, and less than four years from the Court's March 2022 order approving the Settlement Agreement. Daugherty's claim is not barred.

4931-1540-7776

41. Even if Delaware's three-year statute of limitations applied (it does not), Daugherty's claim would still be timely. In Delaware, a cause of action accrues when the contract is broken. *Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286, 1292 (Del. 1982); *Lehman Bros. Holdings Inc. v. Kee*, 268 A.3d 178, 185 (Del. 2021). At the earliest, Highland's breach accrued on October 19, 2022—the date Highland told Daugherty it had completed its performance (it had not). Highland's Ex. 3 ("Upon transmission of the information described above, [Highland] will have satisfied all of its obligations under the settlement agreement, and our involvement in HERA/ERA (your entities) will be complete."). Daugherty filed his breach of contract claim less than three years later, on October 3, 2025.

42. Finally, to resolve any lingering doubts regarding the inapplicability of limitations, Texas Civil Practice & Remedies Code § 16.069 expressly states "[i]f a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required." Daugherty did so here by filing his counterclaim on the date his answer was due. His counterclaim arises from the same Settlement Agreement that is central to Highland's claims. Hence, by any measure, Daugherty's claim is timely.

**CONCLUSION**

43. Daugherty's claims in this action are supported by law and the evidentiary record. Daugherty asks the Court to find as follows: (1) Daugherty's Compensation Statement with Highland created a unilateral contract between the two, with obligations flowing from Highland to Daugherty; (2) Daugherty possesses an allowable claim against Highland, (3) the Court cannot estimate Daugherty's claim until the IRS concludes its audit of Highland, as this is the most

4931-1540-7776

equitable result given all circumstances, and (4) Daugherty's claim for books and records against Highland is meritorious, and Highland should turn over all HERA and ERA books, records, information, and material in its possession, without reservation.

Dated: April 13, 2026.

Respectfully submitted,

GRAY REED

By:   */s/ Andrew K. York*
         Jason S. Brookner
         Texas Bar No. 24033684
         Andrew K. York
         Texas Bar No. 24051554
         Joshua D. Smeltzer
         Texas Bar No. 24113859
         J. Reid Burley
         Texas Bar No. 24109675
         Drake M. Rayshell
         Texas Bar No. 24118507

1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:    (214) 954-4135
Facsimile:    (214) 953-1332
Email:        jbrookner@grayreed.com
              dyork@grayreed.com
              jsmeltzer@grayreed.com
              rburley@grayreed.com
              drayshell@grayreed.com

*Counsel to Patrick Daugherty*

-20-

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing instrument was served on all Parties or counsel of record herein on this 13th day of April 2026, via the CM/ECF system and/or email.

/s/ Andrew K. York
ANDREW K. YORK

4931-1540-7776