# SECOND AMENDED AND RESTATED

## AGREEMENT OF LIMITED PARTNERSHIP

### OF

### HIGHLAND CAPITAL MANAGEMENT, L.P.

THE PARTNERSHIP INTERESTS REPRESENTED BY THIS LIMITED PARTNERSHIP AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OP 1933 OR UNDER ANY STATE SECURITIES ACTS IN RELIANCE UPON EXEMPTIONS UNDER THOSE ACTS. THE SALE OR OTHER DISPOSITION OF THE PARTNERSHIP INTERESTS IS PROHIBITED UNLESS THAT SALE OR DISPOSITION IS MADE IN COMPLIANCE WITH ALL SUCH APPLICABLE ACTS. ADDITIONAL RESTRICTIONS ON TRANSFER OF THE PARTNERSHIP INTERESTS ARE SET FORTH IN THIS AGREEMENT.



DEFENDANT'S
EXHIBIT
2

ACT EXHIBIT 44
Deponent K. Daugherty
Date 7/8/13   Rptr _____
WWW.DEPOBOOK.COM

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000441

DEFENDANT'S
EXHIBIT

11

25-03055

PDADV_004266

**SECOND AMENDED AND RESTATED
AGREEMENT OF LIMITED PARTNERSHIP
OF
HIGHLAND CAPITAL MANAGEMENT, L.P.**

## TABLE OF CONTENTS

Page

ARTICLE 1   GENERAL .................................................................2
1.1   Continuation ...........................................................2
1.2   Name ......................................................................2
1.3   Purpose ...................................................................2
1.4   Term .......................................................................2
1.5   Partnership Offices; Addresses of Partners ...........2

ARTICLE 2   DEFINITIONS .............................................................3
2.1   Definitions ..............................................................3
2.2.   Other Definitions ...................................................6

ARTICLE 3   FINANCIAL MATTERS ..............................................6
3.1   Capital Contributions ............................................6
3.2   Allocations of Profits and Losses ..........................8
3.3.   Allocations on Transfers .......................................8
3.4.   Special Allocations ................................................8
3.5.   Curative Allocations ..............................................8
3.6.   Allocations of Built-in Items ................................8
3.7   Capital Accounts ...................................................8
3.8   Distributive Share for Tax Purposes .....................8
3.9   Distributions .........................................................8
3.10   Compensation and Reimbursement of General Partner ..........8
3.11   Books, Records, Accounting, and Reports ............8
3.12   Tax Matters ...........................................................8

ARTICLE 4   RIGHTS AND OBLIGATIONS OF PARTNERS .......8
4.1   Rights and Obligations of the General Partner ....8
4.2   Rights and Obligations of Limited Partners .........8
4.3   Transfer of Partnership Interests .........................8
4.4   Issuances of Partnership Interests to New and Existing Partners .............8
4.5   Withdrawal of General Partner .............................8
4.6   Admission of Substitute Limited Partners and Successor General Partner .......8
4.7   Business Opportunities ..........................................8

ARTICLE 5   DISSOLUTION AND WINDING UP .........................8
5.1   Dissolution .............................................................8
5.2   Continuation of the Partnership ...........................8
5.3   Liquidation ............................................................8
5.4   Distribution in Kind ..............................................8
5.5   Cancellation of Certificate of Limited Partnership ..........8
5.6   Return of Capital ...................................................8
5.7   Waiver of Partition ...............................................8

DAUGHERTY 000442

PDADV_004267

ARTICLE 6     GENERAL PROVISIONS ................................................................................8
   6.1        Amendments to Agreement ................................................................8
   6.2        Addresses and Notices ........................................................................8
   6.3        Titles and Captions ..............................................................................8
   6.4        Pronouns and Plurals ..........................................................................8
   6.5        Further Action ......................................................................................8
   6.6        Binding Effect ......................................................................................8
   6.7        Integration ............................................................................................8
   6.8        Creditors ..............................................................................................8
   6.9        Waiver ..................................................................................................8
   6.10       Counterparts ........................................................................................8
   6.11       Applicable Law ....................................................................................8
   6.12       Invalidity of Provisions ......................................................................8

Attachments:

    Exhibit A
    Exhibit B

D-ezCleanDAL_1266754_10.DOC                    ii

DAUGHERTY 000443

PDADV_004268

**SECOND AMENDED AND RESTATED
AGREEMENT OF LIMITED PARTNERSHIP
OF
HIGHLAND CAPITAL MANAGEMENT, L.P.**

THIS SECOND AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP is entered into on this 31st day of December, 2004, to be effective as of February 29, 2004, by and among Strand Advisors, Inc., a Delaware corporation ("*Strand*"), as General Partner, and any Person hereinafter admitted as a Limited Partner.

Certain terms used in this Agreement are defined in Article 2.

## WITNESSETH:

WHEREAS, on July 7, 1997, Strand and Protective Asset Management, L.L.C. ("*PAM*") formed Ranger Asset Management, L.P. (the "*Partnership*"), pursuant to the Agreement of Limited Partnership of Ranger Asset Management, L.P. (the "*Original Agreement*");

WHEREAS, subsequent to the date of the formation of the Partnership, PAM and the Partnership merged, with the Partnership being the surviving entity;

WHEREAS, the Partners amended and restated the Original Agreement to reflect the transactions described above and to make certain other changes to the Original Agreement (the "*Amended Agreement*");

WHEREAS, on July 7, 1998, the Partnership filed a Certificate of Amendment of Certificate of Limited Partnership of Ranger Asset Management, L.P., changing its name from Ranger Asset Management, L.P. to Highland Capital Management, L.P.;

WHEREAS, James D. Dondero Transferred: (i) a 7% interest as a Limited Partner to The Get Good Trust on June 29, 2001; (ii) a 5% interest as a Limited Partner to The Get Good Trust on January 31, 2002; (iii) a 52% interest as a Limited Partner to The Get Better Trust on June 10, 2002; and (iv) a 10% interest as a Limited Partner to Canis Minor Trust on November 29, 2002;

WHEREAS, The Get Better Trust Transferred a 5% interest as a Limited Partner to James D. Dondero on September 25, 2003;

WHEREAS, Mark K. Okada Transferred: (i) a 7% interest as a Limited Partner to The Mark and Pamela Okada Family Trust—Exempt Trust #1 on June 30, 2000, and (ii) a 3% interest as a Limited Partner to The Mark and Pamela Okada Family Trust—Exempt Trust #2 on June 30, 2000;

WHEREAS, on February 29, 2004, the Partnership issued the following Partnership Interests that are treated as "profits interests" for federal income tax purposes to the following Persons who agreed to provide services to the Partnership: (i) a 0.303% interest as a Limited Partner to Bradford Borud; (ii) a 0.608% interest as a Limited Partner to Patrick Daugherty; (iii) a 0.544% interest as a Limited Partner to David Deadman; (iv) a 0.549% interest as a Limited Partner to R. Joseph Dougherty; (v) a 0.390% interest as a Limited Partner to Paul Kauffman; (vi) a 0.281% interest as a Limited Partner to John Morgan; (vii) a 0.426% interest as a Limited Partner to Kurtis Plumer; (viii) a 0.624% interest as a Limited Partner to Todd A. Travers; (ix) a 0.203% interest as a Limited Partner to David Walls; and (x) a 0.407% interest as a Limited Partner to John Yang; (collectively, the "*Profits Interest Partners*");

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000444

PDADV_004269

WHEREAS, on May 27, 2004, the Partnership, James D. Dondero, Mark K. Okada and their Affiliates entered into the Buy-Sell and Redemption Agreement to promote their mutual best interests by providing for certain obligations concerning the purchase of Partnership Interests by and among James D. Dondero, Mark K. Okada and their Affiliates upon the occurrence of certain events (the "*Original Buy-Sell and Redemption Agreement*");

WHEREAS, on December 31, 2004, the Partnership, James D. Dondero, Mark K. Okada and their Affiliates amended and restated the Original Buy-Sell and Redemption Agreement to include the Profits Interest Partners as parties to that agreement and to make certain other changes, all of which shall be effective as of February 29, 2004 (the "*Amended Buy-Sell and Redemption Agreement*");

WHEREAS, the Partners desire to amend and restate the Amended Agreement to (i) incorporate the February 29, 2004, admission of the Profits Interest Partners to the Partnership; (ii) incorporate the Amended Buy-Sell and Redemption Agreement; and (iii) to make certain other changes to the Amended Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, the parties hereby agree as follows:

## ARTICLE 1

## GENERAL

**1.1    Continuation.**  Subject to the provisions of this Agreement, the Partners hereby continue the Partnership as a limited partnership pursuant to the provisions of the Delaware Act. Except as expressly provided herein, the rights and obligations of the Partners and the administration and termination of the Partnership shall be governed by the Delaware Act.

**1.2    Name.**  The name of the Partnership shall be, and the business of the Partnership shall be conducted under the name of Highland Capital Management, L.P. The General Partner, in its sole and unfettered discretion, may change the name of the Partnership at any time and from time to time and shall provide Limited Partners with written notice of such name change within twenty (20) days after such name change.

**1.3    Purpose.**  The purpose and business of the Partnership shall be the conduct of any business or activity that may lawfully be conducted by a limited partnership organized pursuant to the Delaware Act. Any or all of the foregoing activities may be conducted directly by the Partnership or indirectly through another partnership, joint venture, or other arrangement.

**1.4    Term.**  The Partnership was formed as a limited partnership on July 7, 1997, and shall continue until terminated pursuant to this Agreement.

**1.5    Partnership Offices; Addresses of Partners.**

(a)    Partnership Offices.  The registered office of the Partnership in the State of Delaware shall be 1013 Centre Road, Wilmington, Delaware 19805-1297, and its registered agent for service of process on the Partnership at that registered office shall be Corporation Service Company, or such other registered office or registered agent as the General Partner may from time to time designate. The principal office of the Partnership shall be Two Galleria Tower, 13455 Noel Road, Suite 1300, Dallas, Texas 75240, or such other place as the General Partner may from time to time designate. The Partnership may maintain offices at such other place or places as the General Partner deems advisable.

DAUGHERTY 000445

PDADV_004270

(b)     Addresses of Partners. The address of the General Partner is Two Galleria Tower, 13455 Noel Road, Suite 1300, Dallas, Texas 75240.  The address of each Limited Partner shall be the address of that Limited Partner appearing on the books and records of the Partnership.  Each Limited Partner agrees to provide the General Partner with prompt written notice of any change in his/her/its address.

ARTICLE 2

DEFINITIONS

2.1     Definitions.  The following definitions shall apply to the terms used in this Agreement, unless otherwise clearly indicated to the contrary in this Agreement:

"*Additional Capital Contribution*" has the meaning set forth in Section 3.1(b) of this Agreement.

"*Adjusted Capital Account Deficit*" means, with respect to any Partner, the deficit balance, if any, in the Capital Account of that Partner as of the end of the relevant Fiscal Year, or other relevant period, giving effect to all adjustments previously made thereto pursuant to Section 3.7 and further adjusted as follows: (i) credit to that Capital Account, any amounts which that Partner is obligated or deemed obligated to restore pursuant to any provision of this Agreement or pursuant to Treasury Regulations Section 1.704-1(b)(2)(ii)(c); (ii) debit to that Capital Account, the items described in Treasury Regulations Sections 1.704-1(b)(2)(ii)(d)(4), (5) and (6); and (iii) to the extent required under the Treasury Regulations, credit to that Capital Account (A) that Partner's share of "minimum gain" and (B) that Partner's share of "partner nonrecourse debt minimum gain." (Each Partner's share of the minimum gain and partner nonrecourse debt minimum gain shall be determined under Treasury Regulations Sections 1.704-2(g) and 1.704-2(i)(5), respectively.)

"*Affiliate*" means any Person that directly or indirectly controls, is controlled by, or is under common control with the Person in question.  As used in this definition, the term "*control*" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting Securities, by contract or otherwise.

"*Agreement*" means this Second Amended and Restated Agreement of Limited Partnership, as it may be amended, supplemented, or restated from time to time.

"*Amended Buy-Sell and Redemption Agreement*" means that certain Amended and Restated Buy-Sell and Redemption Agreement, dated December 31, 2004, to be effective as of February 29, 2004, by and between the Partnership and its Partners, as may be amended, supplemented, or restated from time to time.

"*Business Day*" means Monday through Friday of each week, except that a legal holiday recognized as such by the government of the United States or the State of Texas shall not be regarded as a Business Day.

"*Capital Account*" means the capital account maintained for a Partner pursuant to Section 3.7(a).

"*Capital Contribution*" means, with respect to any Partner, the amount of money or property contributed to the Partnership with respect to the interest in the Partnership held by that Person.

D-ezCleanDAL_1266754_10.DOC                              3

DAUGHERTY 000446

PDADV_004271

"*Certificate of Limited Partnership*" means the Certificate of Limited Partnership filed with the Secretary of State of Delaware by the General Partner, as that Certificate may be amended, supplemented or restated from time to time.

"*Code*" means the Internal Revenue Code of 1986, as amended and in effect from time to time.

"*Default Loan*" has the meaning set forth in Section 3.1(c)(i).

"*Defaulting Partner*" has the meaning set forth in Section 3.1(c).

"*Delaware Act*" means the Delaware Revised Uniform Limited Partnership Act, Part IV, Title C, Chapter 17 of the Delaware Corporation Law Annotated, as it may be amended, supplemented or restated from time to time, and any successor to that Act.

"*Fiscal Year*" has the meaning set forth in Section 3.11(b).

"*Founding Partner Group*" means, collectively, Strand Advisors, Inc., Canis Minor Trust, James D. Dondero, The Get Good Trust, The Get Better Trust, Mark K. Okada, The Mark and Pamela Okada Family Trust-Exempt #1, and The Mark and Pamela Okada Family Trust-Exempt #2.

"*General Partner*" means any Person who (i) is referred to as such in the first paragraph of this Agreement, or has become a General Partner pursuant to the terms of this Agreement; and (ii) has not ceased to be a General Partner pursuant to the terms of this Agreement.

"*HCM Plan*" means the Second Amended and Restated HCM Services Long-Term Incentive Plan, established by Highland Capital Management Services, Inc., a Delaware corporation, as it may be amended, supplemented, or restated from time to time.

"*Limited Partner*" means any Person who (i) is referred to as such in the first paragraph of this Agreement, or has become a Limited Partner pursuant to the terms of this Agreement, and (ii) has not ceased to be a Limited Partner pursuant to the terms of this Agreement.

"*Liquidator*" has the meaning set forth in Section 5.3.

"*Losses*" means, for each Fiscal Year, the losses and deductions of the Partnership determined in accordance with accounting principles consistently applied from year to year employed under the Partnership's method of accounting and as reported, separately or in the aggregate, as appropriate, on the Partnership's information tax return filed for federal income tax purposes, plus any expenditures described in Code Section 705(a)(2)(B).

"*Majority Interest*" means the owners of more than fifty percent (50%) of the Percentage Interests of Limited Partners.

"*New Issues*" means Securities that are considered to be "new issues," as defined in the Conduct Rules of the National Association of Securities Dealers, Inc.

"*Nonrecourse Deduction*" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(1), as computed under Treasury Regulations Section 1.704-2(c).

"*Nonrecourse Liability*" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(3).

D-ezCleanDAL_1266754_10.DOC                                 4

DAUGHERTY 000447

PDADV_004272

"*Partner*" means a General Partner or a Limited Partner.

"*Partner Nonrecourse Debt*" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(4).

"*Partner Nonrecourse Deductions*" has the meaning set forth in Treasury Regulations Section 1.704-2(i)(2).

"*Partner Nonrecourse Debt Minimum Gain*" has the meaning set forth in Treasury Regulations Section 1.704-2(i)(5).

"*Partnership*" means Highland Capital Management, L.P., the Delaware limited partnership established pursuant to this Agreement.

"*Partnership Capital*" means, as of any relevant date, the net book value of the Partnership's assets, as determined by the General Partner in its sole and unfettered discretion.

"*Partnership Interest*" means the interest acquired by a Partner in the Partnership including, without limitation, that Partner's right:  (a) to an allocable share of the Profits, Losses, deductions, and credits of the Partnership; (b) to a distributive share of the assets of the Partnership; (c) if a Limited Partner, to vote on those matters described in this Agreement; and (d) if the General Partner, to manage and operate the Partnership.

"*Partnership Minimum Gain*" has the meaning set forth in Treasury Regulations Section 1.704-2(d).

"*Percentage Interest*" means the percentage set forth opposite each Partner's name on Exhibit A, as such Exhibit may be amended from time to time in accordance with this Agreement.

"*Person*" means an individual or a corporation, partnership, trust, estate, unincorporated organization, association, or other entity.

"*Profits*" means, for each Fiscal Year, the income and gains of the Partnership determined in accordance with accounting principles consistently applied from year to year employed under the Partnership's method of accounting and as reported, separately or in the aggregate, as appropriate, on the Partnership's information tax return filed for federal income tax purposes, plus any income described in Code Section 705(a)(1)(B).

"*Profits Interest Partner*" means, (i) Bradford Borud, Patrick Daugherty, David Deadman, R. Joseph Dougherty, Paul Kauffman, John Morgan, Kurtis Plumer, Todd A. Travers, David Walls, and John Yang; and (ii) any other Person who is issued a Partnership Interest that is treated as a "profits interest" for federal income tax purposes.

"*Record Date*" means the date established by the General Partner for determining the identity of Limited Partners entitled to vote or give consent to Partnership action or entitled to exercise rights in respect of any other lawful action of Limited Partners.

"*Securities*" means the following: (i) securities of any kind (including, without limitation, "securities" as that term is defined in Section 2(a)(1) of the Securities Act; (ii) commodities of any kind (as that term is defined by the U.S. Securities Laws and the rules and regulations promulgated thereunder); (iii) any contracts for future or forward delivery of any security, commodity or currency; (iv) any contracts based on any securities or group of securities, commodities or currencies; (v) any

D-ezCleanDAL_1266754_10.DOC

5

DAUGHERTY 000448

PDADV_004273

options on any contracts referred to in clauses (iii) or (iv); or (vi) any evidences of indebtedness (including participations in or assignments of bank loans or trade credit claims). The items set forth in clauses (i) through (vi) herein include, but are not limited to, capital stock, common stock, preferred stock, convertible securities, reorganization certificates, subscriptions, warrants, rights, options, puts, calls, bonds, mutual fund interests, debentures, notes, certificates of deposit, letters of credit, bankers acceptances, trust receipts and other securities of any corporation or other entity, whether readily marketable or not, rights and options, whether granted or written by the Partnership or by others, treasury bills, bonds and notes, any securities or obligations issued or guaranteed by the United States or any foreign country or any state or possession of the United States or any foreign country or any political subdivision or agency or instrumentality of any of the foregoing, and derivatives of any of the foregoing.

"*Securities Act*" means the Securities Act of 1933, as amended, and any successor to such statute.

"*Substitute Limited Partner*" has the meaning set forth in Section 4.6(a).

"*Transfer*" or derivations thereof, of a Partnership Interest means, as a noun, the transfer, sale, assignment, exchange, pledge, hypothecation or other disposition of a Partnership Interest, or any part thereof, directly or indirectly, and as a verb, voluntarily or involuntarily to transfer, sell, assign, exchange, pledge, hypothecate or otherwise dispose of.

"*Treasury Regulations*" means the Department of Treasury Regulations promulgated under the Code, as amended and in effect (including corresponding provisions of succeeding regulations).

2.2   Other Definitions. All terms used in this Agreement that are not defined in this Article 2 have the meanings contained elsewhere in this Agreement.

## ARTICLE 3

## FINANCIAL MATTERS

3.1   **Capital Contributions.**

(a)   Initial Capital Contributions. The initial Capital Contribution of each Partner shall be set forth in the books and records of the Partnership.

(b)   Additional Capital Contributions.

(i)   The General Partner, in its reasonable discretion and for a *bona fide* business purpose, may request in writing that the Partners make additional Capital Contributions in proportion to their Percentage Interests (each, an "*Additional Capital Contribution*").

(ii)   Any failure by a Partner to make an Additional Capital Contribution requested under Section 3.1(b)(i) on or before the date on which that Additional Capital Contribution was due shall result in the Partner being in default.

(iii)   Any Additional Capital Contribution (of more than a *de minimis* amount) shall cause a revaluation of the Partnership as set forth in Section 3.7(f).

(c)   Consequences to Defaulting Partners. In the event a Partner is in default under Section 3.1(b) (a "*Defaulting Partner*"), the Defaulting Partner, in its sole and unfettered discretion, may elect to take either one of the option set forth below.

DAUGHERTY 000449

PDADV_004274

(i)      Default Loans. If the Defaulting Partner so elects, the General Partner shall make a loan to the Defaulting Partner in an amount equal to that Defaulting Partner's additional capital contribution (a *"Default Loan"*). A Default Loan shall be deemed advanced on the date actually advanced. Default Loans shall earn interest on the outstanding principal amount thereof at a rate equal to the Applicable Federal Mid-Term Rate (determined by the Internal Revenue Service for the month in which the loan is deemed made) from the date actually advanced until the same is repaid in full. The term of any Default Loan shall be six (6) months, unless otherwise extended by the General Partner in its sole and unfettered discretion. If the General Partner makes a Default Loan, the Defaulting Partner shall not receive any distributions pursuant to Section 3.9(a) or Section 5.3 or any proceeds from the Transfer of all or any part of its Partnership Interest while the Default Loan remains unpaid. Instead, the Defaulting Partner's share of distributions or such other proceeds shall (until all Default Loans and interest thereon shall have been repaid in full) first be paid to the General Partner. Such payments shall be applied first to the payment of interest on such Default Loans and then to the repayment of the principal amounts thereof, but shall be considered, for all other purposes of this Agreement, to have been distributed to the Defaulting Partner. The Defaulting Partner shall be liable for the reasonable fees and expenses incurred by the General Partner (including, without limitation, reasonable attorneys' fees and disbursements) in connection with any enforcement or foreclosure upon any Default Loan and such costs shall, to the extent enforceable under applicable law, be added to the principal amount of the applicable Default Loan. In addition, at any time during the term of such Default Loan, the Defaulting Partner shall have the right to repay, in full, the Default Loan (including interest and any other charges). If the General Partner makes a Default Loan, the Defaulting Partner shall be deemed to have pledged to the General Partner and granted to the General Partner a continuing first priority security interest in, all of the Defaulting Partner's Partnership Interest to secure the payment of the principal of, and interest on, such Default Loan in accordance with the provisions hereof, and for such purpose this Agreement shall constitute a security agreement. The Defaulting Partner shall promptly execute, acknowledge and deliver such financing statements, continuation statements or other documents and take such other actions as the General Partner shall request in writing in order to perfect or continue the perfection of such security interest; and, if the Defaulting Partner shall fail to do so within seven (7) days after the Defaulting Partner's receipt of a notice making demand therefor, the General Partner is hereby appointed the attorney-in-fact of, and is hereby authorized on behalf of, the Defaulting Partner, to execute, acknowledge and deliver all such documents and take all such other actions as may be required to perfect such security interest. Such appointment and authorization are coupled with an interest and shall be irrevocable. The General Partner shall, prior to exercising any right or remedy (whether at law, in equity or pursuant to the terms hereof) available to it in connection with such security interest, provide to the Defaulting Partner a notice, in reasonable detail, of the right or remedy to be exercised and the intended timing of such exercise which shall not be less than five (5) days following the date of such notice.

(ii)      Reduction of Percentage Interest. If the Defaulting Partner does not elect to obtain a Default Loan pursuant to Section 3.1(c)(i), the General Partner shall reduce the Defaulting Partner's Percentage Interest in accordance with the following formula:

The Defaulting Partner's new Percentage Interest shall equal the product of (1) the Defaulting Partner's current Percentage Interest, multiplied by (2) the quotient of (a) the current Capital Account of the Defaulting Partner (with such Capital Account determined after taking into account a revaluation of the Capital Accounts immediately prior to such determination), divided by (b) the sum of (i) the current Capital Account of the Defaulting Partner (with such Capital Account determined after taking into account a revaluation of the Capital Accounts immediately prior to such determination), plus (ii) the amount of the additional capital contribution that such Defaulting Partner failed to make when due.

D-ezCleanDAL_1266754_10.DOC                          7

DAUGHERTY 000450

PDADV_004275

To the extent any downward adjustment is made to the Percentage Interest of a Partner pursuant to this Section 3.1(c)(ii), any resulting benefit shall accrue to the Partners (other than the Defaulting Partner) in proportion to their respective Percentage Interests.

    3.2    Allocations of Profits and Losses.

    (a)    Allocations of Profits. Except as provided in Sections 3.4, 3.5, and 3.6, Profits for any Fiscal Year will be allocated to the Partners as follows:

    (i)    First, to the Partners until cumulative Profits allocated under this Section 3.2(a)(i) for all prior periods equal the cumulative Losses allocated to the Partners under Section 3.2(b)(iii) for all prior periods in the inverse order in which such Losses were allocated; and

    (ii)    Next, to the Partners until cumulative Profits allocated under this Section 3.2(a)(ii) for all prior periods equal the cumulative Losses allocated to the Partners under Section 3.2(b)(ii) for all prior periods in the inverse order in which such Losses were allocated; and

    (iii)    Then, to all Partners in proportion to their respective Percentage Interests.

Notwithstanding the foregoing, the General Partner, in its sole and unfettered discretion, may allocate up to ten percent (10%) of the Profits for each Fiscal Year among the Profits Interest Partners in any manner it deems appropriate (the *"Reallocation Amount"*). The General Partner shall make such allocation by April 1 of the succeeding Fiscal Year. The General Partner shall have the authority to allocate taxable items under this Article 3 in any manner it deems appropriate to account for these allocations of the Reallocation Amount.

    (b)    Allocations of Losses. Except as provided in Sections 3.4, 3.5, and 3.6, Losses for any Fiscal Year will be will be allocated as follows:

    (i)    First, to the Partners until cumulative Losses allocated under this Section 3.2(b)(i) for all prior periods equal the cumulative Profits allocated to the Partners under Section 3.2(a)(iii) for all prior periods in the inverse order in which such Profits were allocated; and

    (ii)    Next, to the Partners in proportion to their respective positive Capital Account balances until the aggregate Capital Account balances of the Partners (excluding any negative Capital Account balances) equal zero; and

    (iii)    Then, to all Partners in proportion to their respective Percentage Interests.

    (c)    Limitation on Loss Allocations. If any allocation of Losses would cause a Partner to have an Adjusted Capital Account Deficit, those Losses instead shall be allocated to the General Partner.

    3.3.    Allocations on Transfers. Taxable items of the Partnership attributable to a Partnership Interest that has been Transferred (including the simultaneous decrease in the Partnership Interest of existing Partners resulting from the admission of a new Partner) shall be allocated between the transferor and the transferee as follows: (i) for the months before the Transfer, to the transferor; (ii) for the months after the Transfer, to the transferee; and (iii) for the month of the Transfer, to the transferee if the Transfer occurs on or before the fifteenth (15th) day of the month and to the transferor if the Transfer occurs thereafter. For purposes of the above allocation, taxable items of the Partnership shall be allocated

D-ezCleanDAL_1266754_10.DOC        8        DAUGHERTY 000451

PDADV_004276

equally among the months of the Fiscal Year without regard to the operations of the Partnership during those months. Distributions of assets of the Partnership with respect to a Partnership Interest shall be made only to the Persons who, according to the records of the Partnership, are the owners, on the actual date of distribution, of the Partnership Interests with respect to which the distributions are made. No liability shall result from making distributions in accordance with the provisions of the preceding sentence, whether or not the General Partner or the Partnership has knowledge or notice of a Transfer or purported Transfer of ownership of a Partnership Interest.

3.4. Special Allocations. If the requisite stated conditions or facts are present, the following special allocations shall be made in the following order:

(a) Partnership Minimum Gain Chargeback. Notwithstanding any other provision of this Article 3, if there is a net decrease in Partnership Minimum Gain during any taxable year or other period for which allocations are made, prior to any other allocation under this Agreement, each Partner shall be specially allocated items of Partnership income and gain for that period (and, if necessary, subsequent periods) in proportion to, and to the extent of, an amount equal to that Partner's share of the net decrease in Partnership Minimum Gain during that year determined in accordance with Treasury Regulations Section 1.704-2(g)(2). The items to be allocated shall be determined in accordance with Treasury Regulations Section 1.704-2(g). This Section 3.4(a) is intended to comply with the partnership minimum gain chargeback requirements of the Treasury Regulations and shall be subject to all exceptions provided therein.

(b) Partner Nonrecourse Debt Minimum Gain Chargeback. Notwithstanding any other provision of this Article 3 (other than Section 3.4(a)), if there is a net decrease in Partner Nonrecourse Debt Minimum Gain with respect to a Partner Nonrecourse Debt during any taxable year or other period for which allocations are made, any Partner with a share of such Partner Nonrecourse Debt Minimum Gain as of the beginning of the year shall be specially allocated items of Partnership income and gain for that period (and, if necessary, subsequent periods in an amount equal to that Partner's share of the net decrease in the Partner Nonrecourse Debt Minimum Gain during that year determined in accordance with Treasury Regulations Section 1.704-2(g)(2). The items to be so allocated shall be determined in accordance with Treasury Regulations Section 1.704-2(g). This Section 3.4(b) is intended to comply with the partner nonrecourse debt minimum gain chargeback requirements of the Treasury Regulations, shall be interpreted consistently with the Treasury Regulations and shall be subject to all exceptions provided therein.

(c) Qualified Income Offset. If a Partner unexpectedly receives any adjustments, allocations or distributions described in Treasury Regulations Sections 1.704-1(b)(2)(ii)(d)(4), (d)(5) or (d)(6), then items of Partnership income and gain shall be specially allocated to each such Partner in an amount and manner sufficient to eliminate, to the extent required by the Treasury Regulations, the Adjusted Capital Account Deficit of the Partner as quickly as possible; *provided, however,* an allocation pursuant to this Section 3.4(c) shall be made if and only to the extent that the Partner would have an Adjusted Capital Account Deficit after all other allocations provided for in this Article 3 have been tentatively made without considering this Section 3.4(c).

(d) Gross Income Allocation. If a Partner has a deficit Capital Account at the end of any Fiscal Year of the Partnership that exceeds the sum of (i) the amount the Partner is obligated to restore, and (ii) the amount the Partner is deemed to be obligated to restore pursuant to the penultimate sentences of Treasury Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5), then each such Partner shall be specially allocated items of income and gain of the Partnership in the amount of the excess as quickly as possible; *provided, however,* an allocation pursuant to this Section 3.4(d) shall be made if and only to the extent that the Partner would have a deficit Capital Account in excess of that sum after all other

DAUGHERTY 000452

PDADV_004277

allocations provided for in this Article 3 have been tentatively made without considering Section 3.4(c) or 3.4(d).

(e)     Nonrecourse Deductions.  Nonrecourse Deductions for any taxable year or other period for which allocations are made shall be allocated among the Partners in accordance with their Percentage Interests.

(f)     Partner Nonrecourse Deductions.  Notwithstanding anything to the contrary in this Agreement, any Partner Nonrecourse Deductions for any taxable year or other period for which allocations are made will be allocated to the Partner who bears the economic risk of loss with respect to the Partner Nonrecourse Debt to which the Partner Nonrecourse Deductions are attributable in accordance with Treasury Regulations Section 1.704-2(i).

(g)     Section 754 Adjustments.  To the extent an adjustment to the adjusted tax basis of any asset of the Partnership under Code Section 734(b) or Code Section 743(b) is required, pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(m), to be taken into account in determining Capital Accounts, the amount of the adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases the basis of the asset) and that gain or loss shall be specially allocated to the Partners in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to that Section of the Treasury Regulations.

3.5.     Curative Allocations.  The *"Basic Regulatory Allocations"* consist of (i) the allocations pursuant to Section 3.2(c), and (ii) the allocations pursuant to Sections 3.4.  Notwithstanding any other provision of this Agreement, the Basic Regulatory Allocations shall be taken into account in allocating items of income, gain, loss and deduction among the Partners so that, to the extent possible, the net amount of the allocations of other items and the Basic Regulatory Allocations to each Partner shall be equal to the net amount that would have been allocated to each such Partner if the Basic Regulatory Allocations had not occurred.  For purposes of applying the foregoing sentence, allocations pursuant to this Section 3.5 shall be made only with respect to allocations pursuant to Section 3.4(g) to the extent that it can reasonably be determined that those allocations will otherwise be inconsistent with the economic agreement among the parties to this Agreement.

3.6.     Allocations of Built-in Items.  In accordance with Code Sections 704(b) and 704(c) and the Treasury Regulations thereunder, income, gain, loss and deduction with respect to property actually or constructively contributed to the capital of the Partnership (for example, as set forth in Section 3.7(f)) shall, solely for tax purposes, be allocated among the Partners so as to take account of any variation at the time of the contribution between the tax basis of the property to the Partnership and the fair market value of that property.  Except as otherwise provided herein, any elections or other decisions relating to those allocations shall be made by the General Partner in any manner that reasonably reflects the purpose and intent of this Agreement.  Allocations of income, gain, loss and deduction pursuant to this Section 3.6 are solely for purposes of federal, state and local taxes and shall not affect, or in any way be taken into account in computing, the Capital Account of any Partner or the share of Profits, Losses, other tax items or distributions of any Partner pursuant to any provision of this Agreement.

3.7     Capital Accounts.

(a)     Maintenance of Capital Accounts.  The Partnership shall establish and maintain a separate capital account (*"Capital Account"*) for each Partner in accordance with the rules of Treasury Regulations Section 1.704-1(b)(2)(iv) and in accordance with the provisions set forth in this Section 3.7; *provided, however,* the General Partner shall "book-up" or "book-down" the Capital Accounts of the Partners in accordance with Section 3.7(f).

D-ezCleanDAL_1266754_10.DOC                          10

DAUGHERTY 000453

PDADV_004278

(i)     The Capital Account balance of each Partner shall be credited (increased) by (A) the amount of cash contributed by that Partner to the capital of the Partnership, (B) the fair market value of property contributed by that Partner to the capital of the Partnership (net of liabilities secured by that contributed property that the Partnership assumes or takes subject to under Code Section 752), and (C) that Partner's allocable share of Profits and any items in the nature of income or gain which are specially allocated pursuant to Sections 3.4 and 3.5; and

(ii)     The Capital Account balance of each Partner shall be debited (decreased) by (A) the amount of cash distributed to that Partner by the Partnership, (B) the fair market value of property distributed to that Partner by the Partnership (net of liabilities secured by that distributed property that such Partner assumes or takes subject to under Code Section 752), (C) that Partner's allocable share of expenditures of the Partnership described in Code Section 705(a)(2)(B), and (D) that Partner's allocable share of Losses and any items in the nature of expenses or losses which are specially allocated pursuant to Sections 3.2, 3.4 and 3.5.

The provisions of this Section 3.7 and the other provisions of this Agreement relating to the maintenance of Capital Accounts have been included in this Agreement to comply with Code Section 704(b) and the Treasury Regulations promulgated thereunder and will be interpreted and applied in a manner consistent with those provisions. The General Partner may modify the manner in which the Capital Accounts are maintained under this Section 3.7 in order to comply with those provisions, as well as upon the occurrence of events that might otherwise cause this Agreement not to comply with those provisions.

(b)     Negative Capital Accounts. If any Partner has a deficit balance in its Capital Account, that Partner shall have no obligation to restore that negative balance or to make any Capital Contribution by reason thereof, and that negative balance shall not be considered an asset of the Partnership or of any Partner.

(c)     Interest. No interest shall be paid by the Partnership on Capital Contributions or on balances in Capital Accounts.

(d)     No Withdrawal. No Partner shall be entitled to withdraw any part of his/her/its Capital Contribution or his/her/its Capital Account or to receive any distribution from the Partnership, except as provided in Section 3.9 and Article 5.

(e)     Loans From Partners. Loans by a Partner to the Partnership shall not be considered Capital Contributions.

(f)     Revaluations. The General Partner shall "book-up" or "book-down" the Capital Accounts of the Partners to their fair market values, regardless of the rules set forth in Treasury Regulations Section 1.704(c)-1(b)(2)(iv)(f), at the following times: (i) immediately prior to (A) a Capital Contribution (of more than a *de minimis* amount) to the Partnership by a new or existing Partner as consideration for a Partnership Interest, (B) the liquidation of the Partnership or a distribution of property (of more than a *de minimis* amount) by the Partnership to a retiring or continuing Partner as consideration for a Partnership Interest, or (C) the issuance of a new Partnership Interest (other than a *de minimis* amount) as consideration of the provision of services to or for the benefit of the Partnership by an existing Partner acting in a Partner capacity or by a new Partner acting in a partner capacity or in anticipation of being a Partner, and (ii) on January 1 of each Fiscal Year. The resulting increase or decrease in the Capital Accounts of each Partner shall be treated as a Code Section 704(c) item.

(g)     Capital Accounts as of February 29, 2004. The Partners hereby acknowledge that, on February 29, 2004, after the Partnership's issuance of Partnership Interests to Profits Interest Partners:



D-ezCleanDAL_1266754_10.DOC                    11

DAUGHERTY 000454

PDADV_004279

(i)     The Partnership "booked-up" the Capital Account of each Partner that is a member of the Founding Partner Group to its fair market value, and the resulting increase or decrease in the Capital Accounts of each Partner that is a member of the Founding Partner Group was treated as a Code Section 704(c) item.  On February 29, 2004, the "book" Capital Account for each Partner that is a member of the Founding Partner Group is set forth below:

| | |
|---|---|
| Strand Advisors, Inc. | $1,250,000 |
| Canis Minor Trust | $12,500,000 |
| James D. Dondero | $6,250,000 |
| The Get Good Trust | $15,000,000 |
| The Get Better Trust | $58,750,000 |
| The Mark and Pamela Okada Family Trust-Exempt #1 | $8,750,000 |
| The Mark and Pamela Okada Family Trust-Exempt #2 | $3,750,000 |
| Mark K. Okada | $18,750,000 |
| TOTAL | $125,000,000 |

(ii)    On February 29, 2004, each Profits Interest Partner had a Capital Account balance of zero (0).

3.8     **Distributive Share for Tax Purposes.**  Items of Partnership gain or loss recognized for federal income tax purposes and arising from Securities will be allocated among the Partners in accordance with the methods set forth in Treasury Regulations Section 1.704-3(e)(3) promulgated under Code Section 704(c).  All other items of income, deduction, gain, loss or credit that are recognized for federal income tax purposes will be allocated amount the Partners in accordance with the allocations of Profits and Losses hereunder as determined by the General Partner in its sole and unfettered discretion.  Notwithstanding the foregoing, the General Partner will (i) as to each New Issue, specially allocate to the Partners who were allocated New Issue Profit from that New Issue any short-term capital gains realized during the Fiscal Year upon the disposition of such New Issue during that Fiscal Year, and (ii) specially allocate items of gain (or loss) to Partners who withdraw capital during any Fiscal Year in a manner designed to ensure that each withdrawing Partner is allocated gain (or loss) in an amount equal to the difference between that Partner's Capital Account balance (or portion thereof being withdrawn) at the time of the withdrawal and the tax basis for his/her/ its Partnership Interest at that time (or proportionate amount thereof); *provided, however,* that the General Partner may, without the consent of any other Partner, (a) alter the allocation of any item of taxable income, gain, loss, deduction or credit in any specific instance where the General Partner, in its sole and unfettered discretion, determines such alteration to be necessary or appropriate to avoid a materially inequitable result (*e.g.,* where the allocation would create an inappropriate tax liability); and/or (b) adopt whatever other method of allocating tax items as the General Partner determines is necessary or appropriate in order to be consistent with the spirit and intent of the Treasury Regulations under Code Sections 704(b) and 704(c).

3.9     **Distributions.**

(a)·     General.  The General Partner shall review the Partnership's accounts at the end of each calendar quarter to determine whether distributions are appropriate.  The General Partner may make such distributions as it may determine in its sole and unfettered discretion, without being limited to current or accumulated income or gains, but no such distribution shall be made out of funds required to make current payments on Partnership indebtedness.  The Partnership has entered into one or more credit facilities with financial institutions that may limit the amount and timing of distributions to the Partners.  Thus, the Partners acknowledge that distributions from the Partnership may be limited.  Except to the extent Sections 5.3 or 5.4 are applicable, all distributions pursuant to this Section 3.9 shall generally be made in proportion to the Partners' Capital Accounts; *provided, however,* the General Partner may, in its

D-ezCleanDAL_1266754_10.DOC                    12

LAUGHERTY 000455

PDADV_004280

sole and unfettered discretion, make a disproportionate distribution to a Partner to the extent that Partner has (or is anticipated to have by the end of the current Fiscal Year) a sufficient positive balance in his/her/its Capital Account therefor; *provided, further*, the maximum amount per Fiscal Year that the General Partner may distribute to a member of the Founding Partner Group in a disproportionate distribution is ten percent (10%) of Partnership Capital.

(b)   Tax Distributions. The General Partner shall promptly declare and make cash distributions pursuant hereto to the Partners to allow the federal and state income tax attributable to the Partnership's taxable income that is passed through the Partnership to the Partners to be paid by such Partners (a "*Tax Distribution*"). To satisfy this requirement, the Partnership shall pay to each Partner on or before April 14 of each Fiscal Year, an amount at least equal to the product of (i) the sum of the Partnership's positive taxable income attributed to that Partner during the prior Fiscal Year (including without limitation, the taxable income attributable to the special allocation of Profits constituting the Reallocation Amount) multiplied by (ii) the sum of the highest federal and state individual income tax rates imposed on any Partner in effect that prior Fiscal Year. Any Tax Distribution to a Partner shall reduce the amount that Partner is otherwise entitled to receive on its next distribution pursuant to Section 3.9(a).

(c)   Payments Not Deemed Distributions.   Any amounts paid pursuant to Sections 4.1(e) or 4.1(h) shall not be deemed to be distributions for purposes of this Agreement.

(d)   Withheld Amounts. Notwithstanding any other provision of this Section 3.9 to the contrary, each Partner hereby authorizes the Partnership to withhold and to pay over, or otherwise pay, any withholding or other taxes payable by the Partnership with respect to that Partner as a result of that Partner's participation in the Partnership. If and to the extent that the Partnership shall be required to withhold or pay any such taxes, that Partner shall be deemed for all purposes of this Agreement to have received a payment from the Partnership as of the time that withholding or tax is paid, which payment shall be deemed to be a distribution with respect to that Partner's Partnership Interest to the extent that the Partner (or any successor to that Partner's Partnership Interest) is then entitled to receive a distribution. To the extent that the aggregate of such payments to a Partner for any period exceeds the distributions to which that Partner is entitled for that period, the amount of such excess shall be considered a loan from the Partnership to that Partner. Such loan shall bear interest (which interest shall be treated as an item of income to the Partnership) at the "Applicable Federal Rate" (as defined in the Code), as determined hereunder from time to time, until discharged by that Partner by repayment, which may be made in the sole and unfettered discretion of the General Partner out of distributions to which that Partner would otherwise be subsequently entitled. Any withholdings authorized by this Section 3.9(d) shall be made at the maximum applicable statutory rate under the applicable tax law unless the General Partner shall have received an opinion of counsel or other evidence satisfactory to the General Partner to the effect that a lower rate is applicable, or that no withholding is applicable.

3.10   Compensation and Reimbursement of General Partner.

(a)   Compensation. The General Partner and any Affiliate of the General Partner shall receive no compensation from the Partnership for services rendered pursuant to this Agreement or any other agreements unless approved by a Majority Interest.

(b)   Reimbursement for Expenses. In addition to amounts paid under other Sections of this Agreement, the General Partner and its Affiliates shall be reimbursed for all expenses, disbursements, and advances incurred or made, and all fees, deposits, and other sums paid in connection with the organization and operation of the Partnership, the qualification of the Partnership to do business, and all related matters.

DAUGHERTY 000456

PDADV_004281

### 3.11    Books, Records, Accounting, and Reports.

(a)    <u>Records and Accounting</u>.  The General Partner shall keep or cause to be kept appropriate books and records with respect to the Partnership's business, which shall at all times be kept at the principal office of the Partnership or such other office as the General Partner may designate for such purpose.  The books of the Partnership shall be maintained for financial reporting purposes on the accrual basis or on a cash basis, as the General Partner shall determine in its sole and unfettered discretion, in accordance with generally accepted accounting principles and applicable law.

(b)    <u>Fiscal Year</u>.  The fiscal year of the Partnership shall be the calendar year unless otherwise determined by the General Partner in its sole and unfettered discretion.

(c)    <u>Reports</u>.

(i)    As soon as reasonably practicable after the end of each Fiscal Year, the General Partner shall cause to be mailed to each Partner reports containing financial statements of the Partnership for that Fiscal Year, presented on cash or accrual basis, including a balance sheet and statement of income and, if the General Partner shall so determine, in its sole and unfettered discretion, such statements may be audited by a firm of independent public accountants selected by the General Partner.

(ii)    As soon as reasonably practicable after the end of each fiscal quarter of the Partnership, the General Partner shall, if it shall so determine in its sole and unfettered discretion, cause to be mailed to each Partner a report containing such financial information for that calendar quarter as the General Partner deems appropriate.

(d)    <u>Other Information</u>.  The General Partner may release information concerning the operations of the Partnership to any financial institution or other Person that has loaned or may loan funds to the Partnership or the General Partner or any of its Affiliates, and may release such information to any other Person for reasons reasonably related to the business and operations of the Partnership or as required by law or regulation of any regulatory body.

### 3.12    Tax Matters.

(a)    <u>Tax Returns</u>.  The General Partner shall arrange for the preparation and timely filing of all returns of Partnership income, gain, loss, deduction, credit and other items necessary for federal, state and local income tax purposes.  The General Partner shall deliver to each Partner as copy of his/her/its IRS Form K-1 as soon as practicable after the end of the Fiscal Year, but in no event later than October 1.  The classification, realization, and recognition of income, gain, loss, deduction, credit and other items shall be on the cash or accrual method of accounting for federal income tax purposes, as the General Partner shall determine in its sole and unfettered discretion.  The General Partner in its sole and unfettered discretion may pay state and local income taxes attributable to operations of the Partnership and treat such taxes as an expense of the Partnership.

(b)    <u>Tax Elections</u>.  Except as otherwise provided herein, the General Partner shall, in its sole and unfettered discretion, determine whether to make any available tax election.

(c)    <u>Tax Controversies</u>.  Subject to the provisions hereof, the General Partner is designated the Tax Matters Partner (as defined in Code Section 6231), and is authorized and required to represent the Partnership, at the Partnership's expense, in connection with all examinations of the Partnership's affairs by tax authorities, including resulting administrative and judicial proceedings, and to

DAUGHERTY 000457

PDADV_004282

expend Partnership funds for professional services and costs associated therewith. Each Partner agrees to cooperate with the General Partner in connection with such proceedings.

      (d)     Taxation as a Partnership. No election shall be made by the Partnership or any Partner for the Partnership to be excluded from the application of any of the provisions of Subchapter K, Chapter 1 of Subtitle A of the Code or from any similar provisions of any state tax laws.

## ARTICLE 4

## RIGHTS AND OBLIGATIONS OF PARTNERS

      4.1     Rights and Obligations of the General Partner. In addition to the rights and obligations set forth elsewhere in this Agreement, the General Partner shall have the following rights and obligations:

      (a)     Management. The General Partner shall conduct, direct, and exercise full control of over all activities of the Partnership. Except as otherwise expressly provided in this Agreement, all management powers over the business and affairs of the Partnership shall be exclusively vested in the General Partner, and Limited Partners shall have no right of control over the business and affairs of the Partnership. In addition to the powers now or hereafter granted to a general partner of a limited partnership under applicable law or that are granted to the General Partner under any provision of this Agreement, the General Partner shall have full power and authority to do all things deemed necessary or desirable by it to conduct the business of the Partnership, including, without limitation: (i) the determination of the activities in which the Partnership will participate; (ii) the performance of any and all acts necessary or appropriate to the operation of any business of the Partnership (including, without limitation, purchasing and selling any asset, any debt instruments, any equity interests, any commercial paper, any note receivables and any other obligations); (iii) the procuring and maintaining of such insurance as may be available in such amounts and covering such risks as are deemed appropriate by the General Partner; (iv) the acquisition, disposition, sale, mortgage, pledge, encumbrance, hyphothecation, of exchange of any or all of the assets of the Partnership; (v) the execution and delivery on behalf of, and in the name of the Partnership, deeds, deeds of trust, notes, leases, subleases, mortgages, bills of sale and any and all other contracts or instruments necessary or incidental to the conduct of the Partnership's business; (vi) the making of any expenditures, the borrowing of money, the guaranteeing of indebtedness and other liabilities, the issuance of evidences of indebtedness, and the incurrence of any obligations it deems necessary or advisable for the conduct of the activities of the Partnership, including, without limitation, the payment of compensation and reimbursement to the General Partner and its Affiliates pursuant to Section 3.10; (vii) the use of the assets of the Partnership (including, without limitation, cash on hand) for any Partnership purpose on any terms it sees fit, including, without limitation, the financing of operations of the Partnership, the lending of funds to other Persons, and the repayment of obligations of the Partnership; (viii) the negotiation, execution, and performance of any contracts that it considers desirable, useful, or necessary to the conduct of the business or operations of the Partnership or the implementation of the General Partner's powers under this Agreement; (ix) the distribution of Partnership cash or other assets; (x) the selection, hiring and dismissal of employees, attorneys, accountants, consultants, contractors, agents and representatives and the determination of their compensation and other teens of employment or hiring; (xi) the formation of any further limited or general partnerships, joint ventures, or other relationships that it deems desirable and the contribution to such partnerships, ventures, or relationships of assets and properties of the Partnership; and (xii) the control of any matters affecting the rights and obligations of the Partnership, including, without limitation, the conduct of any litigation, the incurring of legal expenses, and the settlement of claims and suits.

DAUGHERTY 000458

PDADV_004283

(b)    Certificate of Limited Partnership. The General Partner caused the Certificate of Limited Partnership of the Partnership to be filed with the Secretary of State of Delaware as required by the Delaware Act and shall cause to be filed such other certificates or documents (including, without limitation, copies, amendments, or restatements of this Agreement) as may be determined by the General Partner to be reasonable and necessary or appropriate for the formation, qualification, or registration and operation of a limited partnership (or a partnership in which Limited Partners have limited liability) in the State of Delaware and in any other state where the Partnership may elect to do business.

(c)    Reliance by Third Parties. Notwithstanding any other provision of this Agreement to the contrary, no lender or purchaser or other Person, including any purchaser of property from the Partnership or any other Person dealing with the Partnership, shall be required to verify any representation by the General Partner as to its authority to encumber, sell, or otherwise use any assess or properties of the Partnership, and any such lender, purchaser, or other Person shall be entitled to rely exclusively on such representations and shall be entitled to deal with the General Partner as if it were the sole party in interest therein, both legally and beneficially. Each Limited Partner hereby waives any and all defenses or other remedies that may be available against any such lender, purchaser, or other Person to contest, negate, or disaffirm any action of the General Partner in connection with any such sale or financing. In no event shall any Person dealing with the General Partner or the General Partner's representative with respect to any business or property of the Partnership be obligated to ascertain that the terms of this Agreement have been complied with, and each such Person shall be entitled to rely on the assumptions that the Partnership has been duly formed and is validly in existence. In no event shall any such Person be obligated to inquire into the necessity or expedience of any act or action of the General Partner or the General Partner's representative, and every contract, agreement, deed, mortgage, security agreement, promissory note, or other instrument or document executed by the General Partner or the General Partner's representative with respect to any business or property of the Partnership shall be conclusive evidence in favor of any and every Person relying thereon or claiming thereunder that (i), at the time of the execution and delivery thereof, this Agreement was in full force and effect; (ii) such instrument or document was duly executed in accordance with the terms and provisions of this Agreement and is binding upon the Partnership; and (iii) the General Partner or the General Partner's representative was duly authorized and empowered to execute and deliver any and every such instrument or document for and on behalf of the Partnership.

(d)    Partnership Funds. The funds of the Partnership shall be deposited in such account or accounts as are designated by the General Partner. The General Partner may, in its sole and unfettered discretion, deposit funds of the Partnership in a central disbursing account maintained by or in the name of the General Partner, the Partnership, or any other Person into which funds of the General Partner, the Partnership, on other Persons are also deposited; *provided, however*, at all times books of account are maintained that show the amount of funds of the Partnership on deposit in such account and interest accrued with respect to such funds as credited to the Partnership. The General Partner may use the funds of the Partnership as compensating balances for its benefit; *provided, however*, such funds do not directly or indirectly secure, and are not otherwise at risk on account of, any indebtedness or other obligation of the General Partner or any director, officer, employee, agent, representative, or Affiliate thereof. Nothing in this Section 4.1(d) shall be deemed to prohibit or limit in any manner the right of the Partnership to lend funds to the General Partner or any Affiliate thereof pursuant to Section 4.1(e)(i). All withdrawals from or charges against such accounts shall be made by the General Partner or by its representatives. Funds of the Partnership may be invested as determined by the General Partner in accordance with the terms and provisions of this Agreement.

(e)    Loans to or from General Partner; Contracts with Affiliates; Joint Ventures.

(i)    The General Partner or any Affiliate of the General Partner may lend to the Partnership funds needed by the Partnership for such periods of time as the General Partner may

DAUGHERTY 000459

PDADV_004284

determine; *provided, however*, the General Partner or its Affiliate may not charge the Partnership interest at a rate greater than the rate (including points or other financing charges or fees) that would be charged the Partnership (without reference to the General Partner's financial abilities or guaranties) by unrelated lenders on comparable loans. The Partnership shall reimburse the General Partner or its Affiliate, as the case may be, for any costs incurred by the General Partner or that Affiliate in connection with the borrowing of funds obtained by the General Partner or that Affiliate and loaned to the Partnership.

(ii)    The Partnership may loan funds to the General Partner and any Affiliate thereof; *provided, however*, if the amount of that proposed loan exceeds twenty percent (20%) of the aggregate Capital Account balances of the General Partner and its Affiliates, then any Limited Partner may elect to borrow his/her/its pro rata portion of the sum of (a) the amount of the proposed loan minus (b) twenty percent (20%) of the aggregate Capital Account balances of the General Partner and its Affiliates, on the same terms and conditions as the General Partner and/or its Affiliate, as appropriate, and such loan shall be secured by only that Limited Partner's Partnership Interest.

(iii)    The General Partner or any of its Affiliates may enter into an agreement with the Partnership to render services, including management services, for the Partnership. Any service rendered for the Partnership by the General Partner or any Affiliate thereof shall be on terms that are fair and reasonable to the Partnership.

(iv)    The Partnership may Transfer any assets to joint ventures or other partnerships in which it is or thereby becomes a participant upon terms and subject to such conditions consistent with applicable law as the General Partner deems appropriate.

(v)    If requested by a Profits Interest Partner, the Partnership shall lend funds to that Profits Interest Partner in an amount up to the excess of (a) the aggregate amount that would have been distributed to that Profits Interest Partner pursuant to Section 3.9 since first becoming a Profits Interest Partner, if each such distribution made by the Partnership pursuant to Section 3.9 since first becoming a Profits Interest Partner were made in accordance with Percentage Interests in effect at the time of each such distribution over (ii) the aggregate amount actually distributed to such Profits Interest Partner pursuant to Section 3.9 since first becoming a Profits Interest Partner (for this purpose, not taking into account distributions attributable to the special allocations with respect to the Reallocation Amounts). Each such loan shall be recourse to the Profits Interest Partner and shall be secured by his/her Partnership Interest. Each such loan shall bear interest at the Applicable Federal Mid-Term Rate in effect at the time such loan is made and shall have a term of one (1) year; *provided, however*, the loan must be repaid earlier in the case of that Profits Interest Partner's termination of employment from the Partnership or any Affiliate thereof for any reason, with repayment due in four (4) quarterly payments beginning the July 31st after the termination of his/her employment. Notwithstanding the preceding, the maximum loan amount available to any Profits Interest Partner under this Section 4.1(e)(v) shall be the amount specified on Exhibit C.

(f)    Outside Activities; Conflicts of Interest. The General Partner or any Affiliate thereof and any director, officer, employee, agent, or representative of the General Partner or any Affiliate thereof shall be entitled to and may have business interests and engage in business activities in addition to those relating to the Partnership, including, without limitation, business interests and activities in direct competition with the Partnership. Neither the Partnership nor any of the Partners shall have any rights by virtue of this Agreement or the partnership relationship created hereby in any business ventures of the General Partner, any Affiliate thereof, or any director, officer, employee, agent, or representative of either the General Partner or any Affiliate thereof.

DAUGHERTY 000460

PDADV_004285

(g)     Resolution of Conflicts of Interest.  Unless otherwise expressly provided in this Agreement or any other agreement contemplated herein, whenever a conflict of interest exists or arises between the General Partner or any of its Affiliates, on the one hand, and the Partnership or any Limited Partner, on the other hand, any action taken by the General Partner, in the absence of bad faith by the General Partner, shall not constitute a breach of this Agreement or any other agreement contemplated herein or a breach of any standard of care or duty imposed herein or therein or under the Delaware Act or any other applicable law, rule, or regulation.

(h)     Indemnification.  The Partnership shall indemnify and hold harmless the General Partner and any director, officer, employee, agent, or representative of the General Partner (collectively, the *"GP Party"*), against all liabilities, losses, and damages incurred by any of them by reason of any act performed or omitted to be performed in the name of or on behalf of the Partnership, or in connection with the Partnership's business, including, without limitation, attorneys' fees and any amounts expended in the settlement of any claims or liabilities, losses, or damages, to the fullest extent permitted by the Delaware Act; *provided, however,* the Partnership shall have no obligation to indemnify and hold harmless a GP Party for any action or inaction that constitutes gross negligence or willful or wanton misconduct.  The Partnership, in the sole and unfettered discretion of the General Partner, may indemnify and hold harmless any Limited Partner, employee, agent, or representative of the Partnership, any Person who is or was serving at the request of the Partnership acting through the General Partner as a director, officer, partner, trustee, employee, agent, or representative of another corporation, partnership, joint venture, trust, or other enterprise, and any other Person to the extent determined by the General Partner in its sole and unfettered discretion, but in no event shall such indemnification exceed the indemnification permitted by the Delaware Act.  Notwithstanding anything to the contrary in this Section 4.1(h) or elsewhere in this Agreement, no amendment to the Delaware Act after the date of this Agreement shall reduce or limit in any manner the indemnification provided for or permitted by this Section 4.1(h) unless such reduction or limitation is mandated by such amendment for limited partnerships formed prior to the enactment of such amendment.  In no event shall Limited Partners be subject to personal liability by reason of the indemnification provisions of this Agreement.

(i)     Liability of General Partner.

(i)     Neither the General Partner nor its directors, officers, employees, agents, or representatives shall be liable to the Partnership or any Limited Partner for errors in judgment or for any acts or omissions that do not constitute gross negligence or willful or wanton misconduct.

(ii)     The General Partner may exercise any of the powers granted to it by this Agreement and perform any of the duties imposed upon it hereunder either directly or by or through its directors, officers, employees, agents, or representatives, and the General Partner shall not be responsible for any misconduct or negligence on the part of any agent or representative appointed by the General Partner.

(j)     Reliance by General Partner.

(i)     The General Partner may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, bond, debenture, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.

(ii)     The General Partner may consult with legal counsel, accountants, appraisers, management consultants, investment bankers, and other consultants and advisers selected by it, and any opinion of any such Person as to matters which the General Partner believes to be within such Person's professional or expert competence shall be full and complete authorization and protection in

D-ezCleanDAL_1266754_10.DOC                    18

DAUGHERTY 000461

PDADV_004286

respect of any action taken or suffered or omitted by the General Partner hereunder in good faith and in accordance with such opinion.

(k) <u>Limitation on Authority</u>. The General Partner shall have no authority to undertake any of the following actions without the consent of the Limited Partners holding ninety-six percent (96%) of the Percentage Interests:

(i) Do any act which would make it impossible to carry on the ordinary business of the Partnership (excluding the liquidation of the Partnership);

(ii) Possess Partnership property or assign any rights in specific Partnership property for other than a Partnership purpose; and

(iii) Require any Limited Partner to make any contribution to the capital of the Partnership that is not otherwise provided for in this Agreement.

4.2 **Rights and Obligations of Limited Partners.** In addition to the rights and obligations of Limited Partners set forth elsewhere in this Agreement, Limited Partners shall have the following rights and obligations:

(a) <u>Limitation of Liability</u>. Limited Partners shall have no liability under this Agreement except as provided herein or under the Delaware Act.

(b) <u>Management of Business</u>. No Limited Partner shall take part in the control (within the meaning of the Delaware Act) of the Partnership's business, transact any business in the Partnership's name, or have the power to sign documents for or otherwise bind the Partnership other than as specifically set forth in this Agreement.

(c) <u>Return of Capital</u>. No Limited Partner shall be entitled to the withdrawal or return of its Capital Contribution except to the extent, if any, that distributions made pursuant to this Agreement or upon termination of the Partnership may be considered as such by law and then only to the extent provided for in this Agreement.

(d) <u>Amended Buy-Sell and Redemption Agreement</u>. Each Limited Partner shall comply with the terms and conditions of the Amended Buy-Sell and Redemption Agreement. The admission of the Profits Interest Partners into the Partnership was contingent upon their execution of the Amended Buy-Sell and Redemption Agreement.

4.3 **Transfer of Partnership Interests.**

(a) <u>Transfer</u>. No Partnership Interest shall be Transferred, in whole or in part, except in accordance with the terms and conditions set forth in this <u>Section 4.3</u> and the Amended Buy-Sell and Redemption Agreement. Any Transfer or purported Transfer of any Partnership Interest not made in accordance with this <u>Section 4.3</u> and the Amended Buy-Sell and Redemption Agreement shall be null and void. An alleged transferee shall have no right to require any information or account of the Partnership's transactions or to inspect the Partnership's books. The Partnership shall be entitled to treat the alleged transferor of a Partnership Interest as the absolute owner thereof in all respects, and shall incur no liability to any alleged transferee for distributions to the Partner owning that Partnership Interest of record or for allocations of Profits, Losses, deductions or credits or for transmittal of reports and notices required to be given to holders of Partnership Interests.

DAUGHERTY 000462

PDADV_004287

(b)     Transfers by General Partner. The General Partner may Transfer all, but not less than all, of its Partnership Interest to any Person only with the approval of a Majority Interest. Any Transfer by the General Partner of its Partnership Interest under this Section 4.3(b) to an Affiliate of the General Partner or any other Person shall not constitute a withdrawal of the General Partner under Section 4.5(a), Section 5.1(b), or any other provision of this Agreement. If any such Transfer is deemed to constitute a withdrawal under such provisions or otherwise and results in the dissolution of the Partnership under this Agreement or the laws of any jurisdiction to which the Partnership of this Agreement is subject, the Partners hereby unanimously consent to the reconstitution and continuation of the Partnership immediately following such dissolution, pursuant to Section 5.2.

(c)     Transfers by Limited Partners. The Partnership Interest of a Limited Partner may not be Transferred without the consent of the General Partner (which consent may be withheld in the sole and unfettered discretion of the General Partner), and in accordance with the Amended Buy-Sell and Redemption Agreement.

(d)     Distributions and Allocations in Respect of Transferred Partnership Interests. If any Partnership Interest is Transferred during any Fiscal Year in compliance with the provisions of Article 4 and the Amended Buy-Sell and Redemption Agreement, Profits, Losses, and all other items attributable to the Transferred interest for that period shall be divided and allocated between the transferor and the transferee by taking into account their varying interests during the period in accordance with Code Section 706(d), using any conventions permitted by law and selected by the General Partner. All distributions on or before the date of that Transfer shall be made to the transferor. Solely for purposes of making such allocations and distributions, the Partnership shall recognize that Transfer not later than the end of the calendar month during which it is given notice of that Transfer; provided, however, if the Partnership does not receive a notice stating the date that Partnership Interest was Transferred and such other information as the General Partner may reasonably require within thirty (30) days after the end of the Fiscal Year during which the Transfer occurs, then all of such items shall be allocated, and all distributions shall be made, to the person who, according to the books and records of the Partnership, on the last day of the Fiscal Year during which the Transfer occurs, was the owner of the Partnership Interest. Neither the Partnership nor any Partner shall incur any liability for making allocations and distributions in accordance with the provisions of this Section 4.3(d), whether or not any Partner or the Partnership has knowledge of any Transfer of ownership of any Partnership Interest.

4.4     Issuances of Partnership Interests to New and Existing Partners.

(a)     Issuance of Partnership Interests to New Limited Partners. The General Partner may admit one or more additional Persons as Limited Partners ("Additional Limited Partners") to the Partnership at such times and upon such terms as it deems appropriate in its sole and unfettered discretion. Upon the admission of any Additional Limited Partner, the Percentage Interest of the existing Limited Partners shall be diluted proportionately. No Person may be admitted to the Partnership as a Limited Partner until he/she/it executes an Addendum to this Agreement in the form attached as Exhibit B (which may be modified by the General Partner in its sole and unfettered discretion) and an addendum to the Amended Buy-Sell and Redemption Agreement.

(b)     Issuance of an Additional Partnership Interest to an Existing Partner. The General Partner may issue an additional Partnership Interest to any existing Partner at such times and upon such terms as it deems appropriate in its sole and unfettered discretion. Upon the issuance of an additional Partnership Interest to an existing Partner, the Percentage Interest of all existing Limited Partners shall be diluted proportionately; provided, however, only the Percentage Interests of the members of the Founding Partner Group shall be diluted when the General Partner issues an additional Partnership Interest to an existing Profits Interest Partner in accordance with the terms of the HCM Plan upon the vesting of that Profits Interest Partner's "Long-Term Incentive Units" (as defined in that Plan) granted to

D-ezCleanDAL_1266754_10.DOC                    20

DAUGHERTY 000463

PDADV_004288



him/her prior to the date hereof.  Any additional Partnership Interest shall be subject to all the terms and conditions of this Agreement and the Amended Buy-Sell and Redemption Agreement.

4.5     Withdrawal of General Partner.

(a)     Option.  In the event of the withdrawal of the General Partner from the Partnership, the departing General Partner (the *"Departing Partner"*) shall, at the option of its successor (if any) exercisable prior to the effective date of the departure of that Departing Partner, promptly receive from its successor in exchange for its Partnership Interest as the General Partner, an amount in cash equal to its Capital Account balance, determined as of the effective date of its departure.

(b)     Conversion.  If the successor to a Departing Partner does not exercise the option described in Section 4.5(a), the Partnership Interest of the Departing Partner as the General Partner of the Partnership shall be converted into a Partnership Interest as a Limited Partner.

(c)     Capital Contribution.  If the successor to a Departing Partner does not exercise the option described in Section 4.5(a), its successor shall, at the effective date of its admission to the Partnership, contribute to the capital of the Partnership cash or property or other consideration such that its Capital Account, after giving effect to that contribution, shall be equal to one percent (1%) of the total Capital Account balances at that date.

4.6     Admission of Substitute Limited Partners and Successor General Partner.

(a)     Admission of Substitute Limited Partners.  A transferee (which may be the heir or legatee of a Limited Partner) or assignee of a Limited Partner's Partnership Interest shall be entitled to receive only the distributive share of the Partnership's Profits, Losses, deductions, and credits attributable to that Partnership Interest.  To become a substitute Limited Partner (a *"Substitute Limited Partner"*), that transferee or assignee shall (i) obtain the consent of the General Partner (which consent may be withheld in the sole and unfettered discretion of the General Partner), (ii) comply with all the requirements of this Agreement and the Amended Buy-Sell and Redemption Agreement with respect to the Transfer of the Partnership Interest at issue, and (iii) execute an Addendum to this Agreement in the form attached as Exhibit B (which may be modified by the General Partner in its sole and unfettered discretion) and an addendum to the Amended Buy-Sell and Redemption Agreement.  Upon admission of a Substitute Limited Partner, that Limited Partner shall be subject to all of the restrictions applicable to, shall assume all of the obligations of, and shall attain the status of a Limited Partner under and pursuant to this Agreement with respect to the Partnership Interest held by that Limited Partner.

(b)     Admission of Successor General Partner.  A successor General Partner selected pursuant to Section 5.2 or the transferee of or successor to all of the Partnership Interest of the General Partner pursuant to Section 4.3(b) shall be admitted to the Partnership as the General Partner, effective as of the date of the withdrawal or removal of the predecessor General Partner or the date of Transfer of that predecessor's Partnership Interest.

(c)     Action by General Partner.  In connection with the admission of any substitute Limited Partner or successor General Partner or any additional Limited Partner, the General Partner shall have the authority to take all such actions as it deems necessary or advisable in connection therewith, including the amendment of Exhibit A and the execution and filing with appropriate authorities of any necessary documentation.



DAUGHERTY 000464

PDADV_004289

### 4.7   Business Opportunities.

(a)    In the event that the Partnership recapitalizes, distributes or otherwise transfers any of its business units, business interests or assets to a new entity that will be primarily owned by one or more members of the Founding Partner Group, each of the Limited Partners shall receive a proportionate share of that entity, subject to identical terms and conditions as are provided to the members of the Founding Partner Group, unless that Limited Partner agrees to receive a different percentage interest in that entity; *provided, however*, this Section 4.7(a) shall not apply to any disproportionate distribution made to a member of the Founding Partner Group as long as such disproportionate distribution does not exceed ten percent (10%) of Partnership Capital.

(b)    In the event that one or more members of the Founding Partner Group establishes a new business venture (i) whose business operations will be substantially related to, or otherwise operated substantially in connection with, the Partnership, or (ii) that James D. Dondero and/or Mark K. Okada directly or indirectly control and that is an entity whose business operations are substantially related to, or otherwise operated substantially in connection with, the Partnership, the members of the Founding Partner Group agree to use their reasonable best efforts to ensure that (a) the total ownership interest of the members of the Founding Partner Group in that entity shall not exceed their total percentage ownership interest in the Partnership; and (b) each of the Non-Founding Limited Partners shall be permitted to acquire an ownership interest in that entity, subject to identical terms and conditions as the members of the Founding Partner Group; *provided, however*, the members of the Founding Partner Group may elect to limit the amount of such ownership interest for any particular Non-Founding Limited Partner.  With regard to investments referenced in clause (b) of the preceding sentence, if a Limited Partner declines to make an investment in a new business entity, the members of the Founding Partner Group shall allocate the opportunity to make that investment to one or more of the remaining Limited Partners (including James D. Dondero and Mark K. Okada).

### ARTICLE 5

### DISSOLUTION AND WINDING UP

5.1    Dissolution. The Partnership shall be dissolved upon:

(a)    The withdrawal, bankruptcy, or dissolution of the General Partner, or any other event that results in its ceasing to be the General Partner (other than by reason of a Transfer pursuant to Section 4.3(b));

(b)    An election to dissolve the Partnership by the General Partner that is approved by the affirmative vote of a Majority Interest; *provided, however*, the General Partner may dissolve the Partnership without the approval of the Limited Partners in order to comply with Section 14 of the Amended Buy-Sell and Redemption Agreement;

(c)    Any other event that, under the Delaware Act, would cause its dissolution; or

(d)    A sale of all or substantially all of the assets of the Partnership that results in the liquidation of operating assets, the material shrinking of operations and personnel and the failure to redeploy the proceeds within twelve (12) months into other activities and investments.

For purposes of this Section 5.1, the bankruptcy of the General Partner shall be deemed to have occurred when the General Partner: (i) makes a general assignment for the benefit of creditors; (ii) files a voluntary bankruptcy petition; (iii) becomes the subject of an order for relief or is declared insolvent in any federal or state bankruptcy or insolvency proceeding: (iv) files a petition or answer seeking a reorganization,

D-ezCleanDAL_1266754_10.DOC                                     22

DAUGHERTY 000465

PDADV_004290

arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any law; (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition fled against the General Partner in a proceeding of the type described in clauses (i) through (iv) of this paragraph; (vi) seeks, consents to, or acquiesces in the appointment of a trustee, receiver, or liquidator of the General Partner or of all or any substantial part of the General Partner's properties; or (vii) one hundred twenty (120) days expire after the date of the commencement of a proceeding against the General Partner seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any law if the proceeding has not been previously dismissed, or ninety (90) days expire after the date of the appointment, without the General Partner's consent or acquiescence, of a trustee, receiver, or liquidator of the General Partner or of all or any substantial part of the General Partner's properties if the appointment has not previously been vacated or stayed, or ninety (90) days expire after the date of expiration of a stay, if the appointment has not previously been vacated.

5.2     Continuation of the Partnership.   Upon the occurrence of an event described in Section 5.1(a), the Partnership shall be deemed to be dissolved and reconstituted if Limited Partners unanimously elect to continue the Partnership within ninety (90) days of that event.  If no election to continue the Partnership is made within ninety (90) days of that event, the Partnership shall conduct only activities necessary to wind up its affairs.  If an election to continue the Partnership is made upon the occurrence of an event described in Section 5.1(a), then:

(a)     Within that ninety (90)-day period a successor General Partner shall be selected by seventy percent (70%) of the Percentage Interests owned by Limited Partners;

(b)     The Partnership shall be deemed to be reconstituted and shall continue until the end of the term for which it is formed unless earlier dissolved in accordance with this Article 5;

(c)     The interest of the former General Partner shall be converted to an interest as a Limited Partner; and

(d)     All necessary steps shall be taken to amend or restate this Agreement and the Certificate of Limited Partnership, and the successor General Partner may for this purpose amend this Agreement and the Certificate of Limited Partnership, as appropriate, without the consent of any Partner.

5.3     Liquidation.  Upon dissolution of the Partnership, unless the Partnership is continued under Section 5.2, the General Partner or, in the event the General Partner has been dissolved, becomes bankrupt (as defined in Section 5.1), or withdraws from the Partnership, a liquidator or liquidating committee selected by a Majority Interest, shall be the Liquidator.  The Liquidator (if other than the General Partner) shall be entitled to receive such compensation for its services as may be approved by a Majority Interest.  The Liquidator shall agree not to resign at any time without fifteen (15) days' prior written notice and (if other than the General Partner) may be removed at any time, with or without cause, by notice of removal approved by a Majority Interest.  Upon dissolution, removal, or resignation of the Liquidator, a successor and substitute Liquidator (who shall have and succeed to all rights, powers, and duties of the original Liquidator) shall within thirty (30) days thereafter be selected by a Majority Interest. The right to appoint a successor or substitute Liquidator in the manner provided herein shall be recurring and continuing for so long as the functions and services of the Liquidator are authorized to continue under the provisions hereof, and every reference herein to the Liquidator shall be deemed to refer also to any such successor or substitute Liquidator appointed in the manner provided herein.  Except as expressly provided in this Article 5, the Liquidator appointed in the manner provided herein shall have and may exercise, without further authorization or consent of any of the parties hereto, all of the powers conferred upon the General Partner under the terms of this Agreement (but subject to all of the applicable limitations, contractual and otherwise, upon the exercise of such powers) to the extent necessary or desirable in the good faith judgment of the Liquidator to carry out the duties and functions of the

DAUGHERTY 000466

PDADV_004291

Liquidator hereunder for and during such period of time as shall be reasonably required in the good faith judgment of the Liquidator to complete the winding up and liquidation of the Partnership as provided herein. The Liquidator shall liquidate the assets of the Partnership and apply and distribute the proceeds of such liquidation in the following order of priority, unless otherwise required by mandatory provisions of applicable law:

       (a)    To the payment of the expenses of the terminating transactions including, without limitation, brokerage commission, legal fees, accounting fees and closing costs;

       (b)    To the payment of creditors of the Partnership, including Partners, in order of priority provided by law;

       (c)    To the Partners and assignees to the extent of, and in proportion to, the positive balances in their respective Capital Accounts as provided in Treasury Regulations Section 1.704-1(b)(2)(ii)(b)(2); *provided, however,* the Liquidator may place in escrow a reserve of cash or other assets of the Partnership for contingent liabilities in an amount determined by the Liquidator to be appropriate for such purposes; and

       (d)    To the Partners in proportion to their respective Percentage Interests.

    5.4    **Distribution in Kind.** Notwithstanding the provisions of Section 5.3 that require the liquidation of the assets of the Partnership, but subject to the order of priorities set forth therein, if on dissolution of the Partnership the Liquidator determines that an immediate sale of part or all of the Partnership's assets would be impractical or would cause undue loss to the Partners and assignees, the Liquidator may defer for a reasonable time the liquidation of any assets except those necessary to satisfy liabilities of the Partnership (other than those to Partners) and/or may distribute to the Partners and assignees, in lieu of cash, as tenants in common and in accordance with the provisions of Section 5.3, undivided interests in such Partnership assets as the Liquidator deems not suitable for liquidation. Any such distributions in kind shall be subject to such conditions relating to the disposition and management of such properties as the Liquidator deems reasonable and equitable and to any joint operating agreements or other agreements governing the operation of such properties at such time. The Liquidator shall determine the fair market value of any property distributed in kind using such reasonable method of valuation as it may adopt.

    5.5    **Cancellation of Certificate of Limited Partnership.** Upon the completion of the distribution of Partnership property as provided in Sections 5.3 and 5.4, the Partnership shall be terminated, and the Liquidator (or the General Partner and Limited Partners if necessary) shall cause the cancellation of the Certificate of Limited Partnership in the State of Delaware and of all qualifications and registrations of the Partnership as a foreign limited partnership in jurisdictions other than the State of Delaware and shall take such other actions as may be necessary to terminate the Partnership.

    5.6    **Return of Capital.** The General Partner shall not be personally liable for the return of the Capital Contributions of Limited Partners, or any portion thereof, it being expressly understood that any such return shall be made solely from Partnership assets.

    5.7    **Waiver of Partition.** Each Partner hereby waives any rights to partition of the Partnership property.



DAUGHERTY 000467

PDADV_004292

# ARTICLE 6

## GENERAL PROVISIONS

6.1     **Amendments to Agreement.** The General Partner may amend this Agreement without the consent of any Partner if the General Partner reasonably determines that such amendment is necessary and appropriate; *provided, however,* any action taken by the General Partner shall be subject to its fiduciary duties to the Limited Partners under the Delaware Act.

6.2     **Addresses and Notices.** Any notice, demand, request, or report required or permitted to be given or made to a Partner under this Agreement shall be in writing and shall be deemed given or made when delivered in person or when sent by United States registered or certified mail to the Partner at his/her/its address as shown on the records of the Partnership, regardless of any claim of any Person who may have an interest in any Partnership Interest by reason of an assignment or otherwise.

6.3     **Titles and Captions.** All article and section titles and captions in the Agreement are for convenience only, shall not be deemed part of this Agreement, and in no way shall define, limit, extend, or describe the scope or intent of any provisions hereof.  Except as specifically provided otherwise, references to "Articles," "Sections" and "Exhibits" are to "Articles," "Sections" and "Exhibits" of this Agreement.  All Exhibits hereto are incorporated herein by reference.

6.4     **Pronouns and Plurals.** Whenever the context may require, any pronoun used in this Agreement shall include the corresponding masculine, feminine, or neuter forms, and the singular form of nouns, pronouns, and verbs shall include the plural and vice versa.

6.5     **Further Action.** The parties shall execute all documents, provide all information, and take or refrain from taking all actions as may be necessary or appropriate to achieve the purposes of this Agreement.

6.6     **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, successors, legal representatives, and permitted assigns.

6.7     **Integration.** This Agreement constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining thereto.

6.8     **Creditors.** None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Partnership.

6.9     **Waiver.** No failure by any party to insist upon the strict performance of any covenant, duty, agreement, or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof shall constitute waiver of any such breach or any other covenant, duty, agreement, or condition.

6.10     **Counterparts.** This agreement may be executed in counterparts, all of which together shall constitute one agreement binding on all the parties hereto, notwithstanding that all such parties are not signatories to the original or the same counterpart.

6.11     **Applicable Law.**  This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware, without regard to the principles of conflicts of law.

D-ezCleanDAL_1266754_10.DOC                               25

DAUGHERTY 000468

PDADV_004293

**6.12   Invalidity of Provisions.**  If any provision of this Agreement is declared or found to be illegal, unenforceable, or void, in whole or in part, then the parties shall be relieved of all obligations arising under that provision, but only to the extent that it is illegal, unenforceable, or void, it being the intent and agreement of the parties that this Agreement shall be deemed amended by modifying that provision to the extent necessary to make it legal and enforceable while preserving its intent or, if that is not possible, by substituting therefor another provision that is legal and enforceable and achieves the same objectives.

*Remainder of Page Intentionally Left Blank.*
*Signature Page Follows.*

DAUGHERTY 000469

PDADV_004294

IN WITNESS WHEREOF, the parties hereto have entered into this Agreement as of the date and year first written above to be effective as of February 29, 2004.

GENERAL PARTNER:

STRAND ADVISORS, INC.,
a Delaware corporation

By: _____
James D. Dondero,
President

LIMITED PARTNERS:

_____
BRADFORD BORUD

CANIS MINOR TRUST

By: _____
James D. Dondero,
Trustee

_____
PATRICK DAUGHERTY

_____
DAVIS DEADMAN

_____
JAMES D. DONDERO

_____
R. JOSEPH DOUGHERTY

*Signatures Continued on Next Page.*

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000470

PDADV_004295

**THE GET GOOD TRUST**

By: _____
Grant Scott,
Trustee

THE GET BETTER TRUST

By: _____
James D. Dondero,
Trustee

_____
PAUL KAUFFMAN

**THE MARK AND PAMELA OKADA FAMILY TRUST-EXEMPT #1**

By: _____
Lawrence Tonomura,
Trustee

**THE MARK AND PAMELA OKADA FAMILY TRUST-EXEMPT #2**

By: _____
Lawrence Tonomura,
Trustee

_____
JOHN MORGAN

_____
MARK K. OKADA

_____
KURTIS PLUMER

*Signatures Continued on Next Page.*

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000471

PDADV_004296

_____

TODD A. TRAVERS

_____

DAVID WALLS

_____

JOHN YANG

*End of Signatures.*

DAUGHERTY 000472

PDADV_004297

_____

TODD A. TRAVERS

_____

DAVID WALLS

_____

JOHN YANG

*End of Signatures.*

D-DAL_1266754_8 (2)

DAUGHERTY 000473

PDADV_004298

THE GET GOOD TRUST

By: _____
Grant Scott,
Trustee

THE GET BETTER TRUST

By: _____
James D. Dondero,
Trustee

_____
PAUL KAUFFMAN

THE MARK AND PAMELA OKADA FAMILY
TRUST-EXEMPT #1

By: _____
Lawrence Tonomura,
Trustee

THE MARK AND PAMELA OKADA FAMILY
TRUST-EXEMPT #2

By: _____
Lawrence Tonomura,
Trustee

_____
JOHN MORGAN

_____
MARK K. OKADA

_____
KURTIS PLUMER

*Signatures Continued on Next Page.*

D-czCleanDAL_1266754_10.DOC

DAUGHERTY 000474

PDADV_004299

## SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the *"Agreement"*). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

BRADFORD BORUD

SPOUSE OF PARTNER:

ALTHEA BORUD

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000475

PDADV_004300

## SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the "*Agreement*"). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

_____
BRADFORD BORUD

SPOUSE OF PARTNER:

_____
ALTHEA BORUD

D-DAL_1266754_8 (2)

DAUGHERTY 000476

PDADV_004301

## SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the *"Agreement"*). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31ˢᵗ day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

_____
DAVIS DEADMAN

SPOUSE OF PARTNER:

_____
N/A

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000477

PDADV_004302

SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the *"Agreement"*). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

_____

JAMES D. DONDERO

SPOUSE OF PARTNER:

_____

N/A

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000478

PDADV_004303

## SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the "*Agreement*"). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

R. JOSEPH DOUGHERTY

SPOUSE OF PARTNER:

N/A

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000479

PDADV_004304

SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the "*Agreement*"). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

_____
PAUL KAUFFMAN

SPOUSE OF PARTNER:

_____
AMY KAUFFMAN

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000480

PDADV_004305

## SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the "*Agreement*"). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

_____
PAUL KAUFFMAN

SPOUSE OF PARTNER:

_____
AMY KAUFFMAN

D-DAL_1266754_8 (2).DOC

DAUGHERTY 000481

PDADV_004306

## SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the "*Agreement*"). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

JOHN MORGAN

SPOUSE OF PARTNER:

DEBRA MORGAN

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000482

PDADV_004307

SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the "*Agreement*"). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

_____
JOHN MORGAN

SPOUSE OF PARTNER:

_____
DEBRA MORGAN

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000483

PDADV_004308

## SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the *"Agreement"*). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

MARK K. OKADA

SPOUSE OF PARTNER:

PAMELA OKADA

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000484

PDADV_004309

## SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the *"Agreement"*). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

_____
MARK K. OKADA

SPOUSE OF PARTNER:

_____
PAMELA OKADA

DAUGHERTY 000485

PDADV_004310

## SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the "*Agreement*"). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

KURTIS PLUMER

SPOUSE OF PARTNER:

KRISTI PLUMER

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000486

PDADV_004311

SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the "*Agreement*"). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

KURTIS PLUMER

SPOUSE OF PARTNER:

KRISTI PLUMER

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000487

PDADV_004312

## SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the "*Agreement*"). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

_____

TODD A. TRAVERS

SPOUSE OF PARTNER:

_____

KIMBERLY TRAVERS

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000488

PDADV_004313

## SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the *"Agreement"*). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

TODD A. TRAVERS

SPOUSE OF PARTNER:

KIMBERLY TRAVERS

D-DAL_1266754_8 (2).DOC

DAUGHERTY 000489

PDADV_004314

## SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the *"Agreement"*). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

_____
DAVID WALLS

SPOUSE OF PARTNER:

_____
CARI WALLS

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000490

PDADV_004315

SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the "*Agreement*"). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

_____

DAVID WALLS

SPOUSE OF PARTNER:

_____

CARI WALLS

D-DAL_1266754_8 (2).DOC

DAUGHERTY 000491

PDADV_004316

## SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the "*Agreement*"). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

JOHN YANG

SPOUSE OF PARTNER:

JOYCE YANG

D-DAL_1266754_8 (2)

DAUGHERTY 000492

PDADV_004317

## SPOUSE'S AGREEMENT

Reference is made to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the "*Agreement*"). In consideration of the terms of the Agreement, in consideration of the Partnership's allowing the undersigned Partner to become a Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms of the Agreement as though parties thereto.

Executed as of the 31st day of December, 2004, to be effective as of February 29, 2004.

PARTNER:

PATRICK DAUGHERTY

SPOUSE OF PARTNER:

KIMBERLY DAUGHERTY

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000493

PDADV_004318

## EXHIBIT A

Partnership Percentage Interests

| GENERAL PARTNER: | Percentage Interest |
|---|---|
| Strand Advisors, Inc. | 0.95665% |
| **LIMITED PARTNERS:** | |
| Bradford Borud | 0.303% |
| Canis Minor Trust | 9.5665% |
| Patrick Daugherty | 0.608% |
| Davis Deadman | 0.544% |
| James D. Dondero | 4.78325% |
| R. Joseph Dougherty | 0.549% |
| The Get Good Trust | 11.4798% |
| The Get Better Trust | 44.96255% |
| Paul Kauffman | 0.390% |
| The Mark and Pamela Okada Family Trust-Exempt #1 | 6.69655% |
| The Mark and Pamela Okada Family Trust-Exempt #2 | 2.86995% |
| John Morgan | 0.281% |
| Mark K. Okada | 14.34975% |
| Kurtis Plumer | 0.426% |
| Todd A. Travers | 0.624% |
| David Walls | 0.203% |
| John Yang | 0.407% |
| **TOTAL** | 100.0% |

D-ezCleanDAL_1266754_10.DOC A-1

DAUGHERTY 000494

PDADV_004319

**EXHIBIT B**

ADDENDUM
TO THE
SECOND AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP
OF
HIGHLAND CAPITAL MANAGEMENT, L.P.

THIS ADDENDUM (this *"Addendum"*) to that certain Second Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., dated December 31, 2004, to be effective as of February 29, 2004, as amended from time to time (the *"Agreement"*), is made and entered into as of the _____ day of _____, 20___, by and between Strand Advisors, Inc., as the sole General Partner (the *"General Partner"*) of Highland Capital Management, L.P. (the *"Partnership"*) and _____ ("_____") (except as otherwise provided herein, all capitalized terms used herein shall have the meanings set forth in the Agreement).

RECITALS:

WHEREAS, the General Partner, in its sole and unfettered discretion, and without the consent of any Limited Partner, has the authority under (i) Section 4.4 of the Agreement to admit Additional Limited Partners, (ii) Section 4.6 of the Agreement to admit Substitute Limited Partners and (iii) Section 6.1 of the Agreement to amend the Agreement;

WHEREAS, the General Partner desires to admit _____ as a Limited Partner holding a _____ % Percentage Interest in the Partnership as of the date hereof;

WHEREAS, _____ desires to become a Limited Partner and be bound by the terms and conditions of the Agreement; and

WHEREAS, the General Partner desires to amend the Agreement to add _____ as a party thereto.

AGREEMENT:

RESOLVED, as a condition to receiving a Partnership Interest in the Partnership, _____ _____ acknowledges and agrees that he/she/it (i) has received and read a copy of the Agreement, (ii) shall be bound by the terms and conditions of the Agreement; and (iii) shall promptly execute an addendum to the Amended Buy-Sell and Redemption Agreement; and be it

FURTHER RESOLVED, the General Partner hereby amends the Agreement to add _____ as a Limited Partner, and the General Partner shall attached this Addendum to the Agreement and make it a part thereof; and be it

FURTHER RESOLVED, this Addendum may be executed in any number of counterparts, all of which together shall constitute one Addendum binding on all the parties hereto, notwithstanding that all such parties are not signatories to the original or the same counterpart.

D-ezCleanD.L_1266754_10.DOC                    B-1

DAUGHERTY 000495

PDADV_004320

IN WITNESS WHEREOF, the undersigned have executed this Addendum as of the day and year above written.

GENERAL PARTNER:

STRAND ADVISORS, INC.

By: _____

    Name: _____
    Title: _____

NEW LIMITED PARTNER:

[_____]

AGREED AND ACCEPTED:

In consideration of the terms of this Addendum and the Agreement, in consideration of the Partnership's allowing the above signed Person to become a Limited Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms and conditions of the Agreement as though a party thereto.

SPOUSE OF NEW LIMITED PARTNER:

[_____]

DAUGHERTY 000496

PDADV_004321

## EXHIBIT C

Maximum Available Loan Amounts to Profits Interest Partners Pursuant to Section 4.1(e)(v)

Profits Interest Partner:                                    Maximum Loan Amount

Bradford Borud

Patrick Daugherty

Davis Deadman

R. Joseph Dougherty

Paul Kauffman

John Morgan

Kurtis Plumer

Todd A. Travers

David Walls

John Yang

DAUGHERTY 000497

PDADV_004322

THE GET GOOD TRUST

By: _____
    Grant Scott,
    Trustee

THE GET BETTER TRUST

By: _____
    James D. Dondero,
    Trustee

_____
PAUL KAUFFMAN

THE MARK AND PAMELA OKADA FAMILY
TRUST-EXEMPT #1

By: _____
    Lawrence Tonomura,
    Trustee

THE MARK AND PAMELA OKADA FAMILY
TRUST-EXEMPT #2

By: _____
    Lawrence Tonomura,
    Trustee

_____
JOHN MORGAN

_____
MARK K. OKADA

_____
KURTIS PLUMER

*Signatures Continued on Next Page.*

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000498

PDADV_004323

THE GET GOOD TRUST

By: _____
    Grant Scott,
    Trustee

THE GET BETTER TRUST

By: _____
    James D. Dondero,
    Trustee

_____
PAUL KAUFFMAN

THE MARK AND PAMELA OKADA FAMILY
TRUST-EXEMPT #1

By: _____
    Lawrence Tonomura,
    Trustee

THE MARK AND PAMELA OKADA FAMILY
TRUST-EXEMPT #2

By: _____
    Lawrence Tonomura,
    Trustee

_____
JOHN MORGAN

_____
MARK K. OKADA

_____
KURTIS PLUMER

*Signatures Continued on Next Page.*

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000499

PDADV_004324

THE GET GOOD TRUST

By: _____
Grant Scott,
Trustee

THE GET BETTER TRUST

By: _____
James D. Dondero,
Trustee

_____
PAUL KAUFFMAN

THE MARK AND PAMELA OKADA FAMILY
TRUST-EXEMPT #1

By: _____
Lawrence Tonomura,
Trustee

THE MARK AND PAMELA OKADA FAMILY
TRUST-EXEMPT #2

By: _____
Lawrence Tonomura,
Trustee

_____
JOHN MORGAN

_____
MARK K. OKADA

_____
KURTIS PLUMER

*Signatures Continued on Next Page.*

DAUGHERTY 000500

PDADV_004325

**THE GET GOOD TRUST**

By: _____
　　Grant Scott,
　　Trustee

**THE GET BETTER TRUST**

By: _____
　　James D. Dondero,
　　Trustee

_____

PAUL KAUFFMAN

THE MARK AND PAMELA OKADA FAMILY
TRUST-EXEMPT #1

By: _____
　　Lawrence Tonomura,
　　Trustee

THE MARK AND PAMELA OKADA FAMILY
TRUST-EXEMPT #2

By: _____
　　Lawrence Tonomura,
　　Trustee

_____

JOHN MORGAN

_____

MARK K. OKADA

_____

KURTIS PLUMER

*Signatures Continued on Next Page.*

D-ezCleanDAL_1266754_10.DOC

DAUGHERTY 000501

PDADV_004326

THE GET GOOD TRUST

By: _____

Grant Scott,
Trustee

THE GET BETTER TRUST

By: _____

James D. Dondero,
Trustee

_____

PAUL KAUFFMAN

THE MARK AND PAMELA OKADA FAMILY
TRUST-EXEMPT #1

By: _____

Lawrence Tonomura,
Trustee

THE MARK AND PAMELA OKADA FAMILY
TRUST-EXEMPT #2

By: _____

Lawrence Tonomura,
Trustee

_____

JOHN MORGAN

_____

MARK K. OKADA

_____

KURTIS PLUMER

*Signatures Continued on Next Page.*

THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #1

By:

Lawrence Tonomura,
Trustee

THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #2

By:

Lawrence Tonomura,
Trustee

D-ezCleanDAL_1269751_11.DOC

DAUGHERTY 000503

PDADV_004328

THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #1

By: _____
Lawrence Tonomura,
Trustee

THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #2

By: _____
Lawrence Tonomura,
Trustee

D-ezCleanDAL_1269751_11.DOC

DAUGHERTY 000504

PDADV_004329

THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #1

By: _____
       Lawrence Tonomura,
       Trustee

THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #2

By: _____
       Lawrence Tonomura,
       Trustee

D-ezCleanDAL_1269751_11.DOC

DAUGHERTY 000505

PDADV_004330

THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #1

By: _____
Lawrence Tonomura,
Trustee

THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #2

By: _____
Lawrence Tonomura,
Trustee

D-ezCleanDAL_1269751_11.DOC

DAUGHERTY 000506

PDADV_004331

THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #1

By: _____
Lawrence Tonomura,
Trustee

THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #2

By: _____
Lawrence Tonomura,
Trustee

D-ezCleanDAL_1269751_11.DOC

DAUGHERTY 000507

PDADV_004332