Docket #3910  Date Filed: 09/13/2023

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris *(admitted pro hac vice)*
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

REED SMITH LLP
Omar J. Alaniz
Texas Bar No. 24040402
Lindsey L. Robin
Texas Bar No. 24091422
2850 N. Harwood St., Ste. 1500
Dallas, Texas 75201
(469) 680-4292

*Counsel for Highland Capital Management, L.P., and the Highland Claimant Trust*

*Counsel for James P. Seery, Jr.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |

**HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND CLAIMANT TRUST, AND
JAMES P. SEERY, JR.'S JOINT MOTION FOR AN ORDER REQUIRING
SCOTT BYRON ELLINGTON AND HIS COUNSEL TO SHOW CAUSE WHY THEY
SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATING THE
<u>GATEKEEPER PROVISION AND GATEKEEPER ORDERS</u>**

DEFENDANT'S
EXHIBIT
**90**
25-03055

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.


1934054230913000000000001

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND ............................................................................................... 4

    A.    This Court Adopted The Gatekeeper Orders And Provision To Protect
    Against Baseless, Distracting Litigation And The Threat Of Such
    Litigation. ................................................................................................................ 4

    B.    Ellington Unsuccessfully Objected To The Daugherty Settlement. ...................... 6

    C.    Ellington Sues Daugherty In Texas State Court For Alleged Stalking.................. 7

ARGUMENT ........................................................................................................................... 15

I.    ELLINGTON AND HIS COUNSEL VIOLATED THE
    GATEKEEPER PROVISION AND GATEKEEPER ORDERS BY PURSUING
    CLAIMS AGAINST HIGHLAND AND SEERY IN THE STALKING ACTION. ...... 15

II.    THIS COURT SHOULD HOLD ELLINGTON AND HIS COUNSEL IN CIVIL
    CONTEMPT. ......................................................................................................... 17

CONCLUSION.......................................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases** *Page(s)*

*Charitable DAF Fund LP v. Highland Capital Mgmt. LP*,
2022 WL 4538466 (N.D. Tex. Sept. 28, 2022)........................................................................16

*In re Highland Capital Mgmt., L.P.*,
2021 WL 3418657 (Bankr. N.D. Tex. Aug. 4, 2021).........................................................17, 18

*In re Highland Capital Mgmt, L.P.*,
48 F.4th 419 (5th Cir. 2022) .....................................................................................................17

*In re Salubrio, LLC*,
2023 WL 3105153 (W.D. Tex. Mar. 31, 2023) .........................................................................17

**Statutes and Rule**

Fed. R. Bankr. P. 9014(c) ..............................................................................................................7

Texas Civ. Prac. & Rem. Code § 85.001 .......................................................................................7

Texas Civ. Prac. & Rem. Code § 85.002 .......................................................................................7

Pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9011, Highland

Capital Management, L.P. ("HCMLP," or, as applicable, the "Debtor"), the reorganized debtor in

the above-referenced action, the Highland Claimant Trust (the "Trust"; together with HCMLP,

"Highland"), and James P. Seery, Jr., HCMLP's Chief Executive Officer and the Claimant Trustee

of the Trust ("Seery"), by and through their undersigned counsel, file this motion (the "Motion")

seeking an order requiring Scott Byron Ellington ("Ellington") and his counsel, The Pettit Law

Firm ("Pettit") and Lynn Pinker Hurst & Schwegmann, LLP, to show cause why they should not

be held in civil contempt for violating the Gatekeeper Provision and Gatekeeper Orders.[2]   In

support of their Motion, Highland and Seery state as follows:

### PRELIMINARY STATEMENT

1.      Ellington and his counsel point blank admit—in writing—that they are using a

Texas state court "stalking" case against Daugherty to pursue claims against Highland and Seery.

2.      Ellington and his counsel allege, among other things, that (i) "with the assistance

of at least one other individual" (*i.e.*, Seery), Daugherty stalked Ellington and others, and

(ii) Daugherty and Seery engaged in a *quid pro quo* pursuant to which "Daugherty's settlement in

the bankruptcy became materially better . . . only after Daugherty had provided Seery and Clubok

with thousands upon thousands of pages of his investigatory work regarding Ellington."

3.      Relying on these meritless allegations, Ellington seeks discovery in connection

with the "settlement of Mr. Daugherty's proof of claim in the Highland bankruptcy" and

"negotiations between Mr. Daugherty and Mr. Seery, as a representative of the Highland Estate"

for the purpose of manufacturing claims against Highland and Seery:

---

[2] Capitalized terms not defined in this Preliminary Statement have the meanings ascribed to them below.

> The production provided by Mr. Daugherty, Mr. Seery, and others in this matter suggests the factual conclusion that the Highland Estate provided Mr. Daugherty with **additional settlement consideration** in exchange for information on Mr. Ellington.
>
> We believe that Mr. Daugherty and Mr. Seery's communications regarding **settlement of Mr. Daugherty's proof of claim** in the Highland bankruptcy are relevant to the factual issues that will be tried in this matter. To the extent that the redacted communications relate in any way to the **negotiations between Mr. Daugherty and Mr. Seery, as a representative of the Highland Estate**, please produce those communications.

Ellington's pursuit of claims against Highland and Seery is a clear violation of the Gatekeeper Provision and Gatekeeper Orders.

4. The Gatekeeper Provision in the Court-approved Plan and this Court's Confirmation Order prohibit any "Enjoined Parties"—including Ellington and his counsel—from "pursu[ing] a claim or cause of action of any kind against any Protected Party"—including Highland and Seery—"that arose or arises from or is related to the Chapter 11 Case" without first obtaining leave from this Court. This Court's January and July 2020 Gatekeeper Orders likewise prohibit Ellington and his counsel from pursuing claims against any Independent Director or Seery without first obtaining leave from this Court.

5. In January 2022, Ellington and his counsel commenced the state court Stalking Action alleging that Daugherty followed, harassed, and photographed Ellington, his girlfriend, and his family members, and asserting state-law claims for stalking and invasion of privacy. Ellington's lawsuit does not refer to Seery or any settlement negotiations. Daugherty sought to remove the Stalking Action to this Court, arguing that this Court had jurisdiction because, among other things, the case related to Daugherty's settlement of his proof of claim with the Debtor (the "Daugherty Settlement"), to which Ellington had objected. But Ellington falsely represented to this Court that "[t]he State Court Action does not implicate the Daugherty Settlement; even if it

did, the Daugherty Settlement is resolved and its relevance is moot." This Court relied on Ellington's representations and remanded the Stalking Action to state court.[3]

6. Having successfully evaded this Court's jurisdiction, Ellington and his counsel are now using the Stalking Action as a vehicle to pursue claims against Highland and Seery, contending—among other things, and notwithstanding their prior representations to this Court— that the negotiation of the Daugherty Settlement was an integral part of a "stalking" conspiracy. In response to Ellington's broad third-party subpoenas in the Stalking Action, Seery has produced tens of thousands of pages of documents, including text messages between Seery and Daugherty. Because certain text messages strings include unresponsive communications, Seery produced approximately 38 pages of documents with redactions. While pressing for the production of those unresponsive communications and for the deposition of Judge Russell Nelms (a former independent director of the Debtor), Ellington and his counsel revealed that they are pursuing claims against Highland and Seery based on Seery's negotiation of the Daugherty Settlement.

7. This timing is no accident. Ellington and his counsel are coordinating their efforts with James Dondero ("Dondero") and his related entities, which have used the Stalking Action to advance Dondero's interests in the bankruptcy case. For example, Dugaboy (Dondero's supposed family "trust") filed a motion to compel forensic imaging of Seery's iPhone based on text messages and related correspondence exchanged in the Stalking Action.[4] Now, as this Court is aware, the parties in this post-confirmation case are scheduled to hold a mediation regarding a global

---

[3] Based on Ellington's representations that the Stalking Action was not related to Highland or its Protected Parties, Highland did not take a position regarding removal of the Stalking Action.

[4] *See The Dugaboy Investment Trust's Motion to Preserve Evidence and Compel Forensic Imagining of James P. Seery, Jr.'s iPhone* (the "Imaging Motion"; Dkt. No. 3802). The Imaging Motion is based entirely on discovery-related communications exchanged among counsel in the Stalking Action—which never included counsel for Dondero or Dugaboy.

-3-

settlement in October.  By pursuing yet another post-confirmation dispute, Ellington and his

counsel are desperately trying to create leverage for Dondero and his affiliates against Highland

and Seery in the mediation.

8.      If Ellington and his counsel can use the Stalking Action to pursue claims against

Highland and Seery relating to the Debtor's bankruptcy, then the Gatekeeper Provision is a dead

letter and Enjoined Parties will pursue harassing and frivolous claims against Highland and Seery

in state court.  Ellington and his counsel clearly violated the Gatekeeper Provision and must face

consequences to ensure future compliance by all Enjoined Parties.  Accordingly, Highland and

Seery respectfully request that this Court order Ellington and his counsel to show cause why they

should not be held in civil contempt for violating this Court's Orders.

## RELEVANT BACKGROUND

**A.      This Court Adopted The Gatekeeper Orders And Provision To Protect Against Baseless, Distracting Litigation And The Threat Of Such Litigation.**

9.      On January 16, 2020, this Court entered a gatekeeper order ("January 2020 Order";

Dkt. No. 339) protecting the Debtor's Independent Directors:

> ***No entity*** may commence or ***pursue a claim or cause of action of any kind*** against ***any Independent Director***, any Independent Director's agents, or any Independent Director's advisors relating in any way to the Independent Director's role as an independent director of Strand without the Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Independent Director, any Independent Director's agents, or any Independent Director's advisors and (ii) specifically authorizing such entity to bring such claim.  The Court will have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

(*Id.* ¶ 10 (emphasis added).)

10.      On July 16, 2020, this Court entered a substantially similar gatekeeper order

("July 2020 Order"; Dkt. No. 854; together with the January 2020 Order, the "Gatekeeper

Orders"), protecting "Mr. Seery" from pursuit of claims "relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor." (*Id.* ¶ 5.)

11.     On February 22, 2021, this Court entered an order ("Confirmation Order"; Dkt. No. 1943) confirming Highland's Plan, which contains a similar "gatekeeping" provision ("Gatekeeper Provision") protecting "any Protected Party" from pursuit of claims by any "Enjoined Party" "that arose or arises from or is related to the Chapter 11 Case." (*Id.* at 77; Plan at 50–51.)[5] "[T]he Gatekeeper Provision in the Plan provides protection to a broader number of persons than the persons protected under the January 2020 Order (addressing the Independent Directors and their agents and advisors) and the July 2020 Order (addressing Seery in his role as CEO and CRO of the Debtor)." (Aug. 25, 2023 Order at 32 ("August 2023 Order"; Dkt. No. 3903).) Under the Plan, Ellington and his counsel are "Enjoined Parties" and Seery and Highland are "Protected Parties."[6]

12.     "The Gatekeeper Provision was not included in the Plan *sans raison*." (August 2023 Order at 4.) The Gatekeeper Provision, among other things, "prevent[s] baseless litigation designed merely to harass the post-confirmation entities charged with monetizing the Debtor's assets for the benefit of its economic constituents," mitigates the "costs and distraction such litigation or the threats of such litigation would cause," and "avoid[s] abuse of the Court system and preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." (Confirmation Order ¶¶ 78–79.)

---

[5] References to the "Plan" are to the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* (Dkt. No. 1808).

[6] Ellington is an "Enjoined Party" because he (i) held "Claims against or Equity Interests in the Debtor"; (ii) "has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case"; and (iii) is a "Related Entity," because he was Debtor's former general counsel was therefore "an insider of the Debtor on or before the Petition Date." (Plan at 8, 14.) Ellington's counsel are "Enjoined Parties" because they are "Related Persons" to Ellington. (*Id.*) HCMLP, the Trust, and Seery, are expressly listed as "Protected Parties." (*Id.* at 13.)

13.     The Gatekeeper Provision is working as this Court intended.  Most recently, in this Court's August 25 Order, the Gatekeeper Provision prevented Hunter Mountain Investment Trust ("HMIT") from pursuing baseless, speculative claims against Seery and certain purchasers of claims in Debtor's bankruptcy.  (August 2023 Order at 91, 94, 104.)

**B.      Ellington Unsuccessfully Objected To The Daugherty Settlement.**

14.     On December 23, 2020, Patrick Daugherty ("Daugherty") filed an amended proof of claim in Debtor's Chapter 11 case for $40,710,819.42, relating to alleged breaches of employment-related agreements and for defamation arising from a 2017 press release posted by the Debtor.  (Confirmation Order ¶ 9.)  On February 2, 2021, the Debtor and Daugherty informed this Court that they had reached an agreement in principle to settle Daugherty's claim under which Daugherty would receive $750,000 in cash, an $8.25 million general unsecured claim, and a $2.75 million subordinated claim.  (*Id.*)

15.     On December 8, 2021, the Debtor sought this Court's approval of the finalized settlement of Daugherty's proof of claim.  (Dkt. No. 3088.)  The final terms of the Daugherty Settlement were the same as the terms announced in February 2021 with three differences: (i) Daugherty would receive a $3.75 million (instead of a $2.75 million) subordinated claim; (ii) the Debtor would transfer to Daugherty interests in an employee deferred-compensation vehicle; and (iii) the Debtor would make reasonable efforts to petition the Oversight Board to grant Daugherty observer access.  (*Id.* ¶ 40; Dkt. No. 3257 ¶¶ 2–3.)[7]

16.     On February 15, 2022, Ellington objected to the Daugherty Settlement.  (Dkt. No. 3242.)  Ellington did "***not object to any of the economic terms*** of the Settlement Agreement."

---

[7] Highland agreed to these modifications after discovering the pre- and post-petition Sentinel frauds directed by Dondero and Ellington after the confirmation hearing.

(*Id*. ¶ 5 (emphasis added).)  He objected only to "two newly added" non-economic terms, which he claimed would "give Daugherty a platform to obtain confidential information about Ellington and others and a mechanism to find new ways to harass Ellington." (*Id.*)[8] Ellington could have taken discovery on his objections, *see* Fed. R. Bankr. P. 9014(c), including discovery into the negotiation of the Daugherty Settlement, but chose not to.  Ellington represented to this Court that he "has no reason to believe that HCMLP was aware of the alleged [stalking] activities of Daugherty or the allegations raised in the [Stalking] Action at the time HCMLP entered into" the Daugherty Settlement.  (*Id.* ¶ 4.)

17.      On March 1, 2022, this Court overruled Ellington's Objections and approved the Daugherty Settlement in its entirety.  (Dkt. No. 3306.)  Ellington did not appeal this Court's ruling.

**C.      Ellington Sues Daugherty In Texas State Court For Alleged Stalking.**

18.      On January 11, 2022, Ellington commenced an action (the "Stalking Action") by filing a petition in the 101st Judicial District Court of Dallas County ("Petition"; Ex. 2)[9] alleging that Daugherty was "observed outside Ellington's office, his residence, the residence of his long-time girlfriend, . . . his sister's residence, and his father's residence no less than 143 times, often taking photographs and video recordings while either parked or driving slowly by."  (*Id.* ¶ 12.) Ellington asserts claims against Daugherty for stalking and for invasion of privacy by intrusion under Texas law and seeks injunctive relief and exemplary damages.  (*Id.* ¶¶ 19–36.)

19.      Under Texas law, Ellington's claims turn on whether Daugherty "engaged in harassing behavior" such that Ellington "reasonably feared for [his] safety or the safety of a member of [his] family."  (*Id.* ¶¶ 21–22); Texas Civ. Prac. & Rem. Code §§ 85.001–02.  Ellington

---

[8] Notably, although the Debtor agreed to make reasonable efforts to petition the Oversight Board to grant Daugherty observer access, Daugherty has never appeared before the Oversight Board or participated in any of its meetings.

[9] References to "Ex." refer to exhibits to the accompanying declaration of Joshua S. Levy.

acknowledges that Daugherty's "supposed motivations in stalking Plaintiff are irrelevant."  (Ex. 1

¶ 2.)  Ellington's Petition makes no mention of Seery or the Daugherty Settlement.

      1.     <u>Ellington Represented Repeatedly To This Court That The Stalking Action Is Unrelated To This Chapter 11 Case Or The Daugherty Settlement.</u>

20.     On January 18, 2022, Daugherty removed the Stalking Action to this Court and

initiated an adversary proceeding.  (Dkt. No. 3185.)  On January 25, 2023, Ellington moved to

remand the Stalking Action to state court, arguing repeatedly that the Stalking Action "***does not***

***implicate*** the Daugherty Settlement," "the Daugherty Settlement ***has no bearing*** on the merits of

Ellington's stalking and invasion of privacy claims," and the Stalking Action "***has no impact*** on

the already resolved Daugherty Settlement."  (Ex. 3 at 3, 6 (emphasis added); *see also* Ex. 4

(Mar. 29, 2022 Hr'g Tr.) at 14:13–16 (arguing that the Daugherty Settlement is "fully resolved

and really moot to the motion before the Court").)  Ellington further argued that Stalking Action

"is independent of the administration of the bankruptcy" and "do[es] not invoke substantive rights

in bankruptcy."  (Ex. 3 at 4, 7.)

21.     Relying on Ellington's representations, this Court remanded the Stalking Action to

state court, holding that "[t]here is a remoteness, extreme remoteness to the bankruptcy case,"

because "the only possible hook . . . for the bankruptcy court or federal jurisdiction was if this

somehow implicated the gatekeeping order" or "if the estate was somehow going to be impacted,"

but "I just didn't find, based on the evidence or argument, any of those things implicated."  (Ex. 4

at 32:23–34:4.)

      2.     <u>Ellington And His Counsel Are Using Discovery Materials From The Stalking Action To Facilitate Litigation Against The Highland Parties and Seery.</u>

22.     On November 3, 2022, Ellington served on Seery a third-party subpoena in the

Stalking Action (the "<u>Subpoena</u>"; Ex. 5) seeking, among other things, "all communications and

documents" between Seery and Daugherty relating to Ellington, certain individuals affiliated with

-8-

Ellington, certain locations associated with Ellington, and any "investigation conducted by Daugherty" relating to Ellington.  Seery produced tens of thousands of pages of documents in response to the Subpoena, including emails and text messages between Seery and Daugherty.

23.     In February and March 2023, Highland's counsel and Ellington's counsel corresponded about Seery's text messages on his personal iPhone in connection with the Subpoena.  (Dkt. Nos. 3803-1 to -4.)  Two different Dondero-controlled entities—HMIT and Dugaboy Investment Trust ("Dugaboy")—used this correspondence in the Stalking Action (on which neither of them were copied) to advance Dondero's interests in this bankruptcy case by (i) bringing the Imaging Motion, and (ii) contending that the mistaken allegation concerning the supposed loss of certain text messages somehow made HMIT's claims "colorable."  (*See* August 2023 Order at 39–42; Ex. 6 (June 8, 2023 Hr'g Tr.) at 28:24–29:12, 33:2–4, 33:14–35:15, 36:2–17, 237:2–25.)

3.     Ellington And His Counsel Are Using The Stalking Action To Pursue Claims Against The Highland Parties And Seery.

24.     On June 19, 2023, Ellington served a second third-party subpoena on Seery in the Stalking Action seeking Seery's deposition.  (Ex. 7.)  Counsel for Ellington and Seery met and conferred by email and telephone about this subpoena for several weeks, and Seery's counsel provided Ellington's counsel with copies of the Gatekeeper Orders and Gatekeeper Provision.  (Ex. 9.)  On July 13, 2023, Ellington served a further amended subpoena on Seery, which included additional topics for testimony.  (Ex. 8.)  Ellington and his counsel sought to depose Seery about, among other things, "[a]ny consideration provided to Daugherty with respect to Mr. Daugherty's so-called 'investigation' of Mr. Ellington or the stalking in this case, including, but not limited to, the treatment of Mr. Daugherty's Proof of Claim in the Highland bankruptcy."  (*Id.*)  Ultimately,

Seery agreed to testify about certain topics relevant to the Stalking Action, and Seery's deposition was scheduled for July 31, 2023.  (Ex. 10.)

25.    On July 14, 2023, Seery made a supplemental production to Ellington of text messages between Seery and Daugherty "with redactions to the extent they contain information that is not responsive to the Subpoena."  (Ex. 11.)  On July 19, 2023, Ellington's counsel, Julie Petit, asserted—without any knowledge of what was redacted—that "we do not see how the redacted texts could truly be nonresponsive" and demanded that Seery "produce the redacted text messages" without redactions.  (Ex. 12.)  Seery's counsel responded that "[t]he redacted material is not responsive to any request" in the Subpoena, represented that it "is unrelated to Mr. Ellington or the allegations in your complaint," and cautioned that "seeking materials beyond those related to 'stalking' would exceed the scope of reasonable discovery directed to Mr. Seery as a third-party and would constitute the 'pursuit' of claims against Mr. Seery or other covered parties without leave of the Bankruptcy Court" in violation of the Gatekeeper Provision.  (*Id.*)

26.    On July 24, 2023, Pettit provided a new theory of relevance for the redacted text messages:

> The production provided by Mr. Daugherty, Mr. Seery, and others in this matter suggests the factual conclusion that the Highland Estate provided Mr. Daugherty with **additional settlement consideration** in exchange for information on Mr. Ellington.
>
> We believe that Mr. Daugherty and Mr. Seery's communications regarding **settlement of Mr. Daugherty's proof of claim** in the Highland bankruptcy are relevant to the factual issues that will be tried in this matter.  To the extent that the redacted communications relate in any way to the **negotiations between Mr. Daugherty and Mr. Seery, as a representative of the Highland Estate**, please produce those communications.

(*Id.* (emphasis added).)  Pettit acknowledged that documents regarding the Daugherty Settlement may not be relevant to the Stalking Action, stating that "we can always amend our live petition as needed to give you comfort that you are producing relevant and responsive materials." (*Id.*)

27.   On July 25, 2023, Seery's counsel responded to Ellington's new theory of relevance, arguing that "these allegations regarding settlement with Mr. Daugherty are not legitimately related to the 'stalking' claims alleged in Texas state court." (*Id.*)  Seery's counsel again "advised that Mr. Ellington is bound by the Plan, the Plan Injunction, and the Gatekeeping Orders," and "[t]o the extent Mr. Ellington is now seeking discovery regarding the settlement, this constitutes 'pursuit' of claims against Highland and/or Mr. Seery without leave of the Bankruptcy Court in violation of the Bankruptcy Court's Gatekeeping Orders." (*Id.*)  Seery's counsel put Ellington and his counsel on notice that "Mr. Seery, Highland, and the Claimant Trust take these matters seriously and will enforce all rights and seek appropriate sanctions." (*Id.*)  Finally, Seery's counsel confirmed that, "[i]n any event, the redacted information does not relate to any allegations in your stalking lawsuit or even settlement negotiations between Mr. Daugherty and Mr. Seery," so they are "irrelevant and therefore appropriately redacted." (*Id.*)

28.   While Ellington and his counsel were seeking irrelevant documents and testimony from Seery in the Stalking Action, they were also seeking to obtain documents from and depose Judge Nelms.  (Declaration of Richard L. Wynne Exs. 1, 3, 5.)  Judge Nelms responded that he had no responsive documents, and his counsel represented to Ellington's counsel that Judge Nelms "was not involved in, and has no knowledge of, the matters that are at issue in" the Stalking Action, and asked Ellington's counsel "to reconsider your plan to depose him." (*Id.* Exs. 2, 4.)

29.   On July 25, 2023, the day after Pettit raised the relevance of the Daugherty Settlement to Seery's counsel, Pettit did the same in a lengthy email to Judge Nelms's counsel filled with baseless speculation and inaccuracies:

> While we do believe Daugherty left Judge Nelms was left in the dark regarding Daugherty's stalking, what is significant is that all of this happened during the time Judge Nelms was on the board and Jim Seery and Andy Clubok *did know about Mr. Daugherty's inappropriate investigation.* In fact, not only were Seery and Clubok aware—but according to Daugherty, Seery himself told Daugherty that he "appreciated" the investigation. . . .
>
> At the Plan Confirmation hearing on February 2, 2021, the Debtor and Daugherty announced a ***settlement of Daugherty's proof of claim in the Highland Bankruptcy***. Nine months later in November 2021, ***the Debtor and Daugherty executed a settlement agreement*** that, in addition to the material terms announced in February 2021, gave Daugherty an additional $1m in Class 9, part of Highland's investment track record to claim as his own, ownership of two Highland affiliates he could use to pursue litigation claims, and a prospective observer role on the Claimant Oversight Board. The Debtor agreed to all of this additional settlement consideration subsequent to receiving Mr. Daugherty's cooperation in investigating Ellington. Given the Board's role in approving settlement of material proofs of claim in the bankruptcy, Ellington believes that Judge Nelms should have been made aware of Daugherty's actions—if not by Daugherty, then certainly by Jim Seery and Andy Clubok.
>
> It does not seem to be a coincidence that Judge Nelms was excluded from all communications relating to the stalking and investigation. It does not seem to be a coincidence that ***Mr. Daugherty's settlement in the bankruptcy became materially better for Mr. Daugherty*** after Judge Nelms was seemingly cut out of communications and only after Mr. Daugherty had provided Seery and Clubok with thousands upon thousands of pages of his investigatory work regarding Ellington. And it does not seem to be a coincidence that Judge Nelms participated in the legitimate negotiations with Daugherty, but that Judge Nelms was purposefully excluded from what Mr. Ellington believes were the illegitimate negotiations.

(*Id.* Ex. 4 (citations omitted; certain emphasis added).)

30.     Ellington and his counsel then stopped responding to Judge Nelms' counsel and personally served a second third-party subpoena on Judge Nelms in the Stalking Action seeking Nelms' deposition, forcing Judge Nelms to file a motion to quash the renewed deposition. (*Id.* Ex. 5.) After conferring for weeks, Petit eventually provided to Judge Nelms' counsel proposed deposition topics, including:

> 9.   Any consideration provided to Daugherty with respect to Mr. Daugherty's so-called "investigation" of Mr. Ellington or the stalking in this case, including, but not limited to, the treatment of Mr. Daugherty's Proof of Claim in the Highland bankruptcy.
>
> 10.  The process for approval of Mr. Daugherty's proof of claim with respect to the settlement announced on the record in the Highland bankruptcy on February 2, 2021.
>
> 11.  The ordinary process for negotiation and settlement of material proofs of claim in the Highland bankruptcy.

(*Id.* Ex. 6.)

31.     Judge Nelms and John Dubel (another former independent director of the Debtor) have offered to provide declarations that they do not have any knowledge relevant to the stalking allegations, but Ellington and his counsel have continued to use the Stalking Action to harass them. For example, Ellington left a document subpoena at Dubel's home when he was out of town and, when Dubel did not respond, Ellington and his counsel sought to hold Dubel in contempt and threatened monetary damages. (*Id.* Exs. 7, 8.)

32.     On July 27, 2023, two business days before Seery's scheduled deposition, Ellington's counsel informed Seery's counsel that "[w]e are going to file a Motion to Compel the redacted text messages," "[w]e will postpone Mr. Seery's deposition," and will "take it after the issue of the redactions is resolved by the Court." (Ex. 10.)[10]

---

[10] Seery is prepared to provide unredacted copies of the text message conversations at issue to this Court *in camera* should this Court request that he do so.

33.     On August 21, 2023, Ellington moved to compel the production of unredacted text messages between Daugherty and Seery *from Daugherty*—not Seery—in Texas state court. (Ex. 1.)  Ellington did not provide notice to Seery or his counsel of his motion and stated vaguely that he "intends to also seek full production from Seery."  (*Id.* ¶ 12.)  Ellington asserted that the redacted "text messages are relevant to Daugherty's investigation," but provided no basis for his assertion; he stated only that "they were sent during the relevant time, were by and between Seery and Defendant, and are surrounded by messages referencing Plaintiff and Defendant's investigation of him."  (*Id.* at 5.)  Tellingly, Ellington's motion made no mention of the Daugherty Settlement or any of the speculative theories of relevance Petit raised in her emails.  Ellington also selectively attached email correspondence between his counsel and Seery's counsel to avoid showing the Texas court or Daugherty any emails referencing the Daugherty Settlement and Seery's counsel's responses.  Instead, Ellington emphasized that his lawsuit is about allegations of "stalking and otherwise harassing him and his family," and asserted that Daugherty's "supposed motivations in stalking Plaintiff are irrelevant."  (*Id.* ¶¶ 1–2 & Ex. D.)

34.     On August 29, 2023, Daugherty filed a response to Ellington's motion arguing, among other things, that Ellington seeks "to gather otherwise impermissible discovery for use in concurrent bankruptcy proceedings" in violation of the "gatekeeping order in the bankruptcy court."  (Ex. 13  ¶¶ 1, 3; *see also id.* ¶ 17 n.6 ("[T]his case is about gathering discovery for use in the bankruptcy proceedings, not an effort to support his baseless claims for stalking or invasion of privacy."); *id.* ¶ 20 ("Ellington should not be permitted to utilize this case as leverage to gain impermissible backdoor discovery in bankruptcy proceedings or elsewhere.").)

35.     On September 11, 2023, the Texas state court granted in part Ellington's motion to compel with certain handwritten modifications: "Defendant [Daugherty] shall produce all text

messages with James Seery regarding Plaintiff [Ellington] *and the stalking issues*; including the unredacted versions of the text messages already produced by James Seery." (Ex. 14 (handwritten modifications emphasized).)  Because the redacted material does not relate to Ellington or any "stalking issues," this order will not result in the production of any additional documents or information.

**ARGUMENT**

**I.     Ellington And His Counsel Violated The Gatekeeper Provision And Gatekeeper Orders By Pursuing Claims Against Highland And Seery In The Stalking Action.**

36.     Under the Gatekeeper Provision, Ellington and his counsel may not "commence or *pursue a claim or cause of action of any kind* against" Highland and Seery "that arose or arises from or is related to the Chapter 11 Case" without this Court granting leave to do so.  (Plan at 50–51 (emphasis added); Confirmation Order at 77.)  Yet that is precisely what Ellington and his counsel are doing by using the Stalking Action to seek discovery into the Debtor's negotiations regarding the Court-approved Daugherty Settlement, which has nothing to do with any alleged stalking.

37.     The Gatekeeper Provision applies to the claims Ellington and his counsel are pursuing against Highland and Seery, and Ellington's counsel has never disputed its applicability.

a.     *First*, under the Plan, Ellington and his counsel are Enjoined Parties subject to the Gatekeeper Provision and Highland and Seery are Protected Parties protected by the Gatekeeper Provision.  (*See supra* ¶ 11, fn.6.)

b.     *Second*, Ellington and his counsel's speculation that Seery engaged in "inappropriate negotiations" with Daugherty in connection with his proof of claim in Debtor's Chapter 11 bankruptcy such that Debtor provided Daugherty with

additional consideration in the Daugherty Settlement plainly "arises from or is related to the Chapter 11 Case." (*See supra* ¶¶ 24–35.)

c.   ***Third***, Ellington and his counsel's efforts to obtain discovery in the Stalking Action to develop potential claims against Highland and Seery constitutes "pursu[ing] a claim or cause of action" under the Gatekeeper Provision as a matter of law. During prior contempt proceedings under the Gatekeeper Orders, the District Court held that "[t]o pursue a claim, a party must 'try' or 'seek' to bring that claim," which encompasses a broader range of actions than "bring[ing] a claim against Seery." *Charitable DAF Fund LP v. Highland Capital Mgmt. LP*, 2022 WL 4538466, at *3 (N.D. Tex. Sept. 28, 2022). The District Court rejected contemnors' argument that "the term *pursue* in the gatekeeper orders refers only to legal activities that occur *after* a claim has already been filed," reasoning that "most dictionaries define *pursue* as 'seeking' or 'trying' to obtain a desired end." *Id.* at *2 (emphasis in original; citations omitted) (collecting dictionaries). By seeking discovery into negotiations between Seery, on behalf of Debtor, and Daugherty regarding the Daugherty Settlement—which has nothing to do with whether or not Daugherty stalked Ellington—Ellington and his counsel are pursuing claims against Highland and Seery.

38.   The Gatekeeper Orders also apply to the claims Ellington and his counsel are pursuing against Seery. Under the January 2020 Order, Ellington and counsel may not "commence or pursue a claim or cause of action of any kind against any Independent Director," including Seery, "relating in any way to the Independent Director's role as an independent director" without this Court's leave. (January 2020 Order ¶ 10 (emphasis added).) Under the July 2020 Order,

Ellington and counsel may not "commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor" without this Court's leave.  (July 2020 Order ¶ 5.)  By seeking discovery regarding "the negotiations between Mr. Daugherty and Mr. Seery, *as a representative of the Highland Estate*" (Ex. 12 (emphasis added)), Ellington and his counsel are pursuing claims against Seery in his capacities as Independent Director, CEO, and CRO of the Debtor, which are subject to the Gatekeeper Orders.  Tellingly, Ellington did not pursue such discovery in connection with his objections to the Daugherty settlement but is instead doing so years later in the Stalking Action.

39.    Ellington and his counsel are using the Stalking Action as a vehicle to pursue potential claims against Highland and Seery while evading this Court's jurisdiction, the Gatekeeper Provision, and the Gatekeeper Orders.  But this Court held that "it will have jurisdiction after the Effective Date to implement the Gatekeeper Provision as post-confirmation bankruptcy court jurisdiction has been interpreted by the Fifth Circuit."  (Confirmation Order ¶ 81 (collecting cases).)  And the Fifth Circuit agreed that the "bankruptcy court retains jurisdiction post-confirmation" under "the gatekeeper provision" over "matters pertaining to the implementation or execution of the plan."  *In re Highland Capital Mgmt, L.P.*, 48 F.4th 419, 439 (5th Cir. 2022) (cleaned up); *see also In re Salubrio, LLC*, 2023 WL 3105153, at *8–9 (W.D. Tex. Mar. 31, 2023) (rejecting argument that a bankruptcy court's gatekeeping order was overly broad to the extent it prohibits claims brought in state court "against the Trustee, the Trustee's attorney, or other creditors without leave of Court") (citing *Highland*, 48 F.4th at 439).

**II.    This Court Should Hold Ellington And His Counsel In Civil Contempt.**

40.    "The power to impose sanctions for contempt of an order is an inherent and well-settled power of all federal courts—including bankruptcy courts."  *In re Highland Capital Mgmt., L.P.*, 2021 WL 3418657, at *10 (Bankr. N.D. Tex. Aug. 4, 2021) (collecting in cases), *aff'd in*

-17-

*relevant part sub nom. Charitable DAF Fund LP v. Highland Capital Mgmt. LP*, 2022 WL 4538466 (N.D. Tex. Sept. 28, 2022).  "A bankruptcy court's power to sanction those who 'flout its authority is both necessary and integral' to the court's performance of its duties." *Id.* (cleaned up) (quoting *Schermerhorn v. Cenurytel, Inc. (In re SkyPort Global Comm's, Inc.)*, 2013 WL 4046397, at \*1 (Bankr. S.D. Tex. Aug. 7, 2013), *aff'd*, 661 F. App'x 835 (5th Cir. 2016)).

41.     Parties "commit[] contempt when they violate a definite and specific order of the court requiring them to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Id.* at \*11 (cleaned up) (quoting *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995)).  "If the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil." *Id.* (citing *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009)).  "[T]he party seeking an order of contempt in a civil contempt proceeding need only establish, by clear and convincing evidence (1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *Id.* (citing *United States v. Puente*, 558 F. App'x 338, 341 (5th Cir. 2013) (per curiam); *FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995)).  "[T]he contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." *Id.* at \*12 (quoting *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000)).

42.     These requirements are easily satisfied here.  As discussed above (*see supra* ¶¶ 9–39), the Gatekeeper Provision and Gatekeeper Orders remain in effect and apply to Ellington and his counsel; Seery's counsel provided copies of them to Ellington's counsel in the Stalking Action and repeatedly provided notice that they would seek sanctions for any violations; the Gatekeeper Provision prohibits pursuing claims against Highland or Seery relating to the Debtor's Chapter 11

case without this Court's leave; the Gatekeeper Orders prohibit pursuing claims against Seery relating to his role as Independent Director, CEO, or CRO of the Debtor; and Ellington's counsel admitted that Ellington and his counsel are using the Stalking Action to seek discovery into alleged misconduct in the negotiation of the settlement of Daugherty's proof of claim in Debtor's Chapter 11 case.

## CONCLUSION

43.    For the foregoing reasons, Highland and Seery respectfully request this the Court order Ellington and his counsel to show cause why they should not be held in civil contempt for violating the Gatekeeper Provision and Gatekeeper Orders, enter an Order in the form appended as Exhibit A hereto, and grant any further relief as the Court deems just and proper.

Dated:  September 13, 2023

| **PACHULSKI STANG ZIEHL & JONES LLP** | **WILLKIE FARR & GALLAGHER LLP** |
|---|---|

*/s/ John A. Morris*

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email:     jpomerantz@pszjlaw.com
              jmorris@pszjlaw.com
              gdemo@pszjlaw.com
              hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.,*
*and the Highland Claimant Trust*

*/s/ Mark T. Stancil*

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

-and-

**REED SMITH LLP**
Omar J. Alaniz
Texas Bar No. 24040402
Lindsey L. Robin
Texas Bar No. 24091422
2850 N. Harwood St., Ste. 1500
Dallas, Texas 75201
(469) 680-4292

*Counsel for James P. Seery, Jr.*

-20-

## CERTIFICATE OF CONFERENCE

On June 30, 2023, Seery's counsel emailed Ellington's counsel that Highland's counsel "wants to attend [Seery's] deposition and potentially raise objections under the Gatekeeper Orders entered by the Bankruptcy Court (which I've attached) to ensure discovery in the *Ellington* litigation is not used in connection with the *Highland* bankruptcy in violation of the Gatekeeper Orders." On July 11, 2023, counsel for Seery, Ellington, Highland, and Judge Nelms met and conferred by phone. All counsel agreed that counsel for Seery and Highland could raise objections to deposition questions to Seery based on the Gatekeeper Provision and Gatekeeper Orders.

On July 24, 2023, after Ellington's counsel's emailed demanding that Seery produce text messages without redactions, Seery's counsel emailed Ellington's counsel that seeking discovery from Seery beyond information related to the "stalking" allegations in the Stalking Action "would constitute the 'pursuit' of claims against Mr. Seery or other covered parties without leave of the Bankruptcy Court." Seery's counsel reserved the right to seek relief under the Gatekeeper Provision in the event Ellington proceeded with seeking this discovery. Later that day, Ellington's counsel responded demanding that Seery produce unredacted text message communications to the extent they "relate in any way to the negotiations between Mr. Daugherty and Mr. Seery, as a representative of the Highland Estate." On July 25, 2023, Seery's counsel emailed Ellington's counsel that Seery "will enforce all rights and seek appropriate sanctions" if Ellington continues to seek materials unrelated to the allegations in the Stalking Action. On July 27, 2023, Ellington's counsel emailed Seery's counsel that Ellington would file a motion to compel the production of Seery's text messages beyond those that are relevant to the stalking allegations. On August 21, 2023, Plaintiff filed a motion to compel these text messages from Daugherty in Texas state court.

On September 13, 2023, Seery's counsel made multiple telephone calls to, and left multiple voicemails with, Ellington's counsel, in an attempt to meet and confer regarding this Motion. Ellington's counsel did not return these calls or voicemails. Seery's counsel then emailed Ellington's counsel informing them that Seery and Highland counsel intended to file this Motion, explaining that "[a]s we've discussed by phone and by email, we believe that you and Scott Ellington are using discovery in the stalking litigation against Patrick Daugherty to pursue claims against Highland and Jim Seery in violation of the Gatekeeper Provision and Gatekeeper Orders entered by the Bankruptcy Court." Ellington's counsel demanded to see "a copy of the proposed motion prior to filing," which Seery's counsel opposed because it is not required by Local Civil Rule 7.1(a). Seery's counsel invited Ellington's counsel to "immediately withdraw all of [their] impermissible demands" and, "[f]ailing that, we will mark your position on this motion as opposed when filing." Ellington's counsel has not withdrawn any discovery requests and therefore opposes this Motion.

*/s/ Joshua S. Levy*

Joshua S. Levy

# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

**ORDER GRANTING HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND
CLAIMAINT TRUST, AND JAMES P. SEERY, JR.'S JOINT MOTION  FOR AN
ORDER REQUIRING SCOTT BYRON ELLINGTON AND HIS COUNSEL TO SHOW
CAUSE  WHY THEY SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR
<u>VIOLATING THE GATEKEEPER PROVISION AND GATEKEEPER ORDERS</u>**

Having considered (1) *Highland Capital Management, L.P., Highland Claimant Trust, and*

*James P. Seery, Jr.'s Joint Motion For an Order Requiring Scott Byron Ellington and His Counsel*

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

*to Show Cause Why They Should Not Be Held in Civil Contempt for Violating the Gatekeeper Provision and Gatekeeper Orders* [Docket No.__] (the "Motion");[2] (2) the exhibits annexed to the *Declaration of Joshua S. Levy in Support of Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery, Jr.'s Joint Motion For an Order Requiring Scott Byron Ellington and His Counsel to Show Cause Why They Should Not Be Held in Civil Contempt for Violating the Gatekeeper Provision and Gatekeeper Orders* [Docket No.__], (3) the exhibits annexed to the *Declaration of Richard L. Wynne in Support of Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery, Jr.'s Joint Motion For an Order Requiring Scott Byron Ellington and His Counsel to Show Cause Why They Should Not Be Held in Civil Contempt for Violating the Gatekeeper Provision and Gatekeeper Orders* [Docket No.__], and (4) all prior proceedings related to this matter, including the proceedings that led to the entry of each of the Gatekeeper Orders and the Confirmation Order; this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); this Court having found that venue of this proceeding and the Motion in this District is proper pursuant 28 U.S.C. §§ 1408 and 1409; this Court having found that sanctions are warranted under Section 105(a) of the Bankruptcy Code and that the relief requested in the Motion is in the best interest of Highland, its creditors, and other parties-in-interest; this Court having found that Highland's and Seery's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; this Court having determined that the legal and factual bases set forth in the Motion establish good cause for the relief granted herein; upon all of the proceedings

---

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

had before this Court; and after due deliberation and sufficient cause appearing therefor and for the reasons set forth in the record on this Motion, it is **HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** as set forth herein.

2. Scott Byron Ellington and his counsel, The Pettit Law Firm and Lynn Pinker Hurst & Schwegmann LLP, shall show cause before this Court on **[ ], September [ ], 2023 at 9:30 a.m (Central Time)** why an order should not be granted:  (1) finding and holding each of them in contempt of court; (2) directing them, jointly and severally, to pay Highland an amount of money equal to Highland's and Seery's actual expenses incurred in bringing this Motion, payable within three (3) calendar days of presentment of an itemized list of expenses; and (3) granting Highland and Seery such other and further relief as the Court deems just and proper under the circumstances.

3. The Court shall retain exclusive jurisdiction with respect to all matters arising from or relating to the implementation, interpretation, and enforcement of this Order.

### ### END OF ORDER ##