Docket #3969  Date Filed: 11/10/2023

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris *(admitted pro hac vice)*
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

REED SMITH LLP
Omar J. Alaniz
Texas Bar No. 24040402
Lindsey L. Robin
Texas Bar No. 24091422
2850 N. Harwood St., Ste. 1500
Dallas, Texas 75201
(469) 680-4292

*Counsel for Highland Capital Management, L.P.,
and the Highland Claimant Trust*

*Counsel for James P. Seery, Jr.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |

**HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND CLAIMANT TRUST, AND
JAMES P. SEERY, JR.'S REPLY IN FURTHER SUPPORT OF THEIR JOINT
MOTION FOR CIVIL CONTEMPT AND IN OPPOSITION TO ELLINGTON'S
COUNSEL'S MOTION TO STRIKE**

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.



DEFENDANT'S
EXHIBIT
**91**
25-03055



1934054231110000000000002

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................. 1

ADDITIONAL RELEVANT BACKGROUND ...................................................................... 3

ARGUMENT ......................................................................................................................... 5

I.      RESPONDENTS' OPPOSITIONS CONFIRM THAT THEY SHOULD BE
        HELD IN CIVIL CONTEMPT FOR VIOLATING THE GATEKEEPER
        PROVISION AND GATEKEEPER ORDERS. .................................................... 5

        A.      Respondents Admit That They Are Pursuing Claims Against Highland
                And Seery.............................................................................................. 5

        B.      Respondents' Arguments That Their Misconduct Does Not Violate The
                Gatekeeper Provision and Gatekeeper Orders Fail. ............................. 8

II.     THIS COURT SHOULD DENY COUNSEL'S MOTION TO STRIKE. ...................... 12

CONCLUSION..................................................................................................................... 13

CERTIFICATE OF SERVICE ............................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**                                                                                       *Page(s)*

*Carroll v. Abide*,
   788 F.3d 502 (5th Cir. 2015) ...............................................................................................10

*Charitable DAF Fund LP v. Highland Cap. Mgmt. LP*,
   2022 WL 4538466 (N.D. Tex. Sept. 28, 2022).....................................................................2, 9

*In re Cir. City Stores, Inc.*,
   557 B.R. 443 (Bankr. E.D. Va. 2016)..................................................................................9, 10

*In re Correra*,
   589 B.R. 76 (Bankr. N.D. Tex. 2018)......................................................................................11

*Dow Jones & Co. v. Highland Cap Mgmt., L.P.*,
   564 S.W.3d 852 (Tex. App.—Dallas 2018)...............................................................................8

*In re Eagan Avenatti, LLP*,
   637 B.R. 502 (Bankr. C.D. Cal. 2022)................................................................................9, 10

*Gates v. City of Abilene*,
   2019 WL 13252682 (N.D. Tex. Feb. 21, 2019).......................................................................12

*In re Highland Cap. Mgmt., L.P.*,
   2021 WL 3418657 (Bankr. N.D. Tex. Aug. 4, 2021)..............................................................12

*PFS Invs., Inc. v. Imhoff*,
   2012 WL 254125 (E.D. Mich. Jan. 27, 2012)........................................................................10

*Shao v. Brady* (*In re Media Group, Inc.*),
   2006 WL 6810963 (B.A.P. 9th Cir. Nov. 14, 2006)...............................................................10

*Taggart v. Lorenzen*,
   139 S. Ct. 1795 (2019)..........................................................................................................2, 12

*Teton Mill Work Sales v. Schlossberg*,
   2007 WL 9657995 (D. Wyo. June 22, 2007)...........................................................................11

*Tetra Tech, Inc. v. NSAA Investments Group, LLC*,
   2016 WL 3364876 (Tex. App.—Fort Worth June 16, 2016) ....................................................8

**Statutes**

Tex. Civ. Prac. & Rem. Code § 85.001 ...........................................................................................6

Tex. Civ. Prac. & Rem. Code § 85.002 ...........................................................................................6

**Rules**

Fed. R. Bankr. P. 7004(b) ...................................................................................................12

Fed. R. Bankr. P. 7005 .......................................................................................................12

Fed. R. Bankr. P. 9011 ....................................................................................................3, 12

Fed. R. Bankr. P. 9014 .......................................................................................................12

Fed. R. Bankr. P. 9020 .......................................................................................................12

Local Bankr. R. 9014-1(b) ..................................................................................................12

Highland and Seery (together, "Movants"), by and through their undersigned counsel, hereby file this reply in further support of their joint motion for civil contempt ("Motion" or "Mot."; Dkt. No. 3910), in response to Ellington's Response in Opposition to the Joint Motion ("Ellington's Resp."; Dkt. No. 3958), and in opposition to Ellington's counsel's Motion to Strike ("Mot. to Strike"; Dkt. No. 3957; together with Ellington's Response, the "Oppositions").[2]  In support of their Motion, Movants state as follows:

## PRELIMINARY STATEMENT

1.      The Oppositions and accompanying declarations succeed only in *confirming* that Respondents are using the Stalking Action to pursue claims against Highland and Seery in violation of the Gatekeeper Provision and Gatekeeper Orders.  Indeed, Counsel point blank admit—in sworn declarations signed under penalty of perjury—that they "would like to investigate Daugherty's stalking of Ellington as a possible *quid-pro-quo* in exchange for a more beneficial settlement with Highland" in this bankruptcy case.  The counterparties to this latest (yet predictably fictitious) *quid pro quo*, of course, are Highland and Seery. Moreover, Ellington does not— because he cannot—deny that he "intends to use the third-party discovery to file a future claim against Seery." And Ellington does not—because he cannot—deny that he is coordinating with counsel for Dugaboy and HMIT by providing them with discovery obtained from the Stalking Action, which they have already used to pursue claims against Highland and Seery in this bankruptcy case.  Ellington's silence on these issues speaks volumes.  Ellington and Counsel could end this now by disavowing that they will bring any claims against Highland or Seery, but they refuse to do so.

---

[2] Capitalized terms have the same meanings ascribed to them in the Motion, unless otherwise indicated.  Ellington's counsel are referred to as "Counsel," and Ellington and Counsel together are referred to as "Respondents."

2. Respondents' backdoor efforts to challenge the bankruptcy process and the Daugherty Settlement have no bearing on whether Ellington can substantiate his allegations that Daugherty stalked Ellington. Nevertheless, just like HMIT did in its failed motion for leave to file an adversary proceeding, Respondents are pursuing claims against Highland and Seery by alleging yet another fabricated *quid pro quo*. But unlike HMIT, Respondents have not requested this Court's leave, which violates the Gatekeeper Provision and Gatekeeper Orders.

3. Respondents offer three meritless arguments for their misconduct. ***First***, they attack a strawman by arguing that they are not pursuing claims against Highland or Seery because they have not yet filed any such claims. This is a blatant attempt to read the word "pursue" out of the Gatekeeper Provision and Gatekeeper Orders. As the District Court held in prior litigation in this case, "[t]o pursue a claim, a party must 'try' or 'seek' to bring that claim," which encompasses a broader range of actions than "bring[ing] a claim against Seery." *Charitable DAF Fund LP v. Highland Cap. Mgmt. LP*, 2022 WL 4538466, at *3 (N.D. Tex. Sept. 28, 2022).

4. ***Second***, Respondents contend that Movants do not really believe that seeking third-party discovery constitutes pursuing a claim because Seery previously produced documents and was prepared to sit for a deposition in the Stalking Action. In so arguing, Respondents conflate legitimate third-party discovery in the Stalking Action, which Seery has provided without objection, with the *impermissible* discovery they now seek concerning the bankruptcy process and Daugherty Settlement, which violates the Gatekeeper Provision and Gatekeeper Orders.

5. ***Third***, Respondents incorrectly assert that civil contempt requires a finding of bad faith or willfulness. But as Counsel's own authority holds, the standard for civil contempt is "an *objective* one" and "the absence of willfulness does not relieve from civil contempt." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) (cleaned up; emphasis in original).

6.     This Court should also deny Ellington's counsel Motion to Strike.  Ellington's counsel argues that Movants did not comply with the procedural requirement of Federal Rule of Bankruptcy Procedure 9011, but twice admits that "Rule 9011 is inapplicable" to the Motion.

## ADDITIONAL RELEVANT BACKGROUND

7.     Movants recounted the relevant background at length in their Motion.  (Mot. at 4–15.)  Without addressing every incorrect and unsupported assertion in the Oppositions, Movants briefly provide additional procedural history to address Respondents' distorted and selective presentation.

8.     On June 19, 2023, Ellington served a subpoena on Seery in the Stalking Action seeking Seery's deposition about six broad topics.  (Mot. ¶ 24 Ex. 7.)  Seery's counsel agreed to accept service of the subpoena and sought to schedule a meet-and-confer call to discuss, among other things, "the scope of the depositions," "the procedure for raising objections to questions that exceed that scope," and raising "objections under the Gatekeeper Orders entered by the Bankruptcy Court (which I've attached) *to ensure discovery in the Ellington litigation is not used in connection with the Highland bankruptcy in violation of the Gatekeeper Orders*."  (*Id.* Ex. 9 (emphasis added).)

9.     On July 10, 2023, Counsel sent "revised topics" expanding the scope of the proposed deposition to nine topics, including:

> 6.  Mr. Seery's receipt of communications, emails, photos, videos, data, or other  information from Daugherty relating to Ellington or *entities affiliated with Ellington*.

> 7.  Any meetings or communications between *any representative of the Highland Bankruptcy estate* and Mr. Daugherty and/or his representatives related in any way to Ellington.

> [. . .]

> 9.    Any consideration provided to Daugherty with respect to Mr. Daugherty's so-called "investigation" of Mr. Ellington or the stalking in this case, including, but not limited to, the treatment of *Mr. Daugherty's Proof of Claim in the Highland bankruptcy*.

(*Id.* Exs. 8 & 10 (emphasis added).)  Seery's counsel raised "concerns about the scope of the revised topics, particularly 'entities affiliated with Ellington' in Topic 6, Topic 7, and 'Mr. Daugherty's Proof of Claim in the Highland bankruptcy' in Topic 9.  We'd like to discuss the topics *in light of the Bankruptcy Court's Gatekeeper Orders* and procedures for raising objections." (*Id.* Ex. 10 (emphasis added).)

10.    On July 11, 2023, the parties met and conferred by telephone and agreed that counsel for Highland "can attend the deposition and *can instruct the witness not to answer questions* on privilege grounds or as he deems appropriate *under the Bankruptcy Court's Gatekeeper Orders*."  (*Id.* (emphasis added).)  The parties also "agreed to limit the deposition to the topics noticed" and "agreed to exchange objections to the topics by email."  (*Id.*)  On July 13, 2023, counsel for Highland and Seery served the following objections by email:

> Topic No. 6. We object to Topic No. 6 to the extent it seeks testimony regarding "entities affiliated with Ellington" on the grounds that it is overly broad, not relevant to the claims and defenses at issue, and *violates the Bankruptcy Court's Gatekeeper Orders*.
>
> Topic No. 7. We object to Topic No. 7 on the grounds that it is overly broad, not relevant to the claims and defenses at issue, and *violates the Bankruptcy Court's Gatekeeper Orders*.
>
> Topic No. 9. We object to Topic No. 9 to the extent it seeks testimony regarding "Mr. Daugherty's Proof of Claim in the Highland bankruptcy" on the grounds that it is overly broad, not relevant to the claims and defenses at issue, and *violates the Bankruptcy Court's Gatekeeper Orders*.

(*Id.* (emphasis added).)  Counsel never challenged any of those objections.

11. On July 27, 2023, Counsel "postpone[d] Mr. Seery's deposition" to "file a Motion to Compel the redacted text messages" produced by Seery. (*Id.*). Respondents falsely assert that the state court "grant[ed] Ellington's motion to compel." (Mot. to Strike ¶¶ 17–18; *see also id.* at 3; Ellington's Resp. ¶ 26.) They ignore that the state court added certain handwritten modifications such that it ordered **Daugherty** to produce only "text messages with James Seery regarding Plaintiff [Ellington] *and the stalking issues*; including the unredacted versions of the text messages already produced by James Seery," in **Daugherty's** possession and control. (Mot. ¶ 35 Ex. 14 (handwritten modifications emphasized).) Because the redacted material does not relate to Ellington or any "stalking issues," unless Daugherty volunteers to provide more, that order will not result in the production of any additional documents or information. Thus, contrary to Respondents' baseless assertions, there is no attempt to "prevent[] the state court from making a routine decision about the scope of third-party discovery," no request "for this Court to decide the appropriate scope of discovery in the State Court Action," and no request for "this Court to intervene in and overrule the State Court's recent discovery order." (Mot. to Strike at 4; Ellington's Resp. ¶ 4; *see also id.* ¶¶ 26, 37; Mot. to Strike at 15–16.)

**ARGUMENT**

I. **Respondents' Oppositions Confirm That They Should Be Held In Civil Contempt For Violating The Gatekeeper Provision and Gatekeeper Orders.**

A. **Respondents Admit That They Are Pursuing Claims Against Highland And Seery.**

12. Counsel has now admitted at least *four times* that they are using discovery in the Stalking Case to pursue claims against Highland and Seery:

- **July 24, 2023 Email from Julie Pettit:** "We believe that Mr. Daugherty and Mr. Seery's communications regarding *settlement of Mr. Daugherty's proof of claim* in the Highland bankruptcy are relevant to the factual issues that will be tried in this matter.  To the extent that the redacted communications relate in any way to the *negotiations between Mr. Daugherty and Mr. Seery, as a representative of the Highland Estate*, please produce those communications."  (Mot. ¶ 26 Ex. 12 (emphasis added).)

- **July 25, 2023 Email from Julie Pettit:** "[W]e are seeking the deposition of Judge Nelms" to show "that Daugherty—with the assistance of at least one other individual [*i.e.*, Seery]—stalked Mr. Ellington" in a *quid pro quo* such that "*Daugherty's settlement in the bankruptcy became materially better . . .* only after Daugherty had provided Seery and Clubok with thousands upon thousands of pages of his investigatory work regarding Ellington."  (Mot. ¶¶ 2, 29 (quoting Wynne Decl. Ex. 4) (emphasis added).)

-  **Oct. 23, 2023 Declaration of Julie Pettit:** "[W]e would like to investigate Daugherty's stalking of Ellington as a possible *quid-pro-quo* in exchange for a beneficial settlement with Highland."  (Mot. to Strike Ex. A ("<u>Pettit Decl.</u>") ¶ 24.)

- **Oct. 24, 2023 Declaration of Michael Hurst:** "[W]e have a good faith basis to investigate Daugherty's stalking of Ellington as a possible *quid-pro-quo* in exchange for a beneficial settlement with Highland."  (Mot. to Strike Ex. B ("<u>Hurst Decl.</u>") ¶ 24.)

13.    Daugherty's settlement with Highland has nothing to do with whether Daugherty stalked Ellington.  Respondents admit that, as a matter of Texas law, their stalking claims turn on whether Daugherty "engaged in harassing behavior" such that Ellington "reasonably feared for [his] safety or the safety of a member of [his] family."  (Mot. ¶ 19 Ex. 2 ¶¶ 20–22 (quoting Tex. Civ. Prac. & Rem. Code §§ 85.001–02).)  Indeed, Respondents represented to the state court just three months ago that Daugherty's "supposed motivations in stalking Plaintiff are irrelevant."  (*Id.* Ex. 1 ¶ 2.)[3]

---

[3] Respondents are aware that the contrived *quid pro quo* against Highland and Seery is irrelevant to the Stalking Action.  When addressing this very point, Counsel suggested that she could cure the "relevan[ce]" objections by "amend[ing]" Ellington's complaint (which she never did).  (Mot. ¶ 26 Ex. 12.)  Ellington does not and cannot assert that communications concerning the Daugherty Settlement caused him to feel threatened or that an offense was being committed against him—as required by Texas stalking laws—because he learned of the communications only during discovery.

14.     Respondents now claim—in direct contradiction to their own representations to the state court—that discovery into negotiations of the Daugherty Settlement are "relevant to [Daugherty's] motives in stalking Ellington." (Ellington's Resp. at 6; *see also id.* ¶ 25 ("Ellington could obtain materials related to Daugherty's apparent motive in stalking Ellington."); Mot. to Strike at 23 (seeking discovery because "Daugherty's stalking was motivated by malice and potential financial reward"). Respondents cannot have it both ways. By acknowledging that Daugherty's motives are irrelevant to the Stalking Action, they put the lie to any theory of relevance based on Daugherty's motives.[4] Such discovery is a blatant attempt to pursue claims against Highland and Seery in violation of the Gatekeeper Provision and Gatekeeper Orders.

15.     This is not mere "speculation." (Mot. to Strike at 16; *see id.* at 19–20; Ellington's Resp. ¶ 36.) Ellington does not deny that he "intends to use the third-party discovery to file a future claim against Seery." (Ellington's Resp. ¶ 36.) Worse, Respondents have already provided discovery material from the Stalking Action to counsel for Dugaboy, which used it to file the Imaging Motion against Seery in this bankruptcy case, and counsel for HMIT, which used it to further their motion for leave to file an adversary proceeding. (Mot. ¶ 23.) Again, Ellington does not deny that he did so. Counsel's declarations effectively admit the same. They state that they "did not disclose those communications to Dugaboy or its counsel," but do not deny providing discovery material to counsel for HMIT. (Pettit Decl. ¶ 31; Hurst Decl. ¶ 31.) Counsel also state that they "have not coordinated in any way with James Dondero as it relates to the stalking litigation or the Highland Bankruptcy," but do not state that they have not coordinated with

---

[4] Respondents also assert that Highland's payments to Daugherty under the Daugherty Settlement are somehow relevant to Ellington's "damages" in the Stalking Action. (Ellington's Resp. ¶ 25 & n.5; *see also* Mot. to Strike at 23 (claiming that "discovery is also relevant to actual and exemplary damages").) Respondents provide no explanation of how payments by Highland to Daugherty are related to any harm Ellington and his family experienced from Daugherty's alleged stalking, because they are entirely unrelated.

Dondero's counsel.   (Pettit Decl. ¶ 32; Hurst Decl. ¶ 32.)   This Court should not permit Respondents to end-run the Gatekeeper Provision and Gatekeeper Orders by pursuing claims against Highland and Seery that are ultimately filed by different entities or different counsel.  This is precisely why the Gatekeeper Provision extends to Ellington's "Related Persons," including his counsel.  (Mot. ¶ 11 n.6.)

**B.    Respondents' Arguments That Their Misconduct Does Not Violate The Gatekeeper Provision and Gatekeeper Orders Fail.**

16.    Respondents do not—and cannot—dispute that they are subject to and aware of the Gatekeeper Provision and Gatekeeper Orders, and that Highland and Seery are protected by them. Respondents offer three meritless arguments for why their misconduct does not violate the Gatekeeper Provisions or Gatekeeper Orders.

17.    *First*, Respondents try to read the word "pursue" out of the Gatekeeper Provision and Gatekeeper Orders by arguing that "[s]eeking discovery is not the same as bringing a 'claim or cause of action' such that Gatekeeper Orders would be implicated." (Ellington's Resp. ¶ 2; *see also* Mot. to Strike at 17–18, 21–22.)  Movants have never argued that discovery constitutes a claim or cause of action; they argue that seeking discovery to challenge alleged conduct in the bankruptcy settlement process constitutes "***pursu[ing]*** a claim or cause of action" under the Gatekeeper Provision and Gatekeeper Orders. (Mot. ¶ 37 (emphasis added).)  Thus, Respondents' authority—much of which arises in the indemnification context—differentiating between a subpoena or Rule 202 petition and a "claim or cause of action" is irrelevant. (Ellington's Resp. ¶ 33 (citing *Dow Jones & Co. v. Highland Cap Mgmt., L.P.*, 564 S.W.3d 852, 858 (Tex. App.—Dallas 2018); *Tetra Tech, Inc. v. NSAA Investments Group, LLC*, 2016 WL 3364876, at *3 (Tex. App.—Fort Worth June 16, 2016)); Mot. to Strike at 17–18, 21–22 (citing same).)

18.     As a matter of law, "the term *pursue* in the gatekeeper orders" refers to "legal activities that occur" *before* "a claim has already been filed." *Charitable DAF*, 2022 WL 4538466, at *2.  While this may not encompass mere "legal research or client communications" (Mot. to Strike at 19 (quoting *Charitable DAF*, 2022 WL 4538466, at *3); Ellington's Resp. ¶ 35 (citing *Charitable DAF*, 2022 WL 4538466, at *6–7)), Respondents did much more than that.  They have already used discovery in the Stalking Action to bring the Imaging Motion against Seery and to try and support HMIT's claims against Highland and Seery and now seek to use the Stalking Action to conduct a full-blown investigation into the negotiation of the Daugherty Settlement—with extensive document requests, depositions, and court filings—to "'try' or 'seek' to bring [a] claim" against Highland and Seery.  *Charitable DAF*, 2022 WL 4538466, at *3.

19.     Contrary to Ellington's assertions, the "*Barton* doctrine," on which the Gatekeeper Provision and Gatekeeper Orders "are based," is not "limited to the commencement of a legal action against a court appointee."  (Ellington's Resp. ¶¶ 29–32.)  "The *Barton* Doctrine applies to subpoenas issued by courts that are served" on "officers and agents owing their positions to bankruptcy court orders," following "the same principles as where the trustee becomes a party to a suit or adversary proceeding."  *In re Eagan Avenatti, LLP*, 637 B.R. 502, 506, 508 (Bankr. C.D. Cal. 2022) (citing *In re Cir. City Stores, Inc.*, 557 B.R. 443 (Bankr. E.D. Va. 2016)).  Accordingly, bankruptcy courts will enjoin "[a] court issued subpoena targeting a bankruptcy professional" from another court where, as here, "the issuers of the subpoenas failed to ask for *Barton* approval before issuing a subpoena."  *Id.* at 508–09 (citing *In re Cir. City*, 557 B.R. at 448–51).

20.     The *Circuit City* case is instructive.  There, the post-confirmation Trustee of the Liquidating Trust received a third-party deposition subpoena from a state court without prior approval from the bankruptcy court.  557 B.R. at 448.  The bankruptcy court enjoined the issuer

"from enforcing the Subpoena against the Liquidating Trust," because it "would interfere with the Liquidating Trustee's administration of the estate," so the issuer "was required under the *Barton* doctrine to obtain leave from this Court before issuing the Subpoena to the Liquidating Trust." *Id.* at 451. Similarly, in *Eagan Avenatti*, the Central District of California Bankruptcy Court refused to permit the bankruptcy trustee to comply with two subpoenas issued by the District Court for the Southern District of New York, because they were issued without prior *Barton* approval and took "up considerable time and legal fees," which "is precisely the harm that the *Barton* doctrine was created to prevent." 637 B.R. at 509–10.

21.     Ellington misreads *Shao v. Brady* (*In re Media Group, Inc.*), 2006 WL 6810963, at *7–9 (B.A.P. 9th Cir. Nov. 14, 2006), which does not hold that "the propounding of discovery" is not "covered by the *Barton* doctrine." (Ellington's Resp. ¶ 31.) As the *Circuit City* court explained, "[a] third party subpoena had been issued to an attorney representing a chapter 7 trustee in *Media Group*," so "[c]ompliance with the subpoena by the attorney did not directly impact the trustee's administration of the bankruptcy estate," and "[t]he 9th Circuit BAP ruled that it was not inclined to extend the *Barton* doctrine to the issuance of the subpoena under those circumstances." 557 B.R. at 449. Here, Respondents seek discovery from Seery as the representative of the Highland bankruptcy estate regarding the "administration of the bankruptcy estate" in the Daugherty Settlement, which involves "very different facts and circumstances from those presented in" *Media Group*. *Id.* Ellington's remaining authority (*see* Ellington's Resp. ¶¶ 30, 32) either contradicts his position, holding that "the bankruptcy court provides the most appropriate forum" to address objections to discovery requests, *PFS Invs., Inc. v. Imhoff*, 2012 WL 254125, at *5 (E.D. Mich. Jan. 27, 2012), or is irrelevant, *see Carroll v. Abide*, 788 F.3d 502, 506–07 (5th Cir. 2015) (holding that debtors were not required to request leave of the bankruptcy court to bring

suit against the bankruptcy trustee for action taken pursuant to a district court order, which is not the case here); *Teton Mill Work Sales v. Schlossberg*, 2007 WL 9657995, at *2 (D. Wyo. June 22, 2007) (declining to stay discovery, which was already "substantially complete," while *Barton* doctrine motion "is currently pending before the Court.")

22.     ***Second***, Respondents assert that "third-party discovery does not constitute pursuing a claim or cause of action" (Mot. to Strike at 16; *see also* Ellington's Resp. ¶ 33), which conflates discovery that violates the Gatekeeper Provision and Gatekeeper Orders with legitimate third-party discovery.   Respondents admit that Seery produced "thousands of documents" and agreed "to appear for a deposition" in the Stalking Action.   (Mot. to Strike at 2; *see also id.* at 3, 16; Ellington's Resp. ¶¶ 3, 22–23, 39.)   Movants raised the Gatekeeper Provision and Gatekeeper Orders only when Respondents tried to use discovery in the Stalking Action to challenge the bankruptcy process regarding the Daugherty Settlement.   (*See supra* ¶¶ [7]–[11]; *see also* Mot. ¶¶ 24–27.)[5]   Ellington tries to minimize this conduct as simply "having an intent to pursue claims or causes of action against Seery in the future" (Ellington's Resp. ¶ 36), but serving subpoenas and filing motions in the Stalking Action to challenge the bankruptcy process is conduct, not just intent, which is why it violates the Gatekeeper Provision and Gatekeeper Orders.

23.     ***Finally***, Respondents misstate the applicable legal standard for civil contempt, which does not require "a finding of bad faith."   (Ellington's Resp. ¶ 38 (quoting *In re Correra*, 589 B.R. 76, 125 (Bankr. N.D. Tex. 2018) (Jernigan, C.J.)); Mot. to Strike at 23 (quoting same).)

---

[5] Counsel's attempt to frame Seery receiving unsolicited text messages from Daugherty as "Seery willingly conferred with Daugherty on a regular basis and accepted the fruits of Daugherty's improper stalking activities" (Mot. to Strike at 15) mischaracterizes the record and is not supported by Counsel's own declarations (*see* Pettit Decl. ¶ 28; Hurst Decl. ¶ 28.)   To the contrary, in response to one of the unsolicited text messages, Seery strongly suggested that Daugherty cease pursuing Highland's former employees.   (*See* Pettit Decl. Ex. A-5 at DEF 000246 (responding to an unsolicited picture Daugherty sent of Sarah Goldsmith allegedly delivering boxes to Ellington's storage facility, Seery wrote: "***Pat is a former employee as is he.   I suggest leaving her alone*** but assume she just came across your view by accident") (emphasis added).)

Where, as here, a "party seek[s] an order of contempt in a civil contempt proceeding" because the contemnor "violate[d] a definite and specific order of the court," "the contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." *In re Highland Cap. Mgmt., L.P.*, 2021 WL 3418657, at *11–12 (Bankr. N.D. Tex. Aug. 4, 2021) (Jernigan, J.) (cleaned up), *aff'd in relevant part sub nom. Charitable DAF Fund LP v. Highland Capital Mgmt. LP*, 2022 WL 4538466 (N.D. Tex. Sept. 28, 2022).  As Counsel's own authority (*see* Mot. to Strike at 22–23) holds, "civil contempt sanctions may be warranted when a party acts in bad faith," but the "standard is generally an *objective* one," and "the absence of willfulness does not relieve from civil contempt." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) (cleaned up; emphasis added).

## II.     This Court Should Deny Counsel's Motion To Strike.

24.     Counsel correctly states—and Movants agree—that "[c]ivil contempt motions in bankruptcy cases are governed by Fed R. Bankr. P. 9020 which implicates Rule 9014 governing contested matters," so "Rule 9011 is inapplicable" to the Motion.  (Mot. to Strike at 8–9, 11.) Thus, Counsel's attempt to strike the Motion because Movants "failed to comply with Rule 9011" and its "notice requirement" (*id.* at 9–10) fails by Counsel's own admission.

25.     Counsel's assertion that Highland and Seery "failed to properly serve" them "under Rules 7004, 7005, and 9014" (*id.* at 8 & n.5, 11) is wrong.  Counsel admits that Movants "email[ed] a copy" of the Motion, and "L.B.R. 9014-1 instructs that '[t]he movant shall serve the motion ***electronically***, or by mail, in the manner provided by Bankruptcy Rule 7004.  No summons is required.'" (*Id.* at 8 n.5 (quoting N.D. Tex. Local Bankr. R. 9014-1(b)) (emphasis added).)  In any event, to avoid any doubt about the sufficiency of service, Movants also served Counsel by first-class mail and filed a certificate of service (Dkt. No. 3968).  *See* Fed. R. Bankr. P. 7004(b), 7005; *see also, e.g.*, *Gates v. City of Abilene*, 2019 WL 13252682, at *3 (N.D. Tex. Feb. 21, 2019)

(denying motion to quash service as moot because "after the filing of Defendant's Motion, Plaintiff properly served the summons and complaint"). There can be no question that service here was proper and effective since Respondents objected to the Motion pursuant to an agreed-upon schedule. The Motion to Strike is without merit and should be denied.

## CONCLUSION

26.     For the foregoing reasons and those set forth in the Motion, Movants respectfully request this the Court order Respondents to show cause why they should not be held in civil contempt for violating the Gatekeeper Provision and Gatekeeper Orders, and deny Counsel's Motion to Strike.

Dated: November 10, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ John A. Morris*

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email:      jpomerantz@pszjlaw.com
               jmorris@pszjlaw.com
               gdemo@pszjlaw.com
               hwinograd@pszjlaw.com


-and-

**HAYWARD PLLC**
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110


*Counsel for Highland Capital Management, L.P., and the Highland Claimant Trust*

**WILLKIE FARR & GALLAGHER LLP**

*/s/ Mark T. Stancil*

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com


-and-


**REED SMITH LLP**
Omar J. Alaniz
Texas Bar No. 24040402
Lindsey L. Robin
Texas Bar No. 24091422
2850 N. Harwood St., Ste. 1500
Dallas, Texas 75201
(469) 680-4292


*Counsel for James P. Seery, Jr.*

-14-

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 10, 2023, a true and correct copy of the foregoing will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

*/s/ Mark T. Stancil*