United States Bankruptcy Court

Northern District of Texas

Highland Capital Management, L.P.,

    Plaintiff

                                                           Adv. Proc. No. 25-03055-bwo

Daugherty,

    Defendant

# CERTIFICATE OF NOTICE

| District/off: 0539-3 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Apr 13, 2026 | Form ID: pdf001 | Total Noticed: 5 |

The following symbols are used throughout this certificate:

**Symbol**        **Definition**

+        Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Apr 15, 2026:**

NONE

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**

Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| ust | + Email/Text: ustpregion06.da.ecf@usdoj.gov | Apr 13 2026 21:52:00 | United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242-0996 |
| ust | + Email/Text: ustpregion07.au.ecf@usdoj.gov | Apr 13 2026 21:52:00 | United States Trustee - AU12, United States Trustee, 903 San Jacinto Blvd, Suite 230, Austin, TX 78701-2450 |
| ust | + Email/Text: ustpregion07.au.ecf@usdoj.gov | Apr 13 2026 21:52:00 | United States Trustee - MD12, US Trustee's Office, 230 Homer Thornberry Judicial Bldg., 903 San Jacinto Blvd., Austin, TX 78701-2450 |
| ust | + Email/Text: USTPRegion07.SN.ECF@usdoj.gov | Apr 13 2026 21:52:00 | United States Trustee - SA12, US Trustee's Office, 615 E Houston, Suite 533, San Antonio, TX 78205-2055 |
| ust | + Email/Text: ustpregion07.au.ecf@usdoj.gov | Apr 13 2026 21:52:00 | United States Trustee - WA12, United States Trustee, 903 San Jacinto Blvd, Suite 230, Austin, TX 78701-2450 |

TOTAL: 5

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| ust | *+ | United States Trustee - SA12, US Trustee's Office, 615 E Houston, Suite 533, San Antonio, TX 78205-2055 |

TOTAL: 0 Undeliverable, 1 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Apr 15, 2026                    Signature:        /s/Gustava Winters

District/off: 0539-3                                    User: admin                                    Page 2 of 2
Date Rcvd: Apr 13, 2026                                Form ID: pdf001                                 Total Noticed: 5

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on April 13, 2026 at the address(es) listed below:**

**Name**    **Email Address**

Andrew K. York

on behalf of Defendant Patrick Hagaman Daugherty dyork@grayreed.com  slangley@grayreed.com

Andrew K. York

on behalf of Counter-Claimant Patrick Hagaman Daugherty dyork@grayreed.com  slangley@grayreed.com

Gregory V. Demo

on behalf of Counter-Defendant Highland Capital Management  L.P. gdemo@pszjlaw.com,
jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com

Gregory V. Demo

on behalf of Plaintiff Highland Capital Management  L.P. gdemo@pszjlaw.com,
jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com

Hayley R Winograd

on behalf of Plaintiff Highland Capital Management  L.P. hayleywinograd@gmail.com

Hayley R Winograd

on behalf of Counter-Defendant Highland Capital Management  L.P. hayleywinograd@gmail.com

Jeffrey Nathan Pomerantz

on behalf of Plaintiff Highland Capital Management  L.P. jpomerantz@pszjlaw.com

Jeffrey Nathan Pomerantz

on behalf of Counter-Defendant Highland Capital Management  L.P. jpomerantz@pszjlaw.com

Jeffrey Reid Burley

on behalf of Defendant Patrick Hagaman Daugherty rburley@grayreed.com  hpetrea@bellnunnally.com

Jeffrey Reid Burley

on behalf of Counter-Claimant Patrick Hagaman Daugherty rburley@grayreed.com  hpetrea@bellnunnally.com

John A Morris

on behalf of Plaintiff Highland Capital Management  L.P. jmorris@pszjlaw.com

John A Morris

on behalf of Counter-Defendant Highland Capital Management  L.P. jmorris@pszjlaw.com

Melissa S. Hayward

on behalf of Plaintiff Highland Capital Management  L.P. MHayward@HaywardFirm.com, mholmes@HaywardFirm.com

Zachery Z. Annable

on behalf of Plaintiff Highland Capital Management  L.P. zannable@haywardfirm.com, mholmes@haywardfirm.com

Zachery Z. Annable

on behalf of Counter-Defendant Highland Capital Management  L.P. zannable@haywardfirm.com, mholmes@haywardfirm.com

TOTAL: 15



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 10, 2026**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | § Chapter 11 |
| | § |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § Case No. 19-34054-sgj11 |
| | § |
| Reorganized Debtor. | § |
| | § |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § Adversary No. 25-03055-bwo |
| PATRICK HAGAMAN DAUGHERTY, | § |
| | § |
| Defendant. | § |
| | § |

## JOINT PRETRIAL ORDER

---

[1]   Highland's last four digits of its taxpayer identification number are (8357). The mailing address for Highland is 6333 E. Mockingbird Lane, Suite 147 #5045, Dallas, TX 75214.

This Joint Pretrial Order is jointly submitted to the Court for entry pursuant to Local Bankruptcy Rule 7016-1(a) and the Court's *Order Approving Second Stipulated Scheduling Order* [Docket No. 94][2] by Highland Capital Management, L.P. ("Plaintiff" or "Highland") and Patrick Hagaman Daugherty ("Daugherty," and together, the "Parties").

## I.     NATURE OF ACTION AND PROCEDURAL POSTURE

1.     This action concerns Daugherty's contingent, unliquidated claim against Highland arising from the audit of Highland's 2008 tax return (the "Reserved Claim"), and Highland's claims against Daugherty, seeking to disallow and estimate his Reserved Claim.[3]  This action also concerns Daugherty's Counterclaims (defined below).

2.     On October 16, 2019, Highland filed its petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case" or the "Case"). Thereafter, Daugherty filed several proofs of claims in the Bankruptcy Case. Those claims culminated in Claim No. 205, which superseded and replaced all prior claims.

3.     In November 2021, Daugherty and Highland entered into that certain *Settlement Agreement* (the "Settlement Agreement"), which resolved all aspects of Daugherty's claims against the Debtor's estate except for the Reserved Claim. On March 8, 2022, the Court entered an order approving the Settlement Agreement (the "Settlement Order") [Bankr. Docket No. 3299].[4] The Settlement Agreement provided that Highland would transfer to Daugherty its "interests in HERA and ERA," and that such transfer will include "the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system . . . [and] be without representation or warranty of any type … and

---

[2] "Docket No. __" refers to the docket maintained in the above-captioned adversary proceeding (the "Adversary Proceeding").

[3] As set forth in Highland's contentions below, Highland is withdrawing its Third Cause of Action for subordination under Bankruptcy Code Section 510(c).

[4] "Bankr. Docket No. __" refers to the docket maintained in the Bankruptcy Case.

without any liability or material cost to HCMLP or its affiliates..." Highland Ex. 5 ¶8 (the "Books and Records Provision"). The Settlement Agreement further provided that Highland expressly "reserve[d] the right to assert any and all defenses" to the Reserved Claim. *Id*. ¶9.

4.     On May 2, 2025, Highland commenced the Adversary Proceeding by filing its Complaint for (1) Disallowance of Claim No. 205 in its Entirety, (2) Estimation of Claim No. 205 for Allowance Purposes, or (3) Subordination of Any Allowed Portion of Claim No. 205 of Patrick Hagaman Daugherty [Docket No. 1] (the "Complaint"). In its Complaint, Highland asserted three claims: (a) disallowance of the Claim, (b) estimation of the Claim pursuant to 11 U.S.C. 502(c), and (c) subordination of the Claim under 11 U.S.C. § 510(b), (excluding the claim for subordination being withdrawn with prejudice, "Highland's Claims").

5.     On June 5, 2025, Daugherty filed a Motion to Dismiss the Complaint [Docket No. 5]. Highland filed an Objection and a Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024 [Docket No. 10].  At the hearing on Daugherty's Motion to Dismiss and Highland's Cross Motion, the Court denied the Motion to Dismiss and granted the Cross Motion. The Court's ruling struck a particular provision of the Settlement Agreement that Daugherty contends prohibited Highland from filing this Adversary Proceeding.[5]

6.     On October 3, 2025, Daugherty filed his *Answer* and *Original Counterclaim* [Docket No. 39], asserting three causes of action against Highland: (a) breach of contract for breach of the Books and Records Provision; (b) specific performance through which Daugherty seeks an order requiring Highland to turn over all of HERA and ERA books and records in compliance with the Books and Records provision; and (c) attorneys' fees arising from Highland's allegedly bad faith

---

[5] Daugherty appealed to the district court from this Court's order granting the Cross Motion.  That appeal is still pending. Daugherty does not intend to relitigate those issues at the upcoming April 17 hearing, but Daugherty is not waiving his existing appeal or any right to re-raise the issue in an appeal from the Court's ruling after the April 17 hearing.

conduct in commencing the Adversary Proceeding (collectively, the "Counterclaims"). On October 24, 2025, Highland filed its *Answer* to the Counterclaims (which included its affirmative defenses) [Docket No. 56].

7.      A trial on Highland's Claims and Daugherty's Counterclaims is scheduled for April 17, 2026.

## II.      STATEMENT OF STIPULATED FACTS

**A.      The Parties Stipulate to the Following Facts:**

8.      From 1998-2011, Daugherty was employed by Highland.

9.      Daugherty and Highland entered into that certain Amended Employment Agreement dated as of December 31, 2004 (the "Employment Agreement").  Highland Ex. 11.

10.      On or about February 27, 2009, Highland issued to Daugherty a Comprehensive Compensation and Benefits Statement.  Highland Ex. 13 (the "Comprehensive Statement").

11.      In 2009, based on a draft Schedule K-1 that Highland provided to him, Daugherty filed his 2008 federal income tax return.

12.      In 2009, Daugherty received refunds from the IRS of previously paid taxes in the amounts of $493,629 and $780,301 related to his 2008 Individual Income Tax Return (Form 1040) and his 2008 Application for Tentative Refund (Form 1045), respectively.  These forms incorporated Highland's losses that had been allocated to him as provided for in the draft Schedule K-1.

13.      On March 3, 2010, the IRS notified Highland that it was initiating an audit of Highland's 2008 federal income tax returns.

14.      On September 28, 2011, Daugherty gave voluntarily notice of resignation from all positions at Highland.  Highland Ex. 12.  His last day as an employee at Highland was October 31, 2011.

15. On October 16, 2019, Highland filed its petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case").

16. On February 22, 2021, the Court entered the *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Main Docket No. 1943] (the "Confirmation Order") with respect to the Plan.[6]

17. The Plan included a form of *Claimant Trust Agreement* (the "CTA"). [Bankr. Docket No. 1811, Exhibit R (preamble)].

18. The Plan created the CTA when the Plan went effective on August 11, 2021. [Main Docket No. 2700].

19. On November 22, 2021, Daugherty and Highland executed the Settlement Agreement. Highland Ex. 5.

20. On March 8, 2022, the Court entered the Settlement Order approving the Settlement Agreement.

21. On May 5, 2022, and October 19, 2022, Highland delivered certain documents and materials to Daugherty as reflected in Daugherty Exhibits 33 and 34, respectively.

22. The Reserved Claim remains disputed, contingent, and unliquidated.

### III. CONTESTED ISSUES OF FACT

**The statements and contentions in this section reflect the respective views of each Party and are not a joint statement or stipulation. No Party admits, agrees, or acquiesces to any factual or legal contentions, statements, or allegations of any other Party.**

23. The Parties disagree on the following issues of fact:

- Whether the Compensation Statement is a binding and enforceable contract (Mixed

---

[6] The "Plan" refers to the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* filed on the main docket at Docket No. 1808. The Confirmation Order was subsequently modified for reasons irrelevant to the Motion. *See* Main Docket No. 4378.

question of law and fact)?

- Whether Highland fulfilled its obligations, if any, under the Compensation Statement?

- If the Compensation Statement is an enforceable contract, and Highland has not fulfilled its obligations thereunder, whether Daugherty's Reserved Claim can be estimated in accordance with Section 502(c) of the Bankruptcy Code (Mixed question of law and fact)?

- If Daugherty's Reserved Claim can be estimated, how much should the Reserved Claim be estimated at for purposes of allowance.

- Whether the failure to estimate Daugherty's Reserved Claim before August 11, 2026, would unduly delay the administration of Highland's bankruptcy case?

- Whether Highland breached the Settlement Agreement's Books and Records Provision?

- Whether Highland acted in "bad faith" and is therefore liable for Daugherty's attorneys' fees?

## IV.   CONTESTED ISSUES OF LAW

24.   The Parties disagree on the following issues of law:

- The Parties disagree over whether Daugherty's Reserved Claim should be disallowed (Mixed question of law and fact).

- The Parties disagree about whether Highland fulfilled its obligations under the Books and Records Provision (Mixed question of law and fact).

- The Parties disagree about whether Daugherty's breach of contract claim is barred by the statute of limitations.

- The parties disagree about who has the ultimate burden of proof on each cause of action and what those burdens are.

### 1.   Estimated length of trial.

25.   The Parties estimate that trial in this case will take one full day.

### 2.   Additional matters that might aid in the disposition of the case.

26.   None at this time.

## V.   PARTIES' CLAIMS AND DEFENSES

**The following statements and contentions of the respective Parties in this Section reflect the respective views of each Party and are not a joint statement or stipulation. No Party admits,**

4921-9787-5871.7 36027.00008                             6

**agrees, or acquiesces to any factual or legal contentions, statements, or allegations of any other Party.**

**A.      Summary of Highland's Claims and Defenses**

**1.      Daugherty Has the Ultimate Burden of Proof**

27.      Under 11 U.S.C. § 502(a) a "claim ..., proof of which is filed under section 501 [of the Bankruptcy Code], is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). The ultimate burden of proof for a claim always lies with the claimant. *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006) (citing *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15 (2000)).  Thus, Daugherty has the ultimate burden of proof with respect to the allowance and amount of his Reserved Claim.

28.      Daugherty also has the ultimate burden of proof with respect to each of his Counterclaims.

**2.      Daugherty's Claim Should Be Disallowed**

29.      Daugherty's Claim should be disallowed for three independent reasons: (a) the Compensation Statement[7] is unenforceable as a contract because it is vague and indefinite and is missing material terms required to form a contract; (b) if the Compensation Statement creates an enforceable contract, Highland long-ago satisfied any obligations it may have had thereunder; and (c) under the plain and unambiguous terms of the Employment Agreement,[8] Daugherty surrendered any rights he may have had under the Compensation Statement when he voluntarily resigned from all positions at Highland in October 2011.

---

[7] Highland Ex. 13.

[8] Highland Ex. 11.

a.   **Material Terms of the Compensation Statement Are Either Vague or Indefinite or Are Missing Such that the No "Agreement" Was Reached and Claims Under the Compensation Statement are Unenforceable as a Matter of Law**

30.     The Compensation Statement does not constitute an offer by Highland and acceptance by Daugherty, an "at will" employee with an Employment Agreement, for anything.  It is simply a summary of what Highland had or was going to pay Daugherty for services he had already performed during the prior year and a reiteration of his base salary for the next year.  Every employee of Highland received a similar statement every year at the end of the performance review cycle each February.  Material terms in the Compensation Statement Daugherty relies upon to claim an enforceable agreement are either vague or indefinite or are completely missing such that the so-called "agreement" is unenforceable as a matter of law.  As relevant here, the alleged "agreement" is contained in three sentences that state only: "Refund is an *estimated amount*.  If actual refund deviates *materially* from estimate, *other compensation* will be *fairly adjusted*.  Refund is expected to be received in approximately 4 months."[9]  That's it.

31.     Under Texas law, a contract that fails to address all of its essential and material terms with a reasonable degree of certainty and definiteness is unenforceable as a matter of law.  *See APS Cap. Corp. v. Mesa Air Grp., Inc.*, 580 F.3d 265, 272 (5th Cir. 2009) ("In order to be a legally enforceable contract, an agreement must be formed around the contours of sufficiently specific terms.").  Material terms "are those that the parties would reasonably regard as vitally important elements of their bargain," and "a contract must define its essential terms with enough precision to enable the court to determine the obligations of the parties."  *In re ACM-Tex., Inc.*, 430 B.R. 371, 408 (Bankr. W.D. Tex. 2010); *see also Wesdem, LLC v. Illinois Tool Works Inc.*, 2022 WL 18585978,

---

[9] Highland Ex. 13 (emphasis added).

at *4 (W.D. Tex. July 28, 2022), *aff'd sub nom.*, 70 F.4th 285 (5th Cir. 2023) ("Where the agreement is so indefinite that the Court must 'speculate' about its terms, the contract fails 'as a matter of law.'") (quoting *RealPage, Inc. v. EPS, Inc.*, 560 F. Supp. 2d 539, 547 (E.D. Tex. 2007) (granting summary judgment on a breach of contract claim because the licensing agreement failed to specify the product to be licensed and its price, affording the court no basis for understanding the parties' obligations); *Coppock v. Doug's Corner, Inc.*, No. 5:21-CV-43-RWS-JBB, 2023 WL 11947178, at *3 (E.D. Tex. May 17, 2023) (noting that "the agreement's terms must also be sufficiently definite to 'enable a court to understand the parties' obligations' and to give 'an appropriate remedy' if they are breached.") (quoting *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016)).

32.     "As a general matter, Texas courts have consistently held that a contract may be held void for indefiniteness if it fails to specify 'the time of performance, the price to be paid, the work to be done, the service to be rendered, or the property to be transferred.'" *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 324 (5th Cir. 2006) (quoting *Engelman Irr. Dist. v. Shields Bros.*, 960 S.W.2d 343, 352 (Tex. App. 1997)). "The question of indefiniteness—whether an agreement reaches all essential terms of a given transaction—is one of law for the court." *APS*, 580 F.3d at 271 (citing **COC Svcs., Ltd. v. CompUSA, Inc.,** 150 S.W.3d 654, 664 (Tex.App.—Dallas 2004)).

33.     Here, under Texas law, the Compensation Statement either contains vague or indefinite terms, or omits material terms, that render it unenforceable.

34.     ***First***, the 2008 tax refund is explicitly stated to be an "estimated" amount. While unstated, the refund could only come from the IRS (as the taxing authority), not Highland. But the amount is not clear; it is merely estimated because a tax refund to an individual can only be determined after that individual files his/her tax return and all of the individual's particularized tax

4921-9787-5871.7 36027.00008                                    9

attributes are taken into consideration.[10]  While Highland could (and did quite accurately) estimate the amount of losses it would pass through to Daugherty as a limited partner, and could therefore estimate the potential tax refund solely on account of those losses, it could not set forth with definiteness the amount of the refund Daugherty would get from the IRS.  Accordingly, the prospective amount of the refund was an estimate—and "estimates" are necessarily uncertain.

35.     ***Second***, as used in the Compensation Statement, the word "materially" is vague and ambiguous.  To create an enforceable obligation, the Court must determine, among other things, whether the actual refund Daugherty received from the IRS "deviate[s] "materially" from [the] estimate."  Here, the estimate was $1,475,816[11], which as contemporaneous evidence shows, wasn't an estimate of the cash refund that Daugherty could expect to receive, but rather an estimate of the pre-tax equivalent of such a refund.  In other words, the amount reflected on the Compensation Statement was a 35% "grossed-up" amount of his estimated cash refund of $959,280 to reflect what the refund would feel like to Daugherty on an "apples-to-apples" basis with other pre-tax compensation amounts.  There is simply no agreed way to determine whether a refund amount received is materially consistent with the grossed-up amount listed on the Compensation Statement.

36.     ***Third***, the phrase "other compensation" is also vague and ambiguous because it had many potential permutations at the time.  The Compensation Statement proves the point as it identifies myriad forms of "Earnings and Awards" and "Highland Paid Benefits" that comprise the "Total Compensation Package" that Daugherty received for services he provided to Highland in 2008, including: (a) base salary, (b) tax refund, (c) loan forgiveness, (d) other awards (including a

---

[10] This would include things like other sources of income, unrelated capital gains and losses from investments, unrelated K-1's from other partnerships, spousal income, estimated tax payments the individual or their spouse made during the year, individual itemized deductions, and a litany of others. Each of these factors can impact an individual's refund or tax owed each year, and Highland did not have visibility into all the factors impacting Daugherty's "married-filing-jointly" return.

[11] Highland Ex. 13.

401(k) match and a "defined benefit"); and (e) deferred compensation.[12]  In all, as reflected on the Compensation Statement, Daugherty was compensated 13 different ways in 2008 alone, and other years had even more methods of "compensation".  To create a contract out of the Compensation Statement, the Court would have to pick without guidance which method of compensation should be adjusted.

37.     *Fourth*, the phrase "fairly adjusted" is another subjective term susceptible to differing meanings.  Indeed, it is hard to imagine in 2011 that Daugherty and Highland would have reached an agreement on what was "fair."  Had the parties intended to reach a binding "agreement," they surely would have done so.  Again, to create Daugherty's alleged agreement, the Court will have to identify on its own what amount would have been deemed "fair" by the parties in February 2009.

38.     *Finally*, the Compensation Statement omits numerous material terms.  For example, the Compensation Statement does not (a) mention what happens if an actual tax refund is received by Daugherty (as it was) but that refund is subject to potential recovery by the IRS (as it always is); (b) reference or even consider the possibility of an audit of Highland or Daugherty; (c) provide for what would happen in the event of an audit adjustment affecting Highland or Daugherty; (d) include any time frame or due date for any potential adjustment of "other compensation"; (e) state that Highland would "adjust other compensation" to account for any interest or penalties arising in connection with any unconsidered audit; (f) state that Highland would "make Daugherty whole" if any portion of the refund was clawed back after the unconsidered audit; (g) state that any obligation Highland purportedly had would continue indefinitely, even after Daugherty was no longer affiliated with Highland; or (h) contain the words "indemnify," "reimburse," "cover," "back-stop," or phrases

---

[12] Highland Ex. 13.  The Compensation Statement also ascribes value to paid benefits as part of Daugherty's "total compensation package", including benefits like life insurance, disability insurance, executive long-term disability, daily catered lunches, "Blackberry" charges, and paid parking.

of similar import.  Contemporaneous evidence actually contradicts Daugherty's theory of endless indemnification – that rather, tax refunds "are not guaranteed, as the IRS still has the authority to audit our claimed losses and resulting refunds due."[13]  It is indisputable that Highland did not (1) even file its 2008 partnership return until nearly seven months *after* giving Daugherty the Compensation Statement, and (2) learn that the 2008 partnership return was selected for an IRS audit until *March 2010*.

39.     In sum, the Compensation Statement is not an enforceable contract as a matter of law because essential terms to form an agreement are either vague, indefinite, or missing.  For this reason alone, the Claim should be disallowed.

          **b.**     **Highland Satisfied its Obligations Under the Compensation Statement**

40.     Even if the unsigned Compensation Statement is deemed an enforceable contract, Highland satisfied any obligations it may have had long ago because Daugherty received a tax refund from the IRS based on partnership losses passed to him and reflected in a draft Form K-1 for 2008 that Highland provided to him, which was further validated by a final Form K-1 for 2008 that was provided in September 2009. (the "2008 K-1").[14]  Specifically, as reflected on his final 2008 K-1, Daugherty was allocated ordinary business losses by Highland in excess of $4 million, along with other losses that well-exceeded the partnership allocated income he received from Highland during 2005-2007.  Thus, Daugherty received even more than what was referenced in the Compensation Statement which resulted in a greater refund for Daugherty than estimated.  In other words, the allocation to Daugherty of over $4 million of actual losses from 2008 reflected in the final Form K-

---

[13] Highland Ex. 47.

[14] Daugherty Ex. 26 (draft 2008 K-1); Daugherty Ex. 24 (final 2008 K-1).

1 delivered in 2009 (when tax-effected at 35%) exceeded the originally estimated cash refund which formed the basis of the amount referenced in the Compensation Statement.

41.     When Daugherty voluntarily terminated his employment with Highland in October 2011, he acknowledged and agreed that, pursuant to the express conditions of his Employment Agreement, Highland would "have no further liability or obligation to [Daugherty] under [the Employment Agreement] or in connection with his/her employment of termination."

42.     Highland, therefore, satisfied its obligations (to the extent it had any) under the Compensation Statement and Employment Agreement in full.  Accordingly, the Claim should be disallowed in its entirety.

<b>c.    <u>Under the Terms of His Employment Agreement, Daugherty Forfeited Any Right He May Have Had to Compensation When He Resigned.</u></b>

43.     Even if the Compensation Statement was enforceable, Daugherty's Claim still fails because he forfeited any rights he had thereunder when he terminated his employment at Highland in October 2011.

44.     Daugherty voluntarily resigned from Highland on September 28, 2011, and his employment terminated on October 31, 2011.[15]  By his own contention, the 2008 Tax Refund that Daugherty received from Highland was part of his discretionary bonus under the Employment Agreement.  But Daugherty surrendered any right he may have had to a bonus under the Compensation Statement (to the extent he had any) when he voluntarily terminated his employment at Highland.  The Employment Agreement expressly states that Daugherty must be employed in order to be eligible for a bonus.  Section 3.1 of the Employment Agreement provides:

> Salary and Bonus. The annual salary (the ***"Base Salary")*** payable to
> the Executive during the term of this Agreement shall be an amount

---

[15] Daugherty Ex. 15.

determined by the Company (in its sole discretion) and communicated in writing to the Executive, and will be subject to annual review pursuant to the Company's normal review policy for other similarly situated executives of the Company. Any increase in salary shall be based upon the Executive's performance and shall be determined by the Company in its sole discretion. In addition, the Company *may* from time to time award bonuses to the Executive based on such criteria as the Company *may establish in its discretion*. Any such bonus, unless specifically stated otherwise, will be paid in three (3) equal installments and is not earned or accrued until each payment date. ***The Executive must be employed on the payment date(s) in order to be eligible for the bonus.*** The payment of salary and bonuses shall be subject to all federal, state and withholding taxes, social security deductions and other general obligations. Furthermore, the designation of the Executive's compensation does not constitute a guarantee of employment for any specific period of time.[16]

45.     Daugherty terminated his employment at Highland on October 31, 2011, and therefore, was no longer eligible for any bonus under the Employment Agreement after that date. Daugherty has admitted this in writing 15 years ago -- literally the day before he resigned in 2011. Highland Ex. 38 ("I would have to be employed at Highland in order to get any payment of bonus (as has always been the case).").

46.     Further, Section 4.5 of the Employment Agreement expressly addresses Highland's liability to Daugherty in the event Daugherty voluntarily terminates his employment and does not take up work with a "competing business":

> In the event that [Daugherty] terminates his/her Continuous Status as an Executive hereunder and within one (1) year thereafter [Daugherty] is not employed by a Competing Business, [Highland] shall have no further liability or obligation to [Daugherty] under this Agreement or in connection with his/her employment hereunder, except for (i) any unpaid Base Salary accrued through the date of termination, (ii) any accrued but unused vacation time, (iii) any amounts or rights to which [Daugherty] is entitled under any other written agreement with [Highland], (iv) any unreimbursed expenses properly incurred prior to the date of termination, and (v) severance pay equal to the product of (a) two (2) weeks Base Salary … multiplied by (b) the number of

---

[16] Highland Ex. 11 §3.1(a)(emphasis added).

[years of service]… [total severance not to exceed six weeks of Base Salary]... [Daugherty] acknowledges that [Highland's] obligation to pay severance, if any, will arise only … if [Daugherty] signs and returns a duly executed separation agreement and release substantially in the form attached hereto as Exhibit A….***In the event that [Daugherty] declines to sign the separation agreement and release, he/she shall not be entitled to any severance, and [Highland] will have no further liability or obligation to Daugherty under this Agreement or in connection with his/her employment or termination***. [17]

47.     Since Daugherty did not sign the separation and release form and deliver it to Highland and elected to counter-sue Highland under the Employment Agreement instead (and lost against Highland),[18] he forfeited any right he may have had under the Compensation Statement for any additional consideration, including his claim for unlimited indemnity or adjustment of other pre-termination compensation.

48.     Finally, one other document proves that the Parties never believed the Compensation Statement constituted an agreement that would survive Daugherty's termination from Highland: a form of Separation Agreement Daugherty refused to sign following his resignation (the "Draft Separation Agreement").[19]  The Draft Separation Agreement contains, among other things, the very promise by Highland pay taxes, interest, and penalties arising from an audit of Highland's tax returns (the "Rejected Indemnity") that Daugherty now claims is implicitly included in the Compensation Statement.  The evidence will show that in October 2011, when Daugherty was presented with the Draft Separation Agreement, the IRS was *only* auditing Highland's 2008 return.  There would have been no reason to include the Rejected Indemnity in the Draft Separation Agreement if the Parties

---

[17] Highland Ex. 11 at §4.5 (emphasis added).

[18] *See* Highland Ex. 44.

[19] Daugherty Ex. 44 §3(b)(ii).

believed it was already included in the Compensation Statement and would survive Daugherty's termination.

### 3.   Daugherty's Claim Must Be Estimated Under Section 502(c)

49.   Even if Daugherty's Claim is allowed, it must be estimated under Section 502(c) of the Bankruptcy Code ("Section 502(c)").  Under Section 502(c), the Bankruptcy Court is required to  estimate contingent and unliquidated claims for allowance purposes in the circumstances present here.[20]  The statute provides: "[t]here shall be estimated for purposes of allowance ... (1) any contingent or unliquidated claim, the fixing or liquidation of which ... would unduly delay the administration of the case ...." 11 U.S.C. § 502(c).

50.   "The public policy underlying claims estimation under the Code is to facilitate the timely administration of the case by making an expeditious assessment of the value of certain claims which would otherwise unduly delay administration."  *In re Perry*, 425 B.R. 323, 381 (Bankr. S.D. Tex. 2010).  Thus, where, as here, both prerequisites are met, the bankruptcy court does not merely have discretion to estimate – it has an affirmative mandatory duty to do so.  The method by which the bankruptcy court estimates a claim under Section 502(c) is within the court's broad discretion. *See Matter of Brints Cotton Mktg., Inc.*, 737 F.2d 1338, 1341 (5th Cir. 1984) ("A bankruptcy court's estimation of the value of an unliquidated claim, the liquidation of which would unduly delay the proceedings, may be disturbed on appellate review only in the event of an abuse of discretion.").

---

[20] Daugherty's expert opines that Daugherty's Claim cannot possibly be estimated until all disputes concerning the 2008 Audit are finally resolved, if then.  Aside from the fact that the expert is wrong (see below), Daugherty cannot reconcile his expert's opinion with Congress' explicit mandate reflected in the plain text of in Section 502(c)—and that's not surprising since Daugherty's expert admits he has no bankruptcy expertise and is unfamiliar with Section 502(c).  Indeed, if Daugherty's expert is right, and Daugherty's Claim cannot possibly be estimated, then the Claim should be disallowed as too speculative.  The one result that is *not* permitted under the circumstances is that Daugherty gets to hold up implementation of the express agreement between Highland and all of its stakeholders (as reflected in the court-approved Plan and Claimant Trust Agreement) concerning the deadline for the resolution of claims and the commencement of dissolution (*i.e.*, August 11, 2026).

51.     Daugherty's Claim, which is both contingent and unliquidated, is precisely the type of claim that must be estimated under Section 502(c).  As set forth above, the Plan was confirmed in February of 2021 and has been effective since August of 2021.  Under the Sunset Provisions[21] in the Plan, CTA, Confirmation Order, and related extension orders, Highland must resolve all disputed claims, and the Highland Claimant Trust must commence the Dissolution Process, by August 11, 2026.  Mr. Daugherty's Claim is the last unresolved claim against Highland's estate.  Although the parties dispute whether the IRS made a "final determination" with respect to the completed 2008 IRS tax audit that concluded in 2018,[22] they agree that any final resolution of the appeal of the audit results will not be complete by the court-ordered and Plan-mandated August 11, 2026 deadline to resolve the estate's outstanding claims and commence Highland's dissolution process.  Thus, if Daugherty' Claim is not estimated, Highland will be in violation of the Confirmation Order and the Extension Order and the administration of the bankruptcy case will be unduly delayed.  Accordingly, this Court is required to exercise its congressionally mandated duty to estimate Daugherty's Claim under Section 502(c).

52.     In applying Section 502(c), the Court has ample information to apply a reasonable methodology to estimate Daugherty's Claim, assuming any liability for Highland.  The only figure subject to estimation is the amount of adjustment to Highland's 2008 partnership return (the "HCMLP Income Adjustment").   Once the sole, unknown variable—the HCMLP Income Adjustment—is estimated, the amount of Daugherty's Claim may be determined by a simple

---

[21] *See generally* Highland's *Motion for An Order Further Extending Duration of Trusts*, Docket 4213 (the "Extension Motion").  This Court granted the Extension Motion and extended the life of the Claimant Trust only until August 11, 2026.  Docket No. 4298 (the "Extension Order").

[22] The dispute over whether "the IRS [made] a final determination with respect to the IRS Audit Dispute" (Highland Ex. 5 ¶9) was addressed by this Court when it granted Highland's motion under Rule 60 to strike the Stay Provision from the Settlement Agreement (Adv. Pro. Docket No. 23), and is irrelevant to the current dispute before the Court.  *See also Memorandum Opinion and Order*, Adv. Pro. Docket No. 80) (denying Daugherty motion to stay adversary proceeding pending appeal of order granting Highland's Rule 60 motion).

arithmetic formula:  [HCMLP Income Adjustment] x [Daugherty's 0.7403 percentage interest in the partnership as of the December 31, 2008 ]; x  [Daugherty's 35% maximum personal federal income tax rate as of December 31, 2008].  Thus, the Court can reasonably estimate Daugherty's Claim by plugging in one of four different numbers for the HCMLP Income Adjustment, which in all but one case requires no subjectivity whatsoever:  (i) the IRS's original determination at the conclusion of the 2018 audit;[23] (ii) the IRS's 2024 offer to the tax matters partner (Dondero) of a discounted settlement; (iii) Dondero's 2025 offer to the IRS of an even further discounted settlement; or (iv) some estimate of a hypothetical discounted settlement based on the several existing known data points.  The results are set forth in the demonstrative exhibit attached as Highland D-1.

53.    While Highland believes there is no basis to hold it liable for any penalties or interest that Daugherty could be required to pay on account of an "underpayment" amount resulting from HCMLP Income Adjustment,  as further set forth below, Highland has nevertheless calculated these objective and statutorily determined amounts in the same demonstrative for the sake of completeness and to provide the Court with all the tools it needs to fulfill its mandate.  Even if the Compensation Statement is deemed to be an enforceable contract (which Highland disputes), such Compensation Statement makes no reference to penalties or interest whatsoever, nor does it provide for any indemnification or similar obligations with respect thereto (and in fact, contemporaneous evidence contradicts such a notion).  That said, even if the Court determines that the claim ought to be allowed and should include some estimate for penalties and/or interest, Daugherty has benefited from having actually received the original $1.3 million refund amount from the IRS in 2009, and Daugherty has

---

[23] *See* Highland Ex. 15 – Form 4605-A.  And note further that while the Form 4605-A contains a $166 million adjustment to the Highland 2008 portfolio income, it also affirms $546 million of 2008 ordinary losses that Highland had reflected on its original tax return.  The income adjustment, and the subsequent dispute over the adjustment, only concerns a fraction – roughly 30% - of the overall losses Highland reported, as further validated by all settlement negotiations that have since followed.

an affirmative duty to mitigate any damages arising from penalties and/or interest, which could have been accomplished through investment of the tax refund he received. Even assuming extremely conservative rates of return on such a hypothetical investment, such returns would dwarf the penalties and interest the IRS would charge in any of the scenarios described in the demonstrative.[24]

54. The Court may also use another methodology it deems appropriate under the circumstances. But there can be no dispute that this is the exact type of situation that mandates claim estimation. Accordingly, if Daugherty's Claim is allowed, it shall be estimated under Section 502(c).

**4. Highland Withdraws Its Third Cause Of Action--Subordination Under Section 510(b)—With Prejudice**

55. Upon reflection, Highland withdraws with prejudice its Third Cause of Action for the subordination of Daugherty's Claim pursuant Bankruptcy Code section 510(b) because (a) Daugherty's Claim has long been subject to a reserve in an amount that greatly exceeds any plausible estimate of value, (b) withdrawal will simplify the trial by eliminating the Parties' burden of litigating whether (i) Daugherty's Claim should be subordinated, and (ii) if so, whether it should be subordinated to Class 10 and Class 11, (c) withdrawal will reduce this Court's burden to decide such issues, (d) withdrawal will narrow the scope of any potential appeal, and (e) Daugherty cannot be prejudiced because, if the Court determines that the Compensation Statement is an enforceable contract, and estimates Daugherty's Claim, the Claim will remain in Class 8 where it has always been and will be paid in full.[25]

---

[24]Mr. Daugherty has had the use of the 2008 Refund *for more than 16 years* during a historically bullish period for investors, with the S&P 500, for example, returning approximately 10x for investors from the start of 2009 to early 2026. For underpayment with a filed return, the IRS charges a one-time 20% penalty on the underpaid amount, and the effective interest rate on the underpayment since Daugherty received the refund would be approximately 4.6% per year by statute.

[25] If Daugherty's Claim is subordinated to Class 10, it will receive a small fraction of its allowed amount that will be potentially paid by the Highland Claimant Trust over an indeterminate period of time. If Daugherty's Claim is subordinated to Class 11, it will be valueless since the holders of Class 10 interests will never be paid in full.

56.     Based on the foregoing, Highland hereby gives notice that it withdraws with prejudice its Third Cause of Action for subordination.

### 5.      Daugherty's Counterclaim for Books and Records is meritless

57.     This counterclaim is a narrow issue that is definitively covered by the terms of the Settlement Agreement and Highland's satisfaction of its obligations.   Under the Settlement Agreement, Highland agreed to "transfer its interests in HERA and ERA to Daugherty.  Such transfer will include the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system.  Such transfer will be without representation or warranty of any type. . . Such transfer will be without any liability or material cost to HCMLP or its affiliates . . ."[26]

58.     While Daugherty negotiated Section 8 directly with Highland's Chief Executive Officer, James P. Seery, Jr., Daugherty has no recollection about the negotiations of this provision or why the unique phrase "books and records (spreadsheet)" was included.  Seery does—and he will testify that phrase and accompanying text (a) refers to a specific set of documents and (b) was used to circumscribe the documents Highland would turn over to Daugherty.  Yet here we are.

59.     Despite having no recollection of the meaning and intent of Section 8, Daugherty has asserted a counterclaim contending that Highland breached its obligation under Section 8 by failing to provide all of HERA and ERA's "books and records" and suggests Highland will be liable for consequential damages if HERA does not prevail in unrelated litigation.[27]   Daugherty has also asserted counterclaims for specific performance and attorney's fees.  Daugherty's counterclaims are meritless.

---

[26] Highland Ex. 5 ¶8 ("Section 8")

[27] Highland Ex. 1 ¶¶12-13 (Counterclaim).

60.     There is no dispute that HERA and ERA (a) were shell entities established for the sole purpose of holding limited, passive assets for the benefit of certain then-Highland employees as a compensation vehicle, and (b) never had any of its own employees or operations of any kind. With that in mind, the evidence will show that on May 5, 2022, just after this Court approved the Settlement Agreement, Highland delivered to Daugherty "HERA and ERA books and records" available on Highland's system, together with tax documents, and noted that, subject to a final review, it had fulfilled its obligations under Section 8.[28]

61.     On October 19, 2022, in an effort to placate Mr. Daugherty, Highland provided additional information concerning HERA and ERA (including back-up for virtually all of HERA's historically recorded expenses reflected in the records previously delivered to Daugherty) and re-iterated its position that it had "satisfied all of its obligations under the settlement agreement, and our involvement in HERA/ERA (your entities) will be complete."[29]

62.     Daugherty did not raise the issue of "books and records" again until January 30, 2024, when Gray Reed requested[30] that Highland supplement its delivery of documents seeking Word, Excel, and Powerpoint documents, email correspondence, legal communications, among others, all with corresponding metadata, and requesting that Highland employ an outside vendor to collect and produce the documents.

63.     With Gray Reed having not yet received a substantive response from Highland, on February 29, 2024, HERA filed its original complaint against 24 individuals, law firms, or other entities.

---

[28] Daugherty Ex. 33.

[29] Daugherty Ex. 34.

[30] Highland Ex. 53

64.     Just days later, on March 5, 2024, Highland's counsel responded to the January 30, 2024 letter, and stood by Highland's prior statements that it had fulfilled its obligations under the Settlement Agreement[31]

65.     Then, two months later, on May 10, 2024 when a new Daugherty lawyer suddenly demanded a broad swath of documents concerning HERA and ERA that had been demanded by Gray Reed on January 30, 2024, while misquoting the settlement agreement along the way and again requesting that Highland's use of an outside vendor.  Highland responded within hours, rejected Daugherty's newest demands, reiterated yet again that it believed that it had fulfilled its obligations under Section 8, and expressly invited Daugherty to seek judicial relief to finally bring the matter to a close. [32]

66.     Daugherty did no such thing because—as he has proven time and time again—Daugherty has no interest in resolving anything.  Thus, rather than sue Highland and enforce his purported rights under the Settlement Agreement and bring finality to the issue, Daugherty will admit that he voluntarily chose to commence an action in federal district court on behalf of HERA and ERA (the "HERA Action") knowing that Highland had refused to produce any further documents concerning those entities.[33]  Daugherty will also admit that even in the face of a motion to dismiss the HERA Action, Daugherty chose not to seek leave to seek additional documents from Highland, a entity known to be in the latter stages of liquidating.  It was only in October 2025, after being forced to litigate his unrelated tax claim and three and a half years after Highland informed him that it believed it had fulfilled its obligations under Section 8, that Daugherty finally sought to enforce his purported rights.

---

[31] Highland Ex. 54

[32] Daugherty Ex. 35.

[33] Highland Ex. 1 ¶¶12-13 (Counterclaim).

67.     The evidence will show that Daugherty's breach of contract claim is barred by the three-year statute of limitations and that Highland otherwise did not breach Section 8.[34]

**B.     Summary of Daugherty's Claims and Defenses**

68.     Daugherty understood the local rule to require a brief summary (identification) of the claims and defenses that are at issue in the adversary proceeding hearing, and that either party could file a separate trial brief addressing issues that they belief were pertinent to the upcoming hearing. Daugherty intends to file a separate trial brief on April 13, pursuant to the Second Stipulated Scheduling Order [Docket No. 94].

69.     Daugherty asserts three causes of action against Highland. First, Daugherty has a breach of contract claim related to his contention that Highland violated the Settlement Agreement's Books and Records Provision. Second, Daugherty has a cause of action for specific performance through which Daugherty seeks an order requiring Highland to fully comply with the Books and Records Provision. Third, Daugherty seeks his attorneys' fees related to his position that Highland breached the Settlement Agreement in bad faith.

70.     Daugherty's defense against Highland's claim is equitable estoppel. Daugherty also continues to maintain that the Settlement Agreement's stay provision (which is quoted above) precludes Highland from filing this adversary proceeding because there has not been a final determination with respect to the IRS Audit Dispute. Daugherty has appealed that issue to the district court in connection with this Court's grant of Highland's Cross Motion under Rule 9024, which

---

[34] Daugherty's second cause of action is unnecessary. If the Court finds that there is a category of documents included within Section 8 that Highland has not previously produced, Highland will produce such documents within 15 days of the entry of the Court's order. And if Daugherty actually burdens the Court by pursuing his absurd claim for attorneys' fees based on Highland's supposed "bad faith" commencement of this adversary proceeding—a decision validated by this Court's Rule 60 decision—Highland will address it at that time.

struck the stay provision.  Although Daugherty is not going to relitigate that issue at the April 17

hearing, he is not waiving his pending appeal or any arguments relating to this issue.

###End of Order###

GRAY REED

By:        */s/ Drake M. Rayshell*
                 Jason S. Brookner
                 Texas Bar No. 24033684
                 Andrew K. York
                 Texas Bar No. 24051554
                 Joshua D. Smeltzer
                 Texas Bar No. 24113859
                 J. Reid Burley
                 Texas Bar No. 24109675
                 Drake M. Rayshell
                 Texas Bar No. 24118507

1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:      (214) 954-4135
Facsimile:       (214) 953-1332
Email:           jbrookner@grayreed.com
                 dyork@grayreed.com
                 jsmeltzer@grayreed.com
                 rburley@grayreed.com
                 drayshell@grayreed.com

*Counsel to Patrick Daugherty*

-and-

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Plaintiff/Counter-Defendant Highland Capital
Management, L.P.*

# HIGHLAND D-1

| Case: | | I | II | III | IV | V | |
|---|---|---|---|---|---|---|---|
| | | MIN ESTIMATION AMT. | TMP ACCEPTED AMT. | MID-POINT AMT. | IRS OFFER AMT. | MAX 2018 AUDIT AMT. | |
| | Reference/formula | Complete reversal of 2018 audit | Tax Matters Partner offer to IRS [6] | Hypothetical complete 50/50 split [7] | IRS settlement offer [8] | 2018 adjustments from the IRS audit team [9] | |
| **IRS income adjustment to HCMLP** | **A** | $ – | **See note [6]** | **$ 83,166,357** | **$ 129,528,079** | **$ 166,332,713** | |
| Daugherty's % of partnership [1] | B | 0.7403% | 0.7403% | 0.7403% | 0.7403% | 0.7403% | |
| Daugherty share of IRS income adjustment | C = A x B | $ – | See note [6] | $ 615,681 | $ 958,896 | $ 1,231,361 | |
| 2008 applicable tax rate - 35% | D | 35% | 35% | 35% | 35% | 35% | |
| **Tax underpayment – Daugherty** | **E = C x D** | $ – | $ 59,224 | $ 215,488 | $ 335,614 | $ 430,976 | |
| **Statutory penalty [2]** | **F = E x [penalty %]** | $ – | $ – 0% | $ 21,549 10% | $ – 0% | $ 86,195 20% | |
| Potential interest: | | | | | | | |
| Applicable statutory blended rate [3] | G | 4.59% | 4.59% | 4.59% | 4.59% | 4.59% | |
| Time outstanding (years) [4] | H | 10.51 | 10.51 | 10.51 | 10.51 | 10.51 | |
| **Interest accrued** | **I = E x G x H** | $ – | $ – | $ 103,860 | $ 161,758 | $ 207,720 | |
| Maximum theoretical amount (underpayment + penalty + interest) | J = E + F + I | $ – | $ 59,224 | $ 340,897 | $ 497,371 | $ 724,892 | |
| Income on previous refund [5] | K | $ – | $ (59,224) | $ (125,409) | $ (161,758) | $ (293,915) | |
| **Estimation amount** | **L = J - K** | $ – | $ – | $ 215,488 | $ 335,614 | $ 430,976 | |

*IMPORTANT: SEE NOTES ON THE SUCCEEDING PAGE*

Notes:

[1] Ex. 17 – Form 886-Z

[2] Ex. 30 – Imposition of penalties.  20% applied to the V case (based on the 2018 adjustments); 0% applied in the II and IV case (based on the contents of those offers); 10% applied in the III case as a 50% concession.

[3] Statutory rate is short term federal rate, plus 3%, rounded to the nearest whole percent, updated quarterly, and compounding daily.  The amount described herein is the blended simple rate resulting from the application of the actual statutory, daily compounding rate.  Average applicable statutory rate over the period was approximately 3.8%, and the effect of daily compounding added approximately 0.8%.  See Ex's: 29, 31, 32, 33.

[4] April 15, 2009 to October 16, 2019

[5] Mr. Daugherty received cash IRS refund amounts of $493,629 and $780,301 in 2009 on account of 2008 Forms 1040 and 1045, respectively (see Ex.'s 35 and 36) for a total of $1,273,930.  Had Mr. Daugherty invested this refund and earned just 4%, compounding annually (an easily obtained rate of return in the 2009-2019 period), he would have earned in excess of $600,000 as of October 16, 2019.  This amount dwarfs any potential penalty or interest that is potentially assessable to Mr. Daugherty in any of the five cases described herein.  However, for the sake of conservatism, Highland has assumed that Mr. Daugherty's use of the $1,273,930 of refund only generated returns equal to the penalty and interest assessed in cases III, IV, and V (in other words, Highland is assuming a rate of return of substantially below 4% compounding annually in those cases).  In case I, there's simply nothing owed by Daugherty to the IRS, so no income has been calculated.  And in case II, there is no penalty or interest, so it is merely assumed that Mr. Daugherty would have generated at least his underpayment amount ($59...) of income based on investing the $1,273,930 refund over the course of over ten years – a rate of return substantially below 1% annually.

[6] Ex. 22 – HUNTON_001105. Tax matters partner's offer was for a single payment of $8M in resolution of all liability for all partners.  Calculation of Daugherty's share is simply $8M x his partnership share (0.7403%).  It is unclear from the offer whether the tax matters partner would or could allocate the liability amongst the partners, including Daugherty, but for the sake of conservatism, it is assumed that Daugherty would have to pay a ratable share.

[7] Assumes 50% of all adjustments and penalties in the V column as a hypothetical middle of the road resolution that sits between the current known settlement offers.

[8] Ex. 21 – HUNTON_000079; Ex. 26 – HUNTON_001120.  Assumes 50% concession by the IRS on adjustment FP-01, 0% concession by the IRS on adjustment FP-02, 100% concession by the IRS on adjustment FP-03.  The letter description of the FP-02 adjustment is less than crystal clear, but for purposes of this calculation, the maximum adjustment is applied.

[9] Ex. 15 – Form 4605-A; $166M of adjustment to HCMLP, plus statutory penalty