Jason S. Brookner (Texas Bar No. 24033684)
Andrew K. York (Texas Bar No. 24051554)
Joshua D. Smeltzer (Texas Bar No. 24113859)
J. Reid Burley (Texas Bar No. 24109675)
Drake M. Rayshell (Texas Bar No. 24118507)
GRAY REED
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile:  (214) 953-1332
Email:      jbrookner@grayreed.com
            dyork@grayreed.com
            jsmeltzer@grayreed.com
            rburley@grayreed.com
            drayshell@grayreed.com

*Counsel to Patrick Daugherty*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § § | Case No. 19-34054 (BWO) |
| Reorganized Debtor. | § § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Adversary No. 25-03055 |
| PATRICK HAGAMAN DAUGHERTY, | § § § | |
| Defendant. | § § § | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW FILED BY
DEFENDANT AND COUNTER-PLAINTIFF PATRICK HAGAMAN DAUGHERTY**

---

[1]   Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

**Page 1 of 15**

4934-3741-4321

Patrick Hagaman Daugherty ("Daugherty"), Defendant and Counter-Plaintiff in this adversary proceeding, hereby submits these Proposed Findings of Fact and Conclusions of Law.

If any finding of fact is in truth a conclusion of law, or if any conclusions stated is in truth a finding of fact, or if any finding or conclusion is a mixed questions of fact and law, it shall be deemed so and adopted as such.

## PROPOSED FINDINGS OF FACT

1. Highland Capital Management, L.P. ("Highland") is a Delaware limited partnership that filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 16, 2019. Highland's bankruptcy case is pending in this Court under Case No. 19-34054.

2. On February 22, 2021, the Court entered an order confirming Highland's Fifth Amended Plan of Reorganization (the "Plan"). The Plan became effective on August 11, 2021. (PD-09.)

3. Patrick Hagaman Daugherty is a former senior employee of Highland who was hired on April 3, 1998. During his employment, Daugherty became eligible to participate in Highland's long-term incentive plan and became a profits-interest partner of Highland. (Ex. H-13; Trial Tr. at 246:21-247:10.)

4. On February 27, 2009, Highland provided Daugherty with a Comprehensive Compensation and Benefits Statement for calendar year 2008 (the "Compensation Statement" or "2009 Statement"). The Compensation Statement included, as part of Daugherty's "Earnings and Awards," a line item for a "2008 Tax Refund" in the amount of $1,475,816. (Ex. H-13; Trial Tr. at 219:17-20.)

5. The Compensation Statement contained the following language regarding the 2008 Tax Refund: "Refund is an estimated amount. If actual refund deviates materially from

2

estimate, other compensation will be fairly adjusted. Refund is expected to be received in approximately 4 months." (Ex. H-13.)

6.      The 2008 Tax Refund was included as part of Daugherty's total "Earnings and Awards" for his service as an employee of Highland during 2008. Highland was unable to pay cash bonuses due to the financial crisis and restrictions imposed by its bank lenders, and instead devised a compensation method through a tax allocation mechanism that would generate a tax refund for senior employees in lieu of a cash bonus. (Trial Tr. at 294:15-295:9.)

7.      Daugherty received a tax refund from the IRS on a net basis of approximately $1,157,046 in 2009. (Ex. H-7.)

8.      The idea to implement Daugherty's compensation through the tax refund mechanism was not Daugherty's idea. The scheme was devised by James Dondero and Highland's tax personnel. Daugherty testified he would have preferred Highland pay him a cash bonus for 2008. (Trial Tr. at 294:15-23.)

9.      In prior Texas state court litigation, Highland used a demonstrative exhibit summarizing Daugherty's compensation that categorized the 2008 Tax Refund under the heading "Bonus." The exhibit listed the identical $1,475,816 amount. James Seery ("Seery"), Highland's current CEO, testified he was not aware of Highland's prior characterization and did not recall seeing the document. (Trial Tr. at 236:13-237:16; Daugherty Ex. 99 (admitted))

10.     Seery joined Highland in January 2020 as an independent director. He was not employed at Highland during Daugherty's tenure, was not involved in the preparation of Daugherty's Compensation Statement, and has had no conversations with anyone at Highland about it. He testified he has "no idea" whose idea the tax refund compensation mechanism was. No witness with personal knowledge of the 2008 compensation arrangement testified on behalf of Highland. (Trial Tr. at 177:1-12; *id.* at 212:1-213:7; *id.* at 221:15-21.)

3

4934-3741-4321

11.   On October 31, 2011, Daugherty terminated his employment with Highland. (Trial Tr. at 246:22-23; Ex. H-7.)

12.   On or around December 8, 2017, IRS field examiners issued a summary report proposing adjustments to Highland's 2008 partnership tax return (the "IRS Proposed Adjustments"). (Ex. H-20.)

13.   On February 3, 2018, Highland sent Daugherty a letter enclosing certain IRS forms, advising that the IRS field examiners had proposed an adjustment. Highland advised Daugherty that "no action on your part is required" and that Highland would "handle the closing conference" and "appeal the proposed adjustment to the IRS Appeals Office." (Ex. H-16.)

14.   On July 3, 2018, Highland notified Daugherty that a 60-Day Letter had been issued and that Highland would timely appeal the proposed adjustments to the IRS Independent Office of Appeals. Highland again told Daugherty "you do not need to take any action." (Ex. H-19.)

15.   On December 23, 2020, Daugherty filed Proof of Claim No. 205.  (*See* Main Bankr. Case No. 19-34054-sgj11 at Doc. No 1533 (authorizing the amended Proof of Claim No. 205, which Daugherty filed on the claims register on December 23, 2020)).

16.   On November 21, 2021, Highland and Daugherty executed a Settlement Agreement (the "Settlement Agreement") whereby Daugherty settled his claims against Highland, as more fully set forth in the terms of the Settlement Agreement. The Court entered an order approving the Settlement Agreement on March 8, 2022. The Settlement Agreement resolved all of Daugherty's claims (Claim No. 205) except Daugherty's remaining claim relating to the IRS Audit (the "Reserved Claim"). (Ex. H-5; PD-03.)

17.   Under Section 9 of the Settlement Agreement, the parties agreed that "[a]ny litigation by and between the Debtor and Daugherty concerning the validity and amount of the

4934-3741-4321

Reserved Claim shall be stayed until the IRS makes a final determination with respect to the IRS Audit Dispute" (the "Stay Provision"). (Ex. H-5 at § 9.)

18.     IRS Audit Dispute is a defined term in the Settlement Agreement, meaning "the dispute between the Debtor and the IRS…"

19.     Daugherty's Reserved Claim was reserved at an amount of $2,650,353 consisting of the full amount of the 2008 Refund ($1,475,816) plus estimated interest of $1,174,537. This amount was estimated as of October 23, 2020.  The Debtor reserved all rights to assert any and all defenses to the Reserved Claim. (Ex. H-5 at § 9; PD-05 at ¶ 9.)

20.     On May 2, 2025, Highland filed the present adversary complaint seeking (1) disallowance of the remainder of Claim No. 205, (2) estimation of any allowed portion under 11 U.S.C. § 502(c), or (3) subordination of any allowed portion under 11 U.S.C. § 510(b). (PD-01.)

21.     On April 10, 2026, Highland withdrew its third cause of action—subordination under § 510(b)—with prejudice through the parties' proposed joint pretrial order. [Doc. 100 at p. 19-20].  On April 13, 2026, the Court entered the parties' joint pretrial, including Highland's withdrawal of its subordination claim with prejudice. [Doc. 101 at p. 19-20].

22.     On July 13, 2021, Strand Advisors, Inc., the Tax Matters Partner for Highland, notified Daugherty that the IRS Appeals Office had scheduled an Appeals hearing for September 14-16, 2021. (Expert Report of Liles-Tims at ¶ 21.)

23.     On May 31, 2024, Highland's Tax Matters Partner submitted a counteroffer to the IRS Office of Appeals as part of mediation procedures, confirming continued active dispute of the IRS Audit. (Expert Report of Liles-Tims at ¶ 24.)

24.     On June 26, 2024, Highland's Tax Matters Partner met with the IRS Office of Appeals team to further discuss settlement positions and narrow outstanding issues. (Expert Report of Liles-Tims at ¶ 25.)

4934-3741-4321

25.     On February 28, 2025, Highland's Tax Matters Partner's counsel submitted a revised settlement counteroffer to the IRS Office of Appeals and renewed its request for post-Appeals mediation, confirming that no final IRS determination had yet been made. (Expert Report of Liles-Tims at ¶ 26.)

26.     As of April 16, 2026, the date of the final hearing in this adversary proceeding, Daugherty has received no notice of a final settlement or resolution of the IRS Audit.

27.     As of the date of final hearing in this adversary proceeding, it is unknown when, if, or how the 2008 IRS Audit will be finally resolved.

28.     Before the Plan's effective date, Highland's independent board—including Seery—controlled Strand Advisors and had the legal authority to resolve the IRS audit dispute. Highland chose not to accept or settle the IRS' proposed adjustments. Seery testified that Highland "certainly would have been sued by Mr. Dondero" and that he did not think Highland "ever thought of" accepting the audit result. After the effective date, control of Strand reverted to Dondero. Daugherty has never had authority to resolve the IRS audit at the partnership level. (Trial Tr. at 227:23-228:19; *id.* at 244:10-16.)

29.     Daugherty's "damage calculation cannot be made until Highland's Tax Matters Partner resolves the IRS Audit" because the audit remains ongoing and unresolved, with no expected timeline for completion. (Trial Tr. at 89:19-23.)

30.     Without a final IRS determination, the underlying inputs necessary for a reliable damage calculation do not exist.

31.     T.J. Liles-Tims, Daugherty's expert witness, identified the following variables that remain unknown and prevent a reliable estimate: (a) the final adjustment type (income, deductions, etc.); (b) the total partnership adjustment amount; (c) Daugherty's partner allocation percentage for each adjustment item; (d) Daugherty's marginal tax rate at the time of any assessment; (e) the partnership basis impact; (f) the applicability and amount of any

6

penalties; and (g) the amount of interest calculated based on the underpayment amount and time outstanding. (Trial Tr. at 88-90.)

32.     Highland has had "no idea" of Daugherty's tax attributes since 2012 and had no knowledge of whether he invested the refund money. (Trial Tr. at 82:22-83:9 (Court: "[…]you have no idea whether he invested that money or what his investments have or haven't done?" Klos: "Correct." Court: "[…]Highland would have no idea what his tax attributes are, whether he has losses or gains or income?" Klos: "…[Y]es, I don't have knowledge of those periods.").)

33.     At the November 17, 2020 claim estimation hearing, Highland's own counsel argued that Daugherty's tax claim was "contingent" and that "there is no definite liability to the IRS." The Court agreed that the tax refund claim was "at best, contingent" and declined to allow it for voting purposes. (PD-36 at 17:15-18:5.)

34.     Under the Plan and Claimant Trust Agreement, Class 10 and Class 11 interests cannot vest until the Claimant Trustee certifies to the Bankruptcy Court that all holders of Class 8 claims have been paid indefeasibly in full, including all accrued and unpaid post-petition interest at the Federal Judgment Rate from the Petition Date. Daugherty's Reserved Claim is a Class 8 claim entitled to such interest. To date, the Claimant Trustee has not filed a certification that all Class 8 claims have been paid.  (PD-09 at p. 44; PD-09 at p. 102 (Plan § 27); PD-10 at § 1.1(h); PD-10 at § 5.1(c).)

35.     Seery testified that upon dissolution of the Claimant Trust, residual funds flow to an indemnity trust that Seery solely administers. Once Seery determines no further indemnification obligations exist, remaining funds—approximately $45 million—will be distributed to Hunter Mountain Investment Trust, a Class 11 holder. Daugherty's unresolved Reserved Claim is a Class 8 unsecured claim senior to those Class 10 and Class 11 interests. (Trial Tr. at 241:17-243:11.)

4934-3741-4321

36.     Under Section 8 of the Settlement Agreement, Highland agreed to "transfer its interests in HERA and ERA to Daugherty." The Settlement Agreement further provided that "[s]uch transfer will include the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system." (Ex. H-5 at § 8; Trial Tr. at 185:8-14.)

37.     The stated purpose of the transfer under Section 8 was "[t]o facilitate recovery of such potential claims" belonging to HERA and ERA against persons or entities not released under the Settlement Agreement. (Ex. H-5 at § 8.)

38.     Despite repeated demands, Highland has refused to produce all HERA and ERA books and records in its possession. Highland's position is that emails do not constitute "books and records" and that it has fulfilled its obligations. Daugherty and HERA dispute this position. (Trial Tr. at 193:12-194:4.)

39.     Neither HERA nor ERA maintains its own email accounts or servers. Rather, all documents and communications related to HERA and ERA are in Highland's possession, custody, or control.

40.     HERA is currently engaged in litigation with James Dondero and others in the case styled Highland Employee Retention Assets LLC v. James Dondero, et al., Civil Action No. 3:24-cv-00498-K, pending in the United States District Court for the Northern District of Texas. That litigation centers on Dondero's mismanagement of monetary contributions that Highland made on behalf of its employees into retention vehicles managed by HERA. (Daugherty Counterclaim at ¶ 13.)

41.     Daugherty performed and satisfied all obligations that the Settlement Agreement imposed upon him. Highland does not contest Daugherty's full performance of the Settlement Agreement. (Joint Pretrial Order.)

42.     On or about October 19, 2022, Highland's counsel communicated that Highland considered its obligations under Section 8 complete, stating: "Upon transmission of the

4934-3741-4321

information described above, [Highland] will have satisfied all of its obligations under the settlement agreement, and our involvement in HERA/ERA (your entities) will be complete." Highland nonetheless refused to produce certain documents that Abrams & Bayliss — not Highland — ultimately produced to HERA in connection with HERA's litigation against Dondero, Okada, Ellington, and others. These documents fall within Highland's "interests" in HERA and ERA. (Ex. H-3; Main Bankr. Case No. 19-34054, Doc. No. 4449 at Ex. B, Decl. of P. Daugherty at ¶¶ 2–3; Ex. B-1; Ex. B-2.)

**PROPOSED CONCLUSIONS OF LAW**

1.  The Fifth Circuit has held when analyzing 11 U.S.C. § 502, "a party correctly filing a proof of claim is deemed to have established a prima facie case against the debtor's assets." *In re Fid. Holding Co., Ltd.,* 837 F.2d 696, 698 (5th Cir. 1988). Under Section 502(a) of the Code, a proof of claim filed pursuant to Section 501 "is deemed allowed, unless a party in interest…objections." 11 U.S.C. § 502(a).

2.  Upon the filing of an objection, the burden shifts to the debtor as the objecting party. Once the objection is on file, the objecting party must "produce evidence tending to defeat the claim that is of a probative force equal to that of the creditor's proof of claim." *In re Simmons*, 765 F.2d 547, 552 (5th Cir. 1985). And if the objecting party does not produce sufficient evidence, "the claimant will prevail." *In re Fid. Holding Co., Ltd.*, 837 F.2d at 698. It is, therefore, critical to appreciate that "mere allegations unsupported by evidence are insufficient to rebut the prima facie case." *Matter of TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992). Only if the objecting party presents sufficient evidence to rebut the claimant's prima facie case does the ultimate burden shift back to the claimant.

3.  When the ultimate burden rests with the claimant, the claimant must merely prove the merits of its claim by a preponderance of the evidence. *See In re Fid. Holding Co., Ltd.*, 837 F.2d at 698.

9

4.     The parties do not dispute that Texas law governs Daugherty's Reserved Claim. In Texas, a unilateral contract is "created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable when the promisee performs." *Vanegas v. American Energy Services*, 302 S.W.3d 299, 302 (Tex. 2009) (citing *Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.*, 265 S.W.3d 496, 503 (Tex. App.—Dallas 2008, no pet.)). In the employment context, a unilateral contract is created when "an employer promises an employee certain benefits in exchange for the employee's performance, and the employee performs." *City of Hous. v. Williams*, 353 S.W.3d 128, 136 (Tex. 2011). For instance, in *Vanegas*, the supreme court held that a unilateral contract could be formed when an employer offered to share proceeds of a sale of the company with employees if the employees stayed employed until the sale occurred. 302 S.W.3d at 303. In that case, the supreme court held that "[w]hether the promise was illusory at the time it was made is irrelevant; what matters is whether the promise became enforceable by the time of the breach." *Id.* (quoting 2 Joseph M. Perillo & Helen Hadjiyannakis Bender, *Corbin on Contracts* § 6.2 (1995)) ("[U]nilateral contract analysis is applicable to the employer's promise to pay a bonus or pension to an employee in case the latter continues to serve for a stated period.").

5.     The Compensation Statement constitutes an enforceable unilateral contract between Highland and Daugherty.

6.     It is well-established law in Texas that "instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (internal citations omitted); *see also Jim Walter Homes, Inc. v. Scheunemann*, 668 S.W.2d 324, 327 (Tex. 1984) (same); *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981) (same). "[A] court may determine, as a matter of law, that multiple documents comprise a written contract." *Id.* (citing

10

4934-3741-4321

*Jones*, 614 S.W.2d at 98; *Miles v. Martin*, 321 S.W.2d 62, 65 (Tex. 1959); *Braniff Inv. Co. v. Robertson*, 81 S.W.2d 45, 47 (Tex. 1935)).

7.      The supreme court has stated that together, the documents must define the "essential terms" of the contract, including "'the time of performance, the price to be paid, … [and] the service to be rendered.'" *City of Hous.*, 353 S.W.3d at 139–40 (citing *Kirby Lake Dev. Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010); *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 324 (5th Cir. 2006)).   In the context of employment agreements, "typical essential terms include, among others, 'compensation, duties or responsibilities.'" *Id.* (citing *Martin v. Credit Prot. Ass'n Inc.*, 793 S.W.2d 667, 669 (Tex. 1990)).   Courts applying Texas law must determine whether the referenced documents, read together, "demonstrate a manifestation of [the employer's] intention to be bound to provide [the referenced benefits.]" *Parvis-Khyavi v. Alcon Laboratories, Inc.*, 395 S.W.3d 376, 382 (Tex. App. —Dallas 2013, pet. denied) (citing *City of Hous.*, 353 S.W.3d at 138).

8.      Here, the applicable documents between Highland and Daugherty are the Amended Employment Agreement and the Compensation Statement.    The Amended Employment Agreement provides, at Article III, subsection (a):

> The annual salary (the "**Base Salary**") payable to [Daugherty] during the term of this Agreement shall be an amount determined by the Company (in its sole discretion) and communicated in writing to [Daugherty], and will be subject to annual review pursuant to the Company's normal review policy for other similarly situated executives of the Company.  Any increase in salary shall be based upon [Daugherty's] performance and shall be determined by the Company in its sole discretion.  In addition, the Company may from time to time award bonuses to [Daugherty] based on such criteria as the Company may establish in its discretion.  Any such bonus, unless specifically stated otherwise, will be paid in three (3) equal installments and is not earned or accrued until each payment date.  [Daugherty] must be employed on the payment date(s) in order to be eligible for the bonus.  The payment of salary and bonuses shall be subject to federal, state, and withholding taxes, social security deductions and other general obligations.  Furthermore, the designation of [Daugherty's] compensation does not constitute a guarantee of employment for any specified period of time.

11

4934-3741-4321

(Ex. H-11, p. 4, art. III.1(a) (emphasis in original)).  In the Amended Employment Agreement, Highland sets out specific conditions for Daugherty's eligibility for bonus compensation, and the services to be rendered by Daugherty. (*See id.* at p. 3, art. II.1-2).  Additionally, Article 3(a) of the Amended Employment Agreement states that, on an annual basis, Highland was to determine Daugherty's annual salary and bonus compensation for each year and communicate the same "in writing" in the annual Compensation Statement.  Thus, the Amended Employment Agreement, read alone, does not establish Highland's "intention to be bound to provide" bonus compensation to Daugherty.  *Alcon Laboratories*, 395 S.W.3d at 382.

9.      However, the Compensation Statement, when read in conjunction with the Employment Agreement, established a binding requirement on Highland to guarantee Daugherty the compensation set forth therein, including the 2008 Tax Refund and the promise to "fairly adjust" other compensation if the refund deviated materially from the estimate.

10.      Daugherty possesses an allowable claim against Highland. Daugherty's Reserved Claim is properly allowed under 11 U.S.C. § 502(a), as it was timely filed in Proof of Claim No. 205 and is supported by the Compensation Statement's express promise that "[i]f actual refund deviates materially from estimate, other compensation will be fairly adjusted." Highland has failed to carry its burden to demonstrate that the claim should be disallowed. (Ex. H-13; Ex. H-5 at § 9.)

11.      Daugherty's tax liability arising from the 2008 IRS Audit of Highland's partnership tax return is uncertain. The IRS has not made a final determination with respect to the audit. Highland's Tax Matters Partner continues to actively negotiate with the IRS Office of Appeals, most recently submitting a revised settlement counteroffer on February 28, 2025. The ultimate amount of any tax liability, including penalties and interest, cannot be determined or reasonably estimated until the audit is resolved.

12

4934-3741-4321

12.    The Court cannot reliably estimate Daugherty's claim under 11 U.S.C. § 502(c) because of the uncertainty surrounding the IRS Audit. Section 502(c) provides that a claim "shall be estimated" only when "the fixing or liquidation of which ... would unduly delay the administration of the case." However, estimation is not appropriate where doing so would result in unreliable speculation rather than a reasonable approximation of the claim's value. *See In re Dow Corning Corp.*, 211 B.R. 545, 562 (Bankr. E.D. Mich. 1997).

13.    The failure to estimate Daugherty's claim does not constitute "undue delay" within the meaning of Section 502(c). The Court has recognized that estimation is discretionary, not mandatory, and that courts may refrain from estimating a claim where: (a) the delay would not be "undue"; (b) estimation is not necessary for the plan of reorganization; and (c) estimation would duplicate subsequent proceedings. *In re Dow Corning Corp.*, 211 B.R. at 562–66; *In re Continental Airlines, Inc.,* 57 B.R. 842, 844 (Bankr. S.D. Tex. 1985).

14.    The equities weigh in favor of leaving Daugherty's Reserved Claim open until the IRS concludes its audit. If the Court were to estimate Daugherty's claim and that estimated value were less than Daugherty's actual liability as a result of the IRS audit, Daugherty would be without recourse against Highland for money he is owed. As an individual taxpayer with potentially millions of dollars at stake, a premature estimation would be substantially prejudicial to Daugherty.

15.    The Stay Provision in the Settlement Agreement provides that litigation concerning the Reserved Claim "shall be stayed until the IRS makes a final determination with respect to the IRS Audit Dispute." The IRS has not made a final determination. While the Court struck the Stay Provision under Rule 60(b)(6), this does not eliminate the underlying equitable considerations that favor deferring estimation until a final determination exists.

16.    Daugherty's Class 8 claim accrues post-petition interest at the Federal Judgment Rate under the Plan and Claimant Trust Agreement. Any estimation that fails to account for

13

4934-3741-4321

accruing interest as a result of the IRS Audit—and thus accruing liability to Daugherty depending on the ultimate resolution of the IRS Audit—understates Highland's obligation and overstates the residual available for Class 10 and Class 11 interest holders—including Hunter Mountain Investment Trust—cannot vest until such interest is paid. Any estimation that fails to account for accruing interest understates Highland's obligation, overstates the residual available for distribution, and contravenes the confirmed Plan's distribution waterfall. (PD-09 at p. 44; PD-10 at §§ 1.1(h), 5.1(b)-(c).)

17.     Highland had the legal authority to resolve the IRS audit through its control of Strand Advisors before the Plan's effective date but chose not to do so. Highland cannot create uncertainty through its own inaction and then invoke that uncertainty to compel premature estimation to Daugherty's detriment.

18.     The distribution waterfall further supports the inequity of premature estimation. If Daugherty's Class 8 claim is underestimated, the difference inures to the benefit of Class 10 and Class 11 interest holders—specifically Hunter Mountain Investment Trust, controlled by Dondero—through residual distributions from the indemnity trust that Seery solely administers. Estimation thus risks transferring value from a senior unsecured creditor to subordinated interests controlled by the individual whose decisions as tax matters partner perpetuate the very uncertainty Highland invokes.

19.     Highland breached the Settlement Agreement by failing to transfer all of its "interests" in HERA and ERA to Daugherty, including the full scope of books and records. The Settlement Agreement required Highland to "transfer its interests in HERA and ERA to Daugherty" and stated that "[s]uch transfer will include the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system." (Ex. H-5, § 8).

20.     The term "interests" referenced above is a broad and undefined term encompassing all ownership rights, property, data, documents, and records, including emails,

14

4934-3741-4321

relating to HERA and ERA. The word "include" signals that books and records are one component of the broader "interests" being transferred, not the only thing being transferred. Courts will enforce the plain, ordinary meaning of clear and unambiguous language. *See generally Vill. Practice Mgmt. Co. LLC v. West*, 342 A.3d 295, 314 (Del. 2025).

21.     The stated purpose of Section 8 in the Settlement Agreement—"to facilitate the recovery of potential claims"—requires a broad interpretation of Highland's "interests." Daugherty needs complete access to all HERA and ERA materials in Highland's possession to meaningfully pursue those claims. A narrow reading would frustrate the express purpose the parties articulated.

22.     Specific performance is the appropriate remedy for Highland's breach of Section 8 of the Settlement Agreement. Specific performance is "the decisively preferable remedy" when a party breaches a contract involving unique subject matter and damages cannot be reasonably calculated. *In re IBP, Inc. S'holders Litig.*, 789 A.2d 14, 22 (Del. Ch. 2001). The books and records at issue are not fungible assets that can be replaced or monetized.

23.     To obtain specific performance under Delaware law, a plaintiff must prove by clear and convincing evidence: (1) a valid contract exists, (2) the plaintiff is ready, willing, and able to perform, (3) a legal remedy would be inadequate, and (4) the balance of equities tips in favor of the party seeking specific performance. *Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 495 (Del. Ch. 2022). Each element is satisfied here. The validity of the Settlement Agreement is undisputed, and Highland does not contest Daugherty's full performance. (Joint Pretrial Order.) The books and records are the sole repository of information about HERA and ERA's operations and potential claims, making specific performance particularly appropriate where the subject matter is unique. *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1161–62 (Del. 2010); *see also IBP*, 789 A.2d at 82–83.

4934-3741-4321

24. A legal remedy would be inadequate because any damages calculation would be speculative — the HERA litigation is at the motion to dismiss stage with no outcome in sight. Specific performance "entirely eliminat[es] the need for a speculative determination of damages." *IBP*, 789 A.2d at 83. The balance of equities tips decidedly in Daugherty's favor. Daugherty comes to this Court with clean hands. *Osborn*, 991 A.2d at 1162. The relief is discrete and readily enforceable — the Court need only order Highland to produce records it already possesses — and Highland can demonstrate no hardship beyond mere inconvenience. *Id.*; *26 Capital Acquisition Corp. v. Tiger Resort Asia Ltd.*, 309 A.3d 434, 466–72 (Del. Ch. 2023).

25. Delaware courts "read a contract as a whole and give each provision and term effect, so as not to render any part of the contract mere surplusage." *Osborn*, 991 A.2d at 1159. Highland's position — that it may retain HERA and ERA's books and records while claiming to have transferred the relevant interests — eviscerates the express purpose of Section 8. *See Lee Builders, Inc. v. Wells*, 92 A.2d 710, 715 (Del. Ch. 1952) (granting specific performance where parties' intent was obvious despite arguments about contractual uncertainty). Denying specific performance would defeat the very purpose for which the parties agreed to Section 8.

26. Highland is the sole custodian of the HERA and ERA books and records, as well as documents and communications, that it agreed to turn over to Daugherty. If the Court does not order Highland to comply with the terms of the Settlement Agreement and turn over all of the books and records, documents and communications, Daugherty will be irreparably harmed and HERA will be unable to adequately pursue its litigation against Dondero, Okada, Ellington, and others.

27. Daugherty's claim for breach of the books and records provision in the Settlement Agreement is timely. Federal courts located in Texas apply Texas' four-year statute of limitations to breach of contract claims. Federal courts apply (a) the substantive law of the

16

4934-3741-4321

contractually chosen state and (b)Texas procedural law to procedural matters. *See Cypress/Spanish Ft. I, L.P. v. Prof. Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 708 (N.D. Tex. 2011). Texas considers statutes of limitation procedural, not substantive. *See id.*; *see also Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4 (Tex. 1999); *Hunt Oil Co. v. Live Oak Energy, Inc.*, 313 S.W.3d 384, 387 (Tex. App.—Dallas 2009). The statute of limitations in Texas for breach of contract claims is four years.  Tex. Civ. Prac. & Rem. Code §§ 16.004, 16.051; *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 707 (Tex. 2021).  The Court entered the order approving the parties' Settlement Agreement in March 2022, and Daugherty filed his breach of contract claim on October 3, 2025 — less than four years later.

28.      In adversary proceedings, bankruptcy courts engage in the same choice-of-law analysis as a federal district court. *In re Soporex, Inc.*, 446 B.R. 750, 760–61 (Bankr. N.D. Tex. 2011); *In re Vantage Benefits Admins., Inc.*, No. 18-31351-SGJ-7, 2024 WL 3842796, at *17 (Bankr. N.D. Tex. Aug. 14, 2024). Regardless of the Delaware choice-of-law provision, Texas' four-year statute applies. *See Cypress/Spanish*, 814 F. Supp. 2d at 709; *Hunter v. Berkshire Hathaway, Inc.*, No. 4:14-CV-663-Y, 2017 WL 11679602, at *4 (N.D. Tex. May 31, 2017); *Albritton v. Acclarent, Inc.*, No. 3:16-cv-03340-M, 2017 WL 6628122, at *6 (N.D. Tex. Dec. 27, 2017).

29.      The parties executed the Settlement Agreement on November 22, 2021 — also less than four years before Daugherty's October 2025 claim. Still, even if Delaware's three-year statute of limitations applied, Daugherty's claim would be timely. In Delaware, a cause of action accrues when the contract is broken. *Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286, 1292 (Del. 1982); *Lehman Bros. Holdings Inc. v. Kee*, 268 A.3d 178, 185 (Del. 2021). At the earliest, Highland's breach accrued on October 19, 2022 — the date Highland communicated that it had completed its performance when it had not — and Daugherty filed less than three years later. (Ex. H-3.)

17

4934-3741-4321

30.    Additionally, Daugherty's claim for breach of the books and records provision was brought as a counterclaim in this adversary proceeding.  Daugherty's claim is also timely filed under Texas Civil Practice and Remedies Code § 16.069 because Daugherty filed his counterclaim on or before his answer was due.

Dated: June 5, 2026.

Respectfully submitted,

GRAY REED

By:  _/s/ Andrew K. York_
       Jason S. Brookner
       Texas Bar No. 24033684
       Andrew K. York
       Texas Bar No. 24051554
       Joshua D. Smeltzer
       Texas Bar No. 24113859
       J. Reid Burley
       Texas Bar No. 24109675
       Drake M. Rayshell
       Texas Bar No. 24118507

1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:    (214) 954-4135
Facsimile:    (214) 953-1332
Email:        jbrookner@grayreed.com
           dyork@grayreed.com
           jsmeltzer@grayreed.com
           rburley@grayreed.com
           drayshell@grayreed.com

_Counsel to Patrick Daugherty_

4934-3741-4321

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing instrument was served on all Parties or counsel of record herein on this 5th day of June 2026, via the CM/ECF system and/or email.

/s/ *Andrew K. York*
ANDREW K. YORK

4934-3741-4321